Slip Op. 19-96

# UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| COMMITTEE OVERSEEING ACTION FOR LUMBER INTERNATIONAL TRADE INVESTIGATIONS OR NEGOTIATIONS,<br><br>    Plaintiff,<br><br>v.<br><br>UNITED STATES,<br><br>    Defendant,<br><br>and<br><br>FONTAINE INC., ET AL.,<br><br>    Defendant-Intervenors. | Before: Mark A. Barnett, Judge<br>Court No. 19-00122 |

## OPINION AND ORDER

[Vacating the temporary restraining order entered on July 15, 2019 and denying Plaintiff's motion for a preliminary injunction.]

Dated: July 26, 2019

Sophia J.C. Lin, Picard Kentz & Rowe LLP, of Washington, DC, argued for Plaintiff Commmittee Overseeing Action for Lumber International Trade Investigations or Negotiations. With her on the brief were Lisa W. Wang, Andrew W. Kentz, David A. Yocis, Nathanial M. Rickard, Heather N. Doherty, and Zachary J. Walker.

Patricia M. McCarthy, Assistant Director, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, DC, argued for Defendant United States. With her on the brief were Joseph H. Hunt, Assistant Attorney General, Jeanne E. Davidson, Director, and Stephen C. Tosini, Senior Trial Counsel. Of counsel on the brief were Jessica DiPietro and Nikki Kalbing.

Elliot J. Feldman, Baker & Hostetler, LP, of Washington, DC, argued for Defendant-Intervenor Fontaine, Inc. With him on the brief were Michael S. Snarr, John J. Burke, Mark B. Lehnardt, Lindita V. Ciko Torza, and Jake R. Frischknecht.

Lynn G. Kamarck, Hughes Hubbard & Reed LLP, of Washington, DC, argued for Defendant-Intervenor the Government of Canada.  With her on the brief were Joanne E. Osendarp, Dean A. Pinkert, Alan G. Kashdan, Daniel M. Witkowski, and Stephen R. Halpin, III.

Jonathan M. Zielinski, Cassidy Levy Kent (USA) LLP, of Washington, DC, argued for Defendant-Intervenor Scierie Alexandre Lemay & Fils Inc.  With him on the brief were Yohai Baisburd, Myles S. Getlan, and James E. Ransdell.

　　　　Barnett, Judge:  Plaintiff, Committee Overseeing Action for Lumber International Trade Investigations or Negotiations ("the Coalition" or "Plaintiff") challenges the final results of the countervailing duty expedited review of certain softwood lumber products from Canada.  Compl. ¶¶ 1-2, ECF No. 2;[1] *Certain Softwood Lumber Products From Canada*, 84 Fed. Reg. 32,121 (Dep't Commerce July 5, 2019) (final results of countervailing duty expedited review) ("*Final Results of Expedited Review*"), and accompanying Issues and Decision Mem. ("I&D Mem."), C-122-858 (June 28, 2019), *available at* https://enforcement.trade.gov/frn/summary/canada/2019-14338-1.pdf (last accessed July 26, 2019).

　　　　This matter is now before the court on Plaintiff's motion for a temporary restraining order ("TRO") and preliminary injunction.  Pl.'s Mot. for Temporary

---

[1] Plaintiff invokes the court's jurisdiction pursuant to 28 U.S.C. § 1581(i)(4) or, alternatively, 28 U.S.C. § 2581(c).  Compl. ¶¶ 3, 6.  Pursuant to 28 U.S.C. § 1581(i)(4), "the Court of International Trade shall have exclusive jurisdiction of any civil action commenced against the United States, its agencies, or its officers, that arises out of any law of the United States providing for . . . administration and enforcement with respect to the matters referred to in paragraphs (1)-(3) of this subsection and subsections (a)-(h) of this section."  28 U.S.C. § 1581(i)(4).  Pursuant to 28 U.S.C. § 1581(c), "[t]he Court of International Trade shall have exclusive jurisdiction of any civil action commenced under section 516A or 517 of the Tariff Act of 1930," 19 U.S.C. §§ 1516a, 1517.  28 U.S.C. § 1581(c).

