IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE:  HONORABLE MARK A. BARNETT, JUDGE

_____
                                                           )
COMMITTEE OVERSEEING ACTION FOR LUMBER   )
INTERNATIONAL TRADE INVESTIGATIONS OR     )
NEGOTIATIONS, *ET AL.*,                             )
                                                           )
        Plaintiffs,                                      )
                                                           )
        v.                                                )  Consol.  Ct. No. 19-00122
                                                           )
UNITED STATES,                                       )
                                                           )
        Defendant.                                     )
_____)

## DEFENDANT'S RESPONSE TO THE PARTIES' REMAND COMMENTS

                                    BRIAN M. BOYNTON
                                    Acting Assistant Attorney General

                                    JEANNE E. DAVIDSON
                                    Director

                                    PATRICIA M. McCARTHY
                                    Assistant Director

OF COUNSEL:                         STEPHEN C. TOSINI
NIKKI KALBING                       Senior Trial Counsel
Attorneys                           Department of Justice
U.S. Department of Commerce         Civil Division, Commercial Litigation Branch
Office of the Chief Counsel for     PO Box 480, Ben Franklin Station
Trade Enforcement & Compliance      Washington, D.C. 20044
Washington, DC 20230                tel.: (202) 616-5196
                                    email: stephen.tosini@usdoj.gov


April 26, 2021                      Attorneys for Defendant

IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE:  HONORABLE MARK A. BARNETT, JUDGE

_____
                                                              )
COMMITTEE OVERSEEING ACTION FOR LUMBER    )
INTERNATIONAL TRADE INVESTIGATIONS OR        )
NEGOTIATIONS, *ET AL.*,                                 )
                                                              )
          Plaintiffs,                                       )
                                                              )
          v.                                                  )  Consol.  Ct. No. 19-00122
                                                              )
UNITED STATES,                                          )
                                                              )
          Defendant.                                      )
_____)

## ORDER

On consideration of the remand results filed by the Department of Commerce, the parties' comments, and all other pertinent papers, defendant's response and all other pertinent papers, it is hereby

ORDERED the remand results are sustained and, it is further

ORDERED that judgment is entered in favor of the United States.


Dated: _____                                    _____
        New York, NY                                                          JUDGE

## TABLE OF CONTENTS

**PAGE**

BACKGROUND................................................................................................2

    I      The Administrative Determination Under Review .............................2

    II     The Court's Remand Order ............................................................3

    III    Commerce's Remand ......................................................................4

ARGUMENT ....................................................................................................5

    I      Standard Of Review .........................................................................5

    II     Commerce's Determination That It Lacks Statutory Authority to
          Conduct CVD Expedited Reviews Is In Accordance With Law ........................ 6

          A     Commerce Complied With The Remand Order By Considering Potential
               Bases For Authority For CVD Expedited Reviews ...................................6

          B     Commerce's Intended Treatment Of The Expedited Review
               Companies If The Remand Results Are Sustained Is Lawful ...................9

CONCLUSION....................................................................................................16

## TABLE OF AUTHORITIES

**CASES**                                                                                          **PAGE(S)**

*Altx, Inc. v. United States,*
   26 CIT 735 (2002) ..................................................................................................14

*Bowman Transp. Inc. v. Arkansas-Best Freight Sys.,*
   419 U.S. 281 (1974) ..................................................................................................6

*Cemex, S.A. v. United States,*
   384 F.3d 1314 (Fed. Cir. 2004) ...................................................................... 12, 13

*Chevron, U.S.A., Inc. v. Nat'l Res. Def. Council, Inc.,*
   467 U.S. 837 (1984) ................................................................................................12

*Comm. Overseeing Action for Lumber Int'l Trade Investigations*
  *or Negots. v. United States,*
   393 F. Supp. 3d 1271 (Ct. Int'l Trade 2019) .................................................. 13, 14

*Comm. Overseeing Action for Lumber Int'l Trade Investigations*
  *or Negots. v. United States,*
   483 F. Supp. 3d 1253 (Ct. Int'l Trade 2020) ...............................................*passim*

*FMC Corp. v. United States,*
   3 F.3d 424 (Fed. Cir. 1993) ....................................................................................14

*GTNX, Inc. v. INTTRA, Inc.,*
   789 F.3d 1309 (Fed. Cir. 2015) (*GNTX*) ................................................................9

*JBF RAK LLC v. United States,*
   790 F.3d 1358 (Fed. Cir. 2015) ..............................................................................13

