## UNITED STATES COURT OF INTERNATIONAL TRADE

|  |  |  |
|---|---|---|
| COMMITTEE OVERSEEING ACTION FOR LUMBER INTERNATIONAL TRADE INVESTIGATIONS OR NEGOTIATIONS, | ) ) ) ) ) | |
| Plaintiff, | ) ) | Before: Hon. Mark A. Barnett, Chief Judge |
| v. | ) ) | Consol. No. 19-00122 |
| UNITED STATES, | ) ) | |
| Defendant, | ) ) | |
| FONTAINE INC. et al., | ) ) | |
| Defendant–Intervenors. | ) ) | |

**CONSOLIDATED DEFENDANT-INTERVENORS' COMMENTS IN RESPONSE TO PLAINTIFF'S MARCH 19, 2021 COMMENTS ON FINAL RESULTS OF REDETERMINATION PURSUANT TO COURT REMAND**

## <u>TABLE OF CONTENTS</u>

**Page**

Table of Authorities ......................................................................................................ii

I.    Introduction and Scope of the Canadian Parties' Response Comments ............................ 1

II.   The Department Correctly Found that Any Change in the *Status Quo* Should Only Be Prospective ................................................................................. 4

III.  CONCLUSION ........................................................................................... 13

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Agro Dutch Indus. Ltd. v. United States*,
  32 C.I.T. 1100 (2008), *aff'd*, 589 F.3d 1187 (Fed. Cir. 2009)...............................................8, 9

*Committee Overseeing Action for Lumber International Trade Investigations or
  Negotiations v. United States*, 393 F. Supp. 3d 1271 (Ct. Int'l Trade 2019)...........................10

*Longkou Haimeng Mach. Co. v. United States*,
  581 F.Supp.2d 1344 (Ct. Int'l Trade 2008) ...............................................................................5

*Nat'l Corn Growers Ass'n v. Baker*,
  840 F.2d 1547 (Fed. Cir. 1988)..............................................................................................9, 10

*Sumecht NA Inc. v. United States*,
  399 F.Supp.3d 1370 (Ct. Int'l Trade 2019) ...............................................................................10

*Timken Co. v. United States*,
  893 F.2d 337 (Fed. Cir. 1990).....................................................................................................7

*Yangzhou Bestpak Gifts & Crafts Co. v. United States*,
  716 F.3d 1370 (Fed. Cir. 2013)....................................................................................................5

**Statutes and Regulations**

19 U.S.C. § 1516a(c)(1) ...................................................................................................... *passim*

28 U.S.C. § 1585 ..............................................................................................................................5

19 U.S.C. § 1671b(d) .......................................................................................................................6

19 U.S.C. § 1671d(a)(2)...................................................................................................................6

19 U.S.C. §§ 1671d(c)(5)(A) and 1673d(c)(5)(A)..........................................................................5

19 U.S.C. § 1675(a)(1).....................................................................................................................11

19 U.S.C. § 1677 ..............................................................................................................................8

19 U.S.C. § 2251 et seq....................................................................................................................8

28 U.S.C. § 2643(c)(1)......................................................................................................................5

19 U.S.C. § 3538(c) ..........................................................................................................................7

19 C.F.R. § 351.214(k) ....................................................................................................11, 12

**Other Authorities**

*Certain Softwood Lumber Products from Canada: Final Results of the*
  *Countervailing Duty Aministrative Review, 2017–2018,*
  85 Fed. Reg. 77,163 (Dep't Commerce Dec. 1, 2020) ............................................3

*Certain Softwood Lumber Products From Canada: Preliminary Affirmative*
  *Countervailing Duty Determination, and Alignment of Final Determination*
  *With Final Antidumping Duty Determination,*
  82 Fed. Reg. 19,657 (Dep't Commerce Apr. 28, 2017)............................................7

H.R. Rept. No. 96-317, 96th Cong., 1st Sess. 182 (1979) ................................................6

*Initiation of Antidumping and Countervailing Duty Administrative Reviews,*
  86 Fed. Reg. 12,599 (Dep't Commerce Mar. 4, 2021) ............................................4

