## UNITED STATES COURT OF INTERNATIONAL TRADE
## BEFORE:  THE HONORABLE MARK A. BARNETT, CHIEF JUDGE

| | |
|---|---|
| COMMITTEE OVERSEEING ACTION FOR LUMBER INTERNATIONAL TRADE INVESTIGATIONS OR NEGOTIATIONS, <br><br> *Plaintiff,* <br><br> FONTAINE INC., ET AL., <br><br> *Consolidated Plaintiffs,* <br><br> v. <br><br> UNITED STATES, <br><br> *Defendant,* <br><br> and <br><br> FONTAINE INC., ET AL., <br><br> *Defendant-Intervenors.* | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> Consol. Court No. 19-00122 <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

## MOTION TO EXPLICITLY STATE OBLIGATION TO REFUND
## COUNTERVAILING DUTY CASH DEPOSITS ESTABLISHED BY SLIP OP 23-163

Yohai Baisburd
Jonathan M. Zielinski
James E. Ransdell

CASSIDY LEVY KENT
(USA) LLP
900 19th Street, N.W.
Suite 400
Washington, D.C. 20006
(202) 567-2300 (phone)
(202) 567-2301 (fax)
ybaisburd@cassidylevy.com

*Counsel to Scierie Alexandre
Lemay & Fils Inc.*

Rajib Pal
James Mendenhall

SIDLEY AUSTIN LLP
1501 K Street, N.W.
Washington, DC 20005
(202) 736-8000 (phone)
(202) 736-8711 (fax)
rpal@sidley.com

*Counsel to North American
Forest Products Ltd.*

Edward M. Lebow

HAYNES AND BOONE, LLP
800 17th Street, N.W.
Suite 500
Washington, DC 20006
(202) 654-4514 (phone)
(202) 654-4244 (fax)
ed.lebow@haynesboone.com

*Counsel to Marcel Lauzon Inc.
and Les Produits Forestiers
D&G Ltée*

Dated:  November 15, 2024

# **Table of Contents**

Page

I.   Procedural Posture ................................................................................................ 3

II.  Clarifying the Text of the Order Accompanying *Coalition VI* Will Effectuate the
     Originally Intended Relief by Restoring the *Status Quo Ante* ................................ 8

     A.  Legal Standard ................................................................................................ 8

     B.  Request for Relief ............................................................................................ 9

III. The Same Rationale Underlying *Coalition VI* Makes It Inequitable to Permit
     Defendant to Withhold Millions of Dollars' Worth of Cash Deposits Paid Under a
     CVD Order from Which Lemay, MLI, D&G, and NAFP Were Lawfully Excluded.......... 11

     A.  Legal Standard ................................................................................................ 11

     B.  Request for Relief ............................................................................................ 12

IV.  Conclusion ............................................................................................................ 15

## Table of Authorities

Page(s)

Statutes

19 U.S.C. § 1520(a)(4)................................................................................ *passim*

19 U.S.C. § 1677g........................................................................................ *passim*

Regulations

19 C.F.R. § 351.214(k) .........................................................................................3

Court Decisions

*Agro Dutch Indus. Ltd. v. United States*, 589 F.3d 1187 (Fed. Cir. 2009) ................................. 8-9

*Butler v. Eaton*, 141 U.S. 240 (1891) ................................................................12

*Cnty. of Suffolk v. Stone & Webster Eng'g Corp.*, 106 F.3d 1112 (2d Cir. 1997) .........................................................................................................8

*Committee Overseeing Action for Lumber International Trade Investigations or Negotiations v. United States*, 393 F. Supp. 3d 1271 (Ct. Int'l Trade 2019).....................................................................................3, 15

*Committee Overseeing Action for Lumber International Trade Investigations or Negotiations v. United States*, 483 F. Supp. 3d 1253 (Ct. Int'l Trade 2020).........................................................................................4

*Committee Overseeing Action for Lumber International Trade Investigations or Negotiations v. United States*, 535 F. Supp. 3d 1336 (Ct. Int'l Trade 2021)................................................................................ 1-2, 4

*Comm. Overseeing Action for Lumber Int'l Trade Investigations or Negots. v. United States*, 66 F.4th 968 (Fed. Cir. 2023) ..................................................... *passim*

*Committee Overseeing Action for Lumber International Trade Investigations or Negotiations v. United States*, 665 F. Supp. 3d 1347 (Ct. Int'l Trade 2023).................................................................................. *passim*

*Comm. Overseeing Action for Lumber Int'l Trade Investigations or Negots. v. United States*, 701 F. Supp. 3d 1334 (Ct. Int'l Trade 2024) ....................................14

*Horne v. Flores*, 557 U.S. 433 (2009) ................................................................11

*Invenergy Renewables LLC v. United States*, 450 F. Supp. 3d 1347 (Ct. Int'l Trade 2020) ...............................................................................................5

*Kemp v. United States*, 596 U.S. 528 (2022) .................................................8

*Khadr v. United States*, 529 F.3d 1112 (D.C. Cir. 2008) ....................... 11-12

*Lazare Kaplan Int'l, Inc. v. Photoscribe Techs., Inc.*, 714 F.3d 1289 (Fed. Cir. 2013) .................................................................................................11

