IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE:  HONORABLE MARK A. BARNETT, JUDGE

_____

|  | )  |  |
|---|---|---|
| COMMITTEE OVERSEEING ACTION FOR LUMBER | ) | |
| INTERNATIONAL TRADE INVESTIGATIONS OR | ) | |
| NEGOTIATIONS, *ET AL.*, | ) | |
|  | ) | |
| Plaintiffs, | ) | |
|  | ) | |
| v. | ) | Consol. Ct. No. 19-00122 |
|  | ) | |
| UNITED STATES, | ) | |
|  | ) | |
| Defendant. | ) | |
|  | ) | |

_____

**<u>DEFENDANT'S RESPONSE TO COMMENTS ON REMAND REDETERMINATION</u>**

<table>
<tr><td></td><td>BRIAN M. BOYNTON<br>Principal Deputy Assistant Attorney<br>General</td></tr>
<tr><td></td><td>PATRICIA M. McCARTHY<br>Director</td></tr>
<tr><td>OF COUNSEL:</td><td></td></tr>
<tr><td></td><td>ELIZABETH A. SPECK</td></tr>
<tr><td>IAN A. McINERNEY<br>Senior Attorney<br>JESUS N. SAENZ<br>Attorney<br>Office of the Chief Counsel<br>  For Trade Enforcement and<br>Compliance<br>U.S. Department of Commerce<br>Washington, D.C.</td><td>Senior Trial Counsel<br>Commercial Litigation Branch<br>U.S. Department of Justice<br>Civil Division<br>P.O. Box 480<br>Ben Franklin Station<br>Washington, D.C. 20044<br>Tel:  (202) 307-0369<br>Email:  Elizabeth.Speck@usdoj.gov</td></tr>
<tr><td>November 15, 2024</td><td>*Attorneys for Defendant*</td></tr>
</table>

## <u>TABLE OF CONTENTS</u>

BACKGROUND ................................................................................................................2

ARGUMENT ...................................................................................................................7

    I.    Standard Of Review ...........................................................................7

    II.    Commerce Correctly Calculated The Amount Of Supplier Subsidies Attributable To D&G And Portbec ...........................................................................7

    III.    Commerce Complied With The Court's Remand Order .......................................12

CONCLUSION ...............................................................................................................13

# **TABLE OF AUTHORITIES**

## **Cases**

*Boomerang Tube, LLC v. United States*,
856 F.3d 908 (Fed. Cir. 2017)..................................................................................7

*Coalition Overseeing Action for Lumber International Trade Investigations
or Negotiations v. United States*,
701 F. Supp. 3d 1334 (Ct. Int'l Trade 2024) ................................................. *passim.*

*MacLean -Fogg Co. v. United States*,
100 F. Supp. 3d 1349 (Ct. Int'l Trade 2015) ............................................................7

## **Statutes**

19 U.S.C. § 1516a(b)(1)(B)(i).......................................................................................7

19 U.S.C. § 1671(a)(1) ...................................................................................................3

28 U.S.C. § 2637 .............................................................................................................9

## **Regulations**

19 C.F.R. § 351.214(k) ..................................................................................................10

19 C.F.R. § 351.224(g)(2)..............................................................................................4

19 C.F.R. § 351.523(a)....................................................................................................3

19 C.F.R. § 351.525(b)(6)(i) ..........................................................................................7

19 C.F.R. § 351.525(b)(6)(ii)-(v)....................................................................................7

19 C.F.R. § 351.525(c).......................................................................................... *passim.*

## **Administrative Determinations**

*Certain Softwood Lumber Products from Canada,*
83 Fed. Reg. 347 (Dep't of Commerce Jan. 3, 2018)(order) ........................................2

*Certain Softwood Lumber Products from Canada*,
83 Fed. Reg. 9,833 (Dep't of Commerce Mar. 8, 2018)................................................2

*Certain Softwood Lumber Products from Canada*,
84 Fed. Reg. 1,051 (Dep't of Commerce Feb. 1, 2019) ................................................2

*Certain Softwood Lumber Products from Canada*,
84 Fed. Reg. 32,121 (Dep't of Commerce July 5, 2019)................................................................2

## IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE:  THE HONORABLE MARK A. BARNETT, CHIEF JUDGE

| | |
|---|---|
| COMMITTEE OVERSEEING ACTION FOR LUMBER INTERNATIONAL TRADE INVESTIGATIONS OR NEGOTIATIONS, | ) ) ) ) |
| Plaintiff, | ) ) |
| and | ) ) |
| FONTAINE INC., ET AL., | ) ) |
| Consolidated Plaintiffs, | ) ) |
| v. | ) ) |
| UNITED STATES, | ) ) |
| Defendant, | ) ) |
| and | ) ) |
| FONTAINE INC., ET AL., | ) ) |
| Defendant-Intervenors. | ) ) |

Consol. Court No. 19-00122

## <u>DEFENDANT'S RESPONSE TO COMMENTS ON REMAND REDETERMINATION</u>

Defendant, the United States, respectfully submits this response to comments filed by plaintiff, Committee Overseeing Action for Lumber International Trade Investigations or Negotiations (Plaintiff or COALITION), ECF No. 257 (Pl. Remand Comments), on the final remand redetermination, ECF No. 255 (Final Remand) issued by the Department of Commerce (Commerce) pursuant to *Coalition Overseeing Action for Lumber International Trade Investigations or Negotiations v. United States*, 701 F. Supp. 3d 1334 (Ct. Int'l Trade 2024) (Remand Order), sustaining in part and remanding in part the final results of Commerce's

countervailing duty expedited review of certain softwood lumber products (lumber) from Canada. *See Certain Softwood Lumber Products From Canada*, 84 Fed. Reg. 32,121 (Dep't of Commerce July 5, 2019) (final results of CVD expedited review) (Final Results) (P.R. 759) and accompanying Issues and Decision Memorandum (IDM) (P.R. 749).

## BACKGROUND

On January 3, 2018, Commerce published a countervailing duty order covering lumber from Canada. *See Certain Softwood Lumber Products From Canada*, 83 Fed. Reg. 347 (Dep't of Commerce Jan. 3, 2018) (Amended Final Affirmative Countervailing Duty Determination and Countervailing Duty Order) (CVD Order). On March 8, 2018, in response to requests filed by certain Canadian producers and exporters, Commerce initiated an expedited review of the CVD Order pursuant to 19 C.F.R. § 351.214(k). *See Certain Softwood Lumber Products From Canada*, 83 Fed. Reg. 9,833 (Dep't of Commerce 2018) (Initiation of Expedited Review of the CVD Order) (Initiation Notice) (P.R. 94). The companies subject to the expedited review were not selected as mandatory or voluntary respondents in the CVD investigation and were subject to the all-others rate of 14.19%. *See* CVD Order, 83 Fed. Reg. at 348. The period of review for the expedited review was the same as that for the CVD investigation, which is, January 1, 2015, through December 31, 2015. *See* Initiation Notice, 83 Fed. Reg. at 9,833. Commerce published the preliminary results of the expedited review on February 1, 2019. *See Certain Softwood Lumber Products From Canada*, 84 Fed. Reg. 1,051 (Dep't of Commerce 2019) (Preliminary Results of Countervailing Duty Expedited Review) (Preliminary Results) (P.R. 702). On July 5, 2019, Commerce published the Final Results covering eight companies and their cross-owned affiliates. *See* Final Results, 84 Fed. Reg. at 32,122.

In the Final Results, Commerce explained that most of the respondents in the expedited review had either manufactured lumber from logs from unaffiliated suppliers and/or performed further manufacturing on lumber acquired from unaffiliated suppliers.  Final Results at 38. Commerce found that, although 19 U.S.C. § 1671(a)(1) directs it to account for all countervailable subsidies provided "with respect to the manufacture, production, or export of a class or kind of merchandise imported . . . into the United States," that does not mean that it may presume the pass through of benefits received by unaffiliated input suppliers.  Instead, Commerce found that 19 C.F.R. § 351.523(a) sets out the requirements that the petitioner must allege in order for Commerce to investigate upstream subsidies, *i.e.*, subsidies received by unaffiliated input suppliers.  *Id.*  Because the petitioner did not submit an upstream subsidy allegation, Commerce did not investigate upstream subsidies for the Final Results.  *Id.*

