IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE:  HONORABLE MARK A. BARNETT, CHIEF JUDGE

| | |
|---|---|
| COMMITTEE OVERSEEING ACTION FOR LUMBER INTERNATIONAL TRADE INVESTIGATIONS OR NEGOTIATIONS, *ET AL.*, | ) ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) ) |
| UNITED STATES, | ) ) |
| Defendant. | ) ) ) |

Consol. Ct. No. 19-00122

**DEFENDANT'S RESPONSE TO THE REQUESTS FOR PARTIAL LIQUIDATION**

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

PATRICIA M. McCARTHY
Director

STEPHEN C. TOSINI
Senior Trial Counsel
Department of Justice
Civil Division, Commercial Litigation Branch
PO Box 480, Ben Franklin Station
Washington, D.C. 20044
tel.: (202) 616-5196
email: stephen.tosini@usdoj.gov

December 4, 2024            Attorneys for Defendant

IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE:  HONORABLE MARK A. BARNETT, CHIEF JUDGE

| | |
|---|---|
| _____ ) | |
| COMMITTEE OVERSEEING ACTION FOR LUMBER ) | |
| INTERNATIONAL TRADE INVESTIGATIONS OR ) | |
| NEGOTIATIONS, *ET AL*., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Consol. Ct. No. 19-00122 |
| ) | |
| UNITED STATES, ) | |
| ) | |
| Defendant. ) | |
| _____) | |

## ORDER

On consideration of the "motion to explicitly state obligation to refund countervailing duty chase deposits established by slip op 23-163," ECF No. 262, it is hereby

ORDERED the motion is denied.


Dated: _____                        _____
        New York, NY                                        CHIEF JUDGE

## TABLE OF CONTENTS

**PAGE(s)**

BACKGROUND ...................................................................................................................2

    I.      Countervailing Duty Order And Expedited Review.................................................2

    II.     The Court's First Remand ........................................................................................3

    III.    First Remand Results ...............................................................................................4

    IV.    Appeal .....................................................................................................................5

    V.     Quebec Respondents' Motion To Reinstate Exclusion, The Court's Decision Granting The Requests *Verbatim* And The Quebec Respondents' Subsequent Motion To The Court To Correct The Court's Own Alleged Error ..............................................................................5

ARGUMENT.......................................................................................................................7

    I.      Standards Of Review ...............................................................................................7

         A.     Rule 60(a).....................................................................................................7

         B.     Rule 60(b)(5)...............................................................................................7

    II.     There Was No Clerical Error Warranting Changes To The *COALITION VI* Under Rule 60(a).............................................................................8

    III.    There Was No Significant Change In Facts Or Law Warranting Overturning *COALITION VI* Under Rule 60(b)(5)...............................................10

CONCLUSION....................................................................................................................14

## <u>TABLE OF AUTHORITIES</u>

**CASES**                                                                    **PAGES**

*Agro Dutch Indus. Ltd. v. United States*,
  589 F.3d 1187 (Fed. Cir. 2009)...............................................................8

*Allied Materials Corp. v. Superior Prods. Co.*,
  620 F.2d 224 (10th Cir.1980)...................................................................7

*Aspects Furniture Int'l, Inc. v. United States*,
  42 F.4th 1366 (Fed. Cir. 2022)................................................................9

*Borusan Mannesmann Boru Sanayi v. Ticaret A.S.*,
  578 F. Supp. 3d 1333 (Ct. Int'l Trade 2022)............................................9

*Horne v. Flores*,
  557 U.S. 433 (2009) ................................................................................8

*Invenergy Renewables LLC v. United States*,
  450 F. Supp. 3d 1347 (Ct. Int'l Trade 2020)..........................................11

*McNickle v. Bankers Life & Cas. Co.*,
  888 F.2d 678 (10th Cir. 1989).................................................................7

*Patton v. Sec'y of Health and Human Servs.*,
  25 F.3d 1021 (Fed.Cir.1994)...................................................................7

*Rufo v. Inmates of Suffolk County Jail*,
  502 U.S. 367 (1992) ................................................................................8

