# UNITED STATES COURT OF INTERNATIONAL TRADE
## BEFORE: THE HONORABLE MARK A. BARNETT, CHIEF JUDGE

| | |
|---|---|
| COMMITTEE OVERSEEING ACTION FOR LUMBER INTERNATIONAL TRADE INVESTIGATIONS OR NEGOTIATIONS,<br><br>       *Plaintiff*,<br><br>FONTAINE INC., ET AL.,<br><br>       *Consolidated Plaintiffs*,<br><br>    v.<br><br>UNITED STATES,<br><br>       *Defendant*,<br><br>    and<br><br>FONTAINE INC., ET AL.,<br><br>       *Defendant-Intervenors*. | Consol. Court No. 19-00122 |

## REPLY IN SUPPORT OF MOTION TO EXPLICITLY STATE OBLIGATION TO REFUND COUNTERVAILING DUTY CASH DEPOSITS ESTABLISHED BY SLIP OP 23-163

| | | |
|---|---|---|
| Yohai Baisburd<br>Jonathan M. Zielinski<br>James E. Ransdell<br><br>CASSIDY LEVY KENT<br>(USA) LLP<br>900 19th Street, N.W.<br>Suite 400<br>Washington, D.C. 20006<br>(202) 567-2300 (phone)<br>(202) 567-2301 (fax)<br>ybaisburd@cassidylevy.com<br><br>*Counsel to Scierie Alexandre Lemay & Fils Inc.* | Rajib Pal<br>James Mendenhall<br><br>SIDLEY AUSTIN LLP<br>1501 K Street, N.W.<br>Washington, DC 20005<br>(202) 736-8000 (phone)<br>(202) 736-8711 (fax)<br>rpal@sidley.com<br><br>*Counsel to North American Forest Products Ltd.* | Edward M. Lebow<br><br>HAYNES AND BOONE, LLP<br>800 17th Street, N.W.<br>Suite 500<br>Washington, DC 20006<br>(202) 654-4514 (phone)<br>(202) 654-4244 (fax)<br>ed.lebow@haynesboone.com<br><br>*Counsel to Marcel Lauzon Inc. and Les Produits Forestiers D&G Ltée* |

Dated: December 18, 2024

## **Table of Contents**

Page

I. This Court Has Power to Order CBP to Refund the Originally Excluded Parties' Cash Deposits Before Liquidation ................................................................................................. 1

II. The Originally Excluded Parties' Actual Experience with Pre-Liquidation Refunds by CBP in 2019 and 2020 Contradicts CBP's Characterization of the Administrative Burden ................................................................................................................................. 4

III. Conclusion ............................................................................................................................. 7

# Table of Authorities

Page(s)

Statutes

19 U.S.C. § 1520(a)(4) ........................................................................................................... 2, 3

19 U.S.C. § 1677g ....................................................................................................................... 8

28 U.S.C. § 1581(a) .................................................................................................................... 3

28 U.S.C. § 2643(c)(1) ............................................................................................................ 2, 4

Court Decisions

*Biden v. Texas*, 597 U.S. 785 (2022) ........................................................................................ 3

*Borusan Mannesmann Boru Sanayi v. Ticaret A.S. v. United States*, 578 F. Supp. 3d 1333 (Ct. Int'l Trade 2022) .......................................................................... 3

*Comm. Overseeing Action for Lumber Int'l Trade Investigations or Negots. v. United States*, 66 F.4th 968 (Fed. Cir. 2023) ................................................................. 7

*Mid Continent Steel & Wire, Inc. v. United States*, 940 F.3d 662 (Fed. Cir. 2019) ............................................................................................................................... 3

*Trans Texas Tire, LLC v. United States*, 519 F. Supp. 3d 1275 (Ct. Int'l Trade 2021) ..................................................................................................................... 2, 3

Administrative Determinations

*Certain Softwood Lumber Products From Canada: Final Results of Countervailing Duty Expedited Review*, 84 Fed. Reg. 32,121 (July 5, 2019) ................ 4

Other Court Materials

Rule 1 of the Rules of the U.S. Court of International Trade ................................................ 1

Rule 7 of the Rules of the U.S. Court of International Trade ................................................ 1

Rule 60(a) of the Rules of the U.S. Court of International Trade ......................................... 1

