C-122-858
Remand
Slip Op. 25-8
POR: 1/1/2015 – 12/31/2015
**Public Document**
E&C/OIII: EB/KJ

***Committee Overseeing Action for Lumber International Trade Investigations or Negotiations
v. United States*,
Consol. Court No. 19-00122, Slip Op. 25-8 (CIT January 21, 2025)
Certain Softwood Lumber Products from Canada**

### FINAL RESULTS OF REDETERMINATION
### PURSUANT TO COURT REMAND

## I.    SUMMARY

The U.S. Department of Commerce (Commerce) prepared these final results of

redetermination pursuant to the remand opinion and order of the U.S. Court of International

Trade (CIT) issued on January 21, 2025.[1]  These final results of redetermination concern

Commerce's final results of the expedited review of the countervailing duty (CVD) order on

certain softwood lumber products (softwood lumber or lumber) covering the period of review

(POR) January 1, 2015, through December 31, 2015.[2]  The CIT remanded one issue concerning

the expedited review.  Specifically, the CIT remanded for Commerce to reconsider or further

explain its subsidy calculations with respect to Les Produits Forestiers D&G Ltée (D&G) and its

cross-owned company Les Produits Forestiers Portbec Ltée (Portbec).

## II.    BACKGROUND

On January 3, 2018, Commerce published the CVD order on softwood lumber from

Canada.[3]  On March 8, 2018, in response to requests filed by certain Canadian producers and

---

[1] *See Committee Overseeing Action for Lumber International Trade Investigations or Negotiations v. United States*,
Consol. Court No. 19-00122, Slip Op. 25-8 (CIT January 21, 2025) (*Remand Order*).
[2] *See Certain Softwood Lumber Products from Canada:  Final Results of Countervailing Duty Expedited Review*, 84
FR 32121 (July 5, 2019) (*Expedited Review Final*), and accompanying Issues and Decision Memorandum (IDM).
[3] *See Certain Softwood Lumber Products from Canada:  Amended Final Affirmative Countervailing Duty
Determination and Countervailing Duty Order*, 83 FR 347 (January 3, 2018) (*CVD Order*).

exporters, Commerce initiated an expedited review of the *CVD Order* pursuant to 19 CFR 351.214(k).[4]  The companies subject to the expedited review were not selected as mandatory or voluntary respondents in the CVD investigation and were subject to the all-others rate of 14.19 percent.[5]  The POR for the expedited review was the same as for the CVD investigation, *i.e.*, January 1, 2015, through December 31, 2015.[6]  On July 5, 2019, Commerce published the *Expedited Review Final* covering eight companies and their cross-owned affiliates.[7]

Several of the expedited review companies, the Government of Canada, and the Government of Québec challenged certain Commerce determinations in the *Expedited Review Final,* and the Committee Overseeing Action for Lumber International Trade Investigations (COALITION) challenged Commerce's statutory authority to promulgate its expedited review regulations at 19 CFR 351.214(k) to determine individual subsidy rates for companies not individually examined in an investigation.[8]  On November 19, 2020, the CIT remanded Commerce's *Expedited Review Final* for reconsideration of the statutory basis upon which Commerce promulgated its CVD expedited review regulations at 19 CFR 351.214(k).[9]  On February 22, 2021, Commerce issued its *First Remand Redetermination*,[10] in which Commerce found that it did not have the statutory authority to promulgate the CVD expedited review

---

[4] *See Certain Softwood Lumber Products from Canada:  Initiation of Expedited Review of the Countervailing Duty Order*, 83 FR 9833 (March 8, 2018) (*Initiation Notice*).
[5] *See CVD Order*, 83 FR at 348.
[6] *See Initiation Notice*, 83 FR at 9833.
[7] *See Expedited Review Final*.
[8] *See* COALITION 56.2 Motion and accompanying brief, dated December 19, 2019, (ECF No. 101); Rustique 56.2 Motion and accompanying brief, dated December 19, 2019, (ECF No. 100); Fontaine 56.2 Motion and accompanying brief, dated December 19, 2019, (ECF No. 103, corrected in ECF No. 150); Government of Canada 56.2 Motion and accompanying brief, dated December 19, 2019, (ECF No. 105., corrected in ECF No. 156); and Government of Québec 56.2 Motion and accompanying brief, dated December 19, 2019, (ECF No. 106, corrected in ECF No. 145).
[9] *See Committee Overseeing Action for Lumber International Trade Investigations or Negotiations, et al. v. United States, et al.*, 483 F. Supp. 3d 1253 (CIT 2020) at 34-35.
[10] *See Final Results of Redetermination Pursuant to Court Remand, Committee Overseeing Action for Lumber International Trade Investigations or Negotiations, et al. v. United States, et al.*, Court No. 19-00122, Slip Op. 20-167 (CIT 2020), dated February 22, 2021 (*First Remand Redetermination*).

