# UNITED STATES COURT OF INTERNATIONAL TRADE

## BEFORE: THE HONORABLE MARK A. BARNETT, CHIEF JUDGE

| | |
|---|---|
| COMMITTEE OVERSEEING ACTION FOR LUMBER INTERNATIONAL TRADE INVESTIGATIONS OR NEGOTIATIONS, ) ) ) | |
| *Plaintiff*, ) | |
| UNITED STATES, ) | Consol. Court No. 19-00122 |
| *Defendant*, ) | |
| and ) | |
| FONTAINE, ET AL., ) | |
| *Defendant-Intervenors*. ) | |
| ) | |
| ) | |
| ) | |

**COMMENTS OF DEFENDANT-INTERVENORS D&G/PORTBEC IN OPPOSITION TO FINAL RESULTS OF REDETERMINATION PURSUANT TO COURT REMAND**

Edward M. Lebow
Davis Price Shugrue
Haynes and Boone, LLP
888 16th Street NW, Suite 300
Washington, DC 20006
(202) 654-4514
*Counsel to Les Produits Forestiers D&G Ltée
and Les Produits Forestiers Portbec Ltée*

Dated: May 20, 2025

**UNITED STATES COURT OF INTERNATIONAL TRADE**

**BEFORE: THE HONORABLE MARK A. BARNETT, CHIEF JUDGE**

| | |
|---|---|
| COMMITTEE OVERSEEING ACTION FOR LUMBER INTERNATIONAL TRADE INVESTIGATIONS OR NEGOTIATIONS, | ) ) ) ) ) |
| *Plaintiff*, | ) Consol. Court No. 19-00122 |
| UNITED STATES, | ) |
| *Defendant*, | ) |
| and | ) |
| FONTAINE INC., ET AL., | ) |
| *Defendant-Intervenors*. | ) ) ) |

**PROPOSED ORDER**

On consideration of the Remand Results filed by the Department of Commerce, the parties' comments and all other pertinent papers, it is hereby:

**ORDERED** that Commerce's Remand Results are remanded for Commerce to reconsider or further explain its subsidy calculations with respect to D&G/Portbec, including reconsidering or further explaining its decision not to reopen the record and the lawfulness of its application of 19 C.F.R. § 351.525(c).

_____
Mark A. Barnett, Chief Judge

Dated: _____
New York, New York

**UNITED STATES COURT OF INTERNATIONAL TRADE**

**BEFORE:  THE HONORABLE MARK A. BARNETT, CHIEF JUDGE**

**TABLE OF CONTENTS**

Page No.

| | | |
|---|---|---|
| **I.** | PROCEDURAL CONTEXT | 1 |
| **II.** | ARGUMENT | 2 |
| **III.** | CONCLUSION | 11 |

# UNITED STATES COURT OF INTERNATIONAL TRADE

## BEFORE: THE HONORABLE MARK A. BARNETT, CHIEF JUDGE

### <u>TABLE OF AUTHORITIES</u>

Page(s)

**Cases**

*Bonney Forge Corp. v. United States*, 560 F. Supp. 3d 1303 (CIT 2022)......................11

*Bowman Transp., Inc. v. Ark.-Best Freight Sys., Inc.*, 419 U.S. 281 (1974) ...............2, 6

*Comm. Overseeing Action for Lumber Int'l Trade Investigations or Negots. v. United States* ("Coalition VII"), 701 F. Supp. 3d 1334 (CIT 2024)..............9, 10, 11

*Comm. Overseeing Action for Lumber Int'l Trade Investigations or Negots. v. United States*, No. 19-122, 2025 WL 1144819 (CIT 2025)........................................9

*Essar Steel Ltd. v. United States*, 678 F.3d 1268 (Fed. Cir. 2012) ....................................8

*Jacobi Carbons AB v. United States*, 222 F. Supp. 3d 1159 (CIT 2017) .........................8

*Koon v. United States*, 518 U.S. 81 (1996)...................................................................3, 7

*Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29 (1983)....................................................................................................2

