**IN THE UNITED STATES COURT OF INTERNATIONAL TRADE**

BEFORE THE HONORABLE MARK BARNETT, CHIEF JUDGE

| | |
|---|---|
| _____ ) | |
| COMMITTEE OVERSEEING ACTION ) | |
| FOR LUMBER INTERIATIONAL TRADE ) | |
| INVESTIGATIONS OR NEGOTIATIONS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| and ) | |
| ) | |
| LES PRODUITS FORESTIERS D&G LTÉE AND ) | |
| LES PRODUITS FORESTIERS PORTBEC LTÉE, ) | |
| ET. AL., ) | |
| Consolidated Plaintiffs, ) | |
| ) | |
| v. ) | Consol. Court No. 19-00122 |
| ) | |
| UNITED STATES, ) | |
| Defendant, ) | |
| and ) | |
| ) | |
| LES PRODUITS FORESTIERS D&G LTÉE AND ) | |
| LES PRODUITS FORESTIERS PORTBEC LTÉE, ) | |
| ET. AL., ) | |
| Defendants-Intervenors. ) | |

## <u>ORDER</u>

Upon consideration of the Department of Commerce's final redetermination

pursuant to remand, parties' comments, defendant's response, and all other pertinent

papers, it is hereby

ORDERED that the Department of Commerce's remand redetermination is

sustained in all respects.


Dated: _____, 2025          _____
      New York, New York                                              JUDGE

**IN THE UNITED STATES COURT OF INTERNATIONAL TRADE**

BEFORE THE HONORABLE MARK BARNETT, CHIEF JUDGE

_____

|  |  |  |
|---|---|---|
| COMMITTEE OVERSEEING ACTION FOR LUMBER INTERNATIONAL TRADE INVESTIGATIONS OR NEGOTIATIONS, | ) ) ) | |
| Plaintiff, | ) ) ) | |
| and | ) ) ) | |
| LES PRODUITS FORESTIERS D&G LTÉE AND LES PRODUITS FORESTIERS PORTBEC LTÉE, ET. AL., | ) ) ) | **PUBLIC VERSION** |
| Consolidated Plaintiffs, | ) ) | |
| v. | ) ) | Consol. Court No. 19-00122 |
| UNITED STATES, | ) ) | |
| Defendant, | ) ) | |
| and | ) ) | |
| LES PRODUITS FORESTIERS D&G LTÉE AND LES PRODUITS FORESTIERS PORTBEC LTÉE, ET. AL., | ) ) ) | |
| Defendants-Intervenors. | ) | |

**DEFENDANT'S RESPONSE TO COMMENTS ON REMAND REDETERMINATION**

BRETT A. SHUMATE
Assistant Attorney General

PATRICIA M. MCCARTHY
Director

CLAUDIA BURKE
Deputy Director

OF COUNSEL
Jesus N. Saenz
Senior Attorney
Office of Chief Counsel
for Trade Enforcement & Compliance
Department of Commerce

ROBERT R. KIEPURA
Trial Attorney
U.S. Department of Justice, Civil Division
Commercial Litigation Branch
P.O. Box 480, Ben Franklin Station
Washington, D.C. 20044
Tel: (202) 305-4436
Robert.Kiepura@usdoj.gov

Dated: July 21, 2025

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................ ii

BACKGROUND .............................................................................................................2

I.      Final Results ...................................................................................................2

II.     First Remand Order ........................................................................................3

III.    Second Remand Order .....................................................................................4

IV.     Third Remand Order ........................................................................................6

ARGUMENT .................................................................................................................8

I.      Standard Of Review .........................................................................................8

II.     Commerce Complied With This Court's Remand Order And The Remand
        Results Are Lawful And Supported By Substantial Evidence ...........................8

CONCLUSION .............................................................................................................16

# TABLE OF AUTHORITIES

Cases

*Changzhou Wujin Fine Chem. Factory Co., Ltd. v. United States*,
   701 F.3d 1367 (Fed. Cir. 2012)................................................................10

*Comm. Overseeing Action for Lumber Int'l Trade Investigations or Negots. v. United States*,
   66 F.4th 968 (Fed. Cir. 2023) .................................................................4

*Comm. Overseeing Action for Lumber Int'l Trade Investigations or Negots. v. United States*,
   483 F. Supp. 3d 1253 (Ct. Int'l Trade 2020) ...........................................3

*Comm. Overseeing Action for Lumber Int'l Trade Investigations or Negots. v. United States*,
   701 F. Supp. 3d 1334 (Ct. Int'l Trade 2024) ...........................................4

