IN THE UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE: THE HONORABLE MARK A. BARNETT, CHIEF JUDGE

| | |
|---|---|
| **COMMITTEE OVERSEEING ACTION FOR LUMBER INTERNATIONAL TRADE INVESTIGATIONS OR NEGOTIATIONS,** <br><br> Plaintiff, <br><br> and <br><br> **FONTAINE INC., ET AL.,** <br><br> v. <br><br> **UNITED STATES,** <br><br> Defendant, <br><br> and <br><br> **FONTAINE INC., ET AL.,** <br><br> Defendant-Intervenors. | **PUBLIC VERSION** <br><br> Consol. Court No. 19-00122 |

**PLAINTIFF'S COMMENTS IN SUPPORT OF FINAL RESULTS OF REDETERMINATION PURSUANT TO COURT REMAND**

                                    Sophia J.C. Lin
                                    Abraham Hendryx

                                    **PICARD KENTZ & ROWE LLP**
                                    1155 Connecticut Avenue NW
                                    Suite 700
                                    Washington, DC 20036
                                    (202) 331-4040
                                    *Counsel to Committee Overseeing Action for Lumber International Trade Investigations or Negotiations*

July 21, 2025

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................... ii

I.    BACKGROUND ............................................................................................................. 1

II.    STANDARD OF REVIEW ............................................................................................ 2

III.    ARGUMENT .................................................................................................................. 2

    A.    Commerce's Classification of D&G/Portbec as a Trading Company Is Supported by Substantial Evidence and in Accordance with Law ...................................................... 3

    B.    Commerce Acted Lawfully in Declining to Reopen the Record ................................. 6

    C.    Commerce Need Not Consider D&G/Portbec's Remanufacturing Arguments .......... 9

IV.    CONCLUSION............................................................................................................. 10

# TABLE OF AUTHORITIES

## Cases

Arizona v. California,
  460 U.S. 605 (1983) ................................................................................................... 10

Comm. Overseeing Action for Lumber Int'l Trade Investigations or Negots. v. United States,
  Court No. 19-122, Slip Op. 25-8 (Ct. Int'l Trade 2025) .................................... 1, 6, 10

Downhole Pipe & Equip., L.P. v. United States,
  776 F.3d 1369 (Fed. Cir. 2015) ................................................................................... 2

Laclede Steel Co. v. United States,
  19 C.I.T. 1076 (Ct. Int'l Trade 1995) .......................................................................... 6

Prosperity Tieh Enter. Co. v. United States,
  965 F.3d 1320 (Fed. Cir. 2020) ................................................................................... 2

Wind Tower Trade Coal. v. United States,
  569 F. Supp. 3d 1221 (Ct. Int'l Trade 2022) ............................................................... 4

Xinjiamei Furniture (Zhangzhou) Co. v. United States,
  968 F. Supp. 2d 1255 (Ct. Int'l Trade 2014) ............................................................... 2

## STATUTES

19 U.S.C. § 1516a(b)(1)(B)(i) ............................................................................................ 2

## OTHER AUTHORITIES

Certain Softwood Lumber Products from Canada: Response of Les Produits Forestiers D&G
  Ltée and Les Produits Forestiers Portbec Ltée to Supplemental Questionnaire (June 18, 2024) 5

Certain Softwood Lumber Products from Canada: Response of Les Produits Forestiers Portbec
  Ltée to Countervailing Duties Questionnaire (Apr. 12, 2018) ............................... 4, 9

Comments of Defendant-Intervenors D&G/Portbec in Opposition to Final Results of
  Redetermination Pursuant to Court Remand (May 20, 2025) ........................... passim

Comments on the Draft Results of Redetermination Pursuant to Court Remand in the Expedited
  Reviews of the Countervailing Duty Order on Softwood Lumber from Canada (April 1, 2025)
  ................................................................................................................................... 8

D&G/Portbec Preliminary Comments for the Second Remand Redetermination in the Expedited
  Review of the Countervailing Duty Order on Softwood Lumber from Canada (Feb. 19, 2025) 8


