Slip Op. 25-158

## UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| COMMITTEE OVERSEEING ACTION FOR LUMBER INTERNATIONAL TRADE INVESTIGATIONS OR NEGOTIATIONS, | |
| Plaintiff, | |
| and | |
| MOBILIER RUSTIQUE (BEAUCE) INC., ET AL., | |
| Consolidated Plaintiffs, | Before: Mark A. Barnett, Chief Judge |
| v. | Consol. Court No. 19-00122 |
| UNITED STATES, | |
| Defendant, | |
| and | |
| FONTAINE INC., ET AL., | |
| Defendant-Intervenors. | |

## <u>OPINION AND ORDER</u>

[Remanding the U.S. Department of Commerce's remand results in the countervailing duty expedited review of certain softwood lumber products from Canada]

Dated: December 18, 2025

<u>Sophia J.C. Lin</u>, Picard Kentz & Rowe LLP, of Washington, DC, argued for Plaintiff Committee Overseeing Action for Lumber International Trade Investigations or Negotiations.  Also on the brief was <u>Abraham Hendryx</u>.

<u>Sosun Bae</u>, Senior Trial Counsel, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, DC, argued for Defendant United States.  On the brief were <u>Brett A. Shumate</u>, Assistant Attorney General, <u>Patricia M. McCarthy</u>, Director, <u>Claudia Burke</u>, Deputy Director, and <u>Robert R. Kiepura</u>, Trial Attorney.  Of counsel on

the brief was <u>Jesus N. Saenz</u>, Senior Attorney, Office of the Chief Counsel for Trade Enforcement and Compliance, U.S. Department of Commerce, of Washington, DC.

<u>Edward M. Lebow</u> and <u>Davis Price Shugrue</u>, Haynes and Boone, LLP, of Washington, DC, argued for Defendant-Intervenors Les Produits Forestiers D&G Ltée and Les Produits Forestiers Portbec Ltée.

Barnett, Chief Judge:  This matter is before the court following the U.S. Department of Commerce's ("Commerce" or "the agency") redetermination upon remand in the countervailing duty ("CVD") expedited review of certain softwood lumber products from Canada.  Final Results of Redetermination Pursuant to Ct. Remand (Apr. 21, 2025) ("Third Remand Results"), ECF No. 309-1;[1] *see also Certain Softwood Lumber Prods. From Can.*, 84 Fed. Reg. 32,121 (Dep't Commerce July 5, 2019) (final results of CVD expedited rev.) ("*Final Results*"), ECF No. 99-5, and accompanying Issues and Decision Mem., C-122-858 (June 28, 2019) ("I&D Mem."), ECF No. 99-6.[2]

---

[1] While this is Commerce's third remand redetermination in this action, it is the second redetermination involving Commerce's subsidy calculations following the U.S. Court of Appeals for the Federal Circuit's reversal of this court's holding on the lawfulness of the expedited review regulation.

[2] The administrative record for the Third Remand Results is contained in a Confidential Remand Record, ECF No. 310-1, and a Public Remand Record ("3PRR"), ECF No. 310-2.  Defendant-Intervenors submitted joint appendices containing record documents cited in parties' remand comments.  Confid. Third Remand J.A. ("3RCJA"), ECF No. 321; Public Third Remand J.A., ECF No. 320; Suppl. Confid. Third Remand J.A. ("Suppl. 3RCJA"), ECF No. 322; Suppl. Public Third Remand J.A., ECF No. 323; Second Suppl. Confid. Third Remand J.A., ECF No. 327; Second Suppl. Public Third Remand J.A., ECF No. 328.  At times, the court cites to record documents from prior proceedings in this case.  *See* Confid. R. ("CR"), ECF No. 99-3; Public R. ("PR"), ECF No. 99-2; Confid. J.A. ("CJA"), ECF No. 149-4 (Tabs 14–66); Confid. Second Remand R. ("2CRR"), ECF No. 256-1; Public Second Remand R. ("2PRR"), ECF No. 256-2; Confid. Second Remand J.A. ("2RCJA"), ECF No. 275.  The court references the confidential record documents unless otherwise specified.

Commerce issued the Third Remand Results in response to the court's opinion in

*Committee Overseeing Action for Lumber Int'l Trade Investigations or Negotiations v.*

*United States* (*Coalition VIII*), 49 CIT __, 755 F. Supp. 3d 1317 (2025).[3]

 For the reasons discussed herein, the court remands Commerce's Third Remand

Results.