Restraining Order and for Prelim. Inj. ("Pl.'s Mot."), ECF No. 6.  On July 15, 2019, prior to assignment to the undersigned, the court entered an order granting Plaintiff's motion for a TRO.  *See* Temporary Restraining Order (July 15, 2019), ECF No. 10.  Pursuant to Rule 65 of the rules of the U.S. Court of International Trade ("USCIT"), the TRO will expire on July 29, 2019.  *See* USCIT Rule 65(b)(2).  Plaintiff now seeks to enjoin, "pending a final and conclusive court decision in this litigation, and any appeals therefrom," "Defendant United States, together with its delegates, officers, agents, servants, and employees of the International Trade Administration of the U.S. Department of Commerce and U.S. Customs and Border Protection" from: (1) liquidating "any unliquidated entries of softwood lumber from Canada that" were subject to the *Final Results of Expedited Review*, entered on or after April 28, 2017, and were produced or exported by seven of the eight companies that received *de minimis* or reduced rates in the review; (2) revoking the relevant countervailing duty order on five companies that received *de minimis* rates in the review; and (3) collecting cash deposits at the rates established in the *Final Results of Expedited Review* on entries made on or after July 5, 2019 and which were produced or exported by the eight companies subject to the review.  [Proposed] Order, ECF No. 6.

      Defendant, United States ("the Government"), and several Defendant-Intervenors oppose Plaintiff's motion.  *See* Def.'s Mot. to Dismiss and Opp'n to Pl.'s Mot. for a Prelim. Inj. ("Def.'s MTD & Opp'n"), ECF No. 21; Opp'n of Def.-Int., Fontaine Inc., to Pl.'s Mot. for Temporary Restraining Order and for Prelim. Inj. ("Fontaine's Opp'n"), ECF No. 26; Opp'n of Def.-Int. Gov't of Canada to Pl.'s Mot. for Temporary Restraining Order

and for Prelim. Inj. ("Gov't of Canada's Opp'n"), ECF No. 67; Resp. of Def.-Int. Scierie Alexandre Lemay & Fils Inc. Opp'n to Pl.'s Mot. for Temporary Restraining Order and for Prelim. Inj. and in Supp. of Def.'s Mot. to Dismiss ("Lemay's Opp'n"), ECF No. 68.[2] Fontaine, Inc. ("Fontaine") has also moved to modify the TRO. *See* Mot. to Modify Temporary Restraining Order ("Fontaine's Mot."), ECF No. 22. On July 25, 2019, the court heard oral argument on Plaintiff's motion. Docket Entry, ECF No. 69. For the reasons discussed herein, the court will vacate the TRO as having been improvidently granted and deny Plaintiff's motion for a preliminary injunction.[3] Accordingly, the court will deny as moot Fontaine's motion to modify the TRO.

## BACKGROUND

"A 'final determination' in an antidumping or countervailing duty investigation constitutes a final decision by the [U.S. Department of Commerce ("Commerce" or "the agency")] as to whether dumping or countervailable subsidization is occurring." 19 C.F.R. § 351.210(a). When the determination is affirmative, Commerce must determine

---

[2] Defendant has moved to dismiss Plaintiff's complaint for lack of subject matter jurisdiction. *See* Def.'s MTD & Opp'n to Inj. at 6-8. Responses to this motion are due on August 21, 2019.

[3] The court will defer ruling on Defendant's motion to dismiss for lack of subject matter jurisdiction until briefing is complete. *See U.S. Ass'n of Importers of Textiles and Apparel v. United States*, 413 F.3d 1344, 1348 (Fed. Cir. 2005) (reviewing the trade court's entry of a preliminary injunction and concluding that the court did not abuse its discretion in delaying consideration of the defendant's motion to dismiss for lack of subject matter jurisdiction until briefing was completed). While the appellate court held that the USCIT erred in failing to consider the jurisdictional issue as part of its consideration of the plaintiff's likelihood of success on the merits, *see id.*, as discussed herein, the court does not reach that issue because the Coalition has failed to establish irreparable harm. The court is effectively returning the matter to the pre-TRO *status quo ante*.