*Motor Vehicle Mfrs. Assn. of United States, Inc. v. State*
  *Farm Mut. Auto Ins. Co.,*
   463 U.S. 29 (1983) ..............................................................................................5, 6

*NSK Corp. v. United States,*
   31 CIT 1962 (2007) ................................................................................................14

*Sumecht NA, Inc. v. United States,*
   399 F. Supp. 3d 1370 (Ct. Int'l Trade 2019) .........................................................12

*Tokyo Kikai Seisakusho, Ltd. v. United States,*
   529 F.3d 1352 (Fed. Cir. 2008) (*TKS*) ...................................................................9

## <u>TABLE OF AUTHORITIES</u>

**CASES**                                                                 **PAGE(S)**

*Trent Tube Div., Crucible Materials Corp. v. United States,*
   14 CIT 587 (1990) ................................................................................. 14

*Zenith Radio Corp. v. United States,*
   710 F.2d 806 (Fed. Cir. 1983) ............................................................... 14

**STATUTES**

5 U.S.C. § 706(2) ...................................................................................... 5

19 U.S.C. § 1516a(c)(1) ....................................................................... *passim*

19 U.S.C. § 1671d(c) ........................................................................... *passim*

19 U.S.C. § 1675 ................................................................................. *passim*

19 U.S.C. § 1677 ................................................................................. *passim*

19 U.S.C. § 3511 ................................................................................. *passim*

19 U.S.C. § 3512(c) ................................................................................ 11

19 U.S.C. § 3513(a) ............................................................................ *passim*

28 U.S.C. § 1581(i) .............................................................................. 12,13

28 U.S.C. § 2640(e) ................................................................................. 5

**REGULATIONS**

19 C.F.R. § 351.212 ................................................................................ 12

19 C.F.R. § 351.214 ............................................................................ *passim*

**ADIMINISTRATIVE DECISIONS**

*Certain Softwood Lumber Products from Canada,*
  83 Fed. Reg. 347 (Jan. 3, 2018) ...................................................................................2

*Certain Softwood Lumber Products from Canada,*
  84 Fed. Reg. 32,121 (July 5, 2019) .........................................................................14

*Certain Softwood Lumber Products from Canada,*
  85 Fed. Reg. 77,163 (Dep't of Commerce Dec. 1, 2020) .....................................14

**LEGISLATIVE HISTORY**

SAA, H.R. Doc. 103-316,  Vol.  I at 870 (1994)
  reprinted at 1994 U.S.C.C.A.N. 4040 ...................................................................... 2

UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE:  THE HONORABLE MARK A. BARNETT, CHIEF JUDGE

_____

| | |
|---|---|
| COMMITTEE OVERSEEING ACTION FOR LUMBER INTERNATIONAL TRADE INVESTIGATIONS OR NEGOTIATIONS, | ) ) ) ) |
| Plaintiff, | ) ) ) |
| v. | ) ) ) |
| UNITED STATES, | ) ) |
| Defendant, | ) ) |
| and | ) ) |
| FONTAINE, INC., *et al.,* | ) ) |
| Defendant-Intervenors. | ) ) |

Court No. 19-00122

_____

## DEFENDANT'S RESPONSE TO THE PARTIES' REMAND COMMENTS

Defendant, the United States, respectfully responds to comments filed by plaintiff Committee Overseeing Action for Lumber International Trade Investigations or Negotiations (COALITION) and defendant-intervenors (Canadian Parties).  ECF No. 182 (COALITION Cmts.); ECF No. 183 (Canadian Cmts.).  The Court should sustain the Remand Results, ECF No. 173, because the Department of Commerce (Commerce) complied with the Court's order in *Comm. Overseeing Action for Lumber Int'l Trade Investigations or Negots. v. United States*, 483 F. Supp. 3d 1253 (Ct. Int'l Trade 2020) (*COALITION II*).