Memorandum from Kristen Johnson to James Maeder, *Certain Softwood Lumber*
  *Products from Canada: Extension of Deadline for Preliminary Results of*
  *Countervailing Duty Order Administrative Review, 2019,*
  DOC Case No. C-122-858 (Dec. 20, 2020) ..............................................................3

On behalf of Defendant-Intervenors the Government of Canada, the Government of Québec, the Government of New Brunswick, Fontaine Inc., Les Produits Forestiers D&G Ltee and Marcel Lauzon Inc. and their respective cross-owned affiliates, Scierie Alexandre Lemay & Fils Inc., Mobilier Rustique (Beauce) Inc., and North American Forest Products Ltd. ("NAFP") and its cross-owned affiliates (collectively, the "Canadian Parties"), we are submitting these comments in response to the comments submitted by the COALITION on March 19, 2021 (the "COALITION's March 19 Comments"),[1] with respect to the February 17, 2021 Final Results of Redetermination Pursuant to Court Remand (the "Final Remand Results")[2] of the Department of Commerce (the "Department").  These response comments are filed pursuant to this Court's November 19, 2020 Opinion and Order, Slip Op. 20-167, and USCIT Rule 56.2(h)(3).

## I.    Introduction and Scope of the Canadian Parties' Response Comments

In its March 19 Comments, the COALITION challenged that aspect of the Final Remand Results in which the Department indicated how it would proceed if this Court ultimately holds that the expedited review regulation and the challenged expedited review results exceeded the Department's authority.  The Department stated that, in that event, it would follow the requirements of 19 U.S.C. § 1516a(c)(1), and would only apply any required changes with respect to entries of merchandise from the reviewed companies beginning after the date of publication in the Federal Register of a notice of the Court's decision that is inconsistent with the challenged expedited review determination.[3]

---

[1] ECF No. 182.

[2] ECF No. 173-1.

[3] Final Remand Results at 28.

The COALITION argues that 19 U.S.C. § 1516a(c)(1) does not apply here, and that any remedy should be applied retroactively.  Specifically, the COALITION argues that the Department's findings and conclusions made in the Final Results of the expedited review ("Final Results") should be annulled, and that the Department should issue instructions to U.S. Customs and Border Protection "to restore the cash deposit collection and liquidation status" of the eight expedited review companies "to a state reflective of what would already be in place had Commerce not acted *ultra vires* in the issuance of the Final Results."[4]

For the reasons set out in the Canadian Parties' March 19 Comments, there is ample legal authority for the Court to uphold the results of the review.[5]  The Final Results should not be rescinded for the expedited review companies; the non-excluded companies' appeals should be heard; and there should be no changes in the individual rates established by Commerce for these companies.  However, should the Court not agree, at a minimum any remedy must be applied on a prospective basis only.

The COALITION repeatedly asserts, however, that the Court should restore the rate that would have applied to each of these companies had the Final Results not been issued (although it never explains what it believes those rates would be).[6]  That would be the wrong outcome.

As discussed in the Canadian Parties' March 19 Comments, the Final Results clearly affected both the ability of the expedited review companies to participate in the various

---

[4] COALITION's March 19 Comments at 3.

[5] *See* Consolidated Defendant-Intervenors' Comments in Response to the Department of Commerce's February 17, 2021 Final Results of Redetermination Pursuant to Court Remand (Mar. 19, 2021), ECF No.183 ("Canadian Parties' March 19 Comments").