*Metso Mins. Inc. v. Terex Corp.*, 594 F. App'x 649 (Fed. Cir. 2014) ...........8

*Robert Tyer & Assocs., Inc. v. Env't Dynamics, Inc.*, 119 F.3d 17 (Fed. Cir. 1997) .........................................................................................................8

*Sys. Fed'n No. 91, Ry. Emp. Dep't, AFL-CIO v. Wright*, 364 U.S. 642 (1961) ........................................................................................................12

*Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7 (2008) .......................14

<u>Administrative Determinations</u>

*Certain Softwood Lumber Products From Canada: Final Results of Countervailing Duty Expedited Review*, 84 Fed. Reg. 32,121 (July 5, 2019) ...................... *passim*

*Certain Softwood Lumber Products From Canada: Notice of Court Decision Not in Harmony With the Final Results of Countervailing Duty Expedited Review; Notice of Rescission of Final Results of Expedited Review; Notice of Amended Cash Deposit Rates*, 86 Fed. Reg. 48,396 (Aug. 30, 2021) ................... 4-5

*Certain Softwood Lumber Products From Canada: Final Results and Final Rescission, in Part, of the Countervailing Duty Administrative Review; 2021*, 88 Fed. Reg. 50,103 (Aug. 1, 2023).................................................5

*North American Free Trade Agreement (NAFTA), Article 1904; Binational Panel Review: Notice of Panel Decision*, 88 Fed. Reg. 72,428 (Oct. 20, 2023) .......................................................................................................12

*North American Free Trade Agreement (NAFTA), Article 1904; Binational Panel Review: Notice of Panel Decision*, 89 Fed. Reg. 41,377 (May 13, 2024) ................................................................................................. 12-13

*Notice of Reinstatement of Exclusion From the Countervailing Duty Order*, 88 Fed. Reg. 85,225 (Dec. 7, 2023) ......................................................... 6-7

<u>Other Administrative Materials</u>

CBP Message 9198302 (July 17, 2019)..........................................................3

CBP Message 9214302 (Aug. 2, 2019) ...........................................................4

CBP Message 9234309 (Aug. 22, 2019) ......................................................................4

CBP Message 9288315 (Oct. 15, 2019)............................................................... *passim*

CBP Message 1244401 (Sept. 1, 2021) ..................................................................5, 14

CBP Message 4018402 (Jan. 18, 2024) .................................................................6, 10

CBP Message 4018411 (Jan. 18, 2024) ....................................................................6

<u>Other Court Materials</u>

Rule 1 of the Rules of the U.S. Court of International Trade ..........................................1

Rule 7 of the Rules of the U.S. Court of International Trade ..........................................1

Rule 60(a) of the Rules of the U.S. Court of International Trade........................ *passim*

Rule 60(b)(5) of the Rules of the U.S. Court of International Trade.................... *passim*

Rule 60(c) of the Rules of the U.S. Court of International Trade...................................7

<u>Other Materials</u>

36 C.J.S. Federal Courts § 739 .................................................................................11

**MOTION TO EXPLICITLY STATE OBLIGATION TO REFUND COUNTERVAILING
DUTY CASH DEPOSITS ESTABLISHED BY SLIP OP 23-163**

Pursuant to Rules 1, 7, and 60(a) of the Rules of the U.S. Court of International Trade
(the "CIT Rules"), Defendant-Intervenors Scierie Alexandre Lemay & Fils Inc. ("Lemay"),
Marcel Lauzon Inc. ("MLI"), Les Produits Forestiers D&G Ltee ("D&G"), and North American
Forest Products Ltd. with its cross-owned affiliates Parent-Violette Gestion Ltée and Le Groupe
Parent Ltée (collectively, "NAFP") (together collectively, the "Originally Excluded Parties"),
hereby move this Court to correct a clerical error or unintended omission in this Court's order
relieving the Originally Excluded Parties from the effects of this Court's August 18, 2021,
Judgment that temporarily made products produced and exported by the Originally Excluded
Parties subject to the CVD Order on softwood lumber from Canada. *See* "Judgment," ECF Doc.
194 (Aug. 18, 2021); *see also Committee Overseeing Action for Lumber International Trade
Investigations or Negotiations v. United States*, 535 F. Supp. 3d 1336, 1355-63 (Ct. Int'l Trade
2021) ("*Coalition IV*").

In *Committee Overseeing Action for Lumber International Trade Investigations or
Negotiations v. United States*, 665 F. Supp. 3d 1347, 1353, 1353-54 (Ct. Int'l Trade 2023)
("*Coalition VI*"), this Court held that it was not equitable to subject softwood lumber produced
and exported by the Originally Excluded Parties to the consequences of a CVD Order from
which the U.S. Department of Commerce ("Commerce") had duly excluded the Originally
Excluded Parties on July 5, 2019, *see Final Results of Countervailing Duty Expedited Review*, 84
Fed. Reg. 32,121 (July 5, 2019), after the U.S. Court of Appeals for the Federal Circuit ("Federal
Circuit") confirmed Commerce's power to do so, *see Comm. Overseeing Action for Lumber Int'l
Trade Investigations or Negots. v. United States*, 66 F.4th 968, 979 (Fed. Cir. 2023) ("*Coalition
CAFC*"). *Coalition VI* furthermore concluded that there was "no reason to limit movants' relief

to the date of this Opinion and Order," and ordered Defendant to, *inter alia*, "discontinue…the collection" of cash deposits on shipments "on or after August 28, 2021." 665 F. Supp. 3d at 1354-55.