 With respect to the COALITION's argument concerning cumulating benefits under the trading company regulation (19 C.F.R. § 351.525(c)), Commerce stated that it was unable to conduct such an analysis because the record did not contain information pertaining to the subsidies that the unaffiliated Canadian lumber suppliers had received.  *Id.* at 38-39.  Commerce also stated that it had declined to examine subsidies provided to unaffiliated producers of lumber that was resold by the respondents because the resales accounting for a small percentage of the respondent's overall sales.  *Id.*

Relevant here, in the Final Results, Commerce calculated a *de minimis* overall subsidy rate for Les Produits Forestiers D&G Ltée (D&G) and its cross-owned affiliates, Le Groupe Gesco-Star Ltée, Les Produits Forestiers Portbec Ltée (Portbec), and Les Produits Forestiers Startrees Ltée, and excluded these companies from the CVD Order.  The COALITION initiated litigation alleging, among other things, that Commerce's attribution methodology was unlawful.

3

On April 22, 2024, the Court issued its Remand Order.  Therein, the Court explained that Commerce had failed to engage with the COALITION's arguments regarding attributing subsidies on lumber acquired from unaffiliated suppliers.  Remand Order, 701 F. Supp. 3d at 1353-54.  Also, the Court held that Commerce did not address whether it was appropriate to disregard any subsidies that the respondents' suppliers may have received based upon the asserted small volumes when accounting for such subsidies might otherwise be the difference between zero or *de minimis* subsidy rates and subsidy rates above *de minimis*.  *Id.*  As the Court explained, "Commerce has recognized that otherwise small changes may nevertheless be considered significant when they can cause such a change in the subsidy rate." *Id.* at 1354 (citing 19 C.F.R. § 351.224(g)(2) (defining a significant ministerial error to include one that would make the difference between a *de minimis* rate and a non-*de minimis* rate, or vice versa.)).  Thus, the Court ordered Commerce to "reconsider or further explain its determination not to account for subsidies received by suppliers of lumber to the {Final Results} respondents."  Remand Order, 701 F. Supp. 3d at 1362-63.  The Court further remanded for Commerce to "reconsider or further explain its determination to use Fontaine's FY 2014 tax returns to perform benefit calculations for the 2015 POR." *Id.* at 1363.

Following the Remand Order, on June 5, 2024, Commerce issued a questionnaire to D&G and Portbec seeking information regarding the volume and value of lumber sourced by the respondents from affiliated Canadian suppliers, unaffiliated Canadian suppliers, and U.S. suppliers.  Final Remand at 8.  Commerce also requested that D&G and Portbec report the volume and value of lumber sourced from unaffiliated Canadian suppliers that was remanufactured and that was resold.  D&G and Portbec provided the requested information on

June 18, 2024.  *See* D&G and Portbec Supplemental Questionnaire Response, dated June 18, 2024, at pdf p. 7 (Remand P.R. 2, Remand C.R. 2).

Commerce issued its draft remand redetermination on July 16, 2024.  *See* Draft Remand Redetermination, dated July 16, 2024 at 1 (Draft Remand) (Remand P.R. 3).  Therein, Commerce reconsidered the relationship between D&G and Portbec and their unaffiliated Canadian suppliers of lumber and determined that it was appropriate to account for the subsidy benefits provided to the unaffiliated Canadian suppliers of lumber during the period of review using 19 C.F.R. § 351.525(c).  *Id.* at 9.  Specifically, for lumber purchased from unaffiliated Canadian suppliers that D&G and Portbec either had further processed or resold directly to the United States, Commerce determined that the those situations were akin to the relationship between a producer and its trading company under 19 C.F.R. § 351.525(c) because respondents either conducted minor processing on the purchased "rough-hewn" lumber, which itself is subject merchandise, or in the case of Portbec, resold the lumber directly without further processing.  Commerce then determined that it would cumulate the benefits from subsidies provided to D&G and Portbec with benefits from subsidies provided to their unaffiliated Canadian lumber suppliers.  Draft Remand at 9 (Remand P.R. 3).