*Sampson v. Murray*,
  415 U.S. 61 (1974) ................................................................................11

*Shanghai Tainai Bearing Co. v. United States*,
  582 F. Supp. 3d 1299 (Ct. Int'l Trade 2022)..........................................11

*Sprint Commc'ns Co. v. CAT Commc'ns Int'l Inc.*,
  335 F.3d 235 (3d Cir. 2003)...................................................................11

*United States v. Bealey*,
  978 F.2d 696 (Fed.Cir.1992)...................................................................7

**Administrative Decisions**

*Certain Softwood Lumber Products from Canada,*
  *83 Fed. Reg. 347 (Jan. 3, 2018)* ............................................................................ *4, 5*

*Certain Softwood Lumber Products from Canada,*
  84 Fed. Reg. 32,121 (Jul. 5, 2019) ........................................................................ 4

*Certain Softwood Lumber Products From Canada:*
  *Notice of Court Decision Not in Harmony With the Final Results of Countervailing Duty*
  *Expedited Review; Notice of Rescission of Final Results of Expedited Review;*
  *Notice of Amended Cash Deposit Rates,*
    86 Fed. Reg. 48,396 (Aug. 30, 2021) .................................................................. 8

**Statutes**

6 U.S.C. § 211 ................................................................................................................ 13

19 U.S.C. § 3 .................................................................................................................... 9

19 U.S.C. § 1505(b) ........................................................................................................ 13

19 U.S.C. § 1516a(c)(1), (e) .......................................................................................... 9

19 U.S.C. § 1520 ........................................................................................................ *passim*

19 U.S.C. § 3511 .............................................................................................................. 4

19 U.S.C. § 3513(a) .................................................................................................... *passim*

19 U.S.C. § 1516a(c)(1) .................................................................................................. 9

19 U.S.C. § 1671d(c) ...................................................................................................... 4

19 U.S.C. § 1675 .............................................................................................................. 4

19 U.S.C. § 1677f-1(e) .................................................................................................... 5

**Regulations**

19 C.F.R. § 24.36(a)(1)(ii).................................................................................................13

19 C.F.R. § 159.1 ...........................................................................................................9

19 C.F.R. § 351.212(b)....................................................................................................9

19 C.F.R. § 351.214(k)..............................................................................................*passim*

UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE:  THE HONORABLE MARK A. BARNETT, CHIEF JUDGE

| | |
|---|---|
| _____ ) | |
| COMMITTEE OVERSEEING ACTION FOR ) | |
| LUMBER INTERNATIONAL TRADE ) | |
| INVESTIGATIONS OR NEGOTIATIONS, ) | |
| ) | |
|      Plaintiff, ) | |
| ) | |
|      v. ) | |
| ) | Court No. 19-00122 |
| UNITED STATES, ) | |
| ) | |
|      Defendant, ) | |
| ) | |
|      and ) | |
| ) | |
| FONTAINE, INC., *et al.,* ) | |
| ) | |
|      Defendant-Intervenors. ) | |
| _____ ) | |

**DEFENDANT'S RESPONSE TO THE QUEBEC RESPONDENTS' MOTION TO EXPLICITLY STATE OBLIGATION TO REFUND COUNTERVAILING DUTY CASH DEPOSITS**

Defendant, the United States, respectfully responds to the "motion to explicitly state obligation to refund countervailing duty chase deposits established by slip op 23-163," ECF No. 262 (Mot.), filed by defendant-intervenors, Scierie Alexandre Lemay & Fils Inc., North American Forest Products Ltd, Marcel Lauzon Inc. and Les Produits Forestiers D&G Ltée (collectively the Quebec Respondents).  The Quebec Respondents identify no authority that compels pre-liquidation partial refunds of cash deposits and, indeed, their assertion amounts to an un-administrable requirement that U.S. Customs and Border Protection (CBP) retroactively refund cash deposits in response to interlocutory decisions.  Indeed, to this end, the Quebec Respondents contend that it was the Court that committed a clerical error when it issued

*verbatim* the proposed order that they sought.  The Court should reject this attempt at an end-run around the Court's own decision and the clear and unambiguous rule that liquidation is the *final* assessment of all duties, taxes, and fees.