Pursuant to Rules 1, 7, and 60(a) of the Rules of the U.S. Court of International Trade (the "CIT Rules"), Defendant-Intervenors Scierie Alexandre Lemay & Fils Inc. ("Lemay"), Marcel Lauzon Inc. ("MLI"), Les Produits Forestiers D&G Ltee ("D&G"), and North American Forest Products Ltd. with its cross-owned affiliates Parent-Violette Gestion Ltée and Le Groupe Parent Ltée (collectively, "NAFP") (together collectively, the "Originally Excluded Parties"), hereby reply to a new affirmative defense and new evidence proffered in Sections II and III, respectively, of Defendant's response to the Originally Excluded Parties' motion. *See* "Defendant's Response to the Requests for Partial Liquidation," ECF No. 277 (Dec. 4, 2024) ("Defendant's Response"); "Motion to Explicitly State Obligation to Refund Countervailing Duty Cash Deposits Established by Slip Op 23-163," ECF No. 262 (Nov. 15, 2024) ("Originally Excluded Parties' Refund Motion"). Defendant's assertion that this Court lacks power to order U.S. Customs and Border Protection ("CBP") to issue pre-liquidation refunds of cash deposits is without foundation (**Section I**), and its description of the administrative burdens purportedly involved are contradicted by the Originally Excluded Parties' actual experience earlier in this matter (**Section II**). Neither contention could support denial of the Originally Excluded Parties' requested relief.

## I. This Court Has Power to Order CBP to Refund the Originally Excluded Parties' Cash Deposits Before Liquidation

In a declaration attached to Defendant's Response, CBP confirms that it "is able to issue pre-liquidation refunds" in "some circumstances." *See* Defendant's Response, Attachment 2 (Declaration of Alexander Amdur) at ¶2. Thus, at minimum, the parties concur that CBP can, in a literal sense, grant the pre-liquidation refunds sought by the Originally Excluded Parties. Defendant instead proffers a legal defense, *viz.*, although CBP has legal authority to grant such relief, "there is never a *requirement* {that CBP} do so, and the agency's choice to fix the final

amount of duty to be paid at liquidation…{is not} a matter that can be reviewed or compelled by this Court." Defendant's Response at 10 (emphasis supplied). But this is a defense to a position that the Originally Excluded Parties never adopted, and Defendant's attempt to unilaterally circumscribe the remedial powers of this Article III court do not withstand scrutiny.

As an initial matter, Defendant's argument does not respond to the Originally Excluded Parties' actual position. The Originally Excluded Parties never argued that 19 U.S.C. § 1520(a)(4) *required* CBP to issue pre-liquidation refunds. Rather, the Originally Excluded Parties argued that the parties' original intention was that the Order included with Slip Op. 23-163 would oblige CBP to make refunds, or alternatively, that it was inequitable to allow CBP to withhold cash deposits based on a since-vacated judgment and the Court should oblige CBP to make refunds in a new Order. *See* Originally Excluded Parties' Refund Motion at 8-15.[1]

Regardless, Defendant's argument is meritless. 28 U.S.C. § 2643(c)(1) empowers this Court to "order any other form of relief that is appropriate in a civil action, including, but not limited to, declaratory judgments, orders of remand, injunctions, and writs of mandamus and prohibition." And the Court has indeed exercised this authority to fashion a remedy that included pre-liquidation refunds. For example, in *Trans Texas I*, the Court required that the Department of Commerce modify its instructions to CBP to rectify the lack of adequate notice to an importer that its products would be included within the scope of an antidumping order, *Trans Texas Tire, LLC v. United States*, 519 F. Supp. 3d 1275, 1289 (Ct. Int'l Trade 2021) ("*Trans*

---

[1] Defendant also distorts the Originally Excluded Parties' position by framing the question of a change in facts in terms of whether "anything…has occurred since November 2023," Defendant's Response at 11, when the Originally Excluded Parties have—from the very beginning—asserted that the relevant "change" is the vacatur of the opinion of this Court that ordered CBP to collect the cash deposits at issue, *see* "Motion to Reinstate Exclusion from Countervailing Duty Order Pending Resolution of Litigation," ECF No. 222 (Oct. 6, 2023) at 1; Originally Excluded Parties' Refund Motion at 2.

2

*Texas I*"), and ultimately sustained revised instructions that "instruct CBP to 'give effect to {*Trans Texas I*} by allowing for the importer to seek refunds pursuant to 19 U.S.C. § 1520(a)(4)," holding that the revised instructions "properly ensure access to interim remedies pursuant to 19 U.S.C. § 1520(a)(4)," *Trans Texas Tire, LLC v. United States*, 545 F. Supp. 3d 1374, 1377-78 (Ct. Int'l Trade 2021).