regulations at 19 CFR 351.214(k), and to conduct CVD expedited reviews. On August 18, 2021, the CIT affirmed Commerce's remand and vacated the expedited review regulation at 19 CFR 351.214(k), as well as the *Expedited Review Final*. Accordingly, the CIT declined to consider the remaining challenges to the *Expedited Review Final* raised by several of the expedited review companies.[11]

On April 25, 2023, the U.S. Court of Appeals for the Federal Circuit reversed and remanded the CIT's decision vacating Commerce's CVD expedited review regulation.[12] Thus, the case returned to the CIT to decide the remaining substantive claims raised by several of the expedited review companies that the CIT had not previously considered due to vacating the *Expedited Review Final*. On April 24, 2024, the CIT sustained several of Commerce's determinations in the *Expedited Review Final*, but remanded to Commerce its decision not to attribute subsidies to D&G, Portbec, and Mobilier Rustique (Beauce) Inc. (Rustique) received by their unaffiliated lumber suppliers, and its determination to use Fontaine Inc. (Fontaine)'s fiscal year (FY) 2014 tax returns to perform the benefit calculations for certain tax programs during the POR.[13] On September 10, 2024, Commerce issued its remand redetermination in which Commerce recalculated the subsidy rates for D&G/Portbec and Rustique pursuant to 19 CFR 351.525(c) with respect to the companies' purchases of lumber from unaffiliated Canadian suppliers that was either further processed (or "remanufactured") and sold to the United States, or resold without further processing to the United States.[14] Commerce also recalculated the

---

[11] *See Committee Overseeing Action for Lumber International Trade Investigations or Negotiations v. United States*, 535 F.Supp.3d 1336 (CIT 2021).

[12] *See Committee Overseeing Action for Lumber International Trade Investigations or Negotiations v. United States*, 66 F.4th 968, 979 (Fed. Cir. 2023).

[13] *See Committee Overseeing Action for Lumber International Trade Investigations or Negotiations v. United States*, Consol. Court No. 19-00122, Slip Op. 24-50 (CIT April 22, 2024) (*Second Remand*).

[14] *See Final Results of Redetermination Pursuant to Court Remand*, *Committee Overseeing Action for Lumber International Trade Investigations or Negotiations v. United States*, Consol. Court No. 19-00122, Slip Op. 24-50 (CIT 2024), dated September 10, 2024 (*Second Remand Redetermination*).

subsidy rate for Fontaine by using Fontaine's FY 2015 tax returns to calculate Fontaine's tax benefits during the POR.[15]

On January 21, 2025, in the *Remand Order*, the CIT sustained Commerce's determination to treat D&G, Portbec, and Rustique under the trading company regulation in certain circumstances, as outlined above.[16]  The CIT also sustained Commerce's determination to use Fontaine's FY 2015 tax returns to calculate Fontaine's tax benefits during the POR.[17] Additionally, in the *Remand Order*, the CIT sustained Commerce's revised subsidy calculation for Rustique, but remanded the revised subsidy calculation for D&G/Portbec.[18]  The CIT found that Commerce did not address the COALITION's arguments raised during the remand proceeding concerning D&G and Portbec's revised subsidy calculations, and that Commerce did not adequately explain how its revised calculation is better than the alternatives proposed by the COALITION.[19]

Specifically, in its comments on the draft *Second Remand Redetermination*, the COALITION argued that Commerce "double-weighted" the value of D&G and Portbec's purchases of lumber from unaffiliated suppliers and therefore incorrectly calculated the amount of subsidies attributable to these companies from unaffiliated lumber suppliers.[20]  In the *Second Remand Redetermination*, we disagreed and explained that:

> The applied methodology determines the percentage of each company's unaffiliated lumber purchases in relation to their portion of combined sales and then multiplies those shares by the all-others rate to derive a subsidy rate for the unaffiliated lumber producers that is attributable to D&G and Portbec.  We find that this calculation best reflects that portion of the unaffiliated lumber producers' subsidies that D&G