*Nippon Steel Corp. v. United States*, 458 F.3d 1345 (Fed. Cir. 2006) .............................2

*Qingdao Sea-Line Trading Co. v. United States*, 37 CIT 1182, 1188 (2013), *aff'd*, 766 F.3d 1378 (Fed. Cir. 2014).................................................................................8

*Royal Thai Gov't v. United States*, 38 CIT 649 (2014) ...................................................4

*SKF USA Inc. v. United States*, 263 F.3d 1369 (Fed. Cir. 2001)...................................8, 9

*Timken U.S. Corp. v. United States*, 421 F.3d 1350 (Fed. Cir. 2005) ..............................2

*Timken U.S. Corp. v. United States*, 434 F.3d 1345 (Fed. Cir. 2006) ..........................8, 9

*Transactive Corp. v. United States*, 91 F.3d 232 (D.C. Cir. 1996) ..................................8

*Universal Camera Corp. v. NLRB*, 340 U.S. 474 (1951) ............................................2, 6

*West Virginia v. Env't Prot. Agency*, 597 U.S. 697 (2022) ..............................................4

**Statutes and Rules**

19 U.S.C. § 1516a(b)(1)(B)(i)............................................................................................2

**UNITED STATES COURT OF INTERNATIONAL TRADE**

**BEFORE: THE HONORABLE MARK A. BARNETT, CHIEF JUDGE**

19 U.S.C. § 1671..................................................................................................................4

**Regulations and Administrative Materials**

19 C.F.R. § 351.525(c) .................................................................................................. *passim*

19 C.F.R. § 351.525(c)(1).......................................................................................................3

19 C.F.R. § 351.525(c)(2).......................................................................................................3

19 C.F.R. § 351.525(c)(3).......................................................................................................3

Certain Softwood Lumber Products from Canada: Response of Les Produits Forestiers D&G Ltée and Les Produits Forestiers Portbec Ltée to Supplemental Questionnaire (June 18, 2024) ("Suppl. Questionnaire Resp."), ECF No. 275 .....................................................................................................................5, 6

Comments on the Draft Results of Remand Redetermination Pursuant to Court Remand in the Expedited Reviews of the Countervailing Duty Order on Softwood Lumber from Canada (Apr. 1, 2025) ("D&G/Portbec's Comments"), Rem-P.R. 7 ...............................................................................................1, 5, 10

Draft Results of Redetermination Pursuant to Court Remand, Comm. Overseeing Action for Lumber Int'l Trade Investigations or Negotiations v. United States (Dep't Commerce Mar. 25, 2025) ("Draft Results"), Rem-P.R. 3 ..................................1, 5, 7

Final Results and accompanying Issues and Decision Mem. ("2019 I&D Mem."), C-122-858 (Dep't Commerce June 28, 2019), ECF No. 99-6....................................................5

Final Results of Redetermination Pursuant to Court Remand, Committee Overseeing Action for Lumber International Trade Investigations or Negotiations v. United States (Dep't Commerce Apr. 21, 2025) ("Remand Results"), ECF No. 309 ............................................................................................... *passim*

Preliminary Comments for the Second Remand Redetermination in the Expedited Reviews of the Countervailing Duty Order on Softwood Lumber from Canada (Feb. 19, 2025) ("D&G/Portbec's Preliminary Comments"), Rem-P.R. 1...........................1, 9

Questionnaire for D&G & Portbec (Dep't Commerce June 5, 2024).........................................7, 9

Rebuttal Br. of the Gov't of Québec (Mar. 18, 2019).....................................................................10

**Other Authorities**

Comments of Def.-Intervenors Les Produits Forestiers D&G Ltée and Les Produits Forestiers Portbec Ltée (Nov. 15, 2024), ECF No. 264 ............................................10

**UNITED STATES COURT OF INTERNATIONAL TRADE**

**BEFORE:  THE HONORABLE MARK A. BARNETT, CHIEF JUDGE**

Joint Br. of Def.-Intervenors Gov't of Canada and Gov't of Québec in Opposition
  to Pl.'s Mot. for J. on the Agency R. (Apr. 10, 2020), ECF No. 120. ......................................10

UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: THE HONORABLE MARK A. BARNETT, CHIEF JUDGE

**COMMENTS OF DEFENDANT-INTERVENORS D&G/PORTBEC IN OPPOSITION TO FINAL RESULTS OF REDETERMINATION PURSUANT TO COURT REMAND**

**I.    PROCEDURAL CONTEXT**

On April 21, 2025, the U.S. Department of Commerce ("Commerce") filed the Final Results of Redetermination Pursuant to Court Remand regarding the countervailing duty ("CVD") expedited review covering softwood lumber products from Canada. *See* Final Results of Redetermination Pursuant to Court Remand, Committee Overseeing Action for Lumber International Trade Investigations or Negotiations v. United States (Apr. 21, 2025) ("Remand Results"), ECF No. 309. Commerce prepared the Remand Results in response to the Court's decision in Committee Overseeing Action for Lumber International Trade Investigations or Negotiations v. United States, Court No. 19-122, Slip Op. 25-8 (CIT 2025), which remanded Commerce's prior Remand Redetermination, ECF No. 255-1. During the remand proceedings, D&G/Portbec timely submitted Preliminary Comments on February 19, 2025. Preliminary Comments for the Second Remand Redetermination in the Expedited Reviews of the Countervailing Duty Order on Softwood Lumber from Canada (Feb. 19, 2025) ("D&G/Portbec's Preliminary Comments"), Rem-P.R. 1. Commerce released its Draft Results on March 25, 2025. Draft Results of Redetermination Pursuant to Court Remand, Comm. Overseeing Action for Lumber Int'l Trade Investigations or Negotiations v. United States (Mar. 25, 2025) ("Draft Results"), Rem-P.R. 3. D&G/Portbec timely submitted Comments on the Draft Results on April 1, 2025. Comments on the Draft Results of Remand Redetermination Pursuant to Court Remand in the Expedited Reviews of the Countervailing Duty Order on Softwood Lumber from Canada (Apr. 1, 2025) ("D&G/Portbec's Comments"), Rem-P.R. 7.

1

II.     ARGUMENT

The Remand Results are unsupported by substantial evidence, not in accordance with the law, and an abuse of discretion. They rest on a legal error, fail to consider important aspects of the problem before Commerce, and fail adequately to explain Commerce's decision. The Court should order another remand.

The Court will remand Commerce's decision if it is "unsupported by substantial evidence … or otherwise not in accordance with the law." 19 U.S.C. § 1516a(b)(1)(B)(i). The substantial evidence standard requires considering the record as a whole, including evidence that detracts from Commerce's decision. *Nippon Steel Corp. v. United States*, 458 F.3d 1345, 1350–51 (Fed. Cir. 2006); *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951). Commerce must consider the important aspects of the problem before it and provide a reasoned explanation for its decision. *Bowman Transp., Inc. v. Ark.-Best Freight Sys., Inc.*, 419 U.S. 281, 285–286 (1974); *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983) (Agency action is "arbitrary and capricious if the agency … entirely failed to consider an important aspect of the problem ....").[1]

The Remand Results Apply 19 C.F.R. § 351.525(c) Unlawfully

The Remand Results apply 19 C.F.R. § 351.525(c) unlawfully by countervailing a supposed subsidy received in the United States when D&G/Portbec purchased lumber from unaffiliated suppliers on the open market and on a duty-paid basis. This error requires a remand because the Remand Results are "not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B)(i). It also makes

---

[1] The *State Farm* standard applies to Commerce's countervailing duty final determinations. *See Timken U.S. Corp. v. United States*, 421 F.3d 1350, 1356–57 (Fed. Cir. 2005).

**UNITED STATES COURT OF INTERNATIONAL TRADE**

**BEFORE: THE HONORABLE MARK A. BARNETT, CHIEF JUDGE**

Commerce's decision not to reopen the record an abuse of discretion, because a legal error guided Commerce's decision. *Koon v. United States*, 518 U.S. 81, 100 (1996) (Decisions "guided by erroneous legal conclusions" are an abuse of discretion).