*Comm. Overseeing Action for Lumber Int'l Trade Investigations or Negots. v. United States*,
   755 F. Supp. 3d 1317 (Ct. Int'l Trade 2025) .....................................passim

*Downhole Pipe & Equip., L.P. v. United States*,
   776 F.3d 1369 (Fed. Cir. 2015)...............................................................16

*Haixing Jingmai Chem. Prods. Sales Co., Ltd. v. United States*,
   335 F. Supp. 3d 1330 (Ct. Int'; Trade 2018)...........................................16

*MacLean-Fogg Co. v. United States*,
   100 F. Supp. 3d 1349 (Ct. Int'l Trade 2015) ...........................................8

*Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*,
   463 U.S. 29 (1983)................................................................................14

*New Am. Keg v. United States*,
   No. 20-00008, 2024 WL 4879757 (Ct. Int'l Trade Nov. 25, 2024) .........14

*POSCO v. United States*,
   557 F. Supp. 3d 1290 (Ct. Int'l Trade 2022) ...........................................8

*Tianjin Mach. Imp. & Exp. Corp. v. United States*,
   806 F. Supp. 1008 (Ct. Int'l Trade 1992)................................................13

*Zhaoqing Tifo New Fibre Co. v. United States*,
   355 F. Supp. 3d 1285 (Ct. Int'l Trade 2018)...........................................10

Statutes

19 U.S.C. § 1516a................................................................................8

19 U.S.C. § 1671..............................................................................3, 15

19 U.S.C. § 1677-1 ................................................................................................15

<u>Regulations</u>

19 C.F.R. § 351.214(k) ....................................................................................2, 3, 4

19 C.F.R. § 351.523(a) ...........................................................................................3

19 C.F.R. § 351.525(c) ..................................................................................passim

<u>Other Authorities</u>

*Certain Softwood Lumber Products From Canada,*
    83 Fed. Reg. 347 (Dep't of Commerce Jan. 3, 2018) ............................................2

*Certain Softwood Lumber Products From Canada,*
    83 Fed. Reg. 9,833 (Dep't of Commerce Mar. 8, 2018) .........................................2

*Certain Softwood Lumber Products From Canada,*
    84 Fed. Reg. 1,051 (Dep't of Commerce Feb. 1, 2019) .........................................2

*Certain Softwood Lumber Products From Canada,*
    84 Fed. Reg. 32,121 (Dep't of Commerce July 5, 2019) .....................................2, 3

**IN THE UNITED STATES COURT OF INTERNATIONAL TRADE**

BEFORE THE HONORABLE MARK BARNETT, CHIEF JUDGE

_____

| | |
|---|---|
| COMMITTEE OVERSEEING ACTION<br>FOR LUMBER INTERATIONAL TRADE<br>INVESTIGATIONS OR NEGOTIATIONS, | ) <br>) <br>) <br>) |
| Plaintiff, | ) <br>) |
| and | ) <br>) <br>) |
| LES PRODUITS FORESTIERS D&G LTÉE AND<br>LES PRODUITS FORESTIERS PORTBEC LTÉE,<br>ET. AL., | )    **PUBLIC VERSION**<br>) <br>) |
| Consolidated Plaintiffs, | ) <br>) |
| v. | )    Consol. Court No. 19-00122 |
| UNITED STATES, | ) <br>) |
| Defendant, | ) <br>) <br>) |
| and | ) <br>) |
| LES PRODUITS FORESTIERS D&G LTÉE AND<br>LES PRODUITS FORESTIERS PORTBEC LTÉE,<br>ET. AL., | ) <br>) <br>) |
| Defendants-Intervenors. | ) <br>) |

_____

**DEFENDANT'S RESPONSE TO COMMENTS ON REMAND REDETERMINATION**

Defendant, the United States, respectfully submits this response to comments filed by

plaintiffs, Les Produits Forestiers D&G Ltée (D&G) and its cross-owned company Les Produits

Forestiers Portbec Ltée (Portbec) (together, D&G/Portbec), ECF No. 311 (Pl. Remand

Comments), on the final remand redetermination, ECF No. 309-1 (Final Remand) issued by the

Department of Commerce (Commerce) pursuant to *Committee Overseeing Action for Lumber*

*International Trade Investigations or Negotiations v. United States*, 755 F. Supp. 3d 1317 (Ct.