Final Results of Redetermination Pursuant to Court Remand, <u>Comm. Overseeing Action for Lumber Int'l Trade Investigations or Negots. v. United States</u> (Apr. 21, 2025) ............... passim

## REGULATIONS

19 C.F.R. § 351.525(c)............................................................................................................... 3, 4

**PLAINTIFF'S COMMENTS IN SUPPORT OF FINAL RESULTS OF REDETERMINATION PURSUANT TO COURT REMAND**

## I. BACKGROUND

On April 21, 2025, the U.S. Department of Commerce ("Commerce") issued its Final Results of Redetermination Pursuant to Court Remand regarding the countervailing duty ("CVD") expedited review covering softwood lumber products from Canada. See Final Results of Redetermination Pursuant to Court Remand, Comm. Overseeing Action for Lumber Int'l Trade Investigations or Negots. v. United States (Apr. 21, 2025) ("Remand Results"), R.R.2. 8.[1] Commerce prepared the Remand Results in response to the Court's decision in Comm. Overseeing Action for Lumber Int'l Trade Investigations or Negots. v. United States, Court No. 19-122, Slip Op. 25-8 (Ct. Int'l Trade 2025) ("Remand Order"), which remanded Commerce's prior Remand Redetermination. In its decision, the Court instructed Commerce to further explain its subsidy calculations with respect to Les Produits Forestiers D&G Ltée ("D&G") and its cross-owned company Les Produits Forestiers Portbec Ltée ("Portbec") (together, "D&G/Portbec"). Id. The Court affirmed Commerce's Remand Redetermination in all other determinations. Id. The Court also left discretion to Commerce to decide whether to reopen the record to collect additional data. Id. In its Remand Results, Commerce correctly found that D&G/Portbec was a trading company and rejected D&G/Portbec's request to reopen the record to allow D&G/Portbec to supplement the record with additional information that could have been submitted earlier. See Remand Results at 7, R.R.2. 8. On May 20, 2025, D&G/Portbec

---

[1] Documents are cited as follows: the Public Administrative Record (ECF No. 99-2) as "P.R."; the Confidential Administrative Record (ECF No. 99-3) as "C.R."; the Remand Administrative Record (ECF No. 256-1) as "R.R."; the Confidential Remand Administrative Record (ECF No. 256-2) as "C.R.R."; and the Second Remand Administrative Record (ECF No. 310) as "R.R.2."

1

submitted its comments in opposition to the Remand Results.  Comments of Defendant-Intervenors D&G/Portbec in Opposition to Final Results of Redetermination Pursuant to Court Remand (May 20, 2025) ("D&G/Portbec Comments").

The COALITION supports Commerce's determinations on both issues.  Because D&G/Portbec did not raise arguments concerning the subsidy calculation issues, our response is limited to D&G/Portbec's comments regarding its purchases from unaffiliated Canadian producers.

## II.    STANDARD OF REVIEW

The Court sets aside a remand redetermination if it finds it to be "unsupported by substantial evidence . . . or otherwise not in accordance with law."  19 U.S.C. § 1516a(b)(1)(B)(i).  The substantial evidence standard requires Commerce to base its determination upon such evidence that "a reasonable mind might accept as adequate to support a conclusion."  Prosperity Tieh Enter. Co. v. United States, 965 F.3d 1320, 1326 (Fed. Cir. 2020) (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)).  Substantial evidence is defined as "more than a mere scintilla."  Downhole Pipe & Equip., L.P. v. United States, 776 F.3d 1369, 1374 (Fed. Cir. 2015) (citation omitted).  Commerce's remand redeterminations are also reviewed for compliance with the court's remand order. See, e.g., Xinjiamei Furniture (Zhangzhou) Co. v. United States, 968 F. Supp. 2d 1255, 1259 (Ct. Int'l Trade 2014) (citation omitted).

## III.    ARGUMENT

In its Remand Results, Commerce correctly classified D&G/Portbec as a trading company for the purpose of calculating countervailing duties under 19 C.F.R. § 351.525(c).  Commerce also correctly declined D&G/Portbec's request to reopen the record.  The Court should affirm Commerce's Remand Results.