**BACKGROUND**

 The sole remaining issue in this case relates to Commerce's calculation of the

subsidy rate for Les Produits Forestiers D&G Ltée ("D&G") and its cross-owned

affiliates, including Les Produits Forestiers Portbec Ltée ("Portbec").  *See Coalition VIII*,

755 F. Supp. 3d at 1328 (remand order).  D&G initially intervened in this action on the

side of Defendant United States ("the Government") after obtaining a *de minimis* rate in

the *Final Results*.  Order (July 19, 2019), ECF No. 43; *Final Results*, 84 Fed. Reg. at

32,122.  Relevant here, Plaintiff, Committee Overseeing Action for Lumber International

Trade Investigations or Negotiations ("Plaintiff" or "the Coalition"), challenged

Commerce's decision not to attribute subsidies received by the unaffiliated Canadian

suppliers of lumber to D&G/Portbec.  *See Comm. Overseeing Action for Lumber Int'l*

*Trade Investigations or Negots. v. United States* (*Coalition VII*), 48 CIT __, __, 701 F.

Supp. 3d 1334, 1346 (2024).  In *Coalition VII*, the court remanded Commerce's

determination for reconsideration or further explanation.  *Id.* at 1349–54.

---

[3] This is the court's third opinion on the substantive merits of Commerce's *Final Results*.
Familiarity with the background information contained in *Coalition VIII* and prior opinions
is presumed.

Commerce determined to recalculate the rate using information provided on remand by D&G/Portbec.  Shortly after *Coalition VII*, Commerce issued the companies a supplemental questionnaire.  Questionnaire for D&G & Portbec (June 5, 2024) ("2024 Suppl. Questionnaire), 2PRR 1, 3RCJA Tab 4.  That questionnaire requested additional information regarding lumber purchased during the calendar year 2015, i.e., the period of review for the CVD expedited review.  *Id*. at 4.  Specifically, Commerce requested D&G and Portbec to each report the "volume/value of lumber sourced from affiliated Canadian suppliers," the "volume/value of lumber sourced from unaffiliated Canadian suppliers," and the "volume/value of lumber sourced from U.S. suppliers."  *Id.* Additionally, Commerce requested documentation regarding "each company's largest purchase of lumber from an unaffiliated Canadian supplier during calendar year 2015" and reconciliation worksheets tying "the purchase to the company's raw materials purchase ledger account (or other appropriate account), trial balance, and financial statement."  *Id.*

D&G/Portbec timely responded to the supplemental questionnaire.  Resp. of [D&G/Portbec] to Suppl. Questionnaire (June 18, 2024) ("D&G 2024 Suppl. Resp."), 2CRR 2, 2PRR 2, Suppl. 3RCJA.  Relevant to the arguments before the court, in that response, Portbec reported C$11,509,555 in lumber purchases from unaffiliated Canadian suppliers, with breakdowns for the portion of that lumber either

remanufactured or resold without additional processing.  *Id.*, Table 2.[4]  Portbec further

disclosed the relative amounts of exports of subject merchandise to the United States

that were either remanufactured or resold.  *Id.*  Additionally, Portbec reported an amount

for lumber purchased from U.S. suppliers.  *Id.*  Portbec provided documentation of its

largest purchase from an unaffiliated Canadian supplier.  *Id.*, Annex 2.

      In its response, Portbec did not explicitly state that some of the lumber it reported

as purchased from unaffiliated Canadian suppliers had already been entered into the

United States and was not reflected in the amount listed for lumber purchased from U.S.

suppliers.  *See id.*, Table 2.  The documentation that Portbec provided did, however,

appear to indicate that, for at least that individually reported transaction, Portbec took

title of the lumber after it was entered into the United States.  *See id.*, Annex 2.[5]

Moreover, during the underlying expedited review, Portbec had reported that "[t]he vast

majority of its transactions are made on a back to back basis (buying Canadian lumber

from US importers of record and reselling to US buyers)."  Resp. of [Portbec] to CVD

Questionnaire (Apr. 12, 2018) ("Portbec 2018 Resp.") at 2, CR 70, PR 223, 3RCJA

Tab 1.  Commerce verified that D&G and Portbec "sourced their wood . . . from private

---

[4] D&G/Portbec has rescinded its request for confidential treatment of certain data.
Prelim. Cmts. for the [Third] Remand Redetermination (Feb. 19, 2025) ("D&G Prelim.
Cmts.") at 3 n.2, 3PRR 1, 3RCJA Tab 6; Letter to the Ct. (Dec. 5, 2025), ECF No. 334.
[5] Portbec provided an invoice from the unaffiliated Canadian supplier dated June 9,
2015, documentation of title transfer also dated June 9, 2015, and a warehouse
receipt showing the lumber arrived at the warehouse in Baltimore, Maryland on June 8, 2015.
D&G 2024 Suppl. Resp., Annex 2.