an estimated individual countervailable subsidy rate or weighted average dumping margin, as the case may be, for each exporter and producer individually investigated as well as an "estimated all-others rate for all exporters and producers not individually investigated." 19 U.S.C. §§ 1671d(c)(1)(B)(i)(I), 1673d(c)(1)(B)(i)(I)-(II). Commerce must then "order the posting of a cash deposit, bond, or other security . . . for each entry of the subject merchandise in an amount based on the estimated individual countervailable subsidy rate, the estimated all-others rate, or the estimated country-wide subsidy rate," *id.* § 1671d(c)(1)(B)(ii), or, in antidumping proceedings, "in an amount based on the estimated weighted average dumping margin or the estimated all-others rate," *id.* § 1673d(c)(1)(B)(ii). In the event of a negative determination, the investigation will be terminated, and any suspension of liquidation will be ended. 19 C.F.R. § 351.207(d)-(e).

Relevant here, an exporter that Commerce did not select for individual examination in a countervailing duty investigation may, within 30 days of the date of publication of the relevant order, request an expedited review of the cash deposit rate. 19 C.F.R. § 351.214(k). The period of review is the period of investigation used in the original investigation. *Id.* § 351.214(k)(3)(i). This enables the agency to use data from that investigation in order to expedite the review. *See Antidumping Duties; Countervailing Duties*, 62 Fed. Reg. 27,296, 27,321 (Dep't Commerce May 19, 1997) (final rule) ("*Preamble*"). While the final results of an expedited review "will not be the basis for the assessment of countervailing duties," Commerce "may exclude from the countervailing duty order in question any exporter for which the [agency] determines an

individual net countervailable subsidy rate of zero or de minimis." 19 C.F.R. § 351.214(k)(3)(iv).

Final duty liability typically is determined in an administrative review of an order pursuant to 19 U.S.C. § 1675(a)(1). See 19 C.F.R. § 351.213(a); cf. 19 C.F.R. § 351.11(b)(1) (explaining that, upon publication of an antidumping or countervailing duty order, Commerce will instruct CBP "to assess antidumping duties or countervailing duties (whichever is applicable) on the subject merchandise, in accordance with the Secretary's instructions at the completion of" either an administrative review, new shipper review, or expedited antidumping review).[4] Interested parties may request an administrative review "during the anniversary month of the publication of an antidumping or countervailing duty order." Id. § 351.213(b). If no review is requested (or when all requests for review are withdrawn), Commerce will, "without additional notice," instruct CBP to assess antidumping duties or countervailing duties at the cash deposit rates. Id. § 351.212(c).

---

[4] Commerce's regulations recognize that,
> [u]nlike the systems of some other countries, the United States uses a 'retrospective' assessment system under which final liability for antidumping and countervailing duties is determined after merchandise is imported. Generally, the amount of duties to be assessed is determined in a review of the order covering a discrete period of time.

KYD, Inc. v. United States, 35 CIT 475, 480, 779 F. Supp. 2d 1361, 1368, 35 C.I.T. 475, 480 (2011) (quoting 19 C.F.R. § 351.212(a)). "[T]he absence of certainty regarding the dumping margins and final assessment of antidumping duties is a characteristic of the retrospective system of administrative reviews designed by Congress." SKF USA Inc. v. United States, 31 CIT 951, 960, 491 F. Supp. 2d 1354, 1363 (2007) (quoting Abitibi–Consol. Inc. v. United States, 30 CIT 714, 724, 437 F. Supp. 2d 1352, 1361 (2006)).

In November 2017, Commerce issued final affirmative determinations in its countervailing duty ("CVD") and antidumping duty ("AD") investigations of certain softwood lumber products from Canada. *See Certain Softwood Lumber Products From Canada*, 82 Fed. Reg. 51,814 (Dep't Commerce Nov. 8, 2017) (final aff. countervailing duty determination and final negative determination of critical circumstances); *Certain Softwood Lumber Products From Canada*, 82 Fed. Reg. 51,806 (Dep't Commerce No. 8, 2017) (final aff. determination of sales at less than fair value and aff. final determination of critical circumstances).[5]  On January 3, 2018, Commerce published the CVD and AD orders. *See Certain Softwood Lumber Products From Canada*, 83 Fed. Reg. 347 (Dep't Commerce Jan. 3, 2018) (am. final aff. countervailing duty determination and countervailing duty order) ("*CVD Order*"); *Certain Softwood Lumber Products From Canada*, 83 Fed. Reg. 350 (Dep't Commerce Jan. 3, 2018) (antidumping duty order and partial am. final determination) ("*AD Order*").