**BACKGROUND**

**I.      The Administrative Determination Under Review**

In 2018, Commerce published a countervailing duty (CVD) order covering softwood lumber from Canada. *See Certain Softwood Lumber Products from Canada,* 83 Fed. Reg. 347 (Jan. 3, 2018) (amended affirm. CVD determ. and Order). In response to certain Canadian producers' and exporters' requests, Commerce initiated an expedited review under 19 C.F.R. § 351.214(k). *Certain Softwood Lumber Products from Canada,* 84 Fed. Reg. 32,121 (Jul. 5, 2019) (final results of expedited review) (Final Results), P.R. 759,[1] and accompanying Issues and Decision Memorandum (IDM), P.R. 749. There, Commerce explained that it had conducted the expedited review under its regulations at 19 C.F.R. § 351.214(k), promulgated pursuant to section 103(a) of the Uruguay Rounds Agreement Act (URAA). IDM at 19 (citing 19 U.S.C. § 3513(a)). Commerce explained that Article 19.3 of the World Trade Organization (WTO) Agreement on Subsidies and Countervailing Measures (SCM Agreement) expressly provides for expedited reviews of non-investigated exporters or producers in CVD proceedings and that the Statement of Administrative Action (SAA) accompanying the URAA states that "Article 19.3 of the Subsidies Agreement provides that any exporter whose exports are subject to a CVD order, but which was not actually investigated for reasons other than a refusal to cooperate, shall be entitled to an expedited review to establish an individual CVD rate for that exporter." *Id.* at 18 (citing SAA, H.R. Doc. 103-316, Vol. I at 870 (1994), reprinted at 1994 U.S.C.C.A.N. 4040, 4199, at 941). Commerce noted that, although the SAA provides that "{s}everal changes must be made to the Act to implement the requirements of Article 19.3 of the Subsidies Agreement," the URAA did not implement a specific provision for the conduct of CVD expedited reviews in

---

[1] "P.R." and "P.R.R" refer to public documents on the expedited review and remand records.

the Tariff Act of 1930, as amended. *Id*. at 18-19 (citing SAA at 941). Commerce concluded that under section 3513(a), Congress had delegated authority to promulgate regulations to ensure that remaining obligations under the URAA that were not set forth in a particular provision were set forth in Commerce's regulations. *Id*. at 19. Section 103(a) of the URAA provides that "appropriate officers of the United States Government may issue such regulations, as may be necessary to ensure that any provision of this Act, or amendment made by this Act, . . . is appropriately implemented…." *Id*. at 19 (citing 19 U.S.C. § 3513(a)). Commerce reasoned that it was an "appropriate officer{} of the United States Government" with the authority to promulgate the expedited review regulations at 19 C.F.R. § 351.214(k) to ensure that all provisions of U.S. law are consistent with U.S. obligations under the URAA. *Id*. at 19.

After determining that it had statutory authority to conduct expedited reviews, Commerce found that among the eight examined companies, three had above-*de minimis* subsidy rates and were entitled to individual CVD deposit rates, and five had *de minimis* subsidy rates and thus were excluded from the order. *Final Results*, 84 Fed. Reg. at 32,121.

II.    **The Court's Remand Order**

In response to the COALITION's challenge, the Court held that Commerce had exceeded its rulemaking authority by promulgating the expedited review regulation. *COALITION II*, 483 F. Supp. 3d at 1267. The Court reasoned that section 3513(a) only authorizes Commerce to issue regulations for enacted provisions of the URAA and, because the URAA lacks any provision explicitly authorizing expedited reviews, that subsection cannot be the basis of Commerce's authority. *Id*. at 1269. The Court further held that, because the SAA does not propose any actions for the implementation of expedited reviews, the SAA does not indicate legislative intent that Commerce conduct expedited reviews. *Id*.

3

During this litigation, the United States and Canadian Parties had cited several other potential authorities for Commerce's administration of CVD expedited reviews and promulgation of 19 C.F.R. § 351.214(k), including 19 U.S.C. §§ 1671d(c), 1675(a), 1675 (b), 1677f-1(e), 3511, and 3513(b); and Commerce's inherent authority to reconsider previously closed proceedings – in this case, the investigation.   ECF No. 111 at 6-14; ECF No. 120 at 4-27. Rather than addressing these alternative authorities *de novo*, the Court remanded for Commerce to either (1) reconsider the statutory basis for section 351.214(k); or (2) take action in conformity with the Court's opinion.   *COALITION II*, 483 F. Supp. 3d at 1273.   However, with respect to section 3513(b), the Court also held that, because the SAA does not discuss the implementation of CVD expedited reviews, Commerce's regulations at 19 C.F.R. § 351.214(k) are not authorized by that statute, which provides for the issuance of any interim regulation necessary or appropriate to carry out any action proposed in the SAA.   *COALITION II*, 483 F. Supp. 3d at 1267 (citation omitted).   The Court further ordered that 19 C.F.R. § 351.214(k) would remain in effect pending resolution of this case.   *Id.* at 1273.