[6] COALITION's March 19 Comments at 2−3, 7; COALITION's Proposed Judgment, ECF No. 182 at 2.

administrative reviews of the countervailing duty order, as well as decisions they made regarding their business operations, including whether to participate in those reviews.  Five of the expedited review companies, having been excluded from the countervailing duty order, were not permitted to participate in either the completed first or the ongoing second administrative reviews of the countervailing duty order.[7]  The other expedited review companies, in light of the cash deposit rates assigned to them as a result of the expedited review final results and the strong possibility of a zero or *de minimis* rate on appeal, had no incentive to ask to participate in the administrative reviews (and were not included in the first review).[8]

Thus, adopting the COALITION's proposal, depending on the assigned rates, could cause the reviewed companies to be in a worse position than they would have occupied had they never requested an expedited review at all.  The COALITION might be suggesting that, given these companies' lack of participation in the first administrative review, the default rate should be the investigation "all others" rate of 14.19%.  That rate, however, is considerably higher than the "all others" rate from the first administrative review (7.26% *ad valorem* for 2017, and 7.42% *ad valorem* for 2018),[9] and is far higher than the actual rates applicable to these companies based on the verified results of the expedited review.  These companies should not be disadvantaged for reasonably relying on the expedited review process.[10]

---

[7] *See* Canadian Parties' March 19 Comments at 30–31 n.77.

[8] The non-excluded companies were included in the second administrative review based on the COALITION's, not their own, request.

[9] *Certain Softwood Lumber Products from Canada:  Final Results of the Countervailing Duty Administrative* Review*, 2017–2018*, 85 Fed. Reg. 77,163 (Dep't Commerce Dec. 1, 2020).

[10] The Department is scheduled to issue the AR2 preliminary results on May 20, 2021.  *See* Memorandum from Kristen Johnson to James Maeder, *Certain Softwood Lumber Products from Canada: Extension of Deadline for Preliminary Results of Countervailing Duty Order Administrative Review, 2019*, DOC Case No. C-122-858 (Dec. 20, 2020).  All of the expedited

In Section II below, we address why Commerce was correct that any changes required due to a final judgment that is adverse to the Canadian Parties should have prospective effect only.[11]  In Section III, we explain why the Court should not adopt the specific remedies proposed by the COALITION.

## II.    The Department Correctly Found that Any Change in the *Status Quo* Should Only Be Prospective

If this Court ultimately determines, for the reasons previously set out in the Canadian Parties' pleadings, that authority for an expedited review procedure does lie in Title VII of the Tariff Act, the COALITION's arguments would be moot.  Even if the COALITION were correct, however, that 19 U.S.C. § 1516a(c)(1) does not apply expressly (based on a judgment from this Court that there is no legal authority for expedited reviews under any of the provisions referenced in section 1516a(c)), the statute does not preclude the Department from applying the framework of 19 U.S.C. § 1516a(c)(1) in this instance and, moreover, this Court still has the authority – and, we respectfully submit, should exercise that authority – to require that relief be prospective only.

As an initial matter, 19 U.S.C. § 1516a(c)(1) specifies certain circumstances (*i.e.*, determinations referenced under section 1516a(a)) where its framework for a prospective remedy must apply, but does not preclude the Department from applying that framework in other similar

---

review companies were included in the Department's recent notice of initiation for AR3 even though, as of the date of that initiation, the excluded companies were still excluded from the CVD order.  *See Initiation of Antidumping and Countervailing Duty Administrative Reviews*, 86 Fed. Reg. 12,599, 12,607–12,610 (Dep't Commerce Mar. 4, 2021).

[11] The specific prospective remedies that we believe should be provided are described in the Canadian Parties' March 19, 2021 Comments.

circumstances. The Court may therefore conclude the Department has the authority to apply this framework even if this case involves a determination not referenced under section 1516a(a).[12]

Moreover, it is uncontested that this Court has the same panoply of legal and equitable powers as any other Article III United States district court.[13] Those powers include the power to order any form of relief that would be proper in a civil action.[14] For all of the reasons set forth in the Canadian Parties' March 19 Comments[15] and in Section III below, the respective equities of the parties here fully support a prospective application only – even if, technically, section 1516a(c)(1) were not applicable.