Yet, contrary to this instruction, Defendant's contemporaneous statements, and the Court's analysis in *Coalition VI*, Defendant continues to withhold its collection of millions of dollars' worth of CVD cash deposits previously obtained from the Originally Excluded Parties between *Coalition IV* and *Coalition VI*. These are funds to which courts have established Defendant is ***not*** entitled. *See Coalition CAFC*, 66 F.4th at 979; *Coalition VI*, 665 F. Supp. 3d at 1354-55. The Originally Excluded Parties therefore ask this Court to revise the language of the Order accompanying *Coalition VI* to clarify Defendant's obligation to restore the *status quo ante* by ***refunding*** the millions of dollars' worth of deposits that Defendant would never have obtained but for the Originally Excluded Parties' temporary reinstatement under the CVD Order.

In the alternative, were the Court to consider itself unable to grant this request under CIT Rule 60(a), the Originally Excluded Parties submit that the same considerations that made it inequitable to subject the Originally Excluded Parties to consequences of a CVD Order from which they had been lawfully excluded, as recognized by the Court in *Coalition VI*, apply equally to Defendant's retention of CVD cash deposits. By operation of *Coalition CAFC*, this Court's August 18, 2021, Judgment no longer authorizes Commerce to retain CVD cash deposits. *See Coalition VI*, 665 F. Supp. 3d at 1353. Its continued enforcement has a "direct and inequitable" effect. *Id.* at 1354. Indeed, its perpetuation amounts to granting Plaintiff benefits of a preliminary injunction that this Court originally denied, *see id.* at 1353, and despite the absence of any live issue concerning Commerce's authority to exclude parties from the CVD Order. As such, this Court could grant the requested relief by exercising its authority under the third clause

of CIT Rule 60(b)(5) because application of this aspect of this Court's August 18, 2021,

Judgment "is no longer equitable."

## I.    Procedural Posture

Responding to requests from the Originally Excluded Parties, Commerce conducted

expedited reviews of the *CVD Order* on softwood lumber products from Canada pursuant to 19

C.F.R. § 351.214(k).  Relevant to this motion, Commerce's *Final Results* calculated *de minimis*

countervailable subsidy rates for each of the Originally Excluded Parties and "determine{d} to

exclude D&G, MLI, NAFP,…and Lemay from the CVD order."  *Final Results*, 84 Fed. Reg. at

32,122, and accompanying Issues and Decision Memorandum ("IDM").  Consequent to the

Originally Excluded Parties' exclusion from the *CVD Order*, Commerce instructed CBP, among

other measures, "to refund all cash deposits of estimated countervailing duties collected on all

such shipments" produced and exported by D&G, MLI, NAFP, and Lemay.  *Id.*

Plaintiff, the Committee Overseeing Action for Lumber International Trade

Investigations or Negotiations ("COALITION"), initiated CIT Ct. No. 19-00122 to challenge

Commerce's *Final Results*.  Initially, the COALITION sought and obtained a temporary

restraining order ("TRO") which, in relevant part, "restrained {CBP} from:… (3) collecting cash

deposits for softwood lumber products:…produced and/or exported by" certain named

companies including D&G, MLI, NAFP, and Lemay.  "Temporary Restraining Order," ECF

Doc. 10 (July 15, 2019). In reliance on this TRO, Commerce instructed CBP to require cash

deposits on entries from these companies equal to the then-prevailing "all others" rate. *See* CBP

Message 9198302 (July 17, 2019).

A few weeks later, the Court issued an opinion and order vacating the TRO.  *See*

*Committee Overseeing Action for Lumber International Trade Investigations or Negotiations v.*

*United States*, 393 F. Supp. 3d 1271, 1280 (Ct. Int'l Trade 2019) ("*Coalition I*"). Although the

Court's order did not detail the steps by which Defendant should effectuate vacatur, *see id.*, Commerce shortly thereafter instructed CBP that the Originally Excluded Parties were again "excluded from this countervailing duty order" and provided that "instructions for granting a request for a refund on any overcollection of cash deposits will be issued in a separate message," CBP Message 9214302 (Aug. 2, 2019).  Commerce's next message instructed CBP that "{a}ll entries of this merchandise {produced and exported by the Originally Excluded Parties}, that were suspended on or after 04/28/2017 should be liquidated without regard to countervailing duties (i.e., refund all cash deposits)." CBP Message 9234309 (Aug. 22, 2019).  Finally, without any intervening action by the Court, Commerce issued further instructions citing 19 U.S.C. § 1520(a)(4), the statutory provision authorizing refunds prior to liquidation, and authorizing CBP to grant refunds if requested by any of the Originally Excluded Parties. CBP Message 9288315 (Oct. 15, 2019).