Although Commerce did not have complete subsidy usage information from all unaffiliated Canadian lumber suppliers from whom D&G and Portbec had sourced lumber, as the Court noted in the Remand Order, the record contains period of review-specific subsidy rates for all producers in Canada, via either a company-specific rate or the all-others rate.  Remand Order, 701 F. Supp. 3d at 1353; *see also* Final Remand at 9.  Thus, to conduct the necessary cumulation calculation under the trading company rule, Commerce utilized the cash deposit rate applicable to those suppliers from the investigation in a manner similar to the attribution of a trading

company's subsidies to an unaffiliated producer.  *See* Final Remand at 10 (citing Final Results of Redetermination Calculations for D&G and Portbec, dated July 16, 2024 (D&G/Portbec Final Calculations) (Remand P.R. 13, Remand C.R. 12)).

In its comments on the Draft Remand, the COALITION argued that Commerce had calculated D&G's and Portbec's subsidy rate incorrectly.  *See* COALITION Comments on Draft Remand, dated July 25, 2024 (Remand P.R. 11, Remand C.R. 9); *see also* Final Remand at 18. Specifically, the COALITION argued that "Commerce's calculation 'double-weighted' the value of Portbec's and D&G's purchases of unaffiliated suppliers' lumber."  Final Remand at 18. Commerce released the Final Remand on September 10, 2024.  *Id.* at 23.  In the Final Remand, Commerce disagreed with the COALITION that it had calculated D&G and Portbec's subsidy rate incorrectly, finding that its methodology best reflects the portion of the unaffiliated lumber producers' subsidies that D&G and Portbec each had received based on their own particular quantity of lumber purchased and sales made during the period of review.  *Id.* at 19 (citing D&G/Portbec Final Calculations (Remand C.R. 12) and Memorandum, Draft Results of Redetermination Calculations Pertaining to D&G/Portbec (D&G/Portbec Draft Calculations) (Remand P.R. 4, Remand C.R. 3)).  Specifically, Commerce applied a weighted methodology that reflects D&G's and Portbec's lumber purchases from unaffiliated suppliers in relation to their total combined sales (minus inter-company sales), and then multiplied those shares by the all-others rate (14.19%) to calculate a single subsidy rate for the unaffiliated lumber producers attributable to D&G and Portbec.  Final Remand at 19.  This subsidy rate calculated for the unaffiliated producers was then added to D&G's and Portbec's subsidy rate determined in the Final Results.  *Id.*

# ARGUMENT

## I.    Standard Of Review

In remand proceedings, the Court will sustain Commerce's countervailing duty determinations if they are "in accordance with the remand order," and are "supported by substantial evidence, and are otherwise in accordance with law."  *See MacLean-Fogg Co. v. United States*, 100 F. Supp. 3d 1349, 1355 (Ct. Int'l Trade 2015) (citing 19 U.S.C. § 1516a(b)(1)(B)(i)).

## II.    Commerce Correctly Calculated The Amount Of Supplier Subsidies Attributable To D&G And Portbec

Commerce's methodology for calculating a subsidy rate for the unaffiliated lumber producers attributable to D&G and Portbec is based on substantial evidence, is otherwise in accordance with law, and should be sustained.

In accordance with 19 C.F.R. § 351.525(b)(6)(i), Commerce normally attributes a subsidy to the products produced by the company that received the subsidy.  However, 19 C.F.R. § 351.525(b)(6)(ii)-(v) provides additional rules for the attribution of subsidies received by respondents with cross-owned affiliates.  Subsidies to the following types of cross-owned affiliates are covered in these additional attribution rules:  (ii) producers of the subject merchandise; (iii) holding companies or parent companies; (iv) producers of an input that is primarily dedicated to the production of the downstream product; or (v) an affiliate producing non-subject merchandise that otherwise transfers a subsidy to a respondent.  Further, 19 C.F.R. § 351.525(c) provides that benefits from subsidies provided to a trading company that exports subject merchandise shall be cumulated with benefits from subsidies provided to the firm producing the subject merchandise that is sold through the trading company, regardless of affiliation.