## BACKGROUND

### I.    Countervailing Duty Order And Expedited Review

Commerce published a countervailing duty (CVD) order covering softwood lumber from Canada.  *Certain Softwood Lumber Products from Canada,* 83 Fed. Reg. 347-01 (Jan. 3, 2018) (amended affirm. CVD determ. and Order).  In response to certain Canadian producers' and exporters' requests, Commerce initiated an expedited review under 19 C.F.R. § 351.214(k).  *Certain Softwood Lumber Products from Canada,* 84 Fed. Reg. 32,121 (July 5, 2019) (final results of expedited review) (Final Results), P.R. 759,[1] and accompanying Issues and Decision Memorandum (IDM), P.R. 749.  There, Commerce explained that it had conducted the expedited review under its regulations at 19 C.F.R. § 351.214(k), promulgated pursuant to section 103(a) of the Uruguay Rounds Agreement Act (URAA).  IDM at 19 (citing 19 U.S.C. § 3513(a)).  Commerce explained that Article 19.3 of the World Trade Organization (WTO) Agreement on Subsidies and Countervailing Measures (SCM Agreement) expressly provides for expedited reviews of non-investigated exporters or producers in CVD proceedings and that the Statement of Administrative Action (SAA) accompanying the URAA states that "Article 19.3 of the Subsidies Agreement provides that any exporter whose exports are subject to a CVD order, but which was not actually investigated for reasons other than a refusal to cooperate, shall be entitled to an expedited review to establish an individual CVD rate for that exporter."  *Id.* at 18 (citing SAA, H.R. Doc. 103-316, Vol. I at 870 (1994), reprinted at 1994 U.S.C.C.A.N. 4040, 4199).

---

[1] "P.R." and "P.R.R" refer to public documents on the expedited review and remand records.

Commerce noted that, although the SAA provides that "{s}everal changes must be made to the Act to implement the requirements of Article 19.3 of the Subsidies Agreement," the URAA did not implement a specific provision for the conduct of CVD expedited reviews in the Tariff Act of 1930, as amended. *Id.* at 18-19 (citing SAA at 941). Commerce concluded that under section 3513(a), Congress had delegated authority to promulgate regulations to ensure that remaining obligations under the URAA that were not set forth in a particular provision were set forth in Commerce's regulations. *Id.* at 19. Section 103(a) of the URAA provides that "appropriate officers of the United States Government may issue such regulations, as may be necessary to ensure that any provision of this Act, or amendment made by this Act, . . . is appropriately implemented . . . ." *Id.* at 19 (citing 19 U.S.C. § 3513(a)). Commerce reasoned that it was an "appropriate officer{} of the United States Government" with the authority to promulgate the expedited review regulations at 19 C.F.R. § 351.214(k) to ensure that all provisions of U.S. law are consistent with U.S. obligations under the URAA. *Id.* at 19.

After determining that it had statutory authority to conduct expedited reviews, Commerce found that among the eight examined companies, three had above-*de minimis* subsidy rates and were entitled to individual CVD deposit rates, and five had *de minimis* subsidy rates and thus were excluded from the order. *Final Results*, 84 Fed. Reg. at 32,121.

## II.    The Court's First Remand

In response to COALITION's challenge, the Court held that Commerce had exceeded its rulemaking authority by promulgating the expedited review regulation. *Comm. Overseeing Action for Lumber Int'l Trade Investigations or Negots. v. United States*, 483 F. Supp. 3d 1253, 1267 (Ct. Int'l Trade 2020) (*COALITION II*). The Court reasoned that section 3513(a) only authorizes Commerce to issue regulations for enacted provisions of the URAA and, because the

URAA lacks any provision explicitly authorizing expedited reviews, that subsection cannot be the basis of Commerce's authority. *Id.* at 1269. The Court further held that, because the SAA does not propose any actions for the implementation of expedited reviews, the SAA does not indicate legislative intent that Commerce conduct expedited reviews. *Id.*