Defendant does not address 28 U.S.C. § 2643(c)(1) or *Trans Texas*. *See* Defendant's Response at 8-10. Instead, Defendant relies exclusively on *Borusan Mannesmann Boru Sanayi v. Ticaret A.S. v. United States*, 578 F. Supp. 3d 1333, 1342 (Ct. Int'l Trade 2022). *See* Defendant's Response at 10. But *Borusan* merely observes that 19 U.S.C. § 1520(a)(4) does not itself obligate CBP to order refunds. 578 F. Supp. 3d at 1342. The facts of *Borusan*, a case brought under 28 U.S.C. § 1581(a), are otherwise dissimilar and the particulars of the Court's analysis depended upon questions of protestability not at issue here. *See id.* at 1338-44. Moreover, Defendant's transformation of *Borusan*'s general statement that "1520(a)(4) provides Customs with the authority to issue pre-liquidation refunds, but the agency is not required to do so," *id.* at 1342, into "there is *never* a requirement {that CBP} do so," Defendant's Response at 10 (emphasis supplied), fails to account for basic principles of reasonableness that restrain exercises of administrative discretion. *See, e.g.*, *Biden v. Texas*, 597 U.S. 785, 806 (2022) (agency's "exercise of discretion within that statutory framework must be reasonable and reasonably explained"); *Mid Continent Steel & Wire, Inc. v. United States*, 940 F.3d 662, 674 (Fed. Cir. 2019) (agency's "methodology {must be} a reasonable exercise of its agency discretion in light of the statutory constraints and policies."). That Defendant evidently lost sight of this in its response is symptomatic of CBP's elevation of administrative prerogatives over

fairness and good governance that have evidently informed its stubborn refusal to refund the Originally Excluded Parties' cash deposits.

In sum, the Court's authority to order the issuance of pre-liquidation refunds is manifest in 28 U.S.C. § 2643(c)(1), and the Court has in fact done so in past cases. The Originally Excluded Parties' request for relief does not purport to invoke an *obligation* derived from 19 U.S.C. § 1520(a)(4), but rather relies upon the parties' original intentions as expressed prior to Slip Op 23-163 and the overarching inequity of permitting CBP to retain millions of dollars' worth of the Originally Excluded Parties' cash deposits for years after the vacatur of the opinion that ordered those cash deposits.

## II. The Originally Excluded Parties' Actual Experience with Pre-Liquidation Refunds by CBP in 2019 and 2020 Contradicts CBP's Characterization of the Administrative Burden

Defendant concludes its response by arguing that the relief requested by the Originally Excluded Parties is inequitable because it would "impose an undue burden on CBP." *See* Defendant's Response at 12-14. In support of this assertion, Defendant invokes several statements in an appended Declaration of Alexander Amdur, Director of CBP's Antidumping and Countervailing Duty Policy and Programs Division. *See id.* at 12-14, Attachment 2. At base, Defendant attempts to create the impression that administrative burdens associated with ordering pre-liquidation refunds would far outweigh the financial burdens faced by the Originally Excluded Parties, which are small Canadian lumber producers, being unable to access millions of dollars' worth of cash deposits ostensibly intended to offset "countervailable" subsidization that the Originally Excluded Parties never, in fact, received. *See Final Results of Countervailing Duty Expedited Review*, 84 Fed. Reg. 32,121, 32,122 (July 5, 2019) (calculating *de minimis* subsidization for all of the Originally Excluded Parties). But Defendant's claims are contradicted by the Originally Excluded Parties' experience as actual recipients of pre-

4

liquidation refunds in 2019 and 2020, following vacatur of this court's temporary restraining order ("TRO").

Defendant first claims that pre-liquidation refunds are "generally limited to situations involving very few entries." Defendant's Response at 12 (citing Amdur Dec. ¶4). Neither Defendant's brief nor the appended declaration explain what CBP considers to be "very few." *See generally id.* at 12-14. The Originally Excluded Parties' experience is that CBP in fact refunded about 7,600 entries following vacatur of this Court's TRO in 2019-2020. *See* **Exhibit 1**, Spik Dec. ¶4 ("nearly 6,000 entries"); **Exhibit 2**, Rioux Dec. ¶2 ("more than 1,000 entries"); **Exhibit 3**, Martel Dec. ¶2 ("over 600 entries"). This undermines Defendant's characterization of CBP's general practice and/or establishes that *in this proceeding*, prior to the Originally Excluded Parties' motion for restoration of the *status quo ante*, CBP's practice had been to process pre-liquidation refunds, even when the number of entries at issue far exceeded any reasonable definition of "very few." This additionally underscores the reasonableness of the Originally Excluded Parties' expectation that the Court's most recent order to reinstate the Originally Excluded Parties exclusion would yield similar pre-liquidation refunds.