---

[15] *Id.*
[16] *See Remand Order* at 20.
[17] *Id.*
[18] *Id.* at 15.
[19] *Id.*
[20] *See* COALITION's Letter, "Comments on Draft Results for Redetermination Pursuant to Remand in the Countervailing Duty Expedited Review of Certain Softwood Lumber Products from Canada," dated July 25, 2024, at 5-6.

and Portbec each received based on their own particular quantity of lumber purchased and sales made during 2015.[21]

In its comments to the CIT, the COALITION continued to argue that Commerce's subsidy rate calculation was incorrect and provided two alternative methodologies to calculate the rate:[22]

> **Approach A**:  Calculate separate subsidy rates for D&G and Portbec as if the two companies were independent and separate from one another, using each company's total sales as the denominator and that company's supplier lumber purchases (multiplied by 14.19 percent) as the numerator.  Add up these two subsidy rates after weighting them based on . . . each company's sales level in relation to total sales of the two companies combined.

> **Approach B**: Calculate one subsidy rate for D&G and Portbec using the two companies' combined total sales as the denominator and their combined supplier lumber purchases (multiplied by 14.19 percent) as the numerator.

Conversely, D&G/Portbec argued that Commerce should take into consideration comments they made on the *Second Remand Redetermination*, where they argued that "the vast majority of D&G/Portbec's transactions involve purchasing Canadian lumber on a duty paid basis in the United States and reselling the lumber to buyers in the United States," and that Commerce "perhaps inadvertently, used the figure comprising the total of all Portbec's purchases of lumber from unaffiliated suppliers."[23]  On February 19, 2025, D&G/Portbec submitted comments requesting that Commerce seek additional information from Portbec concerning its purchases of lumber from unaffiliated Canadian suppliers delivered in the United States.[24]  On March 6, 2025, the COALITION responded to D&G/Portbec's comments stating that Commerce

---

[21] *See Second Remand Redetermination* at 19.

[22] *See* COALITION's Comments on Final Results of Redetermination pursuant to Court Remand, dated October 10, 2024 (ECF No. 257), at 4-5.

[23] *See* D&G/Portbec's Comments on Final Results of Redetermination pursuant to Court Remand, dated November 15, 2024 (ECF No. 264), (D&G/Portbec's Comments on Final Results of Redetermination) at 3 (citing D&G/Portbec's Letter, "Comments of Les Produits Forestiers D&G Ltée and Les Produits Forestiers Portbec Ltée on Draft Remand Redetermination," dated July 23, 2024, at 3, and *Expedited Review Final* IDM at 39).

[24] *See* D&G/Portbec's Letter, "Preliminary Comments for the Second Remand Redetermination in the Expedited Review of the Countervailing Duty Order on Softwood Lumber from Canada," dated February 19, 2025.

should deny D&G/Portbec's request to submit supplemental information.[25]  We released the

Draft Results to interested parties on March 25, 2025.[26]  On April 1, 2025, we received

comments from the COALITION and D&G/Portbec.[27]  The arguments submitted are

summarized and addressed below.

## III.    ANALYSIS

Consistent with the *Remand Order*, Commerce has reconsidered its subsidy calculation

for D&G/Portbec and has determined it is not necessary to reopen the record to solicit additional

information from Portbec.  Concerning D&G/Portbec's argument that Commerce's subsidy

calculation should not include lumber purchases Portbec made in the United States, and that

Commerce should reopen the record to solicit the value of these purchases, Commerce does not

agree that it is appropriate to do so.  In the *Second Remand Redetermination*, Commerce found

that:

> for the lumber purchased from unaffiliated Canadian suppliers that D&G/Portbec
> and Rustique either further processed or resold directly to the United States, we
> determine that the situations described are appropriately considered in this instance
> as a relationship between a producer and its trading company under 19 CFR
> 351.525(c) because the respondents either conducted minor processing on the
> purchased rough-hewn lumber, which itself is subject merchandise, or in the case
> of Portbec, resold the lumber directly without further processing.[28]

Commerce's trading company methodology is based on section 701(a) of the Tariff Act of 1930,

as amended, through which Congress directed Commerce to determine the extent of

---

[25] *See* COALITION's Letter, "Response to Preliminary Remand Comments for the Second Remand Redetermination," dated March 6, 2025.