Section 351.525(c) allows Commerce to cumulate benefits provided to a trading company with benefits provided to a firm that produces subject merchandise sold through the trading company. 19 C.F.R. § 351.525(c)(1). But § 351.525(c) does not apply where a company purchases subject merchandise in the United States on a duty-paid basis and resells it in the United States. Once the subject merchandise enters the United States subject to applicable duties, Commerce's window to cumulate subsidies ends. The language in each subsection of § 351.525(c) makes this clear; no subsection applies to D&G/Portbec's lumber purchases in the United States.

Section 351.525(c)(1) applies to "a trading company that exports subject merchandise." Where D&G/Portbec both purchased and resold lumber in the United States, D&G/Portbec was not "a trading company that export[ed] subject merchandise." The unaffiliated producer—or some other unaffiliated company—exported the subject merchandise. Section 351.525(c)(2) applies to a respondent that "exports through [a] trading company." Where D&G/Portbec purchased lumber in the United States, it did not export that lumber through a trading company. Instead, the unaffiliated producer or some other company exported the merchandise. Finally, § 351.525(c)(3) speaks of a company's "sales of subject merchandise to the United States." That language suggests sales to the United States from a foreign country, as opposed to sales wholly within the American domestic market. But where D&G/Portbec purchased lumber in the United States and resold it in the United States, it made no sale to the United States.

3

UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: THE HONORABLE MARK A. BARNETT, CHIEF JUDGE

Commerce's approach inherently leads to double counting duties. Where D&G/Portbec purchased Canadian-produced lumber in the United States on a duty-paid basis, any countervailing duties must be imposed on the importer of record and not D&G/Portbec. The Remand Results in effect impose countervailing duties on D&G/Portbec for subject merchandise it did not import by raising its rate because of these transactions. Were countervailing duties already in place during the period of review, Commerce's approach would impose countervailing duties twice, first by collecting duties from the importer of record and second by increasing D&G/Portbec's rate. This hypothetical shows Commerce's approach is unlawful.

Furthermore, Commerce's application of § 351.525(c) exercises a power not granted in its enabling statute. *Cf. West Virginia v. Env't Prot. Agency*, 597 U.S. 697, 723 (2022) ("Agencies have only those powers given to them by Congress…."). The statutory scheme is clear: countervailing duties are imposed when a good enters the United States, and arm's length transactions after that cannot confer a countervailable benefit. *See generally* 19 U.S.C. § 1671. When D&G/Portbec purchased lumber in the United States and then resold it in the United States, D&G/Portbec operated no differently than any American company buying and reselling lumber wholly within the American domestic market. That behavior cannot subject D&G/Portbec to increased countervailing duties because Congress did not authorize such an intrusion into the domestic economy. Commerce's application of § 351.525(c) is not in accordance with law. This alone necessitates a remand. [2]

---

[2] D&G/Portbec could not further challenge Commerce's decision on the prior remand because D&G/Portbec lacked Article III standing after receiving a *de minimis* rate. *Royal Thai Gov't v. United States*, 38 CIT 649, 651–52 (2014).

The Remand Results Fail to Explain Commerce's Decision

Commerce's Draft Results dismissed D&G/Portbec's arguments about purchases in the United States by saying that regardless of where D&G/Portbec purchased the lumber, "the situation is still appropriately considered … a relationship between a producer and its trading company" under § 351.525(c) "because fundamentally the lumber was produced by an unaffiliated Canadian producer." Draft Results at 6–7. D&G/Portbec explained in detail why that is wrong. *See* D&G/Portbec's Comments at 4–10. Now, Commerce claims it cannot "fully evaluate D&G/Portbec's arguments that {§ 351.525(c)} is inapplicable" because D&G/Portbec failed to "develop a record that demonstrates 'D&G/Portbec purchased lumber on the open market {in the United States} from unaffiliated suppliers on a duty-paid basis.'" Remand Results at 13–14 (quoting D&G/Portbec's Comments at 2, 5). That is also wrong, and it directly contradicts Commerce's own prior finding on the same question. *See* Final Results and accompanying Issues and Decision Mem. at 39 ("2019 I&D Mem."), C-122-858 (Dep't Commerce June 28, 2019), ECF No. 99-6.