Int'l Trade 2025) (*Remand Order*), sustaining in part and remanding in part the final results of

Commerce's countervailing duty expedited review of certain softwood lumber products (lumber)

from Canada.  *See Certain Softwood Lumber Products From Canada*, 84 Fed. Reg. 32,121

(Dep't of Commerce July 5, 2019) (final results of CVD expedited review) (*Final Results*) (P.R.

759) and accompanying Issues and Decision Memorandum (IDM) (P.R. 749).

## BACKGROUND

### I.    Final Results

On January 3, 2018, Commerce published a countervailing duty order covering lumber

from Canada.  *See Certain Softwood Lumber Products From Canada*, 83 Fed. Reg. 347 (Dep't

of Commerce Jan. 3, 2018) (Amended Final Affirmative Countervailing Duty Determination and

Countervailing Duty Order) (CVD Order).  On March 8, 2018, in response to requests filed by

certain Canadian producers and exporters, Commerce initiated an expedited review of the CVD

Order pursuant to 19 C.F.R. § 351.214(k).  *See Certain Softwood Lumber Products From*

*Canada*, 83 Fed. Reg. 9,833 (Dep't of Commerce 2018) (Initiation of Expedited Review of the

CVD Order) (Initiation Notice) (P.R. 94).  The companies subject to the expedited review were

not selected as mandatory or voluntary respondents in the CVD investigation and were subject to

the all-others rate of 14.19%.  *See* CVD Order, 83 Fed. Reg. at 348.  The period of review for the

expedited review was the same as that for the CVD investigation—January 1, 2015,

through December 31, 2015.  *See Initiation Notice*, 83 Fed. Reg. at 9,833.  Commerce published

the preliminary results of the expedited review on February 1, 2019.  *See Certain Softwood*

*Lumber Products From Canada*, 84 Fed. Reg. 1,051 (Dep't of Commerce 2019) (Preliminary

Results of Countervailing Duty Expedited Review) (Preliminary Results) (P.R. 702).  On July 5,

2019, Commerce published the *Final Results* covering eight companies and their cross-owned

affiliates.  *See* 84 Fed. Reg. at 32,122.

In the *Final Results*, Commerce explained that most of the respondents in the expedited review had either manufactured lumber from logs from unaffiliated suppliers and/or performed further manufacturing on lumber acquired from unaffiliated suppliers.  *Final Results* at 38.  Commerce found that, although 19 U.S.C. § 1671(a)(1) directs it to account for all countervailable subsidies provided "with respect to the manufacture, production, or export of a class or kind of merchandise imported . . . into the United States," that does not mean that it may presume the pass through of benefits received by unaffiliated input suppliers.  Instead, Commerce found that 19 C.F.R. § 351.523(a) sets out the requirements that the petitioner must allege in order for Commerce to investigate upstream subsidies, *i.e.*, subsidies received by unaffiliated input suppliers.  *Id.*  Because the petitioner did not submit an upstream subsidy allegation, Commerce did not investigate upstream subsidies for the *Final Results*.  *Id.*

Relevant here, Commerce calculated a *de minimis* overall subsidy rate for D&G/Portbec, and excluded these companies from the CVD Order.  The Committee Overseeing Action for Lumber International Trade Investigations or Negotiations (COALITION) initiated litigation alleging, among other things, that Commerce's attribution methodology was unlawful.  Complaint, ECF No. 2.

## II.    <u>First Remand Order</u>

On November 19, 2020, the Court remanded Commerce's *Final Results* for reconsideration of the statutory basis upon which Commerce promulgated its expedited review regulations at 19 C.F.R. § 351.214(k).  *Comm. Overseeing Action for Lumber Int'l Trade Investigations or Negots. v. United States*, 483 F. Supp. 3d 1253 (Ct. Int'l Trade 2020).  On February 22, 2021, Commerce issued its First Remand Redetermination, where it found that it

did not have the statutory authority to promulgate the expedited review regulations at 19 C.F.R.

§ 351.214(k), and to conduct the expedited review.  Final Results of Redetermination Pursuant to

Court Remand, (February 17, 2021) (ECF No. 173).  On August 18, 2021, the Court affirmed

Commerce's remand and vacated the expedited review regulation at 19 C.F.R. § 351.214(k), as

well as the *Final Results*.

On April 25, 2023, however, the U.S. Court of Appeals for the Federal Circuit reversed

and remanded the Court's decision vacating Commerce's expedited review regulation.  *Comm.*

*Overseeing Action for Lumber Inter'l Trade Investigations or Negots. v. United States*, 66 F.4th

968, 979 (Fed. Cir. 2023).  Thereafter, the case returned to this Court to address the outstanding

claims not previously considered in the Court's prior decision.