2

A. **Commerce's Classification of D&G/Portbec as a Trading Company Is Supported by Substantial Evidence and in Accordance with Law**

In its Remand Results, Commerce cumulated subsidies received by D&G/Portbec with those provided to unaffiliated Canadian lumber producers whose products D&G/Portbec resold in the United States. Remand Results at 7, R.R.2. 8. Due to the nature of the relationship between D&G/Portbec and the Canadian producer, Commerce classified D&G/Portbec as a trading company and correctly applied section 351.525(c) when calculating subsides benefitting D&G/Portbec. Id. D&G/Portbec argued that section 351.525(c) "does not apply where a company purchases subject merchandise in the United States on a duty-paid basis and resells it in the United States." D&G/Portbec Comments at 3. Commerce's decision to cumulate subsidies received by D&G/Portbec with subsidies bestowed upon lumber produced by Canadian producers is supported by substantial evidence and in accordance with law.

Commerce's regulation recognizes that trading companies may benefit from subsidies in two ways: (1) through subsidies it directly receives from the government and (2) through subject merchandise produced by others. See 19 C.F.R. § 351.525(c); Countervailing Duties, 63 Fed. Reg. 65,348, 65,404 (Dep't Commerce Nov. 25, 1998) ("CVD Preamble"). Thus, the regulation provides that the subsidy rate for a trading company shall reflect the benefits enjoyed by the trading company, whether directly or indirectly. See 19 C.F.R. § 351.525(c) (requiring Commerce to cumulate "benefits from subsidies provided to a trading company that exports subject merchandise" with "benefits from subsidies provided to the firm which is producing subject merchandise that is sold through the trading company"). A trading company serves as an intermediary in the supply chain, selling a finished product after another company performs all production activities. See CVD Preamble at 65,404 ("benefits from subsidies provided to trading companies (or any firm that only sells and does not produce subject merchandise) will be

3

cumulated with benefits from subsidies provided to the producer of subject merchandise") (emphasis added); see also Wind Tower Trade Coal. v. United States, 569 F. Supp. 3d 1221, 1238 fn. 17 (Ct. Int'l Trade 2022) ("{I}t was appropriate to attribute subsidies received by certain tolling companies to a company respondent when the relationship between the tolling company and the respondent is akin to the relationship between a producer and its trading company . . . (i.e., the tolling company performs all production activities and the respondent sells the finished product)." (quoting Steel Concrete Reinforcing Bar From the Republic of Turkey: Preliminary Results of Countervailing Duty Administrative Review and Intent To Rescind the Review in Part; 2016, 83 Fed. Reg. 63,472 (Dep't Commerce Dec. 10, 2018) and accompanying Preliminary Decision Memorandum at 9).

D&G/Portbec contends it is not a trading company under section 351.525(c) because it did not export subject merchandise, but instead purchased lumber already exported to the United States. D&G/Portbec Comments at 3. This argument is meritless.

As an initial matter, the record plainly shows that D&G/Portbec exported subject merchandise to the United States. See Certain Softwood Lumber Products from Canada: Response of Les Produits Forestiers Portbec Ltée to Countervailing Duties Questionnaire (Apr. 12, 2018) at Response of Portbec at Sec. A.2.d ("D&G IQR"), P.R. 223, C.R. 70. ("During the POR, Portbec Forest Products, as a lumber wholesaler, itself exported . . . a limited volume of subject merchandise produced by other companies in Canada."). Accordingly, D&G/Portbec falls squarely within the regulatory definition of a trading company because it is "a company that exports subject merchandise" that it does not itself produce. See 19 C.F.R. § 351.525(c).