sources, mostly in the United States."  Verification of the Questionnaire Resps. of

[D&G/Portbec] (Nov. 8, 2018) ("D&G Ver. Rpt.") at 4, CR 869, PR 668, CJA Tab 38.[6]

    After evaluating the 2024 questionnaire responses, Commerce determined to

include certain supplier subsidies in the subsidy calculations through application of the

agency's trading company regulation, 19 C.F.R. § 351.525(c),[7] but again calculated a

*de minimis* rate for D&G/Portbec.  Final Results of Redetermination Pursuant to Ct.

Remand (Sept. 10, 2024) ("Second Remand Results") at 9–10, 23, ECF No. 255-1.

Commerce's subsidy calculations relied on the values reported for lumber purchased

from unaffiliated Canadian suppliers that was sold either with or without further

processing.  *See id.*; Final Results of Redetermination Calculations for [D&G/Portbec],

C-122-858, Attach. (Sept. 11, 2024), 2CRR 12, 2PRR 13, 2RCJA Tab 12 (citing D&G

2024 Suppl. Resp., Tables 1 and 2).

    Before the court, Plaintiff supported Commerce's reliance on section 351.525(c)

but opposed Commerce's calculation methodology.  *See Coalition VIII*, 755 F. Supp. 3d

at 1324.  D&G/Portbec filed comments in support of Commerce's Second Remand

---

[6] Commerce stated that, during verification, the agency "examined original
documentation, including general ledgers, trial balances, audited financial statements,
and date-stamped income tax returns for [D&G and Portbec, among other companies],
and purchase invoices."  D&G Ver. Rpt. at 4.

[7] The regulation provides:

> Trading companies.  Benefits from subsidies provided to a trading
> company which exports subject merchandise shall be cumulated with
> benefits from subsidies provided to the firm which is producing subject
> merchandise that is sold through the trading company, regardless of
> whether the trading company and the producing firm are affiliated.

19 C.F.R. § 351.525(c) (2018).

Results. Cmts. of Def.-Ints. [D&G/Portbec] in Supp. of [Second Remand Results] ("D&G Second Remand Cmts."), ECF No. 264.  In a footnote, they stated: "support for the stated result does not include agreement with or acquiescence in Commerce's decisions regarding the passthrough of subsidy benefits from unaffiliated suppliers to D&G/Portbec."  *Id.* at 1 n.1.  D&G/Portbec further asserted that any recalculation on a court-ordered remand "would need to take into account Commerce's prior, verified determination that . . . the vast majority of D&G/Portbec's transactions involve purchasing Canadian lumber on a duty paid basis in the United States and reselling the lumber to buyers in the United States."  *Id.* at 3.  D&G/Portbec requested the court to instruct Commerce "to collect the requisite data to complete a fair and accurate calculation" if the agency "is unable to distinguish between U.S. and Canadian lumber purchases by D&G/Portbec."  *Id.* at 4.

The court remanded Commerce's calculation methodology and declined to require Commerce to reopen the record.  *Coalition VIII*, 755 F. Supp. 3d at 1325–27. The court stated that "[i]t is for Commerce, on remand, to determine whether it is appropriate to entertain D&G/Portbec's argument at this stage of the proceeding or to reopen the record to collect additional data."  *Id.* at 1327.

On remand, D&G/Portbec filed preliminary comments with Commerce. D&G/Portbec requested the opportunity to "provide a breakdown of purchases of lumber from unaffiliated Canadian suppliers separately for deliveries in Canada and in the United States," based on their view that Commerce's trading company regulation applies to "a trading company which exports subject merchandise" and does not apply

"to a purchaser in the United States at [arm's] length from the importer of the subject merchandise." D&G Prelim. Cmts. at 2. D&G/Portbec clarified that this information "would *not* elicit the same information as had been provided" with respect to purchases from U.S. suppliers. *Id.* at 3 (emphasis added). They further explained that the record already reflected that, with respect to Portbec, "[o]f the C$11,509,555 in lumber purchased from unaffiliated Canadian suppliers in 2015, . . . C$6,609,791 was resold in the United States." *Id.* at 4 (citing D&G 2024 Suppl. Resp., Table 2). D&G/Portbec sought to document the share of the C$6,609,791 in resales that was "purchased from importers of record after importation into the United States." *Id.* In their request, D&G/Portbec referenced Commerce's earlier recognition of Portbec's purchases of "Canadian lumber on a duty paid basis in the United States" and opined that Commerce had "perhaps inadvertently" included these purchases in the calculations. *Id.* at 3–4 (citing, *inter alia*, I&D Mem. at 39).[8]