On March 8, 2018, in response to requests filed by certain Canadian producers, Commerce initiated an expedited review of the *CVD Order*. *See Certain Softwood Lumber Products From Canada*, 83 Fed. Reg. 9,833 (Dep't Commerce March 8, 2018) (initiation of expedited review of the countervailing duty order) ("*Initiation Notice*"); 19

---

[5] Commerce issued preliminary affirmative determinations in its CVD and AD investigations on April 28, 2017 and June 30, 2017, respectively. *Certain Softwood Lumber Products From Canada*, 82 Fed. Reg. 19,657 (Dep't Commerce Apr. 28, 2017) (prelim. aff. countervailing duty determination, and alignment of final determination with final antidumping duty determination); *Certain Softwood Lumber Products From Canada*, 82 Fed. Reg. 29,833 (Dep't Commerce June 30, 2017) (prelim. aff. determination of sales at less than fair value).

C.F.R. § 351.214(k). The companies subject to the expedited review (and their affiliates) were not selected for individual examination during the investigation and had been assigned the "all-others" rate of 14.19 percent. *CVD Order*, 83 Fed. Reg. at 348. The "period of review" for the expedited review ran from January 1, 2015, through December 31, 2015. *Initiation Notice*, 83 Fed. Reg. at 9,833.

On July 5, 2019, Commerce issued the *Final Results of Expedited Review* in which the agency calculated reduced or *de minimis* rates for the eight companies as follows: (1) Les Produits Forestiers D&G Ltée and its cross-owned affiliates ("D&G"): 0.21 percent; (2) Marcel Lauzon Inc. and its cross-owned affiliates ("MLI"): 0.42 percent; (3) North American Forest Products Ltd. and its cross-owned affiliates ("NAFP"): 0.17 percent; (4) Roland Boulanger & Cie Ltée and its cross-owned affiliates ("Roland"): 0.31 percent; (5) Scierie Alexandre Lemay & Fils Inc. and its cross-owned affiliates ("Lemay"): 0.05 percent; (6) Fontaine and its cross-owned affiliates: 1.26 percent; (7) Mobilier Rustique (Beauce) Inc. and its cross-owned affiliates ("Rustique"): 1.99 percent; and (8) Produits Matra Inc. and Sechoirs de Beauce Inc. and their cross-owned affiliate ("Matra"): 5.80 percent. *Final Results of Expedited Review*, 84 Fed. Reg. at 32,122.

The rates calculated for D&G, MLI, NAFP, Roland, and Lemay are considered *de minimis*, therefore, Commerce stated it would instruct U.S. Customs and Border Protection ("CBP") "to discontinue the suspension of liquidation and the collection of cash deposits of estimated countervailing duties on all shipments of softwood lumber produced and exported by" those companies that were entered on or after July 5, 2019;

"liquidate, without regard to countervailing duties, all suspended entries of shipments of softwood lumber produced and exported by" those companies; and "refund all cash deposits of estimated countervailing duties collected on all such shipments." *Id.* As to the companies receiving a lower—but not *de minimis*—rate (Fontaine, Rustique, and Matra), Commerce stated it would instruct CBP "to collect cash deposits of estimated countervailing duties" at the rates calculated for the *Final Results of Expedited Review*. *Id.*

## DISCUSSION

"A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. Nat'l Res. Def. Council, Inc.,* 555 U.S. 7, 24 (2008). To obtain a preliminary injunction, a party must demonstrate "(1) likelihood of success on the merits, (2) irreparable harm absent immediate relief, (3) the balance of interests weighing in favor of relief, and (4) that the injunction serves the public interest." *Silfab Solar, Inc. v. United States*, 892 F.3d 1340, 1345 (Fed. Cir. 2018) (citing *Winter*, 555 U.S. at 20). "Although preliminary injunctions against liquidation have become almost automatic in antidumping and countervailing duty cases, they are an extraordinary remedy never awarded as of right." *Sumecht NA, Inc. v. United States*, 923 F.3d 1340, 1345 (Fed. Cir. 2019) (internal quotation marks and citation omitted).