III.   **Commerce's Remand**

Commerce released draft remand results and, after receiving and addressing the parties' comments, filed the Remand Results.   There Commerce determined, consistent with the Court's opinion, that 19 U.S.C. § 3513(a) does not confer authority to conduct expedited reviews, nor did it confer authority to promulgate its regulation, 19 C.F.R. § 351.214(k).   Remand Results at 10, 24.   Commerce also considered the alternative bases of authority and, taking into account the Court's opinion, concluded that these other authorities do not authorize expedited reviews.   *Id.* at 10-12, 19-25.   Commerce further noted that, if the Court were to sustain the Remand Results, Commerce would issue a notice of Court decision not in harmony with the Final Results in the

Federal Register which would rescind the Final Results. *Id.* at 28. Commerce further explained that the effect of this decision would be prospective so that CVD rates established as a result of the expedited review would cease to apply 10 days after publication. *Id.* (citing 19 U.S.C. § 1516a(c)(1)). Lastly, Commerce stated that it lacks authority to grant equitable remedies and therefore did not consider the reliance arguments the Canadian Parties advanced administratively. *Id.* at 28-29.

In their remand comments, the Canadian Parties contend that, with the partial exception of 19 U.S.C. §§ 1675(a)(1) and 3513(b), Commerce failed to comply with the Court's order by not considering all alternative legal bases. Canadian Cmts. at 2-4. The Canadian Parties also offer additional argument as to why sections 1675(a)(1) and 3513(b) provide statutory authority to conduct expedited reviews. *Id.* at 2, 6-19. In contrast, the COALITION asks the Court to vacate 19 C.F.R. § 351.214(k) and to retroactively restore the *status quo ante* for those parties affected by the Final Results. COALITION Cmts. at 4-7.

## ARGUMENT

The Remand Results comply with the Court's order. Accordingly, the Court should sustain the Remand Results and enter final judgment for the United States.

## I.    Standard Of Review

The Court's review is limited to the standard set forth in section 706 of title 5. 28 U.S.C. § 2640(e). The Court will "hold unlawful and set aside agency action, findings, and conclusions found to be--(A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2). To survive judicial review, an agency need only "articulate a satisfactory explanation for {the} action including a rational connection between the facts found and the choice made." *Motor Vehicle Mfrs. Assn. of United States, Inc. v. State Farm Mut. Auto.*

5

*Ins. Co.*, 463 U.S. 29, 43 (1983) (internal citations and quotations omitted). The Court's inquiry is "whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment." *Id.* (citations omitted). Correspondingly, the Court must "'uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned.'" *Id.* (quoting *Bowman Transp. Inc. v. Arkansas-Best Freight Sys.*, 419 U.S. 281, 286 (1974)).

## II.  Commerce's Determination That It Lacks Statutory Authority to Conduct CVD Expedited Reviews Is In Accordance With Law

### A.  Commerce Complied With The Remand Order By Considering Potential Bases For Authority For CVD Expedited Reviews

The Canadian Parties assert that, with the partial exception of 19 U.S.C. §§ 1675(a)(1) and 3513(b), Commerce failed to comply with *COALITION II* by not thoroughly considering each of the alternative legal authorities. Canadian Cmts. at 2. They contend that Commerce wrongly focused on whether the alternative legal authorities expressly address expedited reviews, rather than whether Congress granted Commerce authority under any of these other sources to conduct expedited reviews, regardless of whether that authority is explicitly stated. *Id.* at 2-4. With respect to sections 1675(a)(1) and 3513(b), the Canadian Parties advance additional arguments as to why those provisions confer legal authority for expedited reviews. *Id.* at 2, 6-19. Accordingly, the Canadian Parties urge the Court to remand for a more extensive analysis of the alternative legal authorities. *Id.* at 4, 34. Nevertheless, further remand is unnecessary because Commerce complied with the Court's order to consider alternative legal authorities for expedited reviews.

As the Canadian Parties acknowledge, Commerce considered whether any legal sources raised by the parties in this proceeding confer either explicit or implicit authority to conduct expedited reviews and to promulgate the expedited review regulation. Canadian Cmts. at 3-4.

6

Commerce explained that, although it has consistently interpreted section 3513(a) as the legal authority authorizing it to conduct expedited reviews and to promulgate section 351.214(k), the Court's order precluded that conclusion.   Remand Results at 24.