Specifically, the jurisprudential reasons for having a "prospective only" effect that underlie section 1516a(c)(1) apply with equally full force to the current situation, regardless of whether section 1516a(c)(1) is triggered. Those reasons include the presumption of correctness

---

[12] In fact, the Department routinely extends statutory frameworks that apply in a specific set of circumstances to other analogous circumstances not specified in the statute. For example, the statute at 19 U.S.C. §§ 1671d(c)(5)(A) and 1673d(c)(5)(A) specifies a certain methodology for the calculation of the all-others rate in antidumping and countervailing duty investigations for market economy proceedings, but does not specify a methodology for calculating the all-others rate in antidumping and countervailing duty administrative reviews or for non-market economy proceedings. Nonetheless, the Department applies the same framework provided in 19 U.S.C. §§ 1671d(c)(5)(A) and 1673d(c)(5)(A) for calculating the all-others rate in antidumping and countervailing duty administrative reviews and for non-market economy proceedings, and the courts have found the Department has the discretion to do so. *See, e.g., Longkou Haimeng Mach. Co. v. United States*, 581 F.Supp.2d 1344, 1360 (Ct. Int'l Trade 2008) (finding that the Department's "decision to conform its methodology {for administrative reviews} to the statutory norm" for investigations was reasonable); *Yangzhou Bestpak Gifts & Crafts Co. v. United States*, 716 F.3d 1370, 1374 (Fed. Cir. 2013) (noting that Commerce generally follows "the statutory method for determining the 'all others rate' under § 1673d(c)(5)(A)" when calculating the separate rate for non-mandatory respondents in non-market economy proceedings) (citations omitted).

[13] *See* 28 U.S.C. § 1585.

[14] *See* 28 U.S.C. § 2643(c)(1).

[15] *See* Canadian Parties' March 19 Comments at 23−33.

that attaches to the Department's findings in a countervailing duty proceeding, and the legitimate expectations of parties who make forward-looking business decisions in reliance on such findings.

As the legislative history of section 1516a(c)(1) makes clear, this presumption of correctness mandates that any merchandise entered prior to an adverse court decision be liquidated in accordance with the original administrative decision affected by that adverse decision.  Section 1516a(c)(1) did not create that presumption, however, which was already part of the law when section 1516a was enacted, nor did it change the rule that entries made prior to an adverse court ruling would not be affected by the adverse ruling.[16]  Thus, even if section 1516a(c)(a) were technically inapplicable, the presumption of correctness remains part of the law and applies to this case, and any relief should only be applied prospectively.[17]

The expedited review proceeding here was commenced pursuant to a longstanding, presumptively lawful regulation that furthers the objectives of the countervailing duty law, a regulation enacted after full notice and comment rulemaking.  Even the COALITION, until this

---

[16] The House Report discussing the new 1516a(c)(1) provision, stated:

> Generally there is a presumption of correctness regarding the administrative level determination.  Therefore, present law requires that merchandise be liquidated in accordance with the administrative decision if entered prior to the first decision of a court which is adverse to that decision.  This presumption is continued under the bill…

H.R. Rept. No. 96-317, 96th Cong., 1st Sess. 182 (1979), p.182.

[17]  The same theme of prospectivity runs throughout the countervailing duty law.  For example, with the limited exception of a finding of "critical circumstances" under 19 U.S.C. § 1671d(a)(2), countervailing duties may be assessed only on unliquidated imports entering *after* the date of the Department's preliminary affirmative CVD finding (19 U.S.C. 1671b(d)), even though issuance of a CVD order is based on findings that imports entered during the period covered by the Department's CVD investigation (which would be before the countervailing duty petition was filed) were subsidized.

appeal, accepted the expedited review procedure as lawful.[18]  Beginning in April 2017 with the publication of the preliminary determination and first suspension of liquidation in the softwood lumber investigation,[19] the expedited review companies had a legitimate expectation that they could make business decisions, including whether and how much merchandise to sell to the United States, knowing that they would have an opportunity to seek their own CVD rates through an expedited review following the issuance of any CVD order.  When the final results of the expedited review were published in July 2019, the Canadian Parties were further fully justified in relying on the "presumption of correctness" that attaches to the Department's findings at that time regarding their CVD liability, a presumption that is not overcome until a court issues a judgment to the contrary.[20]  Whether or not section 1516a(c)(1) technically applies, the Canadian Parties' expectations were reasonable and are legally cognizable.