About two years later, the COALITION prevailed in its challenge to Commerce's statutory authority to conduct CVD expedited reviews before this Court. *See Committee Overseeing Action for Lumber International Trade Investigations or Negotiations v. United States*, 483 F. Supp. 3d 1253, 1263-67 (Ct. Int'l Trade 2020); *Coalition IV*, 535 F. Supp. 3d at 1355-63.  The associated Judgment vacated both Commerce's *Final Results* and the regulation under which Commerce had conducted the CVD expedited reviews, and ordered Commerce to "reinstate the {Originally Excluded Parties} in the *CVD Order* prospectively" and begin collecting cash deposits.  *See* "Judgment," ECF Doc. 194 (Aug. 18, 2021) at 1-2. Commerce took this action. *Certain Softwood Lumber Products From Canada: Notice of Court Decision Not in Harmony With the Final Results of Countervailing Duty Expedited Review; Notice of Rescission of Final Results of Expedited Review; Notice of Amended Cash Deposit Rates*, 86

Fed. Reg. 48,396, 48,396 (Aug. 30, 2021) ("*Notice of Rescission*").  Consequently, the Originally

Excluded Parties—each of which had been assessed *de minimis* rates upon individual

examination—were nevertheless obliged to pay cash deposits on entries of softwood lumber into

the United States beginning on August 28, 2021. *Id.*[1] The Originally Excluded Parties ultimately

paid cash deposits amounting to millions of dollars.

Defendant-Intervenors' appeal of this Court's Judgment and Order yielded an opinion of

the Federal Circuit "revers{ing} the judgment of the Trade Court" and "hold{ing} that

Commerce had statutory authority to adopt the expedited review procedures."  *Coalition CAFC*,

66 F.4th at 971, 979.  The Federal Circuit remanded this matter to the CIT for "such further

proceedings as required in the consolidated cases as a result of this holding." *Id.* at 979.  In

response, the Originally Excluded Parties moved this Court for an order "restoring the *status quo*

*ante* that existed prior to" this Court's Judgment vacating the *Final Results* of Commerce's

expedited review. "Motion to Reinstate Exclusion from Countervailing Duty Order Pending

Resolution of Litigation," ECF Doc. 222 (Oct. 6, 2023) ("OEP Reinstatement Mot.").

The Government did not oppose this motion, and in fact concurred that "{a}s a result of

the Federal Circuit's ruling {in *Coalition CAFC*}, the basis on which Commerce reinstated the

---

[1] For nearly two years, cash deposits were required at the substantial "all others" CVD rate for all
Originally Excluded Parties, *see* CBP Message 1244401 (Sept. 1, 2021) (naming initial cash
deposit rate of 14.19%), even though each had been found to have received *de minimis* levels of
subsidies. Lemay, MLI, and D&G were able to obtain revised cash deposit rates of 1.79%. *See
Certain Softwood Lumber Products From Canada: Final Results and Final Rescission, in Part,
of the Countervailing Duty Administrative Review; 2021*, 88 Fed. Reg. 50,103, 50,106 (Aug. 1,
2023). NAFP remained subject to the 14.19% rate established by Commerce's original CVD
investigation throughout the entirety of its temporary inclusion under the *CVD Order*.  During
that period, NAFP was unable to obtain a new cash deposit rate in a subsequent administrative
review. *See CVD AR 2021 Final*, 88 Fed. Reg. at 50,103 (rescinding the 2021 CVD
administrative review as to NAFP due to the lack of evidence of shipments during the period of
review).

Originally Excluded Companies into the order and imposed the cash deposit requirement, *i.e.*, this Court's earlier judgment, is reversed and remanded and no longer provides any authority for Commerce...***to refuse to refund*** all cash deposits of estimated countervailing duties collected on all shipments of softwood lumber produced and exported by D&G, MLI, NAFP, and Lemay." "Defendant's Response to the Court's Order to Respond to Canadian Parties' Motion to Reinstate Exclusion from Countervailing Duty Order Pending Resolution of Litigation," ECF Doc. 228 (Nov. 13, 2023) at 8-9 (emphasis supplied) ("Def. Resp. Reinstatement Mot."). In granting the motion, this Court specifically cited the Government's concurrence that it no longer had any basis to "***retain*** cash deposits" on shipments from the Originally Excluded Parties. *Coalition VI*, 665 F. Supp. 3d at 1353, 1355 (emphasis supplied).

Although Commerce thereafter "directed {CBP} not to suspend liquidation of imports of shipments and not collect cash deposits" for shipments produced and exported by each of the Originally Excluded Parties, *see* CBP Message 4018402 (Jan. 18, 2024), and to "liquidate such entries without regard to countervailing duties (i.e., refund all cash deposits)," *see* CBP Message 4018411 (Jan. 18, 2024) (emphasis supplied), Commerce omitted any mention of refunds prior to liquidation.  The *status quo ante* this Court's Judgment vacating exclusion of the Originally Excluded Parties from the CVD Order was that Commerce's *Final Results* provided that CBP would be instructed to "refund all cash deposits of estimated countervailing duties collected" on shipments produced and exported by the Originally Excluded parties. 84 Fed. Reg. at 32,122. Commerce in fact provided for such interim refunds in CBP Message 9288315 (Oct. 15, 2019), and the Federal Register notice concerning reinstatement of the Originally Excluded Parties employed the same refund language as Commerce's *Final Results*, *compare* 84 Fed. Reg. at 32,122, *with Notice of Reinstatement of Exclusion From the Countervailing Duty Order*, 88 Fed.