In accordance with this framework, Commerce reconsidered the relationship between D&G and Portbec with their unaffiliated Canadian suppliers of lumber and found it appropriate to account for subsidies provided to the unaffiliated Canadian suppliers of lumber during the POR utilizing 19 C.F.R. § 351.525(c). Final Remand at 9-10.[1] Specifically, for the lumber purchased from unaffiliated Canadian suppliers that D&G and Portbec either further processed or resold directly to the United States, Commerce determined that it would be most appropriate to consider this situation as a relationship between a producer and its trading company under 19 C.F.R. § 351.525(c) because the respondents either conducted minor processing on the purchased rough-hewn lumber, which itself is subject merchandise, or in the case of Portbec, resold the lumber directly without further processing. Final Remand at 9-10. Thus, Commerce cumulated the benefits from subsidies provided to D&G and Portbec with benefits provided to their unaffiliated Canadian lumber suppliers. As noted above, to conduct the necessary cumulation calculation under the trading company rule, Commerce used the cash deposit rate applicable to those suppliers from the investigation in a manner similar to the attribution of a trading company's subsidies to an unaffiliated producer. *Id.*

In its comments on Commerce's Final Remand, the COALITION argues that, although Commerce correctly determined that it must account for the subsidies provided to unaffiliated

---

[1] In this section, Commerce relied upon D&G's Letter, "Responses of Les Produits Forestiers D&G Ltee, Le Groupe Gesco-Star Ltee, Les Produits Forestiers Portbec Ltee and Les Produits Forestiers Startrees Ltee to Countervailing Duty Questionnaire," dated April 12, 2018 (D&G's April 12 Response), at Appendix DG-1, (P.R. 219); *see also* Portbec's Letter, "Response of Les Produits Forestiers Portbec Ltee to Countervailing Duty Questionnaire," dated April 12, 2018, at pdf page 3 (Portbec April 12 Response) (P.R. 218, C.R. 70); and Rustique's Letter, "Mobilier Rustique (Beauce) Inc. April 12 Questionnaire Response," dated April 12, 2018 (Rustique's April 12 Response), at Exh. A (P.R. 238, C.R. 114); D&G/Portbec Final Calculations (Remand C.R. 13); Memorandum, "Draft Results of Redetermination Calculations for Mobilier Rustique (Beauce) Inc.," dated July 15, 2024, Remand P.R. 5, Remand C.R. 5).

suppliers' lumber, it chose the incorrect methodology to calculate D&G and Portbec's subsidy rate. *See* Pl. Remand Comments at 4-7. Specifically, the COALITION maintains that there are two general approaches that Commerce could have used to calculate a single subsidy rate for the subsidies bestowed upon D&G and Portbec's unaffiliated suppliers' lumber:

> "**Approach A**: Calculate separate subsidy rates for D&G and Portbec as if the two companies were independent and separate from one another, using each company's total sales as the denominator and that company's supplier lumber purchases (multiplied by 14.19 percent) as the numerator. Add up these two subsidy rates after weighting them based on the each company's sales level in relation to total sales of the two companies combined.

> **Approach B**: Calculate one subsidy rate for D&G and Portbec using the two companies' combined total sales as the denominator and their combined supplier lumber purchases (multiplied by 14.19 percent) as the numerator. By using the two companies' combined total sales as the denominator, this approach accounts for the different levels of sales of each company."

Pl. Remand Comments at 4-5. As discussed below, however, each of these approaches is flawed.

First, although the COALITION proposed Approach B in its comments on the Draft Remand, it never proposed Approach A as a methodology that Commerce could have used to calculate D&G and Porbec's subsidy rate. *See* COALITION Comments on Draft Remand at 6 ("Instead, the Department should have calculated Portbec's (and D&G's) 'Unaffiliated Lumber Purchases % of Total Sales' by dividing Portbec's (and D&G's) purchase of unaffiliated lumber over Portbec and D&G's total sales."). Thus, by failing to exhaust its administrative remedies, the COALITION has forfeited its ability to raise these arguments before this Court. Remand Order, 701 F. Supp. at 1356 (discussing the requirement of administrative exhaustion for a separate issue).