During this litigation, the parties had cited several other potential authorities for Commerce's administration of expedited reviews and promulgation of 19 C.F.R. § 351.214(k), including 19 U.S.C. §§ 1671d(c), 1675(a), 1675 (b), 1677f-1(e), 3511, and 3513(b); and Commerce's inherent authority to reconsider previously closed proceedings – in this case, the investigation. ECF No. 111 at 6-14; ECF No. 120 at 4-27. Rather than addressing these alternative authorities *de novo*, the Court remanded for Commerce to either (1) reconsider the statutory basis for section 351.214(k); or (2) take action in conformity with the Court's opinion. *COALITION II*, 483 F. Supp. 3d at 1273. However, with respect to section 3513(b), the Court also held that, because the SAA does not discuss the implementation of expedited reviews, Commerce's regulations at 19 C.F.R. § 351.214(k) are not authorized by that statute, which provides for the issuance of interim regulations necessary or appropriate to carry out any action proposed in the SAA. *COALITION II*, 483 F. Supp. 3d at 1267 (citation omitted). The Court further ordered that 19 C.F.R. § 351.214(k) would remain in effect pending resolution of this case. *Id.* at 1273.

**III.    First Remand Results**

Commerce issued Remand Results in which it determined, consistent with *COALITION II*, that 19 U.S.C. § 3513(a) does not confer authority to conduct expedited reviews, nor did it confer authority to promulgate its regulation, 19 C.F.R. § 351.214(k). ECF No. 173 at 10, 24. The Court sustained the remand results and thus reinstated the countervailing duty order on the

Quebec respondents effective August 28, 2021. *Comm. Overseeing Action for Lumber Int'l Trade Investigations or Negots. v. United States*, 535 F. Supp. 3d 1336, 1348 (Ct. Int'l Trade 2021) (*COALITION IV*), *rev'd and remanded*, 66 F.4th 968 (Fed. Cir. 2023) (*COALITION CAFC*), and motion for relief from judgment granted, 665 F. Supp. 3d 1347 (Ct. Int'l Trade 2023) (*COALITION VI*).

## IV.    Appeal

The Canadian Parties appealed from *COALITION IV*, and the Federal Circuit reversed. The Court found statutory authority for Commerce's conduct of expedited reviews in the "enactment of {19 U.S.C.} § 1677f-1(e) to favor individual-company determinations and the URAA's {Uruguay Round Agreements Act's} grant of regulatory-implementation power to Commerce in {19 U.S.C.} § 3513(a)." *COALITION CAFC*, 66 F.4th at 977. The appellate court thus remanded to the Court for "such further proceedings as required in the consolidated cases." *Id.* at 979.

## V.    Quebec Respondents' Motion To Reinstate Exclusion, The Court's Decision Granting The Requests *Verbatim* And The Quebec Respondents' Subsequent Motion To The Court To Correct The Court's Own Alleged Error

On remand from appeal, the Quebec Respondents filed a motion for reinstatement of their exclusion from the countervailing duty order on softwood lumber from Canada. ECF 222. In their proposed order, to which the Government consented, ECF No. 228 at 2 (not seeking "any changes to the order"), the Quebec respondents included the following request:

> ORDERED that the U.S. Department of Commerce ("Commerce") issue a Timken-like Notice excluding Lemay, MLI, D&G, and NAFP from the countervailing duty order on softwood lumber products from Canada, *Certain Softwood Lumber Products From Canada: Amended Final Affirmative Countervailing Duty Determination and Countervailing Duty Order*, 83 Fed. Reg. 347-01, 348 (Jan. 3, 2018); and it is further

ORDERED that Commerce instruct U.S. Customs and Border Protection ("CBP") to discontinue the suspension of liquidation and the collection of cash deposits of estimated countervailing duties on all shipments of softwood lumber produced and exported by Lemay, MLI, D&G, and NAFP, entered, or withdrawn from warehouse, for consumption on or after August 28, 2021, the effective date of *Certain Softwood Lumber Products From Canada: Notice of Court Decision Not in Harmony With the Final Results of Countervailing Duty Expedited Review; Notice of Rescission of Final Results of Expedited Review; Notice of Amended Cash Deposit Rates*, 86 Fed. Reg. 48,396-01 (Aug. 30, 2021); and it is further

ORDERED that Commerce instruct CBP to liquidate, without regard to countervailing duties, all suspended entries of shipments of softwood lumber produced and exported by Lemay, MLI, D&G, and NAFP.