Defendant also asserts that processing pre-liquidation refunds would interfere with "CBP's ability to process other AD/CVD liquidation instructions for this AD/CVD Order and the other 715 AD/CVD Orders that CBP administers." Defendant's Response at 14 (citing Amdur Dec. ¶10). Yet, CBP evidently perceived no such interference with its other workstreams when it *voluntarily* (in CBP's telling) processed refunds for about 7,600 entries by the Originally Excluded Parties in 2019 and 2020. Defendant has made no attempt to explain this inconsistency.

5

In addition, Defendant characterizes the process of effectuating pre-liquidation refunds as a highly manual undertaking that involves "complet{ing} an administrative refund worksheet to document the preliquidation refund and upload{ing} the completed administrative refund worksheet to the ACE entry summary record; manually process{ing} the preliquidation administrative refund; and certify{ing} the refund for payment by the Department of the Treasury." Defendant's Response at 12-13. Defendant then proffers calculations that imply the foregoing steps must all be individually undertaken on an entry-by-entry basis such that it would require just over one-and-a-half years' worth of a single CBP officer's working time. *See id.* at 13 (citing Amdur Dec. ¶¶6, 8-9). Here, too, CBP's description is inconsistent with the Originally Excluded Parties' actual experience in this matter. *First*, despite receiving pre-liquidation refunds for hundreds (in the case of NAFP) or thousands (in the case of D&G) of individual entries in 2019-2020, refund checks regularly covered batches of multiple entries. **Exhibit 3**, Martel Dec. ¶2 (two checks for over 600 entries); **Exhibit 1**, Spik Dec. ¶4 (payments generally covered 100 or more entries). Ostensibly, therefore, the final two steps in CBP's process can be consolidated. *Second*, while the suggestion that a single CBP officer would be tasked with processing the Originally Excluded Parties' refunds is unrealistic on its face, it is further contradicted by the Originally Excluded Parties' experience, which saw, for example, nearly 6,000 of D&G's entries refunded over roughly four months. **Exhibit 1**, Spik Dec. ¶2. This is more than twice the pace suggested by Defendant's Response.

Finally, the Originally Excluded Parties object to Defendant's suggestion that considerations of administrative convenience should override the financial interests of the Originally Excluded Parties in this matter. It was through no fault of the Originally Excluded Parties that CBP came to be in possession of their cash deposits, and more than one-and-a-half

years ago the appellate process conclusively established that CBP lacks any right to those cash deposits. *See Comm. Overseeing Action for Lumber Int'l Trade Investigations or Negots. v. United States*, 66 F.4th 968, 979 (Fed. Cir. 2023). Nor was it unreasonable for the Originally Excluded Parties to expect that pre-liquidation refunds would be forthcoming, given CBP's prior conduct in processing such refunds related to this matter. CBP's lengthy withholding of the Originally Excluded Parties' money is based upon a judicially acknowledged irregularity, and should be corrected with reasonable dispatch, not simply left to whenever it may suit the agency concerned.

### III. Conclusion

For the reasons stated above, the Originally Excluded Parties request that the Court order the refund by CBP, upon request, of all cash deposits of estimated countervailing duties, with interest as provided for in 19 U.S.C. § 1677g, on all shipments of softwood lumber produced and exported by Lemay, MLI, D&G, and NAFP, entered, or withdrawn from warehouse, for consumption on or after August 28, 2021. Nothing in Defendant's Response undermines the fact that this reflects the Court's original intention in reinstating the Originally Excluded Parties' exclusion from the CVD order, nor has Defendant raised any equitable consideration that outweighs the severe financial harm now experienced by the Originally Excluded Parties as a result of CBP withholding millions of dollars' worth of their cash deposits, and CBP's stated intention to continue to do so until liquidation, likely years away.