[26] *See* Draft Results of Redetermination Pursuant to Court Remand, *Committee Overseeing Action for Lumber International Trade Investigations or Negotiations v. United States* Consol. Court No. 19-00122, Slip Op. 25-8 (CIT January 21, 2025), issued March 25, 2025 (Draft Results).

[27] *See* COALITION's Letter, "Comments on Draft Results of Redetermination Pursuant to Remand in the Countervailing Duty Expedited Review of Certain Softwood Lumber Products from Canada," dated April 1, 2025 (COALITION's Comments); *see also* D&G/Portbec's Letter, "Comments on the Draft Results of Redetermination Pursuant to Court Remand in the Expedited  Reviews of the Countervailing Duty Order on Softwood Lumber from Canada," dated April 1, 2025 (D&G/Portbec's Comments).

[28] *See Second Remand Redetermination* at 9 (internal citations removed).

subsidization conferred upon the manufacture, production, or export of subject merchandise imported into the United States.  When a producer exports subject merchandise to the United States, that merchandise can be subsidized both at the production stage based on the subsidies received by the producer and, if exported through a trading company, by the subsidies received by the trading company.  We find that, regardless of whether Portbec purchased the lumber in Canada from unaffiliated Canadian suppliers or purchased and resold the lumber in the United States, which was produced by unaffiliated Canadian suppliers, the situation is still appropriately considered in this instance to be a relationship between a producer and its trading company, under 19 CFR 351.525(c) because fundamentally the lumber was produced by an unaffiliated Canadian producer, which benefited from countervailable subsidies.  Further, although Portbec claims that it made the purchases in the United States on a "duty paid basis,"[29] this appears to refer to general Customs duties, rather than countervailing duties, as countervailing duties were not in effect during the POR of the expedited review (calendar year 2015).  Specifically, cash deposits were required following the preliminary determination of the CVD investigation beginning January 28, 2017.[30]  Therefore, by including these purchases in D&G/Portbec's subsidy calculation, there is no risk of potentially double counting any countervailing duties, which may have been deposited on this lumber as a result of Portbec's purchases in the United States.  Thus, we continue to find it appropriate to include all of Portbec's purchases of lumber produced by unaffiliated Canadian suppliers in Commerce's subsidy calculation.

---

[29] *See* D&G/Portbec's Comments on Final Results of Redetermination at 4.

[30] *See Certain Softwood Lumber Products from Canada:  Preliminary Affirmative Countervailing Duty Determination, and Alignment of Final Determination With Final Antidumping Duty Determination*, 82 FR 19657 (April 28, 2017); *see also Antidumping and Countervailing Duty Investigations of Certain Softwood Lumber Products from Canada:  Preliminary Determinations of Critical Circumstances,* 82 FR 19219 (April 26, 2027); and Memorandum, "CBP Message Number 7118311," dated concurrently with these draft results of redetermination.

With respect to the subsidy calculation, in response to the CIT's *Remand Order*, we have reconsidered the subsidy calculation from the *Second Remand Redetermination* and in reexamining all of the calculation options, we agree with the COALITION that Commerce's original calculation inappropriately weighted D&G/Portbec's purchases and sales.  As we stated in the *Second Remand Redetermination:*[31]

> The record shows that D&G and Portbec purchased meaningfully different volumes of lumber from unaffiliated producers and had notably different sales levels for 2015.  We therefore find it necessary to take into account the individual business activities (purchases and sales) of D&G and Portbec to properly attribute the supplier subsidies.
>
> The applied methodology determines the percentage of each company's unaffiliated lumber purchases in relation to their portion of combined sales and then multiplies those shares by the all-others rate to derive a subsidy rate for the unaffiliated lumber producers that is attributable to D&G and Portbec.  We find that this calculation best reflects that portion of the unaffiliated lumber producers' subsidies that D&G and Portbec each received based on their own particular quantity of lumber purchased and sales made during 2015.  As shown in the draft remand calculations, the subsidy rate calculated for the unaffiliated producers is then added to D&G/Portbec's subsidy rate determined in the *Expedited Review Final*.[32]

In the *Second Remand Redetermination*, we applied a ratio comprising D&G's sales to total sales to D&G's purchases of lumber from unaffiliated Canadian producers, and then calculated a ratio of D&G's purchases of lumber from unaffiliated Canadian producers as a proportion of total sales, which we applied to the all-others rate.  However, by calculating the subsidy rate in this manner, after reexamining the calculation, we find that we applied both a ratio of D&G's sales to total sales, which was applied to D&G's purchases, and a ratio of D&G's purchases to total sales, which was inappropriate.