D&G/Portbec provided proof of its transactions in the United States in the very questionnaire response Commerce claims failed to show such transactions. The response includes documentation for a transaction where Portbec purchased lumber from an unaffiliated Canadian supplier in the United States.[3] Certain Softwood Lumber Products from Canada: Response of Les Produits Forestiers D&G Ltée and Les Produits Forestiers Portbec Ltée to Supplemental Questionnaire at Annex 2 (June 18, 2024), ECF No. 275 ("Suppl. Questionnaire Resp."). The

---

[3] To the extent D&G/Portbec's description of its questionnaire response reveals information it designated as confidential, D&G/Portbec rescinds its prior request for confidential treatment of such information—which is now stale—and agrees to the public disclosure by all parties of the information revealed by D&G/Portbec in these comments.

5

documents provided show an unaffiliated supplier shipped lumber to a port in the United States where Portbec took title only after the lumber arrived in the United States. *Id.* Rather than D&G/Portbec failing to build the record, Commerce failed to consider the record (including the evidence detracting from its conclusions), draw reasonable conclusions, and explain them. Commerce failed to address the information in D&G/Portbec's questionnaire response and its own prior determination directly contradicting its characterization of the record. *Compare* Remand Results at 14 (Assertions that D&G/Portbec purchased lumber from unaffiliated suppliers in the United States "are … without a basis in the record or D&G/Portbec's responses."), *with* Suppl. Questionnaire Resp. at Annex 2 (showing purchase in the United States from an unaffiliated supplier), *and* 2019 I&D Mem. at 39 ("{T}he vast majority of D&G/Portbec's transactions involve purchasing Canadian lumber on a duty paid basis in the United States and reselling it in the United States").

Commerce's failure to address the relevant record evidence and come to a reasonable conclusion renders the Remand Results unsupported by substantial evidence. Nowhere do the Remand Results acknowledge that Commerce's new conclusions directly contradict Commerce's previous conclusions, nor do they acknowledge the record evidence contradicting Commerce's conclusion. Commerce must explain its decision so that its path is reasonably discernible, and it must reckon with record evidence that detracts from its conclusion. *Bowman Transp.*, 419 U.S. at 285–286; *Universal Camera*, 340 U.S. at 488. Here, Commerce misstates the record and ignores contrasting evidence. The Remand Results are accordingly unsupported by substantial evidence.

<u>D&G/Portbec Did Not Fail to Build the Record</u>

To the extent Commerce needs further information, it is because Commerce abused its discretion by not reopening the record. Commerce knew that D&G/Portbec purchased lumber from unaffiliated Canadian suppliers on a duty paid basis in the United States during the period of review. D&G/Portbec fully answered Commerce's questions in the June 2024 questionnaire. Now, Commerce blames D&G/Portbec for not anticipating Commerce's subsequent unlawful application of § 351.525(c). The principle that the respondent is responsible for building the record does not save the Remand Results. Under the circumstances, Commerce's decision not to reopen the record was unsupported by substantial evidence and an abuse of discretion.

Commerce blames D&G/Portbec for failing to develop the record, but the real blame falls on Commerce for consistently taking an erroneous legal position regarding § 351.525(c). Commerce failed to ask about sales in the United States in its questionnaire—which did not even alert D&G/Portbec that Commerce intended a wholesale methodology change—because Commerce believed that § 351.525(c) allowed it to increase D&G/Portbec's rate on the basis of purchases in the United States. Questionnaire for D&G & Portbec (Dep't Commerce June 5, 2024). The Draft Results prove this. Commerce stated in the Draft Results that § 351.525(c) applies "regardless of whether Portbec purchased the lumber in Canada … or … in the United States." Draft Results at 6–7. That explanation is a legal error, and Commerce abused its discretion by basing its decision on that legal error. *Koon*, 518 U.S. at 100. After D&G/Portbec explained Commerce's legal error in its Comments, Commerce now seeks to shield its legal error from the Court's review by blaming D&G/Portbec for not predicting the legal error. The Court should not abide this strategy.