## III.    Second Remand Order

On April 22, 2024, the Court sustained in part, and remanded in part, Commerce's *Final*

*Results*.  *Comm. Overseeing Action for Lumber Inter'l Trade Investigations or Negots. v. United*

*States*, 701 F. Supp. 3d 1334 (Ct. Int'l Trade 2024) (*Second Remand Order*).  Therein, the Court

explained that Commerce had failed to engage with the COALITION's arguments regarding

cumulating subsidies on lumber acquired from unaffiliated suppliers.  *Id.* at 1353-54.

Following the *Second Remand Order*, on June 5, 2024, Commerce issued a questionnaire

to D&G and Portbec seeking information regarding the volume and value of lumber sourced by

the respondents from affiliated Canadian suppliers, unaffiliated Canadian suppliers, and U.S.

suppliers.  D&G/Portbec Supplemental Questionnaire, (June 5, 2024) (Second Remand P.R.R. 1,

Second Remand C.R.R. 1); *see also* Second Remand Redetermination, (Sept. 10, 2024) ECF No.

255 at 8.  Commerce also requested that D&G and Portbec report the volume and value of

lumber sourced from unaffiliated Canadian suppliers that was remanufactured and that was

4

resold. D&G/Portbec Supplemental Questionnaire at 4. D&G and Portbec provided the

requested information on June 18, 2024. *See* D&G and Portbec Supplemental Questionnaire

Response (June 18, 2024), at 7 (Second Remand P.R.R. 2, Second Remand C.R.R. 2).

After considering D&G/Portbec's response, Commerce issued its draft remand

redetermination on July 16, 2024. *See* Draft Second Remand Redetermination, (July 16, 2024) at

1 (Second Remand P.R.R. 3). Therein, Commerce reconsidered the relationship between D&G

and Portbec and their unaffiliated Canadian suppliers of lumber and determined that it was

appropriate to account for the subsidy benefits provided to the unaffiliated Canadian suppliers of

lumber during the period of review pursuant to 19 C.F.R. § 351.525(c). *Id.* at 9. Specifically, for

lumber purchased from unaffiliated Canadian suppliers that D&G and Portbec either had further

processed or resold directly to the United States, Commerce determined that those situations

were akin to the relationship between a producer and its trading company under 19 C.F.R. §

351.525(c) because respondents either conducted minor processing on the purchased "rough-

hewn" lumber, which itself is subject merchandise, or in the case of Portbec, resold the lumber

directly without further processing. *Id.* at 9. Commerce then determined that it would cumulate

the benefits from subsidies provided to D&G and Portbec with benefits from subsidies provided

to their unaffiliated Canadian lumber suppliers. *Id.* at 9.

In its comments on the Second Draft Remand, the COALITION argued that Commerce

had calculated D&G's and Portbec's subsidy rate incorrectly. *See* COALITION Comments on

Draft Remand, (July 25, 2024) (Second Remand P.R.R. 11, Second Remand C.R.R. 9); *see also*

Second Remand Redetermination at 18. Specifically, the COALITION argued that

"Commerce's calculation 'double-weighted' the value of Portbec's and D&G's purchases of

unaffiliated suppliers' lumber." Second Remand Redetermination at 18. Commerce released the Second Remand Redetermination on September 10, 2024. *Id.* at 23.

In the Second Remand Redetermination, Commerce disagreed with the COALITION that it had calculated D&G and Portbec's subsidy rate incorrectly, finding that its methodology best reflected the portion of the unaffiliated lumber producers' subsidies that D&G and Portbec each had received based on their own particular quantity of lumber purchased and sales made during the period of review. *Id.* at 19 (citing D&G/Portbec Final Calculations (Sept. 10, 2024) (Second Remand C.R.R. 12) and Memorandum, Draft Results of Redetermination Calculations Pertaining to D&G/Portbec (Jul. 15, 2024) Second Remand P.R.R. 4, Second Remand C.R.R. 3)). Specifically, Commerce applied a weighted calculation methodology that reflects D&G's and Portbec's lumber purchases from unaffiliated suppliers in relation to their total combined sales (minus inter-company sales), and then multiplied those shares by the all-others rate (14.19%) to calculate a single subsidy rate for the unaffiliated lumber producers attributable to D&G and Portbec. Second Remand Redetermination at 19. This subsidy rate calculated for the unaffiliated producers was then added to D&G's and Portbec's subsidy rate determined in the *Final Results*. *Id.*

## IV.  **Third Remand Order**

On January 21, 2025, the Court sustained in part, and remanded in part, Commerce's Second Remand Redetermination. *Remand Order*, 755 F. Supp. 3d. 1317. Relevant here, the Court held that Commerce did not address the COALITION's arguments concerning the calculation of D&G/Portbec's subsidy rate during the remand proceeding. *Id*. at 1325-27. The relevant arguments, referenced above, concerned the COALITION's claim that Commerce's revised subsidy calculations "double-weighted" the value of D&G/Portbec purchases of

unaffiliated suppliers' lumber.  While Commerce noted that it considered the COALITION's

arguments ahead of the Second Remand Redetermination, the Court held that Commerce did not

explain its basis for its decisions.  *Id*. at 1326.