With respect to subject merchandise that D&G/Portbec claims it "purchased . . . in the United States" and then resold to U.S. customers (referred to herein as "disputed subject

4

merchandise"), D&G/Portbec also acts functionally as a trading company. Specifically, the sample documentation provided by D&G/Portbec shows that [            ], D&G/Portbec, [                                        ], purchased disputed subject merchandise from [

                                ]. Certain Softwood Lumber Products from Canada: Response of Les Produits Forestiers D&G Ltée and Les Produits Forestiers Portbec Ltée to Supplemental Questionnaire at Annex 2 (June 18, 2024) ("D&G/Portbec Remand SQR"), R.R. 2, C.R.R. 2. [

                                                        ]. Id. [


                                                        ]. Id. In other words, D&G/Portbec's purchase of subject merchandise from an unaffiliated Canadian producer and transfer of such merchandise [

            ]. [                    ] the first sale from a Canadian company to a U.S. customer. D&G/Portbec functionally served as a trading company, which "only sells and does not produce subject merchandise." Cumulating benefits bestowed upon the disputed subject merchandise with benefits received directly by D&G/Portbec meets the regulatory intent for a trading company and is supported by substantial evidence. See CVD Preamble at 65,404.

D&G/Portbec argues that including the benefits bestowed upon the disputed subject merchandise in D&G/Portbec's subsidy rate would be "imposing countervailing duties twice." D&G/Portbec Comments at 4. However, as D&G/Portbec itself acknowledged, "{t}he Department correctly observes that no countervailing duties were in place on the subject merchandise during the {POR} for the 2015 expedited review." Id. at 7. As such, although circumstances may differ in other scenarios, based on the facts in this CVD expedited review,

5

there were no double-counting concerns, and Commerce did not double count countervailing duties. Instead, D&G/Portbec benefitted from the subsidies bestowed upon the disputed subject merchandise. Given that the benefits from these subsidies had not been addressed or countervailed, Commerce correctly determined that the relationship between a producer and its trading company still applies here regardless of whether D&G/Portbec "purchased the lumber in Canada from unaffiliated Canadian suppliers or purchased and resold the lumber in the United States, which was produced by unaffiliated Canadian suppliers." Remand Results at 7, R.R.2. 8.

This is because, "fundamentally, the lumber was produced by an unaffiliated Canadian producer, which benefited from countervailable subsidies." Id. Accordingly, Commerce's classification of D&G/Portbec as a trading company is supported by substantial evidence and in accordance with law. To treat it otherwise would be elevating form over function and would allow D&G/Portbec to escape CVD law even though it clearly benefitted from Canadian subsidies.

### B. Commerce Acted Lawfully in Declining to Reopen the Record

The CIT has long held that "{a}ny decision to expand the administrative record upon remand is well within {the Department's} discretion." Laclede Steel Co. v. United States, 19 C.I.T. 1076, 1078 (Ct. Int'l Trade 1995); see also Remand Order at 18. More directly, in remanding the agency determination at issue here, the CIT held "it is for Commerce, on remand, to determine whether it is appropriate to entertain D&G/Portbec's argument at this stage of the proceeding or to reopen the record to collect additional data." Remand Order at 18. Acting within its discretion, Commerce correctly and lawfully declined to reopen the record.

D&G/Portbec first argues the record shows it purchased a quantity of subject merchandise in the United States. D&G/Portbec Comments at 5. It then argues that "Commerce knew that D&G/Portbec purchased lumber from unaffiliated Canadian suppliers on a duty paid

6

basis in the United States during the period of review," and "{t}o the extent Commerce needs further information," the agency "abused its discretion by not reopening the record." Id. at 7. This assertion is factually incorrect.

As discussed above, D&G/Portbec itself acknowledged that no countervailing duties were collected at the time of entry of the disputed subject merchandise because there was no CVD order in place at that time. Accordingly, Commerce reviewed the record evidence and reasonably determined that because the lumber was produced by an unaffiliated Canadian producer and resold by D&G/Portbec, it should include subsidy benefits bestowed upon the disputed subject merchandise in D&G/Portbec's subsidy rate. Remand Results at 7, R.R.2. 8. Commerce was not wrong in finding that the record does not contain evidence showing that "D&G/Portbec purchased lumber in the open market in the United States from unaffiliated suppliers on a duty paid basis." Id. at 13-14. Regardless of whether Commerce reopens the record or not, D&G/Portbec could not have produced evidence that showed that D&G/Portbec purchased the disputed subject merchandise on a duty-paid basis. As such, the remainder of D&G/Portbec's argument regarding the necessity of Commerce's reopening the record is moot.