    Commerce declined to reopen the record. Third Remand Results at 6. Commerce initially stated that

> *regardless of whether* Portbec purchased the lumber in Canada from unaffiliated Canadian suppliers or *purchased and resold the lumber in the United States*, which was produced by unaffiliated Canadian suppliers, *the situation is still appropriately considered in this instance to be a relationship between a producer and its trading company*, under 19 CFR 351.525(c) because fundamentally the lumber was produced by an

---

[8] During oral argument, the parties, including the Government, were unsure whether the information D&G sought to place on the record could be traced to the documentation Commerce examined during verification in 2018. Oral Arg. 6:00–6:55, 14:00–14:30 (time stamp from the recording, available at https://www.cit.uscourts.gov/audio-recordings-select-public-court-proceedings).

unaffiliated Canadian producer, which benefited from countervailable
subsidies.

*Id.* at 7 (emphases added); *see also* Draft Results of Redetermination Pursuant to Ct.
Remand (Mar. 25, 2025) at 6–7, 3PRR 3, 3RCJA Tab 7.  Commerce noted that
Portbec's reference to purchasing lumber on a "duty paid basis" must "refer to general
Customs duties, rather than countervailing duties" because "countervailing duties were
not in effect during the [period of review]."  Third Remand Results at 7.  Accordingly,
Commerce found, "there is no risk of potentially double counting any countervailing
duties."  *Id.*

Commerce also reconsidered its calculation methodology.  Commerce adopted
one of the Coalition's two proposed methodologies, explaining that it "properly takes into
account each company's relative share of purchases of lumber from unaffiliated
Canadian suppliers and each company's relative share of total sales."  *Id.* at 9–10.  The
revised methodology resulted in "an overall subsidy rate of 1.75 percent," for
D&G/Portbec, "which is above *de minimis*."  *Id.* at 9.

Before Commerce, D&G/Portbec challenged the agency's application of the
trading company regulation to purchases Portbec averred it made in the United States.
*See* Cmts. on the Draft Results of Redetermination Pursuant to Ct. Remand (Apr. 1,
2025) ("D&G Draft Cmts.") at 4–12, 3PRR 7, 3RCJA Tab 8.  D&G/Portbec argued that
Commerce's rationale for declining to reopen the record is legally erroneous because it
misapplies the trading company regulation to merchandise Portbec purchased after
importation into the United States.  *Id.* at 5–7.

Commerce responded by explaining that D&G/Portbec "did not provide complete information regarding their lumber purchases when requested by Commerce for its subsidy analysis" during the prior remand proceeding in 2024.  Third Remand Results at 11.  Commerce highlighted its reliance on Portbec's reporting of the value of lumber purchased from unaffiliated Canadian suppliers during 2015 to "conduct its analysis and subsidy rate calculation for the companies."  *Id.* at 12 & n.43.  Commerce explained that D&G/Portbec was responsible for alerting Commerce to the nature of their lumber purchases because only they were in possession of the information.  *Id.* at 12–13. Commerce stated that "if, during 2015, D&G/Portbec purchased from unaffiliated Canadian suppliers lumber that was not produced in Canada or lumber that was located in the United States, then D&G/Portbec had the obligation to report those facts to Commerce."  *Id.* at 13.  That failure to build the record meant that Commerce was unable "to fully evaluate D&G/Portbec's arguments that 19 C.F.R. 351.525(c) is inapplicable to [certain] facts relating to their lumber purchases."  *Id.*  Thus, Commerce declined to reopen the record of this remand proceeding.  *Id.* at 14.  Commerce did not further address the legal basis for D&G/Portbec's argument regarding application of the trading company regulation or the agency's prior statements about D&G's purchases of lumber after importation.  *See id.* at 11–14.

D&G/Portbec also complained that the record lacked sufficient evidence regarding remanufactured lumber or the identity and location of the producer of such lumber.  D&G Draft Cmts. at 10–11.  Commerce rejected this argument.  Third Remand Results at 12.  Commerce pointed to its 2024 supplemental request for information

about lumber "sourced from unaffiliated Canadian suppliers" and explained that this

request "could be reasonably interpreted to mean 'lumber produced by Canadian

suppliers.'"  *Id.*  According to Commerce, any lack of clarity should have been resolved

by D&G/Portbec at the time of its response.  *See id.* at 12–13.