"In evaluating [irreparable] harm, the court must consider 'the magnitude of the injury, the immediacy of the injury, and the inadequacy of future corrective relief.'" *Shree Rama Enter. v. United States*, 21 CIT 1165, 1167, 983 F. Supp. 192, 194 (1997) (quoting *Queen's Flowers de Colombia v. United States*, 20 CIT 1122, 1125, 947 F.

Supp. 503, 506 (1996). Of these three factors, "immediacy [of the injury] and the inadequacy of future corrective relief" may be weighed more heavily than magnitude of harm. *Nat'l Juice Prods. Ass'n v. United States*, 10 CIT 48, 53, 628 F. Supp. 978, 984 (1986) (citations omitted).[6] Critically, irreparable harm may not be speculative, *see Am. Inst. for Imported Steel, Inc. v. United States*, 8 CIT 314, 318, 600 F. Supp. 204, 209 (1984), or determined by surmise, *Elkem Metals Co. v. United States*, 25 CIT 186, 192, 135 F.Supp.2d 1324, 1331 (2001) (citation omitted). "It is not enough to establish 'a mere possibility of injury, even where prospective injury is great. A presently existing, actual threat must be shown.'" *Shree Rama*, 21 CIT at 1167, 983 F. Supp. at 194–95 (quoting *Zenith Radio Corp. v. United States*, 710 F.2d 806, 809 (1983)). Failure as to this factor is grounds for denying injunctive relief. *See, e.g.*, *Sumecht*, 923 F.3d at 1348.

### A. Parties' Contentions

Plaintiff presents three arguments as to why it will be irreparably harmed without an injunction. First, Plaintiff argues that its claims will be rendered moot and judicial review will be "a meaningless exercise" if the unliquidated entries of subject merchandise produced or exported by the five companies assigned a *de minimis* rate are liquidated before the conclusion of this case. Pl.'s Mot. at 12-13. Plaintiff acknowledges that liquidation of entries made on or after June 30, 2017 remains

---

[6] *National Juice Products* has since been superseded by statute, but the change does not relate to the proposition for which it is being cited herein. *See CannaKorp, Inc. v. United States*, 41 CIT __, __, 234 F. Supp. 3d 1345, 1352 (2017).

Court No. 19-00122	Page 11

suspended by operation of the *AD Order* and pending administrative reviews thereof. *Id.* at 13. Nevertheless, Plaintiff argues, it will be harmed by liquidation of entries that entered between April 28, 2017 and June 30, 2017 *and* those that entered after June 30, 2017 due to "developments regarding the *AD Order* before the [c]ourt reaches a conclusion in this case." *Id.* at 13-14. Second, Plaintiff argues that it will be harmed by the liquidation of Rustique's and Fontaine's entries at the rates established in the *Final Results of Expedited Review* because Rustique and Fontaine have withdrawn their requests to be included in the first administrative review of the *CVD Order* and no additional requests have been maintained. *Id.* at 16-18. Third, Plaintiff argues that revocation of the *CVD Order* as to the five companies with *de minimis* rates and reduced cash deposit rates for the three other companies increases the possibility of circumvention of the *CVD Order*, which will "further injure Plaintiff and the domestic industry." *Id.* at 19.

Defendant and Defendant-Intervenors argue that Plaintiff's motion must fail for lack of proof of irreparable harm; Plaintiff will not be harmed by liquidation, revocation, or changes to cash deposit rates; and its assertions regarding circumvention of the *CVD Order* are speculative. *See* Def.'s MTD and Opp'n to Inj. at 9-11; Fontaine's Opp'n at 4-6; Gov't of Canada's Opp'n at 1-2, 3-4; Lemay's Opp'n at 6-8. Fontaine further argues that any harm Plaintiff incurs respecting liquidation of Fontaine's and Rustique's entries "is of [its] own making" because the Coalition withdrew its request for an administrative review of those companies. Fontaine's Opp'n at 5; *see also id.*, Attach. 2 (the Coalition's withdrawal of its request for an administrative review).

**B. Plaintiff Has Not Met its Burden of Proving Irreparable Harm**

Plaintiff's assertions of harm arising from liquidation, revocation, or changes in the cash deposit rates are unsupported and unpersuasive.