With respect to the alternative authorities, Commerce considered 19 U.S.C. §§ 1671d(c), 1675(a), 1675 (b), and 1677f-1(e), and concluded that, because those provisions do not address expedited reviews – but rather other specifically enumerated proceedings – they neither explicitly nor implicitly provide authority for expedited reviews. *Id.* at 11-12, 19-21. Commerce's analysis was not, as the Canadian Parties assert, limited to a cursory review of what these alternative types of procedures are called, that is, not "expedited reviews." Canadian Cmts. at 2-3.  Rather, Commerce considered the purposes, procedures, and timelines for the procedures under sections 1671d(c), 1675(a), 1675 (b), and 1677f-1(e) and concluded they are distinct from expedited reviews and therefore provide neither implicit nor explicit authority. *COALITION II*, 483 F. Supp. 3d at 1272. This analysis complied with the Court's order. *Id.* at 1266 (explaining that "[e]ffectuating international obligations that Congress has not enacted into domestic law is not a permissible use of Commerce's gap-filling authority").

The Canadian Parties take particular issue with Commerce's analysis of 19 U.S.C. § 1675(a)(1) (periodic review of duty), at pages 6-12 of their comments, and have continually advanced that provision as a source of authority.  ECF No. 120; P.R.R. 5; IDM at cmt. 3.  But Commerce repeatedly has explained in detail why section 1675(a)(1) does not provide authority for expedited reviews.  IDM at cmt. 3; Remand Results at 12, 19-21.  Although Commerce's analysis and conclusions may differ from those reached by the Canadian Parties, Commerce complied with the Court's order by considering and providing reasoned analysis for why section 1675(a)(1) does not confer legal authority for expedited reviews.

7

In contrast to section 1675(a)(1), Commerce concluded that it may have inherent or implicit authority for expedited reviews under 19 U.S.C. § 3513(b), which provides for the issuance of "{a}ny interim regulation necessary or appropriate to carry out any action proposed in the {SAA}." Remand Results at 22. Although Commerce acknowledged that the SAA does not discuss explicit actions for the implementation of expedited reviews, the SAA indicates that, pursuant to Article 19.3 of the SCM Agreement, "any exporter whose exports are subject to a CVD order, but which was not actually investigated for reasons other than a refusal to cooperate, shall be entitled to an expedited review to establish an individual CVD rate for that exporter," and further provides that "{s}everal changes must be made to the Act to implement the requirements of Article 19.3 of the Subsidies Agreement." *Id.* (citing SAA at 941). Therefore, Commerce reasoned that section 3513(b) and the SAA evince congressional intent for Commerce to have the authority to conduct expedited reviews and to promulgate implementing regulations. *Id.* Nevertheless, Commerce concluded that the Court's order precluded its finding authority under section 3513(b), because the Court had held that the SAA does not indicate legislative intent for Commerce to conduct expedited reviews; although it recognizes this international obligation of the United States, the SAA does not directly propose any actions for the implementation of expedited reviews. Remand Results at 22-23 (citing *COALITION II*, 483 F. Supp. 3d at 1267). Although the Canadian Parties advance reasons as to why they believe section 3513(b) grants authority for expedited reviews, Commerce's conclusion on remand that section 3513(b) does not grant such authority merely follows the Court's order. Canadian Cmts. at 12-19.

Commerce similarly reasoned that 19 U.S.C. § 3511 provides it with the inherent authority to conduct expedited reviews. Remand Results at 23. Specifically, section 3511(a)

provides that "Congress approves . . . the trade agreements . . . resulting from the Uruguay Round of multilateral trade negotiations under the auspices of the General Agreement on Trade and Tariffs," including the SCM Agreement. *Id*. (citing 19 U.S.C. §§ 3511(a) and (d)). Section 3511(b) further provides that the President, "to ensure the effective operation of, and adequate benefits for the United States under {the Uruguay Round Agreements} . . . may accept the Uruguay Round Agreements." *Id*. (citing 19 U.S.C. §§ 3511(b)). Commerce reasoned that section 3511, in conjunction with subsections 3533(a) and (b), provide inherent authority to conduct expedited reviews and issue regulations for such reviews. *Id*. However, because the Court had held that no provision of the URAA provides for expedited reviews, Commerce was unable to find that it had implicit authority for such reviews under section 3511. *Id*.