The "prospective only" principle is also reflected in section 129(c) of the Uruguay Round Agreements Act, 19 U.S.C. § 3538(c).  Where a WTO Dispute Settlement Body ("DSB") has found a U.S. antidumping or countervailing duty action to be inconsistent with the WTO rules, section 129(c) enables USTR under certain circumstances to request that the ITC or Commerce issue a determination "not inconsistent with" the DSB ruling.  Section 129 determinations apply only to unliquidated entries that are entered or withdrawn from warehouse on a date on or after

---

[18] *See* Canadian Parties' March 19 Comments at 26.

[19] *See Certain Softwood Lumber Products From Canada: Preliminary Affirmative Countervailing Duty Determination, and Alignment of Final Determination With Final Antidumping Duty Determination*, 82 Fed. Reg. 19,657 (Dep't Commerce  Apr. 28, 2017).

[20] *See Timken Co. v. United States*, 893 F.2d 337, 340 (Fed. Cir. 1990) (citing legislative history to the enactment of section 1516a(c)(1) as part of the Trade Agreements Act of 1979).  As the *Timken* court noted, that legislative history is consistent with the prospective only nature of a judicial decision reversing a decision by the Commerce Department.  *Id.* at 341−342.

the implementation date.  Accordingly, section 129 determinations also have "prospective effect" only.[21]

In analogous situations, the Court of International Trade and the Federal Circuit have recognized that even when a strict application of statutory requirements might appear to require retroactivity, where appropriate the court can exercise its equitable powers to provide otherwise. For example, in *Agro Dutch Indus. Ltd. v. United States*,[22] the CIT overturned Customs' liquidation of entries based on equitable considerations.  *Agro Dutch* involved a further appeal

---

[21] Section 129(c) provides in relevant part:

**(c)  Effects of determinations; notice of implementation**
**(1)  Effects of determinations**

Determinations concerning title VII of the Tariff Act of 1930 {19 U.S.C. 1671 et seq.} that are implemented under this section shall apply with respect to unliquidated entries of the subject merchandise (as defined in section 771 of that Act {19 U.S.C. 1677}) that are entered, or withdrawn from warehouse, for consumption on or after—

**(A)**  in the case of a determination by the Commission under subsection (a)(4), the date on which the Trade Representative directs the administering authority under subsection (a)(6) to revoke an order pursuant to that determination, and

**(B)**  in the case of a determination by the administering authority under subsection (b)(2), the date on which the Trade Representative directs the administering authority under subsection (b)(4) to implement that determination.

**(2)  Notice of implementation**

**(A)**  The administering authority shall publish in the Federal Register notice of the implementation of any determination made under this section with respect to title VII of the Tariff Act of 1930 {19 U.S.C. 1671 et seq.}.

**(B)** The Trade Representative shall publish in the Federal Register notice of the implementation of any determination made under this section with respect to title II of the Trade Act of 1974 {19 U.S.C. 2251 et seq.}.

[22] 32 C.I.T. 1100 (2008), *aff'd*, 589 F.3d 1187 (Fed. Cir. 2009).

after foreign producers successfully challenged antidumping duties imposed by the Department. Although the initial appeal was successful, certain entries were liquidated before the court's injunction took effect, so that those entries were liquidated at a higher rate that was later found to be erroneous.  The plaintiffs sought to have those entries reliquidated at the corrected, lower duty rate.

The court balanced the equities, noting the great harm to the importer which was likely to be "rendered insolvent" unless the entries were reliquidated at the proper, lower duty rate, and the less significant harm to the government of being deprived of duties that it would not otherwise have been entitled to anyway.[23]  The Court amended its judgement to "prevent manifest injustice," and allowed the entries to be reliquidated at the lower rate.[24]  It thus used its equitable powers to allow a company to benefit from lower rates, even though a strict interpretation of the law would have required the higher rates to be imposed.

*Nat'l Corn Growers Ass'n v. Baker*[25] resulted in a similar outcome.  The dispute arose when Customs imposed a $.60/gallon duty on imports of certain ethanol, after previously determining that no duties would be applied.  Customs did allow some imports to continue to enter duty free that had already been scheduled for liquidation before Customs changed its position.  The domestic industry sued Customs, claiming that it did not have the authority to exempt those post-decision entries from the relevant duties.