Reg. 85,225, 85,226 (Dec. 7, 2023). Yet, Commerce's instructions to CBP following *Coalition VI* omit this crucial component. Consequently, millions of dollars' worth of the Originally Excluded Parties' cash deposits remain out of reach.

Counsel for the Originally Excluded Parties initially assumed this must be an inadvertent oversight and attempted to resolve the matter as such. After all, Commerce had provided for refunds in 2019, Defendant had admitted that *Coalition CAFC* eliminated any authority for refusing such refunds, *see* Def. Resp. Reinstatement Mot. At 8-9, the Court had relied upon this admission, *see Coalition VI*, 665 F. Supp. 3d at 1353, and Defendant had expressly recognized that the Originally Excluded Parties were requesting to "restor{e} the '*status quo ante*,'" Def. Resp. Reinstatement Mot. at 10. Unfortunately, counsel was unable to rectify the issue through direct engagement with Defendant. Defendant has maintained that it is entitled to keep these funds until liquidation, which will not occur until the conclusion of litigation connected with the antidumping duty order on softwood lumber from Canada, and that issuing such refunds would be administratively complex.

The Originally Excluded Parties consider that this matter was already resolved in *Coalition VI*, and that an amendment to that Order would clarify and effectuate the Court's, Defendant's, and the Originally Excluded Parties' expressed intent at that time. Although CIT Rule 60 does not prescribe a deadline for motions made pursuant to subsection 60(a), the Originally Excluded Parties note that this motion is filed "within a reasonable time" as required under subsection 60(b)(5), *see* CIT R.60(c), because the gap between *Coalition VI* and this motion was occasioned by Originally Excluded Parties' attempts to conserve judicial resources by resolving this matter directly with Defendant, and this motion is otherwise being submitted

shortly after Commerce's most recent remand results confirmed that all of the Originally

Excluded Parties should remain excluded from the CVD Order.

## II. Clarifying the Text of the Order Accompanying *Coalition VI* Will Effectuate the Originally Intended Relief by Restoring the *Status Quo Ante*

### A. Legal Standard

In response to a motion or on its own initiative, CIT Rule 60(a)[2] permits this Court, in

relevant part, to "correct a clerical mistake or a mistake arising from oversight or omission

whenever one is found in a judgment, order, or other part of the record." *Agro Dutch Indus. Ltd.*

*v. United States*, 589 F.3d 1187, 1192 (Fed. Cir. 2009) (quoting CIT R.60(a)). The term

"mistake" in Rule 60 is construed broadly, to include errors of fact as well as errors of law. *Kemp*

*v. United States*, 596 U.S. 528, 536-37 (2022).

"Courts enjoy broad discretion to correct clerical errors in previously issued orders in

order to conform the record to the intentions of the court and the parties." *Agro Dutch*, 589 F.3d

at 1192 (collecting cases); *see also Metso Mins. Inc. v. Terex Corp.*, 594 F. App'x 649, 652 (Fed.

Cir. 2014) (citing *Cnty. of Suffolk v. Stone & Webster Eng'g Corp.*, 106 F.3d 1112, 1117 (2d Cir.

1997) ("It is peculiarly within the province of the district court ... to determine the meaning of its

own order, and even if we regarded the opinion or judgment as ambiguous, we would not disturb

the issuing judge's interpretation absent a clear abuse of discretion.")); *Robert Tyer & Assocs.,*

*Inc. v. Env't Dynamics, Inc.*, 119 F.3d 17 (Fed. Cir. 1997) (affirming adjustment to jury award

figure under Rule 60(a) and stating that "District courts are given broad discretion to deal with

---

[2] The text of CIT Rule 60(a) is identical to that of Rule 60(a) of the Federal Rules of Civil Procedure and Rule 60(a) of the U.S. Court of Federal Claims. The text of this subsection of the FRCP has not been substantively modified since 1946.

matters such as the meaning of an ambiguous verdict form…").  In sustaining the CIT's

amendment of its injunction to recapture liquidated entries, *Agro Dutch* further explains:

> As a general matter, a court of equity may exercise its sound discretion to modify
> an injunctive order when modification is necessary to achieve the order's intended
> purpose and does not otherwise result in prejudice to a party. The trial court's
> discretion is ***not limited to the correction of clerical or typographical errors*** but
> encompasses the correction of errors needed to comport the order with the original
> understandings and intent of the court and the parties.

*Agro Dutch*, 589 F.3d at 1192 (emphasis supplied) (internal citations omitted).

**B.  Request for Relief**

The requested adjustment to the Order accompanying *Coalition VI* is just such a

correction "needed to comport the order with the original understandings and intent of the court

and the parties." *Id.*  It furthermore aligns with the overarching intent that the CIT Rules "be

construed, administered, and employed by the court and the parties to secure the just, speedy,

and inexpensive determination of every action and proceeding."  CIT R.1.  Defendant

acknowledged the Originally Excluded Parties' intention to "restore the *status quo ante,*" *i.e.*, "to

the position they were in prior to August 28, 2021," *see* OEP Reinstatement Mot. at 1; Def. Resp.