"By statute, {this Court} shall, where appropriate, require the exhaustion of administrative remedies." *Boomerang Tube LLC v. United States*, 856 F.3d 908, 912 (Fed. Cir 2017) (citing 28 U.S.C. § 2637(d)). In *Boomerang*, the United States Court of Appeals for the

Federal Circuit explained that this statutory mandate "indicates a congressional intent that, absent a strong contrary reason, the court should insist that parties exhaust their remedies before the pertinent administrative agencies." *Id.* at 912-13 (citations omitted).  By failing to raise Approach A in its comments on Commerce's Draft Remand, the COALITION failed to exhaust its administrative remedies before Commerce.  Thus, the Court should reject the COALITION's attempt to raise new arguments before this Court.

Regardless, neither Approach A nor Approach B reflect D&G's and Portbec's particular business activities (purchases and sales), and both approaches inaccurately attribute subsidies from unaffiliated suppliers.  With respect to Approach A ("Calculate separate subsidy rates for D&G and Portbec as if the two companies were independent and separate from one another"), this argument disregards the uncontested finding that D&G and Portbec are cross-owned producers of softwood lumber.  Final Remand at 2; Draft Remand at 2 (Remand P.R. 3); *see also* Pl. Remand Comments at 4.  Commerce's practice for cross-owned companies is to combine their total sales (minus inter-company sales) to calculate a single subsidy rate for the cross-owned companies.  *See* Preliminary Results, and accompanying PDM at 10 (unchanged in Final Results) (describing attribution of benefits for D&G under 19 C.F.R. § 351.525(b)(6)(ii)).

With respect to Approach B ("Calculate one subsidy rate for D&G and Portbec using the two companies' combined total sales as the denominator and their combined supplier lumber purchases (multiplied by 14.19%) as the numerator"), this approach is flawed because it treats D&G and Portbec the same and assumes that both companies had similar purchase values of lumber from unaffiliated suppliers, and that both companies had similar sales during the POR. Pl. Remand Comments at 5; *see also* Final Remand at 18-19.  The record shows that D&G and Portbec purchased meaningfully different volumes of lumber from unaffiliated producers and

had notably different sales levels for 2015.  Final Remand at 18-19; *see also* D&G and Portbec

Supplemental Questionnaire Response, at pdf p. 7 (Remand C.R. 2).  Therefore, Commerce

determined that it was necessary to examine each company's purchases of lumber from

unaffiliated suppliers in relation to their portion of combined total sales.  *Id.* at 19 (citing

D&G/Portbec Draft Calculations (Remand C.R. 3) and D&G Portbec Final Calculations

Memorandum (Remand C.R. 12).

 As Commerce explained on remand, this methodology best reflects the portion of the

unaffiliated lumber producers' subsidies that D&G and Portbec received based on the quantity of

lumber they each purchased and the sales they made during the period of review.  Final Remand

at 19.  The subsidy rate for the unaffiliated producers is then added to D&G and Portbec's

subsidy rate determined in the Final Results, which remains *de minimis*.  *Id.*  This methodology

accounts for the fact that, while D&G is a much larger company than Portbec in terms of sales, it

purchases a relatively small amount of lumber from unaffiliated suppliers, while Portbec

purchased a significant amount of lumber from unaffiliated suppliers and has a relatively small

amount of sales.  *See* D&G/Portbec Draft Remand Calcs (Remand C.R. 3).  Commerce did not

"double-weight" the value of Portbec and D&G's purchases of unaffiliated suppliers' lumber, as

the COALITION in correctly asserts, it weighted them relative to their levels of sales and

purchases.  *Id.*; *see also* Pl. Remand Comments at 7, n. 3.  In contrast, the COALITION's

Approach B overstates the subsidization of the unaffiliated suppliers because it gives equal

weight to the lumber purchases by D&G and Portbec.  Pl. Remand Comments at 5.  By giving

equal weight to D&G and Portbec in the calculation, the share of purchases by Portbec, relative

to its total sales, is inflated.  To account for this, Commerce appropriately applied a weighted

methodology in the Final Remand where it calculated the percentage of D&G's and Portbec's

purchases from unaffiliated suppliers in relation to the total combined total sales (minus inter-company sales).  *See* D&G and Portbec Draft Remand Calcs.  This approach was based on substantial evidence, is otherwise in accordance with law, and should be sustained.