ECF No. 222 at Order at 1-2.

In *COALITION VI*, the Court granted the request and issued a decision containing the three "ORDERED" paragraphs above *verbatim*. 665 F. Supp. 3d at 1355 (identical but for abbreviations for CBP and Commerce). Commerce complied with that order, in relevant part, by issuing liquidation instructions that directed CBP to "discontinue the suspension of liquidation for all shipments of softwood lumber produced and exported by the producer/exporter combinations identified below, and entered, or withdrawn from warehouse, for consumption on or after 08/28/2021, and liquidate such entries without regard to countervailing duties (*i.e.*, refund all cash deposits)." Attachment A (Commerce's instructions to CBP in Message No. 4018411 (Jan. 18, 2024)), ¶ 2.

Almost a year after *COALITION VI*, the Quebec respondents have now filed a motion seeking pre-liquidation refunds of countervailing duty deposits paid on or after August 28, 2021, through the date that they were re-excluded from the countervailing duty order by operation of *COALITION VI*. ECF No. 262. Despite the fact that the Court issued an order containing the precise language that the Quebec Respondents had requested, they now "move this Court to correct a clerical error or unintended omission in this Court's order" in *COALITION VI*. Mot. at

2.  The Quebec respondents rely on USCIT R. 60(a), which allows the Court to "correct a clerical mistake or a mistake arising from oversight or omission whenever one is found in a judgment, order, or other part of the record."  Alternatively, they request relief under the third clause of  USCIT R. 60(b)(5) contending that the application of this aspect of *COALITION VI* "is no longer equitable."  Mot. at 2-3 (quoting USCIT R. 60(b)(5)).

## ARGUMENT

## I.    Standards Of Review

### A.    Rule 60(a)

"Rule 60(a) affords relief from minor clerical mistakes or errors arising from simple oversight or omission.  *Patton v. Sec'y of Health & Hum. Servs*., 25 F.3d 1021, 1029 (Fed. Cir. 1994) (citing James W. Moore and Jo Deshap Lucas, Moore's Federal Practice ¶ 60.06[1] (2d ed.1993); *United States v. Bealey*, 978 F.2d 696, 699 (Fed. Cir. 1992)).  "It is intended to allow the judgment to 'speak the truth,' but not to substantially alter the rights of the parties thereto." *Id*. (citing 11 Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 2854 (3d ed. 1973 & Supp. 1993)). "Errors of a more substantial nature are more appropriately correctable under subdivision {60}(b)." *Id.*

Put another way, "Rule 60(a) may be relied on to correct what is erroneous because the thing spoken, written, or recorded is not what the person intended to speak, write, or record." *McNickle v. Bankers Life & Cas. Co*., 888 F.2d 678, 682 (10th Cir. 1989) (citing *Allied Materials Corp. v. Superior Prods. Co*., 620 F.2d 224, 226 (10th Cir. 1980)).  "Rule 60(a) may not be used to change something that was deliberately done, even though it was later discovered to be wrong."  *Id*. (cleaned up).

**B.      Rule 60(b)(5)**

"Federal Rule of Civil Procedure 60(b)(5) permits a party to obtain relief from a judgment or order if, among other things, 'applying [the judgment or order] prospectively is no longer equitable.'" *Horne v. Flores*, 557 U.S. 433, 447 (2009) (quoting Fed. R. Civ. P. 60(b)(5)) (bracketing by Court).  "Rule 60(b)(5) may not be used to challenge the legal conclusions on which a prior judgment or order rests, but the Rule provides a means by which a party can ask a court to modify or vacate a judgment or order if 'a significant change either in factual conditions or in law' renders continued enforcement 'detrimental to the public interest.'" *Id.* (quoting *Rufo v. Inmates of Suffolk Cnty. Jail*, 502 U.S. 367, 384 (1992). "The party seeking relief bears the burden of establishing that changed circumstances warrant relief, but once a party carries this burden, a court abuses its discretion when it refuses to modify an injunction or consent decree in light of such changes."  *Id.* (internal citations and quotation marks omitted).