\* \* \*

Respectfully submitted,

/s/ Yohai Baisburd

Yohai Baisburd
Jonathan M. Zielinski
James E. Ransdell

CASSIDY LEVY KENT
(USA) LLP
900 19th Street, N.W.
Suite 400
Washington, D.C. 20006
(202) 567-2300 (phone)
(202) 567-2301 (fax)
ybaisburd@cassidylevy.com

*Counsel to Scierie Alexandre Lemay & Fils Inc.*

December 18, 2024

/s/ Rajib Pal

Rajib Pal
James Mendenhall

SIDLEY AUSTIN LLP
1501 K Street, N.W.
Washington, DC 20005
(202) 736-8000 (phone)
(202) 736-8711 (fax)
rpal@sidley.com

*Counsel to North American Forest Products Ltd.*

/s/ Edward M. Lebow

Edward M. Lebow

HAYNES AND BOONE, LLP
800 17th Street, N.W.
Suite 500
Washington, DC 20006
(202) 654-4514 (phone)
(202) 654-4244 (fax)
ed.lebow@haynesboone.com

*Counsel to Marcel Lauzon Inc. and Les Produits Forestiers D&G Ltée*

8

# EXHIBIT 1



## DECLARATION OF MARGUERITE SPIK

I, Marguerite Spik, am, and have been since 2018, the Customs Analyst at Les Produits Forestiers D&G Ltée ("D&G") responsible for coordinating with D&G's customs brokers the receipt and accounting for countervailing duty cash deposit refunds from U.S. Customs and Border Protection ("CBP").

During the four-month period between late December 2019 and late March 2020, CBP processed and paid to D&G refunds of countervailing duty cash deposits on nearly 6,000 entries with a total refund value of more than ten million dollars.

These refunds covered more than 95% of the entries for which refund requests had been submitted.

Payments were generally made in batches, most of which covered 100 or more entries, and some of which comprised several hundred entries.

Sworn and attested to this 9th day of December 2024.

_____
Marguerite Spik

2590, boul. Laurier, Tour Belle Cour, Suite 500
Quebec (QC) G1V 4M6

# EXHIBIT 2



**Marcel Lauzon Inc**

| | | |
|---|---|---|
| Canada | USA | Web: www.mlauzon.com |
| 129 rte 253 | PO Box 179 | Email: mlauzon@mlauzon.com |
| East Hereford, QC J0B 1S0 | West Stewarstown, NH 03597 | Fax: 819-844-2511 |
| Tel: 819-844-2511 | Tel: 603-246-5602 | |

**Declaration of Jean Pierre Rioux**

I, Jean Pierre Rioux, was in 2019 and 2020 the co-owner of Marcel Lauzon Inc ("MLI") responsible for coordinating with MLI's customs brokers the receipt and accounting for countervailing duty cash deposit refunds from U.S. Customs and Border Protection ("CBP").

During the period between late December 2019 and July 8th, 2020, CBP processed and paid to MLI refunds of countervailing duty cash deposits on more than 1000 entries of softwood lumber with a total refund value exceeding two million dollars.

These refunds covered more than 99% (all but one) of the entries for which refund requests had been submitted.

Sworn and attested to this ___9___ day of December 2024.


*[signature: Jean-Pierre Rioux]*

Jean Pierre Rioux

# EXHIBIT 3



## STATEMENT OF XAVIER MARTEL
## UNDER 28 U.S.C. § 1746

I, Xavier Martel, state the following:

1. I am currently Vice President, Operations at North American Forest Products Ltd. ("NAFP") located in St-Quentin, NB. I have been with NAFP since 2010, and during this time I have been the NAFP official responsible for coordinating with NAFP's customs broker the payments to and refunds from U.S. Customs and Border Protection ("CBP") of antidumping duty ("AD") and countervailing duty ("CVD") cash deposits required by the U.S. AD and CVD proceedings on Certain Softwood Lumber Products ("Softwood Lumber") from Canada.

2. Following NAFP's exclusion from the CVD order on Softwood Lumber from Canada based on the expedited review final results published in the Federal Register on July 5, 2019, NAFP received refunds from CBP of the CVD cash deposits it had paid on its entries of Softwood Lumber into the United States up to that point in time, including such entries on which NAFP had also paid AD cash deposits and that remained suspended from liquidation as a result of the AD proceeding on Softwood Lumber from Canada. Specifically, with respect to those entries that remained suspended from liquidation as a result of the AD proceeding on Softwood Lumber from Canada, NAFP's customs broker began communicating with CBP about obtaining NAFP's CVD cash deposit refunds in February 2020, and made a formal request in March 2020. NAFP then obtained its CVD cash deposit refunds via two checks – one in July 2020 and one in August 2020 – totaling over one million dollars for over 600 entries.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

_Xavier Martel_
Xavier Martel
Vice President, Operations
North American Forest Products Ltd.
40 Ch. Labrie
St-Quentin, NB E8A 2E1

Executed on this 10th day of December, 2024