---

[31] *See Second Remand Redetermination* at 18-19.
[32] *See* Memorandum, "Draft Results of Redetermination Calculations for Les Produits Forestiers D&G Ltée and Les Produits Forestiers Portbec Ltée Draft Remand Subsidy Calculations for Rustique," dated July 15, 2024.

As instructed by the CIT, we examined both Approach A and Approach B, as proposed by the COALITION, and find that both methods result in the same overall subsidy rate. However, we find that Approach A best matches the intent of the calculation from the *Second Remand Redetermination* that takes into account each company's differences in purchases and sales. While Commerce previously argued that Approach A "disregards the uncontested finding that D&G and Portbec are cross-owned producers of softwood lumber,"[33] and that "Commerce's practice for cross-owned companies is to combine their total sales (minus inter-company sales) to calculate a single subsidy rate for the cross-owned companies,"[34] the CIT found that the argument "is not persuasive because that is precisely what Approach A does after weighting the individual rates,"[35] and that in the *Second Remand Redetermination*, "Commerce indeed calculated rates for each company before adding them together."[36] After reconsidering the proposed calculation methodologies, we agree: Approach A calculates a ratio of each company's purchases of lumber from unaffiliated Canadian producers to each company's total sales, which is multiplied by the all-others rate. The result for each company is then multiplied by each company's relative share of sales to total sales (minus inter-company sales). Finally, each company's resulting rate is summed and added to the overall subsidy rate from the underlying expedited review, resulting in an overall subsidy rate of 1.75 percent, which is above *de minimis.*[37] As noted above, in compliance with the CIT's *Remand Order*, after reconsideration of the approaches proposed by the COALITION, we find that Approach A properly takes into account each company's relative share of purchases of lumber from unaffiliated Canadian

---

[33] *See* Commerce's Response to Comments on Remand Redetermination, dated November 15, 2024, (ECF No. 263) at 10.

[34] *Id.*

[35] *See Remand Order* at 16.

[36] *Id.* at 16-17.

[37] *See* Memorandum, "Draft Results of Redetermination Calculations for Les Produits Forestiers D&G Ltée and Les Produits Forestiers Portbec," dated March 25, 2025 (D&G/Portbec Calculation Memorandum).

suppliers and each company's relative share of total sales to calculate the subsidy rate

attributable to D&G and Portbec, under the trading company regulation, 19 CFR 351.525(c).

## IV.    INTERESTED PARTY COMMENTS

**Comment:    Whether Commerce Should Reopen the Record to Collect Additional
Information from D&G/Portbec**

*D&G/Portbec's Comments*

The following is a verbatim summary of an argument submitted by D&G/Portbec

(internal citations omitted).  For further details, *see* D&G/Portbec's Comments at 4-12.

The Draft Remand Results incorrectly conclude that 19 CFR 351.525(c) allows {Commerce} to countervail a supposed subsidy received in the United States when D&G/Portbec purchased lumber on the open market from unaffiliated suppliers on a duty-paid basis. D&G/Portbec operated no differently from an American company when it "purchased and resold the lumber in the United States."  But the Draft Remand Results conclude that regardless of where D&G/Portbec purchased the lumber, "the situation is still appropriately considered … a relationship between a producer and its trading company" under 19 CFR 351.525(c) "because fundamentally the lumber was produced by an unaffiliated Canadian producer." Section 351.525(c) provides no regulatory basis to increase D&G/Portbec's subsidy rate because of these transactions wholly in the United States.  Nor does the underlying statutory scheme grant {Commerce} this power.

The trading company regulation is inapplicable where a company purchases subject merchandise in the United States on a duty-paid basis and resells it in the United States.  Once the subject merchandise enters the United States subject to applicable duties, {Commerce's} window to cumulate subsidies ends.  The language in each subsection of section 351.525(c) makes this clear; no subsection applies to D&G/Portbec's lumber purchases in the United States.  The Draft Remand Results' focus on the lack of countervailing duties in place during the POR misses the point. {Commerce's} approach inherently leads to imposing double countervailing duties on subject merchandise.  Where D&G/Portbec purchased Canadian-produced lumber in the United States on a duty-paid basis, any countervailing duties must be imposed on the importer of record for that merchandise.  The Draft Remand Results in effect impose countervailing duties on D&G/Portbec for subject merchandise it did not import.