7

UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: THE HONORABLE MARK A. BARNETT, CHIEF JUDGE

Commerce may reopen the record on remand, and it is "particularly appropriate when … doing so clearly advances the purposes of the remand." *Qingdao Sea-Line Trading Co. v. United States*, 37 CIT 1182, 1188 (2013), *aff'd*, 766 F.3d 1378 (Fed. Cir. 2014). That is the case here. "The Federal Circuit has recognized that supplementation may be permitted" when Commerce's decision is based on data that Commerce knows is incorrect. *Jacobi Carbons AB v. United States*, 222 F. Supp. 3d 1159, 1194 (CIT 2017) (citing *Essar Steel Ltd. v. United States*, 678 F.3d 1268, 1277–78 (Fed. Cir. 2012)). Commerce knows the data it relied on is incorrect because it both knows that D&G/Portbec purchased lumber in the United States on a duty-paid basis and that D&G/Portbec's Supplemental Questionnaire Response included such purchases. Commerce thus should have reopened the record under the Federal Circuit's rationale in *Essar Steel*, and the Court should remand the case for Commerce to reopen the record in light of *Essar Steel*. 678 F.3d at 1277–78.

Even if *Essar Steel* does not require Commerce to reopen the record, the Court should still remand because Commerce abused its discretion. Commerce must weigh finality and accuracy and Commerce must treat like situations alike. *See Timken U.S. Corp. v. United States*, 434 F.3d 1345, 1353 (Fed. Cir. 2006); *SKF USA Inc. v. United States*, 263 F.3d 1369, 1382 (Fed. Cir. 2001) (quoting *Transactive Corp. v. United States*, 91 F.3d 232, 237 (D.C. Cir. 1996)) ("{I}t is well-established that 'an agency action is arbitrary when the agency offer{s} insufficient reasons for treating similar situations differently.'") (second alteration in original). Commerce abused its discretion by: 1) issuing a supplemental questionnaire previously but refusing to do so here despite more compelling circumstances, and 2) not recognizing that accuracy concerns outweighed any finality concerns.

8

Commerce abused its discretion when it treated similar situations differently by refusing to reopen the record on remand after doing so before. *See SKF USA*, 263 F.3d at 1382. Commerce issued a multi-question supplemental questionnaire after an earlier remand, but denied D&G/Portbec's request here to provide limited additional information necessary for Commerce to lawfully calculate D&G/Portbec's rate. Questionnaire for D&G & Portbec (June 5, 2024). Commerce did not explain why reopening the record to obtain limited information was unwarranted even though Commerce found it appropriate to reopen the record to ask extensive questions on a prior remand.

Commerce also failed to explain how the minimal finality concerns outweigh serious accuracy concerns. D&G's request to provide limited additional information—which it represented it could do promptly—raises minimal finality concerns. D&G/Portbec's Preliminary Comments at 6. Indeed, the Remand Results make no suggestion that granting D&G/Portbec's request would have delayed Commerce's work, nor could Commerce reasonably suggest that. Finality concerns are especially minimal here because parallel proceedings prevent the liquidation of the relevant entries. *Comm. Overseeing Action for Lumber Int'l Trade Investigations or Negots. v. United States*, No. 19-122, 2025 WL 1144819 *2 (CIT 2025). Conversely, there are serious accuracy concerns given Commerce's unlawful application of § 351.525(c). That a small change now might "be the difference between" *de minimis* and above *de minimis* rates amplifies those concerns. *Comm. Overseeing Action for Lumber Int'l Trade Investigations or Negots. v. United States* ("Coalition VII"), 701 F. Supp. 3d 1334, 1353 (CIT 2024). Here, there is no "tension between finality and {obtaining a} correct result" because there are minimal finality concerns and serious accuracy concerns. *Timken*, 434 F.3d at 1353 (Fed. Cir. 2006). Commerce's failure to

9

appropriately weigh the factors and recognize that the balance favors D&G/Portbec is an abuse of discretion.