The Court also held that the COALITION did not exhaust its administrative remedies

before proposing an alternative methodology in its comments on Commerce's Second Remand

Redetermination submitted to the Court.  *Id*. at n.18.  In its arguments, the COALITION

proposed two alternative methodologies, Approach A and Approach B, for calculating

D&G/Portbec's subsidy rate.  *Id*.  While a version of Approach B was submitted for Commerce's

consideration in its comments on Commerce's draft Second Remand Redetermination, the Court

held that the COALITION did not exhaust its administrative remedies with respect to Approach

A because it did not propose that methodology in its comments to Commerce during the remand

proceeding.  *Id*.  The Court further clarified that it was "not directing Commerce to use either of

Plaintiff's proffered methodologies but to reconsider the agency's methodology in light of those

alternatives and provide a clear rationale for whichever methodology it elects to rely upon in its

determination."  *Id*. at n.19.  Accordingly, the Court held that Commerce was "free to consider"

Approach A, among the other methodologies, on remand.  *Id*.

Lastly, the Court declined D&G/Portbec's request to instruct Commerce to reopen the

administrative record.  *Id*. at 1327.  In its comments on remand, D&G/Portbec argued that if the

Court were to remand Commerce's Second Remand Redetermination, the Court should instruct

Commerce to reopen the administrative record "to the extent that Commerce is unable to

distinguish between U.S. and Canadian lumber purchases by D&G/Portbec."  D&G/Portbec

Comments on Remand at 4.  In response, the COALITION moved to strike D&G/Portbec's

comments.  The Court held that striking D&G/Portbec's request was inappropriate.  *Remand*

*Order*, 755 F. Supp. 3d. at 1327.  The Court found that D&G/Portbec's argument regarding the claimed inclusion of lumber purchases made in the United States was an issue contingent on any further remand.  *Id.*  Moreover, the Court held it was up to Commerce to determine whether to reopen the record.  *Id.*  (stating "{i}t is for Commerce, on remand, to determine whether it is appropriate to entertain D&G/Portbec's argument at this stage of the proceeding or to reopen the record to collect additional data.").  Thus, the Court held that the decision to reopen the record was up to Commerce's discretion.  *Id.*  (citing *POSCO v. United States*, 557 F. Supp. 3d 1290, 1299 (Ct. Int'l Trade 2022)).

## ARGUMENT

### I.    Standard Of Review

In remand proceedings, the Court will sustain Commerce's countervailing duty determinations if they are "in accordance with the remand order," and are "supported by substantial evidence, and are otherwise in accordance with law."  *See MacLean-Fogg Co. v. United States*, 100 F. Supp. 3d 1349, 1355 (Ct. Int'l Trade 2015) (citing 19 U.S.C. § 1516a(b)(1)(B)(i)).

### II.    Commerce Complied With This Court's Remand Order And The Remand Results Are Lawful And Supported By Substantial Evidence

Commerce's Final Remand complied with the Court's remand order.  As discussed below, Commerce's remand redetermination is supported by substantial evidence and in accordance with law.

On remand, Commerce reconsidered its subsidy calculation for D&G/Portbec in accordance with the Court's holding that the calculation from the Second Remand Redetermination inappropriately weighted D&G/Portbec's purchases and sales.  Final Remand at 6-10.  Specifically, Commerce determined that it applied "both a ratio of D&G's sales to total

sales, which was applied to D&G's purchases, and a ratio of D&G's purchases to total sales," and that such a calculation methodology was incorrect. *Id*. Thus, Commerce considered alternative calculation methodologies, including the Approach A and Approach B calculation methodologies proposed by the COALITION. *Id*. at 9.