D&G/Portbec makes a separate argument concerning Commerce's decision to reject "D&G's request to provide limited additional information." D&G/Portbec Comments at 9. It is unclear what "additional information" D&G/Portbec is referring to. Indeed, the basis for D&G/Portbec's request to reopen the record shifted during the course of the remand proceeding.

In its preliminary comments submitted before Commerce's Draft Remand Redetermination, D&G/Portbec stated that:

> {t}he figure not on the record and that which D&G/Portbec now requests to be asked to submit is the precise figure for the share of the previously reported imports totaling C$6,609,791 that was indeed purchased from importers of record after importation into the United States but which is included in the figure for purchases

7

of lumber from unaffiliated Canadian suppliers that the Department incorrectly used in its first remand CVD rate calculation. D&G/Portbec Preliminary Comments for the Second Remand Redetermination in the Expedited Review of the Countervailing Duty Order on Softwood Lumber from Canada at 4 (Feb. 19, 2025), R.R.2. 1.

After Commerce issued its Draft Remand Redetermination, D&G/Portbec dropped the argument concerning the precise figure of share of D&G/Portbec's purchases and instead argued that: "{t}he Department lacks record evidence about the degree of processing and remanufacturing work, which the Department previously considered sufficient to render lumber purchased from unaffiliated suppliers mere 'inputs to the respondents' exports to the United States." Comments on the Draft Results of Redetermination Pursuant to Court Remand in the Expedited Reviews of the Countervailing Duty Order on Softwood Lumber from Canada at 10 (April 1, 2025) ("D&G/Portbec Draft Remand Comments"), R.R.2. 7. D&G/Portbec further asserted that:

> The Draft Remand Results also conclude that the lumber D&G/Portbec purchased in Canada was 'produced by unaffiliated Canadian suppliers.' But there is no record evidence as to where D&G/Portbec's unaffiliated suppliers produce the lumber they supply D&G/Portbec or even if they produce it. Given D&G/Portbec's location near the US-Canada border and the presence of sawmills on both sides of the border, it is unreasonable to assume that all lumber sold to D&G/Portbec in Canada is produced in Canada. Id. at 10-11.

To the extent D&G/Portbec's current complaint refers to the request it made in its Preliminary Comments (which it did not make its Draft Remand Comments), there is no need for such information because, as discussed in the prior section, Commerce properly determined there is no legal distinction between the disputed subject merchandise and other subject merchandise D&G/Portbec exported.

If D&G/Portbec is referring to the request it made in the Draft Remand Comments, "the degree of processing and remanufacturing work" is irrelevant and beyond the scope of the current remand, as discussed in the next section below. Further, D&G/Portbec's assertion for the

8

lack of information in this regard is patently belied by record evidence. <u>Specifically, in its IQR, D&G/Portbec reported that</u> "{t}he company also served in a limited capacity as a remanufacturer whereby it purchased lumber in Canada and cut that lumber down to thin widths for resale. See D&G IQR at Response of Portbec at Sec. A.2.d, P.R. 223, C.R. 70.

On the question of whether the subject merchandise D&G/Portbec resold were produced by Canadian companies, Commerce properly explained the basis of its refusal to reopen the record:

> Commerce requested D&G/Portbec to report the 'volume/value of lumber sourced from unaffiliated Canadian suppliers.' This could be reasonably interpreted to mean 'lumber produced by Canadian suppliers.' However, if Commerce's questionnaire was unclear to D&G/Portbec, or if D&G/Portbec believed the request for information should have been revised given how and from whom D&G/Portbec purchased lumber, then D&G/Portbec should have requested clarification from Commerce or elaborated further on the information provided. Only D&G/Portbec was in possession of information regarding their lumber purchases, and therefore, it was the responsibility of D&G/Portbec to fully disclose the nature of their purchase transactions to Commerce.