D&G/Portbec oppose Commerce's Third Remand Results.  Cmts. of Def.-Ints.

D&G/Portbec in Opp'n to [Third Remand Results] ("D&G Third Remand Cmts."), ECF

No. 311.  The Government and the Coalition urge the court to sustain Commerce's

Third Remand Results and enter judgment in this case.  Confid. Def.'s Resp. to Cmts.

on [Third Remand Results] ("Def. Third Remand Cmts."), ECF No. 315; Confid. Pl.'s

Cmts. in Supp. of [Third Remand Results] ("Pl. Third Remand Cmts."), ECF No. 317.

The court heard oral argument on December 10, 2025.  Docket Entry, ECF No. 335.

### JURISDICTION AND STANDARD OF REVIEW

The court exercises jurisdiction pursuant to 28 U.S.C. § 1581(i)(1)(D) (2018 &

Supp. II 2020).  The court reviews an action commenced pursuant to 28 U.S.C.

§ 1581(i) in accordance with the standard of review set forth in the Administrative

Procedure Act, 5 U.S.C. § 706, as amended.  *See* 28 U.S.C. § 2640(e).  Section 706

directs the court, *inter alia*, to "hold unlawful and set aside agency action, findings, and

conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise

not in accordance with law."  5 U.S.C. § 706(2)(A).[9]

---

[9] The parties each invoke 19 U.S.C. § 1516a(b)(1)(B)(i) for the standard of review.  D&G
Third Remand Cmts at 2; Def. Third Remand Cmts. at 8; Pl. Third Remand Cmts. at 2.
This case does not arise under section 1516a because "CVD expedited reviews are

DISCUSSION

## I.        Parties' Contentions

D&G/Portbec contend that Commerce legally erred by applying 19 C.F.R.

§ 351.525(c) to lumber Portbec purchased from unaffiliated suppliers after the lumber

entered the United States.  D&G Third Remand Cmts. at 2.[10]  They argue that in 2024,

D&G/Portbec provided proof of their transactions in the United States, and aver that

Commerce was aware of the nature of such sales.  *Id.* at 5 (citing I&D Mem. at 39; D&G

2024 Suppl. Resp., Annex 2).  D&G/Portbec further contend that Commerce abused its

discretion in declining to reopen the record.  *Id.* at 2–3, 7–10.  Lastly, D&G/Portbec

argue that Commerce failed adequately to address the argument that 19 C.F.R.

§ 351.525(c) does not apply to remanufactured lumber "and instead requires an

upstream subsidy allegation" by the Coalition.  *Id.* at 10.

The Government contends that "Commerce reasonably relied on" the information

D&G/Portbec provided in 2024 to calculate the subsidy rate and D&G/Portbec's request

to reopen the record confirms their failure to develop the record.  Def. Third Remand

Cmts. at 12–13.  The Government further asserts that the evidence on which

---

principally a creature of Commerce's regulations" and are not among the statutory
determinations listed in section 1516a.  *Coalition VII*, 701 F. Supp. 3d at 1339; *see also,
e.g.*, *Comm. Overseeing Action for Lumber Int'l Trade Investigations or Negots. v.
United States* (*Coalition V*), 66 F.4th 968, 976 n.4 (Fed. Cir. 2023).

[10] D&G/Portbec argue that if countervailing duties were in effect "during the period of
review, Commerce's approach would impose countervailing duties twice, first by
collecting duties from the importer of record and second by increasing D&G/Portbec's
rate," and that "[t]his hypothetical shows Commerce's approach is unlawful."  D&G Third
Remand Cmts. at 4.

D&G/Portbec seek to rely is unavailing.[11]  *Id.* at 13.  The Government also contends

that D&G/Portbec's "hypothetical regarding double remedies . . . is moot according to

the facts of this case."  *Id.* at 15.  Lastly, regarding remanufactured lumber, the

Government contends that Commerce previously explained that the upstream subsidy

provision does not apply to purchases of "subject merchandise (rather than an input into

subject merchandise)" and the court did not remand this aspect of the Second Remand

Results.  *Id.* (quoting Second Remand Results at 16).