First, Plaintiff has not shown that it will incur irreparable harm in connection with liquidation of entries without regard to countervailing duties for D&G, MLI, NAFP, Roland, and Lemay.  Plaintiff attempts to analogize the effect of liquidation on the Coalition to the effect of liquidation during the pendency of a challenge to an administrative review.  See Pl.'s Mot. at 12 (citing, *inter alia*, *Zenith*, 710 F.2d at 810).  Challenges to administrative reviews differ from challenges to investigations, however, because they address dumping margins calculated on entries of subject merchandise for a specific period of review.  See *Zenith*, 710 F.2d at 808.  For that reason, the *Zenith* court concluded that liquidation constituted irreparable harm because the plaintiff, a domestic producer, would lose the "only remedy available to [it] for an incorrect review determination."  *Id.* at 810 (noting that liquidation would prevent the trial court from assessing duties *on the covered entries* "in accordance with a correct margin").

"The emphasis throughout *Zenith* is on the liquidation of entries for a specific review period and the potential loss of plaintiff's remedy, i.e., the right to have the administrative determination reviewed, with respect to that specific period." *FMC Corp. v. United States*, 3 F.3d 424, 431 (Fed. Cir. 1993).  In contrast, the cash deposit rates established in an investigation are prospective because they affect future entries, "not just those made within a specific time period." *NSK Corp. v. United States*, 31 CIT 1962, 1965 (2007) (citation omitted).  Accordingly, liquidation of entries—without

more—generally does not constitute irreparable harm in a challenge brought by a domestic producer to an investigation determination.  See *Trent Tube Div., Crucible Materials Corp. v. United States*, 14 CIT 587, 588, 744 F. Supp. 1177, 1179 (1990) (citing cases finding that liquidation is insufficient to find irreparable harm in challenges by domestic producers to negative injury or dumping determinations, and finding same in the context of a request for an injunction by a domestic producer challenging an affirmative determination); *Altx, Inc. v. United States*, 26 CIT 735, 737, 211 F. Supp. 2d 1378, 1380 (2002) (discussing *Trent Tube* and denying motion for preliminary injunction filed by domestic producers challenging an affirmative injury determination).

The purpose of an expedited review "is to provide a noninvestigated exporter with its own cash deposit rate prior to the arrival of the first anniversary month of the order, at which point the exporter may request an administrative review," *Preamble*, 62 Fed. Reg. at 27,321, therefore, the results of an expedited review are akin to a final investigation determination.  If Plaintiff prevails in this case, the five companies excluded from the order by the expedited review would be reinstated in the *CVD Order* with the concomitant collection of cash deposits and suspension of liquidation.  Thus, liquidation of entries during the interim period would not moot Plaintiff's claims and, absent evidence demonstrating specific, irreparable harm from liquidation of those entries, Plaintiff is not entitled to an injunction barring liquidation of such entries.[7]

---

[7] Plaintiff cites to the court's opinion in *Husteel Co., Ltd. v. United States*, 38 CIT __, __. 34 F. Supp. 3d 1355, 1360 (2014), as an example of the court enjoining liquidation in the context of a challenge to an investigation determination.  Pl.'s Mot. at 15 (citing

Plaintiff also has not demonstrated harm arising from the liquidation of Rustique's and Fontaine's entries. Assuming, *arguendo*, that Rustique's and Fontaine's entries will liquidate at the reduced rate established in the *Final Results of Expedited Review*,[8] Plaintiff has not demonstrated irreparable harm. As noted by Fontaine, any harm that arises is self-inflicted as a result of Plaintiff's withdrawal of its requests for administrative reviews of those companies, maintenance of which would have continued the suspension of liquidation pending Commerce's final assessment of duties in the administrative review. *See* Fontaine's Opp'n at 5. Thus, Plaintiff is left asserting that liquidation at one estimated deposit rate rather than another estimated deposit rate constitutes irreparable harm, without any evidence of actual harm and without regard to Plaintiff's actual withdrawal of its request to have the actual subsidy rate for these entries determined by review.