Commerce also concluded that, because the Court of Appeals for the Federal Circuit precedent cited supports the argument that it has inherent authority to reconsider prior decisions were based on factually distinct circumstances and reasoning, those cases did not address the authority to conduct expedited reviews. *Id*. at 21 (citing *GTNX, Inc. v. INTTRA, Inc.,* 789 F.3d 1309 (Fed. Cir. 2015) (*GNTX*); *Tokyo Kikai Seisakusho, Ltd. v. United States,* 529 F.3d 1352 (Fed. Cir. 2008) (*TKS*)). In conclusion, Commerce complied with the Court's order by considering the alternative authorities presented during litigation, and by explaining why – consistent with the Court's opinion and analysis – those sources do not provide authority for the conduct of expedited reviews or promulgation of 19 C.F.R. § 351.214(k).

### B.    Commerce's Intended Treatment of the Expedited Review Companies If The Remand Results Are Sustained Is Lawful

Commerce reasonably concluded that any decision setting aside the Final Results would apply prospectively.

9

The Canadian Parties maintain that, even if the Court were to determine that Commerce lacked authority to conduct expedited reviews, Commerce should continue to apply the rates calculated in the Final Results. Canadian Cmts. at 22. According to the Canadian Parties, 19 U.S.C. §§ 1671(a) and 1671e(a)(1), and Article 19.4 of the SCM Agreement, preclude imposition of CVD in excess of countervailable subsidies conferred on subject merchandise. Canadian Cmts. at 4-5, 19-22. Because Commerce determined individual subsidy rates for the expedited review companies in the expedited review, the Canadian Parties assert anything in excess would be inconsistent with both the statute and the SCM Agreement. Consequently, they maintain that the expedited review companies should not be assigned rates calculated in the investigation and first administrative review, even if this Court ultimately concludes that Commerce lacked authority to conduct the expedited review. *Id.* at 19-22.

These arguments lack merit. Sections 1671(a) and 1671e(a)(1) pertain to the determination of countervailable subsidies and issuance of orders in CVD investigations. Because investigations are explicitly authorized by statute, 19 U.S.C. §§ 1671b, 1671d, Commerce has statutory authority to find subsidization and impose duties or estimated duties under sections 1671(a) and 1671e(a)(1). Commerce has similar authority for administrative reviews. 19 U.S.C. § 1675(a). In contrast to investigations and administrative reviews, in accordance with the Court's analysis, Commerce determined in the Remand Results that there is no statutory authority explicitly authorizing expedited reviews. If the Court were to sustain the Remand Results, then, unlike investigations and administrative reviews, there would be no legal basis for the challenged expedited review. Commerce thus would not be violating 19 U.S.C.

§§ 1671(a) and 1671e(a)(1) by rescinding the Final Results and potentially imposing duties on the expedited review companies.[2]

Meanwhile, the COALITION contends that Commerce misapplied and misinterpreted 19 U.S.C. § 1516a(c)(1) in stating that the rates established as a result of the expedited review would cease to apply prospectively from 10 days after the publication of the Notice of Court Decision Not in Harmony in the Federal Register. COALITION Cmts. at 4, 7-10. In so arguing, the COALITION fails to consider the structure of the statute and the fact that certain entries may have already liquidated as a consequence of receiving a zero or *de minimis* rate in the *Final Results*, particularly in light of the Court's denial of its request for injunctive relief at the outset of the litigation.

According to the COALITION, section 1516a(c)(1) applies only to judicial review of "determinations" enumerated under section 1516a(a), and this Court determined that expedited reviews are not reviewable under section 1516a. COALITION Cmts. at 8 (citing ECF No. 91). Section 1516a(c)(1) therefore does not apply. The COALITION thus urges that, if the Court vacates the Final Results and expedited review regulation, it should direct Commerce to: (1) remove 19 C.F.R. § 351.214(k) from its regulations; (2) retroactively void all liquidation and cash deposit instructions previously issued for the expedited review companies; (3) suspend liquidation of all unliquidated entries of subject merchandise produced and/or exported by the expedited review companies; (4) find that the companies that were excluded from the Order should be included in the Order because they obtained *de minimis* rates in the Final Results; (5) effective on the date of this Court's judgment, collect cash deposits on subject merchandise

---

[2] Any alleged obligations under Article 19.4 of the SCM Agreement are not judicially enforceable. 19 U.S.C. § 3512(c).

produced and/or exported by the expedited review companies at rates that would have been applicable had the expedited review never been issued, as determined by the most recently completed segment of the proceeding; and (6) assess CVD on subject merchandise produced and/or exported by the expedited review companies in accordance with the rules under 19 C.F.R. § 351.212, but without regard to the Final Results.  COALITION Cmts. at 4-11.