The Federal Circuit rejected the appellee's "attempt{} to enforce a retroactive collection of duties from {the importers} on the basis of a changed interpretation," and held instead that the

---

[23] *Id.* at 1103.

[24] *Id.*

[25] 840 F.2d 1547, 1549 (Fed. Cir. 1988).

importers should not be assessed duties on their pre-planned, post-decision imports.[26]  The appeals court determined that the importers "should not be penalized for following the law as stated by Customs at the time of the transaction if Customs later has a change of heart," and noted that imposing retroactive duties despite importers' reliance interests would be "unfair."[27] The expedited review companies similarly "should not be penalized for following the law as stated by {Commerce} at the time."

These decisions demonstrate that considerations of fairness can and do support a court's use of its equitable powers to give prospective effect only to an administrative finding or determination that otherwise would not be so limited, particularly where, as here, the balance of equities clearly favors prospective application only.  The COALITION sought, but was denied injunctive relief by this Court, having failed to make a case for upsetting the prospective scheme reflected in the statute.[28]  If this Court does ultimately determine that the expedited review regulation and this review were without legal authority, the balance of equities still remains in favor of the expedited review companies.  These companies reasonably and fairly acted on the presumption of correctness, making business planning decisions regarding their exports to the United States,[29] and whether to seek to participate in the AR1 and AR2 proceedings.[30]  To upset

---

[26] *Id*. at 1552.

[27] *Id*.

[28] *Committee Overseeing Action for Lumber International Trade Investigations or Negotiations v. United States*, 393 F. Supp. 3d 1271, 1277–78 (Ct. Int'l Trade 2019).

[29] The business planning interests of parties relying on the presumption of correctness was recognized as a factor in support of requiring that the section 1516a(c)(1) notice be given prospective effect only.  *See Sumecht NA Inc. v. United States*, 399 F.Supp.3d 1370, 1376 (Ct. Int'l Trade 2019) at 15.  The same considerations warrant prospective application in this case as well.

[30] As explained in the Canadian Parties' March 19 Comments at 29–31, the excluded expedited

those legitimate reliance interests now and make any relief apply retroactively, as the

COALITION urges, would ignore the clear equitable balance of interests between the litigants.

### III.   The Court Should Decline to Adopt the Remedies Proposed by the COALITION

This Court should not adopt the remedies proposed by the COALITION, which would

include not only removing 19 C.F.R. § 351.214(k) from the Department's regulations, but also

suspending liquidation on all unliquidated entries by the expedited review companies; placing

the *de minimis* companies back under the CVD order; collecting cash deposits from the

expedited review companies at rates applicable as if the expedited review final results had not

been issued; and assessing countervailing duties on the expedited review companies as if the

expedited review final results had not been issued.[31]

The Canadian Parties have explained that authority to conduct expedited reviews is found

in 19 U.S.C. § 1675(a)(1) and in Section 103(b) of the URAA,[32] and also that the statute

precludes the Department from collecting countervailing duties in excess of those determined to

exist.[33]  For any of these legal reasons, the Court should maintain the expedited review final

results for the expedited review companies.

If the Court were not to maintain the expedited review final results despite these legal

reasons, the Canadian Parties have asked the Court to avail itself of its equitable powers in

---

review companies were denied the opportunity to participate in the administrative reviews due to
their having been excluded from the order.  The COALITION could have, but did not, seek to
have the non-excluded companies covered in AR1.

[31] *See* COALITION's March 19 Comments at 10–11.

[32] *See* Canadian Parties' March 19 Comments at Sections II.A and II.B.