Reinstatement Mot. at 10, which would of course require refunding the millions of dollars' worth

of CVD cash deposits paid to Defendant over that period. This understanding is consistent with

the steps originally taken by Defendant to implement the *Final Results.* After stating its

commitment "to refund all cash deposits of estimated countervailing duties collected on"

softwood lumber shipments produced and exported by the Originally Excluded Parties in the

*Final Results*, 84 Fed. Reg. at 31,122, Commerce had in fact issued express instructions to CBP

acknowledging CBP's authority to issue refunds prior to liquidation and directing CBP to grant

refunds, with interest, if requested by any of the Originally Excluded Parties, CBP Message

9288315 (Oct. 15, 2019) (citing 19 U.S.C. §§ 1520(a)(4), 1677g). Thus, Defendant's express

statements in response to the Originally Excluded Parties' original motion, the terms of the *Final Results* and Defendant's past actions to effectuate those terms, and the common sense reality that the U.S. Treasury is currently millions of dollars richer than before Originally Excluded Parties' temporary inclusion under the CVD Order all lead to the same conclusion—when the Originally Excluded Parties first asked this Court to restore their *status quo ante* as excluded parties, all litigants expected them to **receive** refunds of their CVD cash deposits.

Currently, Defendant is not giving effect to all aspects of the order accompanying *Coalition VI*. Commerce instructed CBP to "discontinue the…collection of cash deposits" on Originally Excluded Parties' entries "on or after August 28, 2021." *Compare Coalition VI*, 665 F. Supp. 3d at 1355, *with* CBP Message 4018402 (Jan. 18, 2024). Yet CBP, which only has a ministerial role, has retained its collection of CVD cash deposits previously obtained.[3] This nullifies the court's reference to "discontinu{ing}" cash deposits associated with entries made before *Coalition VI*. In November 2023, when this Court issued *Coalition VI*, new cash deposits were obviously not being paid for entries made more than two years prior. Yet, the Court made absolutely clear that there was "no reason to limit movants' relief to the date of this Opinion and Order." *Coalition VI*, 665 F. Supp. 3d at 1354. CBP's obstinance renders meaningless the Court's instruction to "discontinue…collection" of cash deposits for already-entered goods. *See id.* at 1355. Refunds were plainly intended, and practically necessary, to effectuate the instruction.

---

[3] Ostensibly, CBP intends to await liquidation before refunding CVD cash deposits. However, liquidation is on indefinite hold due to unrelated litigation concerning subject merchandise and CBP has the statutory authority to issue refunds, with interest, in advance of liquidation. *See* 19 U.S.C. §§ 1520(a)(4), 1677g.

Indeed, *Coalition VI* understood Defendant to concede that "this court's judgment no longer authorizes Commerce to…**collect or retain** cash deposits," *Coalition VI*, 665 F. Supp. 3d at 1353, and extended the Originally Excluded Parties' relief to the date of this Court's original Judgment because "the Federal Circuit reversed the very basis upon which movants were included in the *CVD Order*," *id.* at 1354-55. This is consistent with Originally Excluded Parties' understanding of the intended meaning of the language of the Order which immediately follows the above-quoted language. The text of the Order simply requires a minor adjustment to make that intent unmistakable and restore the *status quo ante*.

### III. The Same Rationale Underlying *Coalition VI* Makes It Inequitable to Permit Defendant to Withhold Millions of Dollars' Worth of Cash Deposits Paid Under a CVD Order from Which Lemay, MLI, D&G, and NAFP Were Lawfully Excluded

#### A. Legal Standard

In response to a motion, the third clause of CIT Rule 60(b)(5) permits this Court, in relevant part, to "relieve a party…from…{an} order…for the following reasons: … applying it prospectively is no longer equitable…" *See Invenergy Renewables LLC v. United States*, 450 F. Supp. 3d 1347, 1361 (Ct. Int'l Trade 2020). This is a standalone ground for relief. *Horne v. Flores*, 557 U.S. 433, 454 (2009) (applying the Federal Rules of Civil Procedure). While relief from a court order under CIT Rule 60(b) is generally discretionary, *see, e.g.*, *Lazare Kaplan Int'l, Inc. v. Photoscribe Techs., Inc.*, 714 F.3d 1289, 1293 (Fed. Cir. 2013) (applying Federal Circuit law), the Originally Excluded Parties respectfully submit that the Judgment represents an "erroneous conclusion{} of law," such that perpetuating the constraints set forth in the Judgment document vis-à-vis the Originally Excluded Parties would be "clearly unreasonable" or "arbitrary." *See id.* (explaining what constitutes an "abuse of discretion"); 36 C.J.S. Federal Courts § 739 ("The effect of a general and unqualified reversal of a judgment, order, or decree by the court of appeals is to nullify it completely and to leave the cause standing as if it had

never been rendered….”); *see also, e.g.*, *Khadr v. United States*, 529 F.3d 1112, 1115 (D.C. Cir. 2008) (“It has long been well established that the reversal of a lower court’s decision sets aside that decision, leaves it ‘without any validity, force, or effect,’ and requires that it be treated thereafter as though it never existed.”) (quoting *Butler v. Eaton*, 141 U.S. 240, 244 (1891)).  As a final note, courts also have inherent power and discretion to modify orders for changed circumstances.  *See, e.g.*, *Sys. Fed’n No. 91, Ry. Emp. Dep’t, AFL-CIO v. Wright*, 364 U.S. 642, 646-47 (1961).