### III.    Commerce Complied With The Court's Remand Order

In the Remand Order, the Court held that Commerce must "reconsider or further explain its determination not to account for subsidies received by suppliers of lumber to the {Final Results} respondents"  Remand Order, 701 F. Supp. 3d at 1362-63.  As demonstrated above and in the Final Remand, Commerce fully complied with the Court's instructions in the Remand Order.  Although the COALITION disagrees with the methodology employed in Commerce's calculations in the Final Remand, it does not contend that Commerce failed to comply with the Court's instructions.  *See generally* Pl. Remand Comments.

Also, the Court ordered Commerce to "reconsider or further explain its determination to use Fontaine's FY 2014 tax returns to perform benefit calculations for the 2015 {period of review}."  Remand Order, 701 F. Supp. 3d at 1362-63.   In accordance with the Court's order, Commerce reconsidered its determination that Fontaine's FY 2014 tax return is the appropriate return on which to calculate the tax benefit that Fontaine received during the period of review.  Final Remand at 19-22.  Commerce ultimately determined that the record does not support that 2015 was the year in which Fontaine was required to pay its taxes in relation to the FY2014 tax return.  *Id.*  Thus, instead of using Fontaine's FY 2014 tax return to calculate the benefits that Fontaine received from the tax programs at issue, Commerce instead used Fontaine's FY 2015 tax return.  No party filed comments with the Court contesting this finding, and Commerce's remand results should be sustained with respect to this issue because they comply with the Court's Remand Order.

## **CONCLUSION**

For these reasons, we respectfully request that the Court sustain Commerce's Final

Remand and enter judgment for the United States.

<div style="margin-left: 50%;">

Respectfully submitted,


BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

/s/ Patricia M. McCarthy
PATRICIA M. McCARTHY
Director

/s/ Elizabeth A. Speck

</div>

OF COUNSEL:

IAN A. McINERNEY
Senior Attorney
JESUS N. SAENZ
Attorney
Office of the Chief Counsel
  For Trade Enforcement and Compliance
U.S. Department of Commerce
Washington, D.C.

November 15, 2024

<div style="margin-left: 50%;">

ELIZABETH A. SPECK
Senior Trial Counsel
Commercial Litigation Branch
U.S. Department of Justice
Civil Division
P.O. Box 480
Ben Franklin Station
Washington, D.C. 20044
Tel:  (202) 307-0369
Email:  Elizabeth.Speck@usdoj.gov

*Attorneys for Defendant*

</div>

## **CERTIFICATE OF COMPLIANCE**

Pursuant to Rule 2(b) of the Court's Standard Chambers Procedures, defendant's counsel certifies that this motion complies with the Court's type-volume limitation rules. According to the word count calculated by the word processing system with which the brief was prepared, the public version of the brief contains a total of 3,804 words.

/s/ Elizabeth Speck

November 15, 2024

14

**IN THE UNITED STATES COURT OF INTERNATIONAL TRADE**

BEFORE THE HONORABLE MARK A. BARNETT, CHIEF JUDGE

| | |
|---|---|
| _____ ) | |
| COMMITTEE OVERSEEING ACTION ) | |
| FOR LUMBER INTERATIONAL TRADE ) | |
| INVESTIGATIONS OR NEGOTIATIONS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| and ) | |
| ) | |
| FONTAINE INC., ET. AL., ) | |
| ) | |
| Consolidated Plaintiffs, ) | |
| ) | |
| v. ) | Consol. Court No. 19-00122 |
| ) | |
| UNITED STATES, ) | |
| ) | |
| Defendant, ) | |
| and ) | |
| ) | |
| FONTAINE INC., ET AL., ) | |
| ) | |
| Defendants-Intervenors. ) | |
| _____ ) | |

<u>ORDER</u>

Upon consideration of plaintiff's comments regarding the Department of Commerce's (Commerce) Final Results of Redetermination Pursuant to Court Remand, dated September 10, 2024, ECF No. 255-1 (Remand Redetermination), defendant's response thereto, and all other pertinent papers, it is hereby

ORDERED that Commerce's Remand Redetermination is sustained in all respects; and it is further

ORDERED that judgment will enter in favor of the United States.


DATED: _____, 2024          _____
          New York, New York                              CHIEF JUDGE