**II.    There Was No Clerical Error Warranting Changes To The *COALITION VI* Under Rule 60(a)**

Contending that the Court erred by adopting their own proposed order, the Quebec Respondents assert that modification is "'needed to comport the order with the original understandings and intent of the court and the parties.'"  Mot. at 9 (quoting *Agro Dutch Indus. Ltd. v. United States*, 589 F.3d 1187, 1192 (Fed. Cir. 2009)).  But the intent of the parties was clear in *COALITION VI*.  Commerce would "instruct CBP to *liquidate*, without regard to countervailing duties, all suspended entries of shipments of softwood lumber produced and exported by Lemay, MLI, D&G, and NAFP."  *COALITION VI*, 665 F. Supp. 3d at 1355 (emphasis added).

The plain language of the order and Commerce's statutory authority set forth the parties' understanding. The Quebec Respondents would receive refunds with interest at the time of *liquidation*.

Rather than directing how CBP handles the ultimate assessment of duties, Commerce is only authorized to instruct CBP to "liquidate" entries of subject merchandise in accordance with its administrative determinations or with Court decisions. 19 U.S.C. §§ 1516a(c)(1), (e). Nothing in the statutes governing the antidumping and countervailing duties even envisions the type of refunds that the Quebec Respondents seek. Rather, Commerce "instruct[s] [CBP] to assess countervailing duties." 19 C.F.R. § 351.212(b).

Once it receives Commerce's instructions, it is CBP alone who "shall direct the superintendence of the collection of the duties on imports as [it] shall judge best." 19 U.S.C. § 3. CBP then assesses countervailing duties by liquidation. *See generally* 19 U.S.C. §§ 1516a(c)(1), (e); 1500. "Liquidation means the *final computation* or ascertainment of duties on entries for consumption or drawback entries." 19 C.F.R. § 159.1 (emphasis added). The Government's understanding necessarily followed the unambiguous regulatory definition. And the Court should likewise possess this understanding in conjunction with the regulation. *See, e.g., Aspects Furniture Int'l, Inc. v. United States*, 42 F.4th 1366, 1372 (Fed. Cir. 2022). Indeed, "[i]nformed importers" also should know that liquidation means "'the *final* computation or ascertainment of duties on entries for consumption or drawback entries.'" *Id.* (quoting 19 C.F.R. § 159.1) (emphasis added).

And the Quebec Respondents concede that there can be no "final computation" of duties owed until conclusion of two pending North American Free Trade Agreement (NAFTA) binational panel proceedings under which liquidation of their entries has been suspended. Mot.

at 12.  Rather, *COALITION VI* merely directs that Commerce treat subject entries the same as it would for any matter where there are parallel antidumping and countervailing duty proceedings.

Under this backdrop, "[d]ecisions by Customs to issue refunds prior to liquidation are covered by 19 U.S.C. § 1520." *Borusan Mannesmann Boru Sanayi v. Ticaret A.S. v. United States*, 578 F. Supp. 3d 1333, 1342 (Ct. Int'l Trade 2022), *appeal dismissed*, No. 2022-2097, 2022 WL 17975024 (Fed. Cir. Dec. 28, 2022).  "Section 1520(a)(4) provides that: 'The Secretary of the Treasury is authorized to refund duties or other receipts . . . [p]rior to the liquidation of an entry or reconciliation, whenever an importer of record declares or it is ascertained that excess duties, fees, charges, or exactions have been deposited or paid.'" *Id.* (quoting 19 U.S.C. § 1520(a)(4)) (bracketing and ellipses by Court).  "Accordingly, § 1520(a)(4) provides Customs with the authority to issue pre-liquidation refunds, but the agency is not required to do so." *Id.*

Put another way, although CBP is permitted under section 1520(a)(4) to refund duties before liquidation in some circumstances, there is never a requirement to do so, and the agency's choice to fix the final amount of duty to be paid at liquidation is neither a protestable decision nor a matter that can be reviewed or compelled by this Court. *Id.* at 1344.  Instead, the default rule is that an accounting shall be made at the time of liquidation that addresses all decreases (and increases) in the various rates of duty asserted at the time of entry.