The Draft Remand Results' interpretation of section 351.525(c) is also impermissible because it claims a power not granted in {Commerce's} enabling statute.  The statutory scheme is clear: countervailing duties are imposed when a

good enters the United States, and arm's length transactions after that cannot confer a countervailable benefit. {Commerce's} claims to the contrary are legal error.

The Draft Remand Results also rest on assumptions unsupported by record evidence. {Commerce} assumes that for purchases from unaffiliated suppliers, D&G/Portbec "conducted minor processing." But {Commerce} lacks record evidence for this conclusion and fails to explain this conclusion in light of its prior statements. {Commerce} also lacks record evidence supporting its assumption that lumber purchased from unaffiliated suppliers in Canada was "produced by … Canadian suppliers." {Commerce} should reopen the record and correct its calculations to apply section 351.525(c) only where lawful and supported by substantial evidence.

*COALITION'S Comments*

The following is a verbatim summary of an argument submitted by the COALITION (internal citations omitted). For further details, *see* COALITION's Comments at 3-5.

{Commerce's} Draft Remand Redetermination properly revised its calculation of supplier subsidies attributable to {D&G} and {Portbec} sales of lumber produced by unaffiliated suppliers. {Commerce's} use of "Approach A" correctly weights the relative sizes of D&G and Portbec and fulfills the goals of the trading companies provision of the agency's regulations at 19 CFR 351.525(c). {Commerce} should maintain this approach in its final remand redetermination. Additionally, {Commerce} properly declined to reopen the record on remand to consider new arguments made by D&G/Portbec regarding supposed "duty paid" purchases of Canadian lumber in the United States. As {Commerce} found, no countervailing duties were in place during the 2015 period of review, and thus there is no reason to treat this lumber differently than that purchased in Canada. {Commerce} should maintain this decision in its final remand redetermination.

**Commerce Position:** D&G/Portbec's comments indicate that the companies did not provide complete information regarding their lumber purchases when requested by Commerce for its subsidy analysis. On June 5, 2024, Commerce issued a questionnaire to D&G/Portbec, in response to the *Second Remand*,[38] regarding purchases of lumber during calendar year 2015.[39] In that questionnaire, Commerce requested that D&G and Portbec each report the volume/value of

---

[38] *See Second Remand.*
[39] *See* Commerce's Letter, "Court Remand {Slip Op. 24-50} regarding Expedited Review of the Countervailing Duty Order on Certain Softwood Lumber Products from Canada: Questionnaire for D&G/Portbec," dated June 5, 2024 (June 5, 2024 Questionnaire).

lumber sourced from affiliated Canadian suppliers, volume/value of lumber sourced from unaffiliated Canadian suppliers, and volume/value of lumber sourced from U.S. suppliers.[40] Additionally, Commerce requested that the companies separately report the volume/value of lumber sourced from unaffiliated Canadian suppliers that was remanufactured and the volume/value of lumber sourced from unaffiliated Canadian suppliers that was resold.[41]  On June 18, 2024, D&G/Portbec submitted their response.[42]  Commerce, thus, relied on the information provided by D&G/Portbec in their submission to conduct its analysis and subsidy rate calculation for the companies.  In particular, Commerce relied on Portbec's reporting that it purchased lumber valued at C$11,509,555 from unaffiliated Canadian suppliers during 2015.[43]

D&G/Portbec argue that the Draft Results "rest on assumptions unsupported by record evidence."[44]  Specifically, D&G/Portbec assert that Commerce lacks record evidence that the lumber purchased from unaffiliated suppliers in Canada was produced by Canadian suppliers.[45] As noted above, Commerce requested D&G/Portbec to report the "volume/value of lumber sourced from unaffiliated Canadian suppliers."  This could be reasonably interpreted to mean "lumber produced by Canadian suppliers."[46]  However, if Commerce's questionnaire was unclear to D&G/Portbec, or if D&G/Portbec believed the request for information should have been revised given how and from whom D&G/Portbec purchased lumber, then D&G/Portbec should have requested clarification from Commerce or elaborated further on the information provided.