In sum, Commerce is incorrect to blame D&G/Portbec for failing to build the record, and Commerce's refusal to reopen the record is an abuse of discretion and unsupported by substantial evidence. The Court should remand with instructions for Commerce to reopen the record or, in the alternative, with instructions to reconsider or further explain its decision.

The Remand Results Fail to Consider D&G/Portbec's Remanufacturing Argument

Commerce also failed to address D&G/Portbec's argument that remanufacturing makes § 351.525(c) inapplicable and instead requires an upstream subsidy allegation. D&G/Portbec raised this point consistently throughout this litigation and raised it again in its Comments on the Draft Results.[4] *See, e.g.*, D&G/Portbec's Comments at 10; Comments of Def.-Intervenors Les Produits Forestiers D&G Ltée and Les Produits Forestiers Portbec Ltée at 1, n. 1 (Nov. 15, 2024), ECF No. 264 (D&G/Portbec does not "agree{} or acquiesce{} in Commerce's decisions regarding the passthrough of subsidy benefits from unaffiliated suppliers."). Commerce quoted D&G/Portbec's arguments but otherwise failed to address them. Remand Results at 11. This error warrants a remand.

The Court previously explained the importance of considering remanufacturing and whether it requires an upstream subsidy allegation. *Coalition VII*, 701 F. Supp. 3d at 1349–51. The Remand Results repeat a conclusory statement from the Draft Results that D&G/Portbec

---

[4] Other parties also raised this argument throughout the proceedings. *See, e.g.*, Rebuttal Br. of the Gov't of Québec at 4–5 (Mar. 18, 2019); Joint Br. of Def.-Intervenors Gov't of Canada and Gov't of Québec in Opposition to Pl.'s Mot. for J. on the Agency R. (Apr. 10, 2020), ECF No. 120.

10

conducted only minor processing but do not explain what record evidence supports that conclusion or engage with D&G/Portbec's arguments.  Remand Results at 6.  A mere conclusory statement falls short of the substantial evidence standard.  *Bonney Forge Corp. v. United States*, 560 F. Supp. 3d 1303, 1315 (2022) ("The Court cannot review an explanation not given.").  Commerce's explanation is especially inadequate because it departs from Commerce's prior position that the remanufacturing was significant enough to require an upstream subsidy allegation.  *See Coalition VII*, 701 F. Supp. 3d at 1349.  Indeed, the "sparsity of Commerce's explanation" and Commerce's failure to "reconcile its position with seemingly inconsistent earlier agency statements" are similar defects to those the Court previously found warranted remand.  *Id.* at 1351–52.

### III.    CONCLUSION

The Remand Results are unsupported by substantial evidence, not in accordance with law, and an abuse of discretion.  The Court should order an additional remand and instruct Commerce to reconsider or further explain its subsidy calculations with respect to D&G/Portbec, including reconsidering or further explaining its decision not to reopen the record and the lawfulness of its application of § 351.525(c).

**UNITED STATES COURT OF INTERNATIONAL TRADE**

**BEFORE:  THE HONORABLE MARK A. BARNETT, CHIEF JUDGE**

    Respectfully Submitted,

    <u>/s/ Edward M. Lebow</u>
    Edward M. Lebow
    Davis Price Shugrue
    Haynes and Boone, LLP
    888 16th Street NW, Suite 300
    Washington, DC 20006
    (202) 654-4514
    *Counsel to Les Produits Forestiers D&G Ltée*
    *and Les Produits Forestiers Portbec Ltée*

Dated: May 20, 2025

UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: THE HONORABLE MARK A. BARNETT, CHIEF JUDGE

CERTIFICATE OF COMPLIANCE

Pursuant to Chambers Procedure 2(B)(2), I certify that this brief contains 2,979 words, excluding those portions that do not count towards the word limitation, and therefore complies with the Court's Chambers Procedures.

/s/ Edward M. Lebow