After reconsideration, Commerce determined that Approach A was the most appropriate calculation methodology to apply. *Id*. Commerce found that Approach A best matches Commerce's decision to consider each company's differences in purchases and sales. *Id*. As Commerce explained, the formula for Approach A "calculates a ratio of each company's purchases of lumber from unaffiliated Canadian producers to each company's total sales, which is multiplied by the all-others rate. . . . The result for each company is then multiplied by each company's relative share of sales to total sales (minus inter-company sales)." *Id*.; *see also* Draft Results of Redetermination Calculations (Mar. 25, 2025). (P.R.R. 5, C.R.R. 1-2). Accordingly, Commerce added the total from Approach A to the overall subsidy rate. Final Remand at 9. For D&G/Portbec, this revised calculation methodology resulted in an overall subsidy rate of 1.75 percent, which was above the *de minimis* threshold. *Id*.

D&G/Portbec argue that Commerce's Final Remand was unsupported by substantial evidence, not in accordance with law, and an abuse of discretion. *See* D&G/Portbec Remand Comments (May 20, 2025) (ECF No. 311). D&G/Portbec's arguments center on three points. First, D&G/Portbec contend that Commerce unlawfully applied the trading company regulation and countervailed a "subsidy received in the United States when D&G/Portbec purchased lumber from unaffiliated suppliers on the open market and on a duty-paid basis." *Id*. at 2. Second, D&G/Portbec contend that Commerce abused its discretion by not reopening the record. *Id*. at 7. As support, Portbec claims that it had not "anticipat{ed}" Commerce's application of the trading

company regulation.  *Id*. at 7.  D&G/Portbec further argue that by not reopening the administrative record, Commerce knowingly relied on incorrect data.  *Id*. at 8.  Lastly, D&G/Portbec's claim that Commerce's Remand Redetermination failed to consider D&G/Portbec's remanufacturing argument.  *Id*. at 10.  D&G/Portbec's arguments are unsupported by the record.  Commerce lawfully applied the trading company regulation to D&G/Portbec and its suppliers of lumber.  In fact, the Court's Remand Order did not direct Commerce to reverse its decision with respect to applying the trading company regulation to D&G/Portbec.  *See Remand Order* at 15-18.  Instead, the Court held that Commerce did not address the COALITION's arguments concerning the calculation of D&G/Portbec's subsidy rate during the remand proceeding and remanded so that Commerce could reconsider the issue or provide further explanation.

A trial court's determination as to the scope of its own remand order is entitled to great deference.  *Zhaoqing Tifo New Fibre Co. v. United States*, 355 F. Supp. 3d 1285, 1297 n.9 (Ct. Int'l Trade 2018) (citing *Changzhou Wujin Fine Chem. Factory Co., Ltd. v. United States*, 701 F.3d 1367, 1375 (Fed. Cir. 2012)).  Still, D&G/Portbec contend that Commerce's application of the trading company regulation here was unlawful.

Commerce's regulations at 19 C.F.R. § 351.525(c) provide that benefits from subsidies provided to a trading company that exports subject merchandise shall be cumulated with benefits from subsidies provided to the firm producing the subject merchandise that is sold through the trading company, regardless of affiliation.  19 C.F.R. § 351.525(c)(1).  The regulation provides two scenarios where the trading company regulation applies:  first, where the individually examined respondent exports through a trading company; or second, where the individually

examined respondent itself is a trading company that sources subject merchandise from a producer.  *See* 19 C.F.R. § 351.525(c)(2)-(3).

In accordance with this framework, Commerce continued to find that the relationship between D&G and Portbec and their suppliers of lumber to be that of a trading company. Specifically, for the lumber purchased from unaffiliated Canadian suppliers that D&G/Portbec either further processed or resold to the United States, Commerce determined that it would be most appropriate to consider this situation as a relationship between a producer and its trading company under 19 C.F.R. § 351.525(c) because the respondents either conducted minor processing on the purchased rough-hewn lumber, which itself is subject merchandise, or in the case of Portbec, resold the lumber without further processing.  Second Remand Redetermination at 9-10.  Thus, Commerce cumulated the benefits from subsidies provided to D&G and Portbec with benefits provided to their unaffiliated Canadian lumber suppliers.  By applying the trading company regulation to D&G/Portbec and its suppliers of lumber, Commerce's subsidy calculations would cumulate the benefits from subsidies provided to the respondents with the benefits from subsidies provided to the suppliers using "the cash deposit rate applicable to those suppliers from the investigation."  *Remand Order*, 755 F. Supp. 3d at 1322.