Remand Results at 12-13, R.R.2. 8.

As such, Commerce lawfully exercised its discretion in declining to reopen the record, and Court, therefore, should sustain its decision.

### C. <u>Commerce Need Not Consider D&G/Portbec's Remanufacturing Arguments</u>

D&G/Portbec asserts that Commerce failed to address D&G/Portbec's argument that remanufacturing makes section 351.525(c) inapplicable and instead requires an upstream subsidy allegation. D&G/Portbec Comments at 10. However, this issue has already been resolved. Specifically, in the Remand Order, the Court noted that:

> Commerce found any reconsideration of the need for an upstream subsidy allegation to be moot in light of the agency's application of 19 C.F.R. § 351.525(c). However, in response to arguments on the draft redetermination from D&G/Portbec, Commerce further explained that "regardless of the level of processing" performed on lumber purchased from unaffiliated suppliers, those exports of "subject merchandise were produced by unaffiliated Canadian

9

suppliers."  Commerce characterized the lumber purchased from unaffiliated suppliers as "subject merchandise (rather than an input into subject merchandise)."  <u>No party challenges this aspect of Commerce's Remand Results</u>.  Remand Order at 10-11 (citation omitted; emphasis added).

The Court therefore sustained Commerce's finding in this respect and remanded the prior remand results to Commerce on the limited issue raised by the COALITION on agency's subsidy calculation with respect to D&G/Portbec.  <u>See</u> <u>id</u>. at 20.  Because the Court did not remand the remanufacturing issue for further consideration or explanation, Commerce properly limited its Remand Results to the matters actually remanded—namely, the subsidy calculations.  Commerce had no obligation or authority to revisit matters the Court did not remand.  <u>See</u> <u>Arizona v. California</u>, 460 U.S. 605, 618 (1983) ("when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case").  Accordingly, D&G/Portbec's arguments concerning remanufacturing are both moot and beyond the scope of this remand proceeding, and the Court should disregard them.

## IV.    CONCLUSION

For the reasons above, the Court should affirm Commerce's Remand Results.

Respectfully Submitted,

<u>/s/ Sophia J.C. Lin</u>

Sophia J.C. Lin
Abraham Hendryx

**PICARD KENTZ & ROWE LLP**
1155 Connecticut Ave, NW
Suite 700
Washington, DC 20036
(202) 331-4040

Dated:  July 21, 2025

10

# IN THE UNITED STATES COURT OF INTERNATIONAL TRADE
## BEFORE: THE HONORABLE MARK A. BARNETT, CHIEF JUDGE

| | |
|---|---|
| **COMMITTEE OVERSEEING ACTION FOR LUMBER INTERNATIONAL TRADE INVESTIGATIONS OR NEGOTIATIONS,**<br><br>Plaintiff,<br><br>and<br><br>**FONTAINE INC., ET AL.,**<br><br>v.<br><br>**UNITED STATES,**<br><br>Defendant,<br><br>and<br><br>**FONTAINE INC., ET AL.,**<br><br>Defendant-Intervenors. | **Consol. Court No. 19-00122** |

## PROPOSED JUDGMENT

Upon consideration of Remand Results filed by the U.S. Department of Commerce on April 21, 2025, and all other papers and proceedings herein, it is hereby

**ORDERED** that the remand results are sustained.

_____
The Honorable Mark A. Barnett, Chief Judge

Dated: _____
New York, New York

## **CERTIFICATE OF COMPLIANCE WITH THE WORD LIMITATION**

I, Sophia J.C. Lin, hereby certify that these comments, exclusive of the table of contents, table of authorities, certifications of counsel, and counsel's signature block, but including headings, footnotes, and quotations contains 2,920 words, according to the word count function of the word processing program used to prepare this brief, and therefore complies with the word limitations as set forth in the Court's Remand Opinion and Order.

/s/ Sophia J.C. Lin
Sophia J.C. Lin
**PICARD KENTZ & ROWE LLP**
Counsel to Plaintiff Committee Overseeing
Action for Lumber International Trade
Investigations or Negotiations