        The Coalition contends that for "subject merchandise that D&G/Portbec claims it

'purchased . . . in the United States' and then resold to U.S. customers . . .,

D&G/Portbec also acts functionally as a trading company."  Pl. Third Remand Cmts. at

4–5.[12]  The Coalition argues that because "the benefits from these subsidies had not

been addressed or countervailed, Commerce correctly determined that the relationship

between a producer and its trading company still applies" insofar as the lumber was

produced by unaffiliated Canadian suppliers.  *Id.* at 6.  Plaintiff further argues that

---

[11] Defendant points out that the documentation provided by D&G/Portbec relates to one sale only, and one involving the "sale of subject merchandise from BP Wood, who is located in Canada to Portbec Forest Products, who is located in Canada with a shipping address in the United States."  Def. Third Remand Cmts. at 13 (citing D&G 2024 Suppl. Resp., Annex 2 at 2).  According to the Government, the documentation appears to represent a sale between two Canadian companies and lumber "routed through the United States."  *Id.* (citing same).

[12] The Coalition explains that at the time of the transaction referenced in the above footnote, "the disputed subject merchandise was stored in a warehouse in Baltimore, Maryland."  Pl. Third Remand Cmts. at 5.  According to Plaintiff, the transaction "legally occurred in Canada" and "D&G/Portbec made the first sale from a Canadian company to a U.S. customer."  *Id.*

Commerce did not abuse its discretion in declining to reopen the record.  *Id.* at 7.[13]

With respect to remanufacturing, the Coalition contends that this issue was previously resolved by Commerce and sustained by the court such that Commerce properly limited the remand proceeding to the subsidy calculations.  *Id.* at 9–10.

## II.     Analysis

Commerce's decision not to reopen the record is subject to review for abuse of discretion pursuant to 5 U.S.C. § 706(2)(A).  "Discretion is abused if, for example, its exercise rests on a clear error of judgment in the consideration of the relevant factors." *Tau-Ken Temir LLP v. United States*, 147 F.4th 1363, 1373 (Fed. Cir. 2025) (citation omitted).  Accordingly, "to know whether Commerce abused its discretion . . ., we must know the relevant considerations."  *Id.*[14]  While not necessarily exhaustive, finality and efficiency considerations are best served by limiting reopening of the record.  *See Essar*

---

[13] Plaintiff further avers that D&G/Portbec's basis for seeking to reopen the record changed "during the course of the remand proceeding."  Pl. Third Remand Cmts. at 7. But it is enough for present purposes to note that D&G/Portbec requested Commerce to reopen the record to collect additional information regarding purchases in the United States.  D&G Prelim. Cmts. at 5.  After Commerce declined to do so, D&G/Portbec argued in their comments on the draft remand that the agency's decision was legally erroneous, and, additionally, that Commerce lacked evidence to support the conclusion that D&G/Portbec conducted only minor processing on remanufactured lumber.  D&G Draft Cmts. at 3–4.

[14] *Tau-Ken* addressed a Commerce decision to reject as untimely information provided shortly after a lapsed deadline but while the factual record remained open.  *See id.* at 1367–68.  The appellate court adopted a non-exhaustive set of considerations it found relevant to addressing Commerce's decision to reject untimely filings.  *See id.* at 1373–75.  Those considerations included accuracy, agency burden, finality, and diligence of the proffering party.  *See id.*  While there may be some overlap in relevant considerations, this is not a case in which Commerce rejected an untimely filing while the factual record remained open; this case presents a different question, namely, whether to *reopen* the factual record on remand.

*Steel Ltd. v. United States*, 678 F.3d 1268, 1277–78 (Fed. Cir. 2012) (noting the "small number of exceptions" favoring supplementation of the record, such as evidence of fraud or incorrect underlying agency data). Accordingly, Commerce has substantial discretion over the decision whether to accept new information on remand, but that discretion is not unlimited. Furthermore, to survive judicial review, Commerce "must examine the relevant data and articulate a satisfactory explanation for its action[,] including a 'rational connection between the facts found and the choice made.'" *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983) (citation omitted).

On remand, while Commerce initially declined to reopen the record on the asserted basis that Portbec's purchase of lumber in the United States from unaffiliated Canadian suppliers "is still appropriately considered [by the agency] in this instance to be a relationship between a producer and its trading company," Third Remand Results at 7, Commerce's decision ultimately rested on what the agency considered to be D&G/Portbec's failure to develop the record in their 2024 supplemental questionnaire response, *see id.* at 11.[15] Thus, the court considers the latter basis as Commerce's rationale for its decision.

---

[15] Commerce initially explained that there is no risk of double counting countervailing duties in this *case* because D&G/Portbec did not make cash deposits on subject merchandise in 2015, Third Remand Results at 7, but did not provide any legal basis for its position that the trading company regulation could reasonably be applied to include post-importation purchases in the United States. D&G/Portbec's reliance on the factual hypothetical of double-counting CVD duties is intended to illuminate the legal error they identify with Commerce's calculations here. *See* D&G Third Remand Cmts. at 4.