Plaintiff's attempt to analogize this case to the circumstances underlying the court's grant of a preliminary injunction in *Fuyao Glass Industry Group Co., Ltd. v. United States*, 27 CIT 1321, 1323 (2003), is unpersuasive. Pl.'s Mot. at 17-18. In

---

*Husteel*, 34 F. Supp. 3d at 1358-64). *Husteel* is distinguishable in that movants were the foreign producers and exporters of subject merchandise, not domestic producers of the foreign like product, and maintained that they should have received a *de minimis* rate in the investigation, been excluded from the order, and not required to go through administrative reviews. *See* Compl. ¶¶ 13, 21, *Husteel Co., Ltd., et al. v. United States, et al.,* No. 14-cv-00215 (Ct. Int'l Trade Aug. 2, 2016). Such circumstances distinguish *Husteel* from the present case.

[8] Plaintiff avers that Commerce's automatic assessment provision requires liquidation at the all-others rate established in the investigation, but that it is unclear whether Commerce will interpret the regulation to require liquidation at the rates established in the *Final Results of Expedited Review*. Pl.'s Mot. at 17; *see also* 19 C.F.R. § 351.212(c).

*Fuyao*, the court found irreparable harm on the basis of liquidation when an exporter withdrew its own request for an administrative review subsequent to the initial determination.  27 CIT at 1321; *cf. OKI Elec. Industry Co., Ltd. v. United States*, 11 CIT 624, 631, 669 F. Supp. 480, 485 (1987) (finding irreparable harm to plaintiff/importer of subject merchandise and enjoining liquidation of entries at the challenged rate from the investigation when the plaintiff had withdrawn its request for an administrative review).  *Fuyao* and *OKI* are distinguishable because the movants—importers/exporters of subject merchandise—had a direct financial stake in the rate at which entries would be liquidated.  In contrast, here, the Coalition consists of domestic producers who have not provided any evidence of any harm from, or stake in, the liquidation of the entries at an allegedly erroneous rate.  Moreover, judicial relief will continue to be available to Plaintiff if it prevails because future entries would be subject to the all-others rate established in the *CVD Order* pending a subsequent review.[9]  Accordingly, Plaintiff has not demonstrated that it would incur irreparable harm from the liquidation of Rustique's and Fontaine's entries.

Lastly, Plaintiff has not shown that it will be irreparably harmed by revocation of the order and the implementation of reduced cash deposit rates due to the potential for circumvention of the *CVD Order*.  Put simply, Plaintiff's speculative circumvention

---

[9] Because the court finds the absence of irreparable harm even if Rustique's and Fontaine's entries liquidate at the rates established in the *Final Results of Expedited Review*, the court need not decide whether any potential harm would have been mitigated by the continued suspension of liquidation in place in connection with the first administrative review of the *AD Order* (albeit excepting the two months between the CVD and AD preliminary determinations, *see supra*, note 5).

concerns do not present the type of "immediate and viable threat of irreparable harm" necessary for an injunction to issue. *Otter Prods., LLC v. United States*, 38 CIT __, __, 37 F. Supp. 3d 1306, 1315 (2014) (internal quotation marks and citation omitted). Plaintiff has not provided evidence demonstrating that circumvention is likely, or that Coalition members would be irreparably harmed by circumvention. Plaintiff also contends that because Commerce has found Matra to be uncreditworthy, there is an increased risk that CBP will not be able to collect duties owed if Plaintiff prevails. Pl.'s Mot. at 20. Besides being speculative, Plaintiff does not explain why Matra's inability to pay duties harms the Coalition specifically, given that it is not the recipient of the duties.

In sum, Plaintiff has failed to offer persuasive arguments or any evidence demonstrating that it would be irreparably harmed in the absence of the temporary restraining order or preliminary injunction. For this reason, the court will vacate the temporary restraining order, finding that it was improvidently granted, and deny Plaintiff's request for injunctive relief. *See Sumecht*, 923 F.3d at 1348 (affirming court's denial of injunctive relief when the movant failed to demonstrate irreparable harm).

### CONCLUSION & ORDER

For the reasons discussed herein, the court **VACATES** the Temporary Restraining Order entered on July 15, 2019 (ECF No. 10) and **DENIES** Plaintiff's motion for a preliminary injunction (ECF No. 6). Fontaine's motion to modify the temporary restraining order (ECF No. 22) is **DENIED AS MOOT**.

/s/     Mark A. Barnett
Mark A. Barnett, Judge

Dated: July 26, 2019
       New York, New York