Although section 1516a(c)(1) does not direct Commerce to implement Court judgments in a specific manner if underlying determinations are not listed under that section, it does not prohibit Commerce from applying the results of those judgments to other determinations consistent with paragraph (c)(1).  In fact, neither section 1516a(c)(1) nor any other statute, addresses how Commerce should liquidate entries of subject merchandise produced and exported by the expedited review companies and covered by the Final Results.  The statute is therefore silent on the issue, and when "the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute." *Chevron, U.S.A., Inc. v. Nat'l Res. Def. Council, Inc.*, 467 U.S. 837, 843 (1984).

Given the statutory silence on how to treat liquidation of entries of merchandise covered by a determination that is not in harmony with a Court decision reviewed under 28 U.S.C. § 1581(i), Commerce reasonably indicated its intent to apply the procedures under 19 U.S.C. § 1516a(c)(1) here.  Publication in the Federal Register of a court decision not in harmony with a determination by Commerce provides public notice of court rulings that alter cash deposit and assessment rates, and what those rates will be going forward.  *See Sumecht NA, Inc. v. United States*, 399 F. Supp. 3d 1370, 1378 (Ct. Int'l Trade 2019) ("The purpose of publishing the *Timken* Notice in the Federal Register is to put the public on notice of a decision from the court that is contrary to a prior determination by Commerce."); *Cf. Cemex, S.A. v. United States*, 384

F.3d 1314, 1322 (Fed. Cir. 2004) (noting that "domestic parties have no specific avenue of relief for improper liquidation. Unlike importers, domestic parties are limited to *prospective* challenges to the rate and classification of antidumping duty decisions . . .") (emphasis in original).

Indeed, under the facts of this case, applying section 1516a(c)(1) procedures to determinations reviewed under 28 U.S.C. § 1581(c), but not under 28 U.S.C. § 1581(i), would result in disparate treatment of entries covered by determinations found to be not in harmony with Court decisions. Commerce therefore reasonably determined that 19 U.S.C. § 1516a(c)(1) provided guidance on how to liquidate the entries of the expedited review companies subject to the Final Results, if the Court sustains the Remand Results. As in *JBF*, Commerce merely applied an explicit statutory provision to a very similar process for which Congress was silent. "Because Congress did not provide for a direct methodology [for investigations], Commerce properly 'filled that gap'" for administrative reviews. *JBF RAK LLC v. United States*, 790 F.3d 1358, 1364 (Fed. Cir. 2015) (quoting *Chevron*, 467 U.S. at 847); *see also Comm. Overseeing Action for Lumber Int'l Trade Investigations or Negots. v. United States*, 393 F. Supp. 3d 1271, 1278 (Ct. Int'l Trade 2019) (*COALITION I*) (explaining that "the results of an expedited review are akin to a final investigation determination.").

Accordingly, Commerce reasonably determined that if this Court were to sustain the Remand Results, the rates determined in the Final Results will cease to apply 10 days after publication in the Federal Register of the Notice of Court Decision Not in Harmony. Remand Results at 28. At that time, the five companies that received *de minimis* rates will be brought back into the order prospectively at the 14.19 percent all-others rate calculated in the investigation. *Order,* 83 Fed. Reg. at 348. The three companies for which above *de minimis* rates were calculated in the Final Results will receive prospectively either the all-others rate from

13

the investigation, or the rate received in the most recently completed administrative review in which the company participated. *See Certain Softwood Lumber Products from Canada,* 85 Fed. Reg. 77,163 (Dep't of Commerce Dec. 1, 2020) (CVD admin. rev.).

Furthermore, *COALITION I* lends further support to Commerce's proposed approach. 393 F. Supp. 3d at 1278. In considering whether the COALITION had demonstrated irreparable harm to support a preliminary injunction, the Court analogized the results of expedited reviews to final determinations in CVD investigations and recognized that liquidation without regard to duties did not result in irreparable harm in this case. *Id.* (footnote omitted). Thus, in denying injunctive relief, the Court appeared to acknowledge that any relief that might be afforded to COALITION would be prospective only. *Id.* (citing *Zenith Radio Corp. v. United States,* 710 F.2d 806, 809 (Fed. Cir. 1983); *FMC Corp. v. United States,* 3 F.3d 424, 431 (Fed. Cir. 1993); *NSK Corp. v. United States,* 31 CIT 1962, 1965 (2007); *Trent Tube Div., Crucible Materials Corp. v. United States,* 14 CIT 587, 588 (1990); *Altx, Inc. v. United States,* 26 CIT 735, 737 (2002)).