[33] *See* Canadian Parties' March 19 Comments at Section II.C.

reaching a just result in this proceeding.[34]  As previously argued, reasons supporting this Court's

exercise of its equitable powers include the following:  (1) the expedited review companies relied

on the Department's history of conducting, first exclusion analyses and subsequently expedited

reviews, over a period spanning nearly forty years, and on the Department's and the

COALITION's pronouncements in this very proceeding; (2) the companies incurred significant

costs in participating in the expedited reviews; (3) the companies' detrimentally relied on the

expedited review procedure, and this reliance was compounded by the fact that the COALITION

delayed appealing initiation of the expedited review until they were completed; (4) the

companies could not or, in detrimental reliance upon the expedited review did not, participate in

administrative reviews; and (5) even if this Court should determine that 19 C.F.R. § 351.214(k)

is invalid, the conduct of the expedited review was harmless error.

For these equitable reasons, the Canadian Parties submit that, if the Court were to

conclude that the Department did not have statutory authority to promulgate 19 C.F.R. §

351.214(k), the just result in this proceeding would be for the Department to declare 19 C.F.R. §

351.214(k) contrary to statute, but maintain the expedited review final results for the particular

companies involved in the expedited review at issue.  The Canadian Parties respectfully ask this

Court to use its equitable powers to order that the *de minimis* companies should remain excluded

from the CVD order, and the non-*de minimis* companies should be permitted to complete their

appeals and be excluded from the CVD order if they prevail in those appeals.

If this Court chooses to order any remedy other than this equitable result,[35] then in view

---

[34] *See* Canadian Parties' March 19 Comments at Section II.D.

[35] The Canadian Parties' propose that the Court use its equitable powers to order that, if cash deposit rates are to apply prospectively to all of the expedited review companies, those should be the most accurate rates determined by the Department for each such company, namely the rates found in the expedited review final results (subject to pending issues on appeal) until those rates

of the high likelihood of an appeal of this case to the U.S. Court of Appeals for the Federal

Circuit by one (or more) non-prevailing party, the Canadian Parties respectfully ask that this

Court stay the enforcement of its decision – *i.e.*, maintain the *status quo* whereby the *de minimis*

companies remain excluded from the CVD order and the non-*de minimis* companies pay the

most recently applicable cash deposit rates, including those from the expedited review final

results – until the resolution of such appeal.  The COALITION itself intimated that the Court

may order such a stay of its decision,[36] and the Canadian Parties hereby ask the Court to do so if

it determines not to maintain the expedited review final results for the expedited review

companies for any of the legal or equitable reasons articulated by the Canadian Parties.

## III.    **CONCLUSION**

For all the foregoing reasons, the Court should reject the COALITION's proposed

remedies and should order that the expedited review final results are to be maintained for the

expedited review companies, or otherwise stay the enforcement of any remedy so as to maintain

---

are superseded by an applicable administrative review.  *See* Canadian Parties' March 19
Comments at 34.

The Court could consider yet another equitable alternative, which would be to instruct that the
expedited review companies be made subject to the "all others" rates in the most recently
completed administrative review as of the date of the Court's order because, but for the
expedited review, these companies would have been participants in those administrative reviews.
In fact, the excluded companies made contingent requests to be included in the AR1 and AR2
administrative reviews, but were denied by the Department on the basis of these companies'
exclusion from the CVD order.  *See* Canadian Parties' March 19 Comments at 29–31 & n.77.

However, in the case of any alternate remedy (*i.e.*, any remedy other than one that maintains the
expedited review final results, subject to pending appeals, for the expedited review companies),
the Canadian Parties respectfully ask the Court to stay enforcement of such remedy so the *status
quo* is preserved pending an appeal to the U.S. Court of Appeals for the Federal Circuit.

[36]  *See* COALITION's March 19 Comments at 8 n.4.

the *status quo* with respect to the expedited review companies.