### B. Request for Relief

At present, despite Commerce having calculated *de minimis* subsidy rates for each of the Originally Excluded Parties in connection with the *Final Results* and thereupon granted exclusions from the *CVD Order*, Defendant has nevertheless refused to refund millions of dollars’ worth of CVD cash deposits paid during the Originally Excluded Parties’ temporary inclusion under the *CVD Order*.  Counsel’s understanding is that CBP intends to conserve administrative resources by awaiting final liquidation, currently suspended pending two North American Free Trade Agreement (“NAFTA”) binational panel reviews, before refunding these CVD cash deposits.  This is inconsistent with Defendant’s prior acknowledgment that it would “be required to modify those {NAFTA} administrative suspensions to give effect to the proposed order” for “certain of the entries.” Def. Resp. Reinstatement Mot. at 10. Given Defendant’s reference to “entries,” as opposed to “future entries,” it is unclear what “modification” would be required of those other administrative suspensions if Defendant merely intended to await final liquidation before rectifying the overcollection of CVD cash deposits.

Moreover, the outcome apparently intended by CBP would be deeply unfair to the Originally Excluded Parties.  *See North American Free Trade Agreement (NAFTA), Article 1904; Binational Panel Review: Notice of Panel Decision*, 88 Fed. Reg. 72,428 (Oct. 20, 2023)

(notice of remand pursuant to USA-CDA-2017-1904-03, the NAFTA Binational Appeal of AD Investigation); *North American Free Trade Agreement (NAFTA), Article 1904; Binational Panel Review: Notice of Panel Decision*, 89 Fed. Reg. 41,377 (May 13, 2024) (notice of remand pursuant to USA-CDA-2017-1904-02, the NAFTA Binational Appeal of CVD Investigation). These binational panel proceedings have been pending since 2017, but initial panel decisions were not issued until 2023 and 2024, respectively. Remand proceedings remain ongoing in the CVD matter. As such, there is no basis to expect final resolutions any time soon. As this Court recognized in *Coalition VI*, "given that the Federal Circuit reversed the very basis upon which movants were included in the CVD Order," 665 F. Supp. 3d at 1355, it would be "inequitable" to force the Originally Excluded Parties to await the resolution of unrelated litigation for the affected entries to liquidate and refunds to issue. *See* CIT R. 60(b)(5).

Defendant expressly acknowledged the absence of authority for "refus{ing} to refund all cash deposits of estimated countervailing duties collected" on shipments of softwood lumber produced and exported by each of the Originally Excluded Parties, Def. Resp. Reinstatement Mot. at 8-9 (citing *Coalition CAFC*, 66 F.4th at 979), and asserted that "the final results of the expedited reviews should stand," *id.* at 9. In furtherance of those very *Final Results*, Commerce issued instructions directing CBP to grant refunds, with interest, if requested by any of the Originally Excluded Parties. CBP Message 9288315 (Oct. 15, 2019) (citing 19 U.S.C. §§ 1520(a)(4), 1677g). It is in no way "equitable" or serving the "public interest" for CBP to withhold millions of dollars' worth of the Originally Excluded Parties prior cash deposits for however many more years between now and the conclusion of unrelated NAFTA proceedings. This unjustified economic penalty imposes real harm on each of the small companies comprising

the Originally Excluded Parties and elevates administrative convenience over their substantive exclusion from the *CVD Order*.

Nor is it apparent that ordering refunds poses an undue administrative burden outweighing the deprivation to which the Originally Excluded Parties are being subjected. For Commerce, it is simply a matter of transmitting updated instructions to CBP. For CBP, because Originally Excluded Parties' entries were each identified by company-specific CVD case numbers in CBP's Automated Commercial Environment during their temporary inclusion under the *CVD Order*, *see* CBP Message 1244401 (Sept. 1, 2021) (*e.g.*, C-122-858-259 for Lemay), identifying affected entries and refunding all associated CVD cash deposits should likewise be straightforward.

This Court's intervening merits opinion and Commerce's most recent remand results confirm that none of the Originally Excluded Parties is currently at risk of being included under the *CVD Order* as a result of litigation. *See Comm. Overseeing Action for Lumber Int'l Trade Investigations or Negots. v. United States*, 701 F. Supp. 3d 1334 (Ct. Int'l Trade 2024); "Final Results of Redetermination Pursuant to Court Remand," ECF Doc. 255-1 (Sept. 10, 2024) ("Remand Results"). D&G's rate remained *de minimis* even after including certain additional subsidies and the other Originally Excluded Companies were not implicated. *See* Remand Results at 9. As explained in the Originally Excluded Parties' initial motion, the current situation with respect to cash deposits is thus akin to this Court having granted the COALITION a preliminary injunction—without the COALITION having ever established its satisfaction of any of the four factors governing such relief. *See Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). Indeed, at the outset of this litigation, this Court previously denied the

COALITION's request for an injunction suspending liquidation.  In doing so, this Court recognized that:

> If Plaintiff prevails in this case, the {Originally Excluded Parties} excluded from the order by the expedited review would be reinstated in the CVD Order with the concomitant collection of cash deposits and suspension of liquidation. Thus, liquidation of entries during the interim period would not moot Plaintiff's claims and, absent evidence demonstrating specific, irreparable harm from liquidation of those entries, Plaintiff is not entitled to an injunction barring liquidation of such entries.