In sum, the Quebec Respondents requested relief to which the Government consented, and they received exactly what they sought.  Buyer's remorse is an insufficient basis to overturn a decision under Rule 60(a).

### III.   There Was No Significant Change In Facts Or Law Warranting Overturning *COALITION VI* Under Rule 60(b)(5)

The Quebec Respondents have not identified any changes in the facts or the law since *COALITION VI* that would warrant overturning that decision.  As they note, liquidation of the

entries for which the Quebec Respondents seek refunds are suspended pursuant to the NAFTA

binational panel challenge to the antidumping duty order covering softwood lumber from

Canada.  The NAFTA proceedings have remained pending since 2017.  Mot. at 12.  The Quebec

Respondents never explain why anything that has occurred since November 2023 merits the

extraordinary remedy under Rule 60(b)(5).  Indeed, they point to NAFTA panel remand

decisions since *COALITION VI* that only mitigate the delay about which they complained in

2023 when they filed their first Rule 60(b)(5) motion.  ECF No. 222.   But as the Court explained

in *Invenergy*, "[t]he requirement that the moving party meet this dual burden of showing changed

circumstances and inequity 'prevents an enjoined party from constantly challenging the

imposition of a preliminary injunction and relitigating arguments on motions to dissolve that

have already been considered by the district court in its initial decision.'"  *Invenergy Renewables*

*LLC v. United States*, 450 F. Supp. 3d 1347, 1361-62 (Ct. Int'l Trade 2020) (quoting *Sprint*

*Commc'ns Co. v. CAT Commc'ns Int'l Inc.*, 335 F.3d 235, 242 (3d Cir. 2003)).

Finally, the Quebec Respondents proffer no evidence of harm that cannot be repaired by

receiving their refunds with interest upon liquidation.  In this sense, this case is analogous to

cases in which parties seek to enjoin the collection of antidumping or countervailing duty cash

deposits but fail to demonstrate irreparable harm from this requirement in light of the prospect of

refunds with interest upon liquidation.  Nevertheless, the Quebec Respondents proffer no

evidence of harm that cannot be repaired by receiving refunds of cash deposits with interest upon

liquidation.  And in any event, "[b]are financial losses neither constitute nor substantiate

irreparable harm, even when they signal economic damage to an entity.  This derives in part from

the presumed effectiveness of corrective relief for monetary injury, provided by a Court order at

a later date."  *Shanghai Tainai Bearing Co. v. United States*, 582 F. Supp. 3d 1299, 1307 (Ct.

Int'l Trade 2022) (citing *Sampson v. Murray*, 415 U.S. 61, 90 (1974)).  As the Supreme Court explained, "[t]he possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm."  *Sampson v. Murray*, 415 U.S. at 90.

In contrast, and contrary to the motion's contention at page 14 that it is not "apparent that ordering refunds poses an undue administrative burden outweighing the deprivation to which the Originally Excluded Parties are being subjected," manual, line-by-line processing of thousands of refunds in a manner not contemplated by the governing statutes or regulations will impose an undue burden on CBP.  As explained in the declaration of Alexander Amdur, Director of CBP's Antidumping and Countervailing Duty Policy and Programs Division, Office of Trade, it is not unusual for CBP to receive liquidation instructions from Commerce to liquidate with refund of AD/CVD cash deposits for entries the liquidation of which remains suspended pursuant to other instructions or court orders, but preliquidation refunds in such circumstances are rare, and generally limited to situations involving very few entries.  Amdur Decl. at ¶ 3.  Unlike the functionality to liquidate entries in the Automated Commercial Environment (ACE), which is partially automated and includes the ability to simultaneously mass process numerous entries, CBP's pre-liquidation refund process requires manual entry-by-entry review and processing.  *Id.* at ¶ 5.