---

[40] *Id*. at 4.
[41] *Id*.
[42] *See* D&G/Portbec's Letter, "Response of Les Produits Forestiers D&G Ltée and Les Produits Forestiers Portbec Ltée to Supplemental Questionnaire," dated June 18, 2024 (D&G/Portbec's Response), at Table 1 and 2.
[43] D&G/Portbec publicly disclosed this value.  *See* D&G/Portbec's Letter, "Preliminary Comments for the Second Remand Redetermination {Slip Op. 25-8} in the Expedited Reviews of the Countervailing Duty Order on Softwood Lumber from Canada," dated February 19, 2025, at 3 (fn. 2).
[44] *See* D&G/Portbec's Comments at 4.
[45] *Id.* at 4 and 11 (citing Draft Results at 7).
[46] *See* June 5, 2024 Questionnaire at question 1 and 2.

Only D&G/Portbec was in possession of information regarding their lumber purchases, and therefore, it was the responsibility of D&G/Portbec to fully disclose the nature of their purchase transactions to Commerce.  Specifically, if, during 2015, D&G/Portbec purchased from unaffiliated Canadian suppliers lumber that was not produced in Canada or lumber that was located in the United States, then D&G/Portbec had the obligation to report those facts to Commerce.  D&G/Portbec, however, did not provide such details to Commerce.[47]

Now, after having failed to develop the record, D&G/Portbec argue that Commerce's analysis and subsidy rate calculation, *based on information they provided*, is wrong and Commerce "should reopen the record and collect additional information" to correctly calculate the subsidy to D&G/Portbec.[48]  However, the appropriate time and place for "additional information" was D&G/Portbec's response to the June 5, 2024 Questionnaire.  It was D&G/Portbec's responsibility to provide accurate and complete lumber purchase data to Commerce at the time of the request.  Because D&G/Portbec did not request clarification of the purchase data requested or guidance on how to report the particulars of their lumber purchases, Commerce had no reason to question the accuracy of the information provided in D&G/Portbec's Response.  Thus, it is appropriate for Commerce to rely on the lumber purchase data reported in D&G/Portbec's Response for its analysis and subsidy rate calculation.  D&G/Portbec cannot now, at this late stage in the remand proceeding, raise arguments based on information that was not disclosed to Commerce previously.

Further, for Commerce to fully evaluate D&G/Portbec's arguments that 19 CFR 351.525(c) is inapplicable to the facts relating to their lumber purchases from unaffiliated Canadian suppliers, D&G/Portbec would have to have developed a record that demonstrates

---

[47] *See* D&G/Portbec's Response.
[48] *See* D&G/Portbec's Comments at 5 and 11.

"D&G/Portbec purchased lumber on the open market {in the United States} from unaffiliated suppliers on a duty-paid basis."[49]  However, they failed to do so.  Thus, their arguments are effectively assertions without a basis in the record or D&G/Portbec's responses.  As such, Commerce cannot rely on D&G/Portbec's claim that they "operated no differently from an American company" when lumber was purchased and resold in the United States.[50]  If, in fact, D&G/Portbec was not the importer of record and purchased lumber in the United States only after an unaffiliated supplier entered it and subsequently resold it in the United States,[51] then D&G/Portbec should have notified Commerce of those transaction details when they submitted their response to the June 5, 2024 questionnaire, but they chose not to do so.

In conducting its analysis and subsidy rate calculation, Commerce must rely on the factual information on the record and has done so here by continuing to use the lumber purchase data submitted in D&G/Portbec's Response.

## V.     FINAL RESULTS OF REDETERMINATION

Based on the analysis above, we find that Commerce properly analyzed the information that D&G/Portbec provided with regard to their purchases of lumber from unaffiliated Canadian suppliers.  We also continue to find the appropriate methodology to determine D&G/Portbec's

---

[49] *Id.* at 2 and 5.
[50] *Id.*
[51] *Id.* at 8.

subsidy rate is Approach A as discussed in the Draft Results.  As such, we continue to find that

D&G/Portbec's overall subsidy rate is 1.75 percent *ad valorem*, which is above *de minimis*.[52]

4/21/2025

X *Chris / abbott*

Signed by: CHRISTOPHER ABBOTT

Christopher Abbott
Deputy Assistant Secretary
 for Policy and Negotiations,
 performing the non-exclusive functions and duties
 of the Assistant Secretary for Enforcement and Compliance

---

[52] *See* D&G/Portbec Calculation Memorandum.