D&G/Portbec, however, argue that the record does not support Commerce's decision to apply the trading company regulations in the Final Remand.  *See* D&G/Portbec Remand Comments; *see also* 19 C.F.R. § 351.525(c).  Specifically, D&G/Portbec claims that 19 C.F.R. § 351.525(c) "does not apply where a company purchases subject merchandise in the United States on a duty-paid basis and resells it in the United States" and thus Commerce unlawfully applied the trading company regulation.  D&G/Portbec Remand Comments at 3.  D&G/Portbec contends

that "{o}nce the subject merchandise enters the United States subject to applicable duties, Commerce's window to cumulate subsidies ends." *Id*.

D&G/Portbec fail to support such an argument. As Commerce stated, D&G/Portbec's claim is not supported by the record because these companies did not provide complete information regarding their lumber purchases. During the Second Remand Redetermination proceeding, Commerce requested information concerning D&G/Portbec's purchases of lumber during 2015, the period of review. Final Remand at 11-12. Specifically, Commerce requested that D&G/Portbec each "report the volume/value of lumber sourced from affiliated Canadian suppliers, volume/value of lumber sourced from unaffiliated Canadian suppliers, and volume/value of lumber sourced from U.S. suppliers." *Id*. Additionally, Commerce requested that the companies "separately report the volume/value of lumber sourced from unaffiliated Canadian suppliers that was remanufactured and the volume/value of lumber sourced from unaffiliated Canadian suppliers that was resold." *Id*. at 12; *see also* D&G/Portbec Supplemental Questionnaire, (June 5, 2024) (Second Remand P.R.R. 1, Second Remand C.R.R. 1).

D&G/Portbec provided a response that included the value and volume provided by affiliated Canadian suppliers, unaffiliated Canadian suppliers, and U.S. suppliers, and also identified the value and volume of the lumber that was remanufactured and resold during the POR. D&G/Portbec Supplemental Questionnaire Response (June 18, 2024) at Table 1-2. D&G/Portbec further identified the total value of exports of subject merchandise to the United States, including whether such exports were remanufactured or resold. *Id*. Commerce reasonably relied on this information for its Second Remand Redetermination.

D&G/Portbec assert that one of their responses to the questionnaire indicates a sale of lumber on a duty paid basis from a company in the United States. D&G Remand Comments at

6.  D&G/Portbec cite to an Annex attached to its questionnaire response as proof of a "purchase in the United States from an unaffiliated supplier."  *Id.*  (citing D&G/Portbec Supplemental Questionnaire Response at Annex 2).  According to D&G/Portbec, Commerce's "failure to address the relevant record evidence" requires a remand.  *Id.*

      As an initial matter, the documentation D&G/Portbec rely on for its argument is evidence of a sale of subject merchandise from [                                        ] to [                  ] with a shipping address in the [                  ].  *See id.* at Annex 2, page 2 "Title Transfer."  Therefore, this invoice and "title transfer" appear to represent a sale of subject merchandise between [                          ] while [                          ].  *Id.* at Annex 2.  Thus, this documentation does not support D&G/Portbec's contention that they "'operated no differently than an American company when lumber was purchased and resold in the United States."  *Id.* at 14.  Moreover, although D&G/Portbec allege that Commerce failed to consider all the record evidence, they also cite only this one sale to support their contention that Commerce should not treat them as a trading company, while also requesting the Court to direct Commerce to reopen the record to obtain further information on such alleged sales.  This only underscores the fact that D&G/Portbec failed to build the record by providing complete responses to Commerce's questionnaire.  "{T}he burden of creating an adequate record lies with respondents and not with Commerce."  *Tianjin Mach. Imp. & Exp. Corp. v. United States*, 806 F. Supp. 1008, 1015 (Ct. Int'l Trade 1992).  If "D&G/Portbec was not the importer of record and purchased lumber in the United States only after an unaffiliated supplier entered it and subsequently resold it in the United States, then D&G/Portbec should have notified Commerce of those transaction details."  Final Remand at 14.

As such, in conducting its analysis on remand, Commerce reasonably relied on the factual information and lumber purchase data D&G/Portbec submitted without reopening the record to collect more information.  Commerce solicited information in a supplemental questionnaire during the Second Remand Redetermination.  Based on the responses, Commerce determined that it was unnecessary to reopen the record during this remand proceeding because it had all necessary information on the record to conduct the remand redetermination and calculate D&G/Portbec's subsidy rate.  Thus, Commerce "exam-ine{d} the relevant data and articulate{d} a satisfactory explanation for its action including a rational connection between the facts found and the choice made." *Id*.; *see also New Am. Keg v. United States*, No. 20-00008, 2024 WL 4879757 at *4 (Ct. Int'l Trade Nov. 25, 2024) (citing *Motor Veh. Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983) (cleaned up)).