In 2024, the court remanded Commerce's *Final Results*, in part, for the purpose of reconsidering the agency's assessment of supplier subsidies. *Coalition VII*, 701 F. Supp. 3d at 1349–54. The agency's supplemental questionnaire tied the request for additional information to *Coalition VII*. 2024 Suppl. Questionnaire (cover letter). Commerce did not explicitly request D&G/Portbec to separately identify purchases of lumber located in the United States. *See id.* Commerce's omission did not, however, necessarily prevent the respondents from providing information they considered relevant to Commerce's subsidy calculations. *Cf.* D&G 2024 Suppl. Resp., Table 2 (providing export-related information not specifically requested).[16]

D&G/Portbec's reliance on certain purchase documentation to demonstrate timely submission of U.S. purchases is overstated. That documentation relates to a single purchase. D&G 2024 Suppl. Resp. at 1, Annex 2. And as indicated above, *supra* note 5, to identify the information D&G/Portbec characterizes as "proof of its transactions in the United States," D&G Third Remand Cmts. at 5, one must piece together the dates on the invoice and warehouse documentation, *see* D&G 2024 Suppl. Resp., Annex 2. The information hardly leaps off the page.

---

Because Commerce, in the Third Remand Results, relied only on the evidentiary basis for its decision, the court addresses whether substantial evidence supports that decision; the court does not, at this time, address whether a decision by Commerce to include in its subsidy calculation documented purchases of duty paid lumber in the United States would be in accordance with law.

[16] D&G avers that Commerce did not request this information "because Commerce believed that [section] 351.525(c) allowed [the agency] to increase D&G/Portbec's rate on the basis of purchases in the United States." D&G Third Remand Cmts. at 7. Commerce's rationale for not requesting the information is not documented in the record before the court.

D&G/Portbec's failure to build the record in 2024 renders this case a close call. But the issues surrounding supplier subsidies and whether or how to account for such subsidies in this expedited review were not new when Commerce issued the supplemental questionnaire in 2024, or when Commerce declined D&G/Portbec's request to reopen the record in 2025. In 2019, when the agency initially declined to consider supplier subsidies, Commerce made factual findings relevant to this issue. Commerce stated that "D&G/Portbec is a border mill that *was verified* to have sourced their wood from private sources, *mostly* in the United States." I&D Mem. at 39 & n.248 (citing D&G Ver. Rpt. at 4) (emphases added). At the time, Commerce further found that "only a relatively small proportion of D&G/Portbec's business involves sales of merchandise from Canada to the United States," and, as discussed above, "as it regards reselling activities, the vast majority of D&G/Portbec's transactions involve purchasing Canadian lumber on a duty paid basis in the United States and reselling the lumber to buyers in the United States." *Id.* at 39 & nn.149–50 (citations omitted). The court previously faulted that explanation as a basis for disregarding entirely the subsidies to respondents' suppliers because Commerce had failed to consider that such subsidies may be "the difference between zero or *de minimis* subsidy rates and subsidy rates above *de minimis*." *Coalition VII*, 701 F. Supp. 3d at 1353. The issue now, however, is whether Commerce's inclusion of the supplier subsidies on D&G/Portbec's purchases of duty paid Canadian lumber in the United States is in accordance with law or whether Commerce should have permitted D&G/Portbec to provide additional relevant information, to the extent necessary, to distinguish such sales. This question is

of particular import here when again, it may be the difference between an above or below *de minimis* subsidy rate.

In addressing the question of supplier subsidies in its current form, Commerce failed to consider its earlier findings. Commerce instead treated the issue as newly arising, querying that "*if*, during 2015, D&G/Portbec purchased from unaffiliated Canadian suppliers lumber that was not produced in Canada or lumber that was located in the United States, then D&G/Portbec had the obligation to report those facts to Commerce." Third Remand Results at 13 (emphasis added). But D&G/Portbec had reported those facts, and Commerce had relied on those facts and the agency's verification thereof earlier in the proceeding. *See* I&D Mem. at 39. While the information provided in 2018 may have been qualitative instead of quantitative, Commerce's statement that D&G/Portbec sought, "at this late stage in the remand proceeding, [to] raise arguments based on information that was not disclosed to Commerce previously," Third Remand Results at 13, is contradicted by the record insofar as D&G/Portbec had previously disclosed purchasing lumber within the United States and Commerce affirmed its verification of that fact. Thus, so too is Commerce incorrect to state that it "had no reason to question the accuracy of the information provided in D&G/Portbec's [2024] Response." *Id.* Rather, Commerce had reason to probe the completeness of the information, if not in 2024, then on remand in 2025 when D&G/Portbec again raised the issue. *See* D&G Prelim. Cmts. at 2.