Similarly, given the fact that the Court did not issue a preliminary injunction, revising or voiding altogether the rates for the expedited review companies retroactively would raise concerns about the procedure afforded. The Final Results were issued in July 2019, and seven subject companies have since been excluded from the order or subject to individual subsidy rates calculated in the *Final Results*. *Final Results,* 84 Fed. Reg. 32,121. Given that liquidation was not enjoined and that they were not subject to the order, the five originally excluded companies had no reason to request administrative reviews of their entries and would be deprived of the opportunity to request administrative reviews for several review periods should potential relief that was originally limited to prospective coverage under the injunction order become

14

retroactive. The companies that received above *de minimis* rates in the Final Results and were satisfied with those rates also had no reason to request administrative reviews.

The denial of the preliminary injunction further resulted in Commerce issuing revised cash deposit instructions for the companies that received above *de minimis* rates, and liquidation instructions and revocation instructions for the five excluded expedited review companies. Specifically, on August 2, 2019, Commerce issued instructions directing CBP to collect cash deposits for the three companies that received above *de minimis* rates at the rates determined in the Final Results. P.R. 761; P.R. 769. On August 22, 2019, Commerce issued liquidation instructions to CBP regarding the five expedited review companies that had *de minimis* rates and were therefore excluded from the order. P.R. 776. The instructions provided that all entries of subject merchandise produced and exported by the companies with *de minimis* rates that were suspended on or after April 28, 2017 "should be liquidated without regard to countervailing duties (*i.e.,* refund all cash deposits)." *Id.*

Moreover, COALITION requests remedies that it failed to request in its complaint. For example, COALTION specifically argues for the reliquidation of already liquidated entries, a request that never appeared in its complaint. Further, COALTION never requested to amend its complaint, even after the Court denied its motion for preliminary injunction and before the Court issued its opinion. ECF 2 at 10-11. Accordingly, COALITION has waived any request for reliquidation, and no retroactive action should be taken with respect to already liquidated entries.

COALITION similarly failed to request in its complaint that Commerce be ordered to formally revoke its regulations at 19 C.F.R. § 351.214(k) if the Court concludes that Commerce lacks authority to conduct expedited views, ECF No. 2 at 11, and thus has waived this request.

In any event, it is unnecessary for Commerce to formally revoke 19 C.F.R. § 351.214(k). If the Remand Results are sustained, this action is not final until the conclusion of all appeals. Further, if the Remand Results are sustained after all appeals, Commerce would cease conducting expedited reviews. There is no factually immediate need, or legal requirement, mandating that Commerce conduct the procedures of withdrawing 19 C.F.R. § 351.214(k) from its regulations at this time. Thus, the Court should not grant this remedy requested by COALITION.

Finally, the Canadian Parties advance further equitable arguments as to why, even if the Court determines that Commerce has no authority to conduct expedited reviews, the expedited review companies should keep their rates or be excluded from the order pending any appeals or conclusion of any subsequent administrative reviews in which they might participate. *Id.* at 5-6, 23-34. As Commerce stated in the Remand Results, any such equitable remedies are solely within the authority and discretion of the Courts. Remand Results at 28-29; *see also* USCIT R. 62; Fed. R. App. P. 8.

## CONCLUSION

For these reasons, we respectfully request that the Court sustain Commerce's Remand Results and enter final judgment in favor of the United States.

Respectfully submitted,

BRIAN M. BOYNTON
Acting Assistant Attorney General

JEANNE E. DAVIDSON
Director

/s/ PATRICIA M. McCARTHY
Assistant Director

16

OF COUNSEL:                                /s/  STEPHEN C. TOSINI
NIKKI KALBING                           Senior Trial Counsel
Senior Attorney                            Department of Justice
U.S. Department of Commerce         Civil Division, Commercial Litigation Branch
Office of the Chief Counsel for         PO Box 480, Ben Franklin Station
Trade Enforcement & Compliance       Washington, D.C. 20044
Washington, DC 20230                tel.: (202) 616-5196
                                         email: stephen.tosini@usdoj.gov


April 26, 2021                            Attorneys for Defendant

## CERTIFICATE OF COMPLIANCE

Pursuant to Chambers Procedure 2(B)(2) of the United States Court of International Trade, I certify that this response filed by the United States, contains 4,579 words, excluding those portions that do not count toward the word limitation and, thus, complies with the Court's Chambers Procedures.

/s/ Stephen C. Tosini