Respectfully submitted,

On behalf of Government of Canada:

/s/ *Joanne Elisabeth Osendarp*
Joanne Elisabeth Osendarp

McDermott Will & Emery LLP
500 North Capitol Street, NW
Washington, DC 20001
(202) 756-8349
Fax: (202) 756-8707
Email: josendarp@mwe.com

*Counsel to Defendant-Intervenor*
*Government of Canada*

On behalf of Fontaine Inc.:

/s/ *Elliot Jay Feldman*
Elliot Jay Feldman

Baker & Hostetler, LLP
Washington Square, Suite 1100
1050 Connecticut Avenue, NW.
Washington, DC 20036-5304
(202) 861-1679
Fax: (202) 861-1783
Email: efeldman@bakerlaw.com

*Counsel to Defendant-Intervenor*
*Fontaine Inc.*

| | |
|---|---|
| On behalf of Marcel Lauzon Inc. and Les Produits Forestiers D&G Ltee: | /s/ *Edward M. Lebow* <br> Edward M. Lebow <br><br> Haynes & Boone, LLP <br> 800 17th Street, NW Suite 500 <br> Washington, DC 20006 <br> (202) 654-4514 <br> Fax: (202) 654-4244 <br> Email: ed.lebow@haynesboone.com <br><br> *Counsel to Defendant-Intervenors Marcel Lauzon Inc. and Les Produits Forestiers D&G Ltee* |
| On behalf of North American Forest Products Ltd., Parent-Violette Gestion Ltee, and Le Groupe Parent Ltee: | /s/ *Richard L.A. Weiner* <br> Richard L.A. Weiner <br><br> Sidley Austin, LLP <br> 1501 K Street, NW. <br> Washington, DC 20005-1401 <br> (202) 736-8790 <br> Fax: (202) 736-8711 <br> Email: rweiner@sidley.com <br><br> *Counsel to Defendant-Intervenors North American Forest Products Ltd., Parent-Violette Gestion Ltee, and Le Groupe Parent Ltee* |
| On behalf of Scierie Alexandre Lemay & Fils Inc.: | /s/ *Yohai Baisburd* <br> Yohai Baisburd <br><br> Cassidy Levy Kent (USA) LLP <br> 900 19th Street, NW. <br> Suite 400 <br> Washington, DC 20006-2110 <br> (202) 567-2319 <br> Fax: (202) 567-2301 <br> Email: ybaisburd@cassidylevy.com <br><br> *Counsel to Defendant-Intervenor Scierie Alexandre Lemay & Fils Inc.* |

On behalf of Government of Quebec:

/s/ *Matthew J. Clark*

Matthew J. Clark

Arent Fox LLP
1717 K Street, NW.
Washington, DC 20006-5344
(202) 857-6066
Fax: (202) 857-6395
Email: matthew.clark@arentfox.com

*Counsel to Defendant-Intervenor*
*Government of Quebec*

On behalf of Mobilier Rustique (Beauce) Inc.:

/s/ *John Robert Magnus*

John Robert Magnus

Tradewins LLC
1330 Connecticut Avenue, NW.
Washington, DC 20036
(202) 744-0368
Email: jmagnus@tradewinsllc.net

*Counsel to Defendant-Intervenor*
*Mobilier Rustique (Beauce) Inc.*

On Behalf of Government of New Brunswick:

/s/ *Stephan Ernest Becker*

Stephan Ernest Becker

Pillsbury Winthrop Shaw Pittman
LLP
1200 17th Street, NW.
Washington, DC 20036
(202) 663-8277
Fax: (202) 663-8007
Email:
stephan.becker@pillsburylaw.com

*Counsel to Defendant-Intervenor*
*Government of New Brunswick*

**CERTIFICATE OF COMPLIANCE**

The undersigned counsel at McDermott Will & Emery LLP hereby certify that

Consolidated Defendant-Intervenors' Comments in Response to the COALITION's  March 19,

2021 Comments on the Department of Commerce's February 17, 2021 Final Results of

Redetermination Pursuant to Court Remand, complies with the word-count limitation set forth in

the Court's November 19, 2020 Order.  The memorandum of law contains 4,178 words

according to the word-count function of the word-processing software used to prepare the

memorandum.


Respectfully submitted,

  */s/ Joanne E. Osendarp*
Joanne E. Osendarp
McDERMOTT WILL & EMERY LLP
500 North Capitol Street, NW
Washington, DC 20001-1531
(202) 756-8000
josendarp@mwe.com

*On Behalf of the Government of Canada*


Dated:  April 26, 2021