*Coalition I*, 393 F. Supp. 3d at 1278.  This Court should not allow the COALITION to gain by administrative default more than it was due by application of the relevant legal standards. Whereas the COALITION may be "made whole" regardless of the outcome of this litigation, there is no reasonable basis for continuing to subject the Originally Excluded Parties to the retention of cash deposits paid under a *CVD Order* from which they were excluded by Commerce's *Final Results*, an administrative determination that no court has held to be unlawful or unsupported by substantial evidence in any relevant respect.

## IV.  Conclusion

As before, the Originally Excluded Parties move this Court for narrow relief necessary to restore the *status quo ante* before this Court issued the August 18, 2021, Judgment that the Federal Circuit ultimately reversed.  *See* CIT R. 60(b)(5). Specifically, the Originally Excluded Parties respectfully request this Court clarify that the instruction to "discontinue…the collection of" cash deposits on entries made prior to the date of the Order accompanying *Coalition VI* includes the obligation to promptly refund all countervailing duty cash deposits collected on softwood lumber produced and exported by any of the Originally Excluded Parties and entered on or after August 28, 2021, with interest as provided for in 19 U.S.C. § 1677g, upon request by any of the Originally Excluded Parties.

*     *     *

15

Respectfully submitted,

/s/ Yohai Baisburd

Yohai Baisburd
Jonathan M. Zielinski
James E. Ransdell

CASSIDY LEVY KENT
(USA) LLP
900 19th Street, N.W.
Suite 400
Washington, D.C. 20006
(202) 567-2300 (phone)
(202) 567-2301 (fax)
ybaisburd@cassidylevy.com

*Counsel to Scierie Alexandre
Lemay & Fils Inc.*

November 15, 2024

/s/ Rajib Pal

Rajib Pal
James Mendenhall

SIDLEY AUSTIN LLP
1501 K Street, N.W.
Washington, DC 20005
(202) 736-8000 (phone)
(202) 736-8711 (fax)
rpal@sidley.com

*Counsel to North American
Forest Products Ltd.*

/s/ Edward M. Lebow

Edward M. Lebow

HAYNES AND BOONE, LLP
800 17th Street, N.W.
Suite 500
Washington, DC 20006
(202) 654-4514 (phone)
(202) 654-4244 (fax)
ed.lebow@haynesboone.com

*Counsel to Marcel Lauzon Inc.
and Les Produits Forestiers
D&G Ltée*

## UNITED STATES COURT OF INTERNATIONAL TRADE
## BEFORE:  THE HONORABLE MARK A. BARNETT, CHIEF JUDGE

| | |
|---|---|
| COMMITTEE OVERSEEING ACTION FOR LUMBER INTERNATIONAL TRADE INVESTIGATIONS OR NEGOTIATIONS, <br><br> *Plaintiff,* <br><br> FONTAINE INC., ET AL., <br><br> *Consolidated Plaintiffs,* <br><br> v. <br><br> UNITED STATES, <br><br> *Defendant,* <br><br> and <br><br> FONTAINE INC., ET AL., <br><br> *Defendant-Intervenors.* | Consol. Court No. 19-00122 |

### PROPOSED ORDER

The Court, after due deliberation, having considered the Motion to Explicitly State Obligation to Refund Countervailing Duty Cash Deposits Established by Slip Op. 23p-163 filed by Defendant-Intervenors Scierie Alexandre Lemay & Fils Inc. ("Lemay"), Marcel Lauzon Inc. ("MLI"), Les Produits Forestiers D&G Ltee ("D&G"), and North American Forest Products Ltd. with its cross-owned affiliates Parent-Violette Gestion Ltée and Le Groupe Parent Ltée (collectively, "NAFP"), and all responses thereto, it is hereby

**ORDERED** that the U.S. Department of Commerce instruct U.S. Customs and Border Protection ("CBP") to, upon request by Lemay, and/or MLI, and/or D&G, and/or NAFP, promptly refund all cash deposits of estimated countervailing duties, with interest as provided for in 19 U.S.C. § 1677g, on all shipments of softwood lumber produced and exported by Lemay, MLI, D&G, and NAFP, entered, or withdrawn from warehouse, for consumption on or after

August 28, 2021, the effective date of *Certain Softwood Lumber Products From Canada: Notice of Court Decision Not in Harmony With the Final Results of Countervailing Duty Expedited Review; Notice of Rescission of Final Results of Expedited Review; Notice of Amended Cash Deposit Rates*, 86 Fed. Reg. 48,396 (Aug. 30, 2021).

_____

Mark A. Barnett, Judge

Dated: _____

New York, New York