Specifically, to issue preliquidation refunds for each affected entry, a CBP specialist must adjust the entry summary record in ACE to remove the CVD assessment from each impacted entry summary line (can be done by mass update); complete an administrative refund worksheet to document the preliquidation refund and upload the completed administrative refund worksheet to the ACE entry summary record; manually process the preliquidation administrative refund;

and certify the refund for payment by the Department of the Treasury. *Id.* at ¶ 6. In preparation for liquidation consistent with Commerce's instructions to CBP in Message No. 4018411, CBP has already adjusted the entry records for most of the covered entries to remove the CVD assessment. *Id.* at ¶ 7. However, a conservative estimate for the average total processing time for the remaining steps for preliquidation refunds for these entries is approximately 12 minutes of dedicated manual processing time per each affected entry. *Id.* at ¶ 8.

CBP estimates that paragraph 2 of Commerce's instructions to CBP in Message No. 4018411 (Jan. 18, 2024) – that is, the scope of entries subject to the court's order, and Commerce's consequent instructions to CBP, to "liquidate … without regard to countervailing duties," *id.* at paragraph 2; Order, ECF No. 222 – covers approximately 13,000 entries. *Id.* at ¶ 9. Accordingly, to process preliquidation refunds for all of the subject entries, a CBP employee working full time would spend over a year (15 minutes multiplied by 13,000 entries = 195,000 minutes = 3,250 hours = 406.25 eight-hour working days = 81.25 five-day work weeks = 1.56 52-week years) working only on processing the preliquidation refunds. *Id.* And when the suspension related to the pending NAFTA panel proceeding is ultimately lifted, CBP would then need to also process each of these entries *again* in order to assess the final duty, calculate interest (*see* 19 C.F.R. § 24.36(a)(1)(ii) ("In the case of a refund of duties, taxes, fees or interest made prior to liquidation, such a refund will include only principal amounts and not any interest thereon. Interest on such principal amounts will be computed at the time of liquidation or reliquidation and shall accrue as follows … .")), and liquidate consistent with all applicable law and instructions. Given such very substantial burden to manually process numerous entries, CBP's policy is generally to wait until all suspensions are lifted and the entries are ready for

13

liquidation before processing any refunds of overpayments (or bills for underpayments). Amdur Decl. at ¶ 3.

CBP is an agency with a very broad mission, *see* 6 U.S.C. § 211, and limited resources. By authorizing but never requiring CBP to issue refunds prior to liquidation, *compare* 19 U.S.C. § 1520(a)(4) ("*authorized to refund* …[p]rior to the liquidation"), *with* 19 U.S.C. § 1505(b) ("*shall … refund* any excess moneys deposited, together with interest thereon, as determined on a liquidation or reliquidation") (emphasis added), Congress left it to CBP's discretion to decide whether preliquidation refunds under section 1520(a)(4) may be administrable in particular circumstances. Here, CBP has determined that it does not have the resources to spare to process manual preliquidation refunds for the thousands of affected entries. Amdur Decl. at ¶ 10. Consistent with the statutory framework, this Court should not intervene in the agency's administrative evaluation of the allocation of its resources and need not do so here to make the Quebec Respondents whole, because the statutory remedy of refunds with interest upon liquidation is sufficient as Congress intended.

## CONCLUSION

For these reasons, we respectfully request that the Court deny the Quebec Respondents' motion.

Respectfully submitted,

BRIAN M. BOYNTON
Acting Assistant Attorney General

/s/  PATRICIA M. McCARTHY
Director

14

/s/  STEPHEN C. TOSINI
Senior Trial Counsel
Department of Justice
Civil Division, Commercial Litigation Branch
PO Box 480, Ben Franklin Station
Washington, D.C. 20044
tel.: (202) 616-5196
email: stephen.tosini@usdoj.gov

December 4, 2024                    Attorneys for Defendant

CERTIFICATE OF COMPLIANCE

Pursuant to Chambers Procedure 2(B)(2) of the United States Court of International Trade, I certify that this response filed by the United States, contains 4,583 words, excluding those portions that do not count toward the word limitation and, thus, complies with the Court's Chambers Procedures.

/s/ Stephen C. Tosini