Here, Commerce provided D&G/Portbec with ample opportunity to develop the administrative record with information concerning its lumber purchases sourced from both U.S. and Canadian suppliers.  D&G/Portbec Supplemental Questionnaire, (June 5, 2024).  Notably, however, it was only after the Second Remand Redetermination, that D&G/Portbec argued the record was incomplete.  Such belated claims are unavailing.  It was D&G/Portbec who failed to develop the record – not Commerce.  "D&G/Portbec cannot now, at this late stage in the remand proceeding, raise arguments based on information that was not disclosed to Commerce previously."  Final Remand at 13.

Moreover, this Court's Remand Order instructed Commerce "to determine whether it is appropriate to entertain D&G/Portbec's argument at this stage of the proceeding or to reopen the record to collect additional data."  Slip Op. at 18.  Commerce did so here.  Commerce's rationale

for not reopening the record, because it had already provided D&G/Portbec with sufficient opportunity to develop the record, was supported by substantial evidence.

In arguing that Commerce's determination risks imposing a double remedy, D&G/Portbec raise a hypothetical regarding the possible payment of general Customs duties and countervailing duties. As Commerce noted, countervailing duties were not in effect during the period of review, *e.g.*, 2015. In fact, cash deposits only began on January 28, 2017. Final Remand at 7; *see also* Memorandum, "CBP Message Number 7118311" (P.R.R. 4). Thus, D&G/Portbec raise a mere hypothetical regarding double remedies that is moot according to the facts of this case.

Lastly, D&G/Portbec claim that Commerce failed to consider the remanufacturing argument on remand. D&G/Portbec Remand Comments at 10. Specifically, D&G/Portbec argue that its remanufacturing of lumber makes the trading company regulation, 19 C.F.R. § 351.525(c), inapplicable. *Id.* Instead, D&G/Portbec contend that Commerce required an upstream subsidy allegation to analyze its sales. *Id.* at 10-11.

However, Commerce previously determined that "the upstream subsidy provisions under sections {19 U.S.C. § 1671(e) and 19 U.S.C. § 1677-1} are not applicable in this case." Second Remand Redetermination at 16. Commerce noted that it did not have an upstream subsidy allegation before it. *Id.* Commerce also explained that, "{m}ore importantly, however, {} section {19 U.S.C. § 1677-1(a)} defines an upstream subsidy as one that is bestowed on an input product {},{and} the lumber that D&G {and} Portbec, {} sourced from unaffiliated suppliers is subject merchandise (rather than an input into subject merchandise)." *Id.* This Court did not further remand Commerce's Second Remand Redetermination with respect to its decision on the

upstream subsidy allegation. *See generally Second Remand Order*. As such, D&G/Portbec's claims have already been addressed by the Court.

Accordingly, Commerce lawfully applied its trading company regulation to D&G/Portbec and its suppliers of lumber, determined not to reopen the administrative record, and concluded that D&G's remanufacturing argument was no longer relevant at this point in the proceeding. Commerce's determination relied on record evidence provided by D&G/Portbec, itself, during the Final Results and the Second Remand Redetermination. That D&G/Portbec now attempts to argue that Commerce unreasonably determined not to *again* solicit information is a baseless argument. D&G/Portbec's arguments to the contrary amount to "mere disagreement" with Commerce's weighing of record evidence. *Haixing Jingmei Chem Prods, Sales Co., Ltd. V. United States*, 335 F. Supp. 3d 1330, 1346 (Ct. Int'l Trade 2018); *see Downhole Pipe & Equip., L.P. v. United States*, 776 F.3d 1369, 1376-77 (Fed. Cir. 2015). In sum, this Court should sustain Commerce's Final Remand because it was supported by substantial evidence and in accordance with law.

## <u>CONCLUSION</u>

For these reasons, we respectfully request that the Court sustain Commerce's remand redetermination.

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General

PATRICIA M. MCCARTHY
Director

/s/ Claudia Burke
CLAUDIA BURKE
Deputy Director

OF COUNSEL
Jesus N. Saenz

Senior Attorney

/s/ Robert R. Kiepura

Office of Chief Counsel

ROBERT R. KIEPURA

for Trade Enforcement & Compliance

Trial Attorney

Department of Commerce

U.S. Department of Justice

Civil Division

Commercial Litigation Branch

P.O. Box 480

Ben Franklin Station

Washington, D.C.  20044

Tel: (202) 305-4436

Dated: July 21, 2025

Robert.Kiepura@usdoj.gov