Commerce abuses its discretion when "its exercise rests on a clear error of judgment in the consideration of the relevant factors." *Tau-Ken Temir LLP*, 147 F.4th at

1373.  Commerce must also provide a "rational connection between the facts found and the choice made."  *State Farm*, 463 U.S. at 43.  While relevant, Commerce's reliance on finality considerations to decline to reopen the record, *see* Third Remand Results at 13, does not survive judicial review pursuant to these standards.[17]  Previously, Commerce necessarily has reconsidered its position on issues in response to court-ordered remands when the agency has failed to fully grapple with arguments by interested parties.  *See Coalition VII*, 701 F. Supp. 3d at 1349–54 (remanding for Commerce to reconsider or further explain its views on application of the upstream subsidy allegation and the trading company and combination rate regulations); Second Remand Results at 9–10, 16–17 (deciding to apply the trading company regulation and finding the statutory upstream subsidy provision inapplicable); *see also Coalition VIII*, 755 F. Supp. 3d at 1325–26 (remanding Commerce's calculation methodology because the agency failed to engage with the Coalition's arguments); Third Remand Results at 9 (adopting one of the Coalition's proposed methodologies).  And here, Commerce has failed to grapple with the basis for D&G/Portbec's request to reopen the record within the context of the record as a whole.  Finality considerations are not enough to overcome this failure.

---

[17] The court's conclusion notwithstanding, D&G/Portbec errs in relying on *SKF* to argue that Commerce acted arbitrarily because the agency reopened the record during the second remand in 2024 but declined on third remand in 2025.  D&G Third Remand Cmts. at 9 (citing *SKF USA Inc. v. United States*, 263 F.3d 1369, 1382 (Fed. Cir. 2001)).  The situations are not "similar" for purposes of *SKF* solely because Commerce is again deciding whether to reopen the record on remand; thus, Commerce does not necessarily act arbitrarily in deciding differently.

Accordingly, the court remands this limited matter to the agency for reconsideration and, as appropriate, acceptance of D&G/Portbec's proffered documentation.[18]

CONCLUSION AND ORDER

In accordance with the foregoing, it is hereby

**ORDERED** that Commerce's Third Remand Results are remanded for the agency to reconsider its subsidy calculations with respect to D&G/Portbec consistent with this opinion; it is further

**ORDERED** that Commerce shall file its remand redetermination on or before March 18, 2026; it is further

---

[18] D&G/Portbec contend that Commerce failed to address their argument regarding remanufactured lumber and the need for an upstream subsidy allegation. D&G Third Remand Cmts. at 10. They assert that Commerce recited a conclusory sentence about the companies conducting minor processing and the agency failed to support that conclusion. *Id.* at 10–11. In *Coalition VII*, the court remanded Commerce's interpretation of 19 U.S.C. § 1677-1(a)(1) to include subject merchandise as an input for purposes of the statute based on "the sparsity of Commerce's explanation of its statutory interpretation and the limited briefing on the salient issues" as well as "seemingly inconsistent earlier agency statements." 701 F. Supp. 3d at 1351. On remand, Commerce concluded that the statutory provisions governing upstream subsidies do not apply in this case in part because D&G and Portbec conducted minor processing on lumber purchased from unaffiliated suppliers, i.e., on "subject merchandise (rather than an input into subject merchandise)." Second Remand Results at 16. While D&G noted their disagreement with Commerce's determination, D&G Second Remand Cmts. at 1 n.1, "[n]o party challenge[d] this aspect of Commerce's [Second] Remand Results," *Coalition VIII*, 755 F. Supp. 3d at 1324. To the extent D&G/Portbec have not forfeited their arguments, those arguments fail on the merits. Rather than representing a "depart[ure] from Commerce's prior position," as D&G/Portbec contend, D&G Third Remand Cmts. at 11, Commerce's explanation aligns the agency's current position with earlier agency statements regarding the nature of subject merchandise as an input (or not), *see Coalition VII*, 701 F. Supp. 3d at 1351–52 (citing agency determinations). Accordingly, the court rejects D&G/Portbec's argument.

ORDERED that subsequent proceedings shall be governed by USCIT Rule

56.2(h); and it is further

ORDERED that any comments or responsive comments must not exceed 2,500

words.

/s/      Mark A. Barnett
Mark A. Barnett, Chief Judge

Dated: December 18, 2025
         New York, New York