**UNITED STATES COURT OF INTERNATIONAL TRADE**

**COMMITTEE OVERSEEING ACTION FOR LUMBER INTERNATIONAL TRADE INVESTIGATIONS OR NEGOTIATIONS,**

**Plaintiff,**

**and**

**MOBILIER RUSTIQUE (BEAUCE) INC., ET AL.,**

**Consolidated Plaintiffs,**

**v.**

**UNITED STATES,**

**Defendant,**

**and**

**FONTAINE INC., ET AL.,**

**Defendant-Intervenors.**

**Hon. Mark A. Barnett, Chief Judge**
**Consol. Court No. 19-00122**

**PROPOSED ORDER**

Upon consideration of the Motion to Enforce filed by Plaintiff Committee Overseeing Action for Lumber International Trade Investigations or Negotiations ("COALITION"), and all other papers and proceedings had herein, it is hereby

**ORDERED** that Plaintiff COALITION's Motion to Enforce is granted; and it is further

**ORDERED** that the U.S. Department of Commerce shall issue amended cash deposit instructions to U.S. Customs and Border Protection establishing an amended cash deposit rate of

1.79 percent for shipments of certain softwood lumber products from Canada that were produced and/or exported by Les Produits Forestiers D&G Ltee and its cross-owned affiliates and entered, or withdrawn from warehouse, for consumption on or after the date of this Order.

_____________________________________
The Honorable Mark A. Barnett, Chief Judge

Dated: ___________________
New York, New York

**UNITED STATES COURT OF INTERNATIONAL TRADE**
**New York, New York**

**COMMITTEE OVERSEEING ACTION FOR LUMBER INTERNATIONAL TRADE INVESTIGATIONS OR NEGOTIATIONS,**

**Plaintiff,**

**and**

**MOBILIER RUSTIQUE (BEAUCE) INC., ET AL.,**

**Consolidated Plaintiffs,**

**v.**

**UNITED STATES,**

**Defendant,**

**and**

**FONTAINE INC., ET AL.,**

**Defendant-Intervenors.**

**Hon. Mark A. Barnett, Chief Judge**
**Consol. Court No. 19-00122**

**PLAINTIFF'S MOTION TO ENFORCE JUDGMENT**

Sophia J.C. Lin
Jarret Williamson

**PICARD KENTZ & ROWE LLP**
1155 Connecticut Ave. NW
Suite 700
Washington, DC 20036
(202) 331-4040

*Counsel to Plaintiff Committee Overseeing Action for Lumber International Trade Investigations or Negotiations*

September 17, 2026

## TABLE OF CONTENTS

**TABLE OF CONTENTS** .......... i

**TABLE OF AUTHORITIES** .......... ii

**I. BACKGROUND** .......... 2

**II. JURISDICTION AND STANDARD OF REVIEW** .......... 6

**III. ARGUMENT** .......... 8

**A. The Department Is Bound by Law and Past Practice to Apply the Fourth Administrative Review Cash Deposit Rate to D&G** .......... 8

**B. This Court Should Enforce Its Judgment by Requiring Commerce to Correct the Cash Deposit Rate for D&G** .......... 12

**IV. CONCLUSION** .......... 14

## TABLE OF AUTHORITIES

### CASES

B.F. Goodrich Co. v. U.S., 843 F. Supp. 713 (Ct. Int'l Trade 1994)............................................ 6

City of Cookeville v. Upper Cumberland Elec. Membership Corp., 484 F.3d 380 (6th Cir.2007) 8

Comm. Overseeing Action for Lumber Int'l Trade Investigations or Negotiations v. United States, 483 F.Supp.3d 1253 (Ct. Int'l Trade 2020).................................................... 2

Comm. Overseeing Action for Lumber Int'l Trade Investigations or Negotiations v. United States, 535 F.Supp.3d 1336 (Ct. Int'l Trade 2021)............................................... 2, 11

Comm. Overseeing Action for Lumber Int'l Trade Investigations or Negotiations v. United States, 66 F.4th 968 (Fed. Cir. 2023)........................................................................ 4

Comm. Overseeing Action for Lumber Int'l Trade Investigations or Negots. v. United States, Slip. Op. 26-77 (Ct. Int'l Trade July 21, 2026) ............................................ 1, 5, 12

Deering Milliken, Inc. v. Federal Trade Commission, 647 F.2d 1124 (D.C.Cir. 1978)................ 7

GPX Int'l Tire Corp. v. United States, 70 F. Supp. 3d 1266 (Ct. Int'l Trade 2015) ..................... 7

Heraeus-Amersil, Inc. v. United States, 638 F. Supp. 342 (Ct. Int'l Trade 1986)........................ 6

N.L.R.B. v. Cincinnati Bronze, Inc., 829 F.2d 585 (6th Cir. 1987) .............................................. 7

Nicol v. Gulf Fleet Supply Vessels, Inc., 743 F.2d 298 (5th Cir.1984)........................................ 7

Otter Products, LLC v. United States, 532 F.Supp.3d 1345 (Ct. Int'l Trade 2021) ...................... 7

United States Steel Corp. v. United States, 348 F. Supp. 3d 1248 (Ct. Int'l Trade 2018)...... 12, 13

United States v. Hanover Ins. Co., 82 F.3d 1052 (Fed. Cir. 1996)............................................... 6

United States v. Hanover Ins. Co., 869 F. Supp. 950 (Ct. Int'l Trade 1994)................................ 6

Weaver v. Univ. of Cincinnati, 970 F.2d 1523 (6th Cir.1992)..................................................... 8

Wedbush, Noble, Cooke, Inc. v. SEC, 714 F.2d 923 (9th Cir.1983)............................................. 7

Williamson v. Recovery Ltd. P'ship, 731 F.3d 608 (6th Cir. 2013).............................................. 7

### REGULATIONS

19 C.F.R. § 351.212(a)................................................................................................................ 8

### ADMINISTRATIVE DETERMINATIONS

Certain Hot-Rolled Steel Flat Products From Japan: Notice of Court Decision Not in Harmony With the Final Determination of Antidumping Investigation, 91 Fed. Reg. 55,513 (Dep't Commerce Aug. 28, 2026)................................................................................................ 10

Certain Softwood Lumber Products From Canada: Amended Final Affirmative Countervailing Duty Determination and Countervailing Duty Order, 83 Fed. Reg. 347 (Dep't Commerce Jan. 3, 2018) ............................................................................................................. passim

Certain Softwood Lumber Products from Canada: Final Results and Final Recission, in Part, of the Countervailing Duty Administrative; 2021, 88 Fed. Reg. 50,103 (Dep't Commerce Aug. 1, 2023) .......... 3

Certain Softwood Lumber Products from Canada: Final Results of Countervailing Expedited Review, 84 Fed. Reg. 32,121 (Dep't Commerce July 5, 2019).......... passim

Certain Softwood Lumber Products from Canada: Initiation of Expedited Review of the Countervailing Duty Order, 83 Fed. Reg. 9,833 (Dep't Commerce Mar. 8, 2018).......... 2

Certain Softwood Lumber Products From Canada: Notice of Amended Final Results of Countervailing Duty Expedited Review; Notice of Reinstatement of Countervailing Duty Order, 91 Fed. Reg. 50,793 (Dep't Commerce Aug. 6, 2026) .......... passim

Certain Softwood Lumber Products From Canada: Notice of Court Decision Not in Harmony With the Final Results of Countervailing Duty Expedited Review; Notice of Rescission of Final Results of Expedited Review; Notice of Amended Cash Deposit Rates, 86 Fed. Reg. 48,396 (Dep't Commerce Aug. 30, 2021) .......... 1, 3

Certain Softwood Lumber Products From Canada: Preliminary Results and Partial Rescission of Countervailing Duty Administrative Review; 2022, 89 Fed. Reg. 8,147 (Dep't Commerce Feb. 6, 2024) .......... 4

Circular Welded Carbon-Quality Steel Pipe From the United Arab Emirates, 91 Fed. Reg. 55,839 (Dep't Commerce Aug. 31, 2026) .......... 9, 10

Common Alloy Aluminum Sheet from the Republic of Turkiye: Notice of Court Decision Not in Harmony With the Final Determination of Antidumping Investigation, 91 Fed. Reg. 40,977 (Dep't Commerce July 6, 2026) .......... 9

Initiation of Antidumping and Countervailing Duty Administrative Reviews, 87 Fed. Reg. 13,252 (Dep't Commerce Mar. 9, 2022) .......... 3

**PLAINTIFF'S MOTION TO ENFORCE JUDGMENT**

Plaintiff Committee Overseeing Action for Lumber International Trade Investigations or Negotiations ("COALITION") submits this motion to enforce the judgment in the above-captioned proceeding pursuant to the Court's opinion in Comm. Overseeing Action for Lumber Int'l Trade Investigations or Negots. v. United States, Slip. Op. 26-77 (Ct. Int'l Trade July 21, 2026) ("COALITION XI"). For the reasons set forth below, the Court should order the U.S. Department of Commerce ("Commerce") to revise the cash deposit rate assigned to Les Produits Forestiers D&G Ltee and its cross-owned affiliates (collectively "D&G") in Certain Softwood Lumber Products From Canada: Notice of Amended Final Results of Countervailing Duty Expedited Review; Notice of Reinstatement of Countervailing Duty Order, 91 Fed. Reg. 50,793 (Dep't Commerce Aug. 6, 2026) ("Amended Final Results"). Specifically, following the Court's opinion and judgment, Commerce issued a Timken Notice reinstating D&G to the CVD Order. In reinstating D&G, Commerce incorrectly assigned the company the cash deposit rate calculated in the Amended Final Results (which revised D&G's rate calculated in the final results of the CVD expedited review), rather than the rate assigned to D&G that was established in the completed review covering the most recent prior period, the all-others rate in the fourth administrative review. Therefore, the Court should require Commerce to either assign the cash deposit rate established for D&G in the all-others rate in the fourth administrative review or provide a proper explanation as to why the agency finds it appropriate to deviate from its established practice in assigning cash deposit rates in this proceeding.

## I. BACKGROUND

On January 3, 2018, Commerce published the countervailing duty order on softwood lumber products from Canada. Certain Softwood Lumber Products From Canada: Amended Final Affirmative Countervailing Duty Determination and Countervailing Duty Order, 83 Fed. Reg. 347 (Dep't Commerce Jan. 3, 2018) ("CVD Order"). That same month, several exporters, including D&G, filed requests for a CVD expedited review pursuant to 19 C.F.R. § 351.214 (k) (now 19 C.F.R. § 351.214(l)). Certain Softwood Lumber Products from Canada: Initiation of Expedited Review of the Countervailing Duty Order, 83 Fed. Reg. 9,833 (Dep't Commerce Mar. 8, 2018). Commerce commenced its expedited review and ultimately calculated a de minimis rate (i.e., 0.21 percent) for D&G. Certain Softwood Lumber Products from Canada: Final Results of Countervailing Expedited Review, 84 Fed. Reg. 32,121 (Dep't Commerce July 5, 2019) ("Final Results"). As a result of the de minimis subsidy rate, D&G was excluded from the CVD Order. See Final Results, 84 Fed. Reg. at 32,122.

Following the COALITION's challenge, this Court determined that the Department did not have statutory authority to conduct CVD expedited reviews on the basis articulated by the agency, Comm. Overseeing Action for Lumber Int'l Trade Investigations or Negotiations v. United States, 483 F.Supp.3d 1253, 1271-73 (Ct. Int'l Trade 2020) ("COALITION III"), and subsequently, on August 18, 2021, sustained Commerce's remand redetermination concluding that the agency indeed did not have statutory authority to conduct CVD expedited reviews. Comm. Overseeing Action for Lumber Int'l Trade Investigations or Negotiations v. United States, 535 F.Supp.3d 1336 (Ct. Int'l Trade 2021) ("COALITION IV").

On August 30, 2021, Commerce published Certain Softwood Lumber Products From Canada: Notice of Court Decision Not in Harmony With the Final Results of Countervailing Duty Expedited Review; Notice of Rescission of Final Results of Expedited Review; Notice of Amended Cash Deposit Rates, 86 Fed. Reg. 48,396, 48,397 (Dep't Commerce Aug. 30, 2021) ("Timken Notice"), reinstating the previously excluded companies, including D&G, back in the CVD Order and assigning them a cash deposit rate of 14.19 percent, the all-others cash deposit rate calculated in the investigation.

On March 9, 2022, Commerce initiated the fourth administrative review of the CVD Order, covering the period of calendar year 2021, on companies for which the agency had received a review request. Initiation of Antidumping and Countervailing Duty Administrative Reviews, 87 Fed. Reg. 13,252 (Dep't Commerce Mar. 9, 2022). Given that D&G was reinstated in the CVD Order, and that both the petitioner and the company itself had submitted an administrative review request, Commerce initiated an administrative review of D&G. Id., 87 Fed. Reg. at 13,256. On August 1, 2023, Commerce published the final results for the fourth administrative review and calculated a 1.79 percent all-others rate for D&G and other non-selected companies. See Certain Softwood Lumber Products from Canada: Final Results and Final Recission, in Part, of the Countervailing Duty Administrative; 2021, 88 Fed. Reg. 50,103, 50,104 (Dep't Commerce Aug. 1, 2023).

Meanwhile, the Canadian Parties, including D&G, appealed the Court's decision regarding Commerce's statutory authority to conduct expedited reviews. On April 25, 2023, the Federal Circuit reversed the CIT's decision, holding that Commerce has statutory authority to conduct CVD expedited reviews and remanded the case to the CIT to decide outstanding substantive issues raised by various parties, including certain subsidy

calculation issues concerning D&G. Comm. Overseeing Action for Lumber Int'l Trade Investigations or Negotiations v. United States, 66 F.4th 968, 979 (Fed. Cir. 2023).

On October 6, 2023, D&G, along with CVD expedited review companies, filed a motion to reinstate their exclusion from the CVD Order. See Mot. to Reinstate Exclusion from Countervailing Duty Order Pending Resolution of Litigation, ECF No. 222 (Oct. 6, 2023). On November 20, 2023, the Court granted the motion to reinstate exclusion; see Opinion and Order, Slip. Op. 23-163 (Nov. 20, 2023), and on December 7, 2023, Commerce published a Federal Register notice reinstating D&G's exclusion from the CVD Order. See Certain Softwood Lumber Products from Canada: Notice of Reinstatement of Exclusion From the Countervailing Duty Order, 88 Fed. Reg. 85,225, 85,226 (Dep't Commerce Dec. 7, 2023).

Separately, Commerce published its preliminary decision in the fifth administrative review on February 6, 2024. Certain Softwood Lumber Products From Canada: Preliminary Results and Partial Rescission of Countervailing Duty Administrative Review; 2022, 89 Fed. Reg. 8,147 (Dep't Commerce Feb. 6, 2024) ("AR5 Prelim Results"). In the Preliminary Decision Memorandum that accompanied the preliminary results, Commerce explained that even though D&G was initially included in the fifth administrative review, because of the Court's November 20, 2023 order reinstating the company's exclusion from the CVD Order, D&G is no longer subject to the fifth administrative review. AR5 Prelim Results and accompanying decision memorandum at 5.

As litigation continued at the CIT regarding Commerce's calculation of D&G's subsidy rates in the Final Results, D&G remained excluded from the CVD Order and thus

not subject to subsequent administrative reviews. In other words, the fourth administrative review is the most recent review in which D&G was reviewed.

On July 21, 2026, this Court sustained Commerce's remand results, which calculated an above-de minimis subsidy rate of 1.05 percent for D&G, meaning that the company is subject to the CVD Order once again. See COALITION XI. On July 30, 2026, Commerce posted a draft of its Amended Final Results, stating that the agency "will instruct U.S. Customs and Border Protection to collect cash deposits of estimated countervailing duties for D&G/Portbec, at the rate {of 1.05 percent}, on shipments of subject merchandise entered, or withdrawn from warehouse, for consumption on or after the date of publication of the amended final results of this expedited review. These cash deposit requirements, when imposed, shall remain in effect until further notice." See Notice of Amended Final Results of Countervailing Duty Expedited Review; Notice of Reinstatement of Countervailing Duty Order (Dep't Commerce July 30, 2026). The 1.05 percent cash deposit rate was the rate calculated in the agency's remand redetermination in this expedited review case based on record evidence from the 2015 review period. See Amended Final Results.

Counsel for the COALITION reached out to Commerce officials to explain that the completed review covering the most recent period for D&G was the fourth administrative review. Accordingly, the applicable cash deposit rate for D&G should be the all-others rate established in that review. Counsel inquired whether the cash deposit rate assigned to D&G in the draft Amended Final Results (i.e., the recalculated CVD expedited review rate) was intentional or the result of an inadvertent error. Commerce officials confirmed via a virtual meeting through Microsoft Teams that it was intentional given that the rate was the

most recently calculated rate for D&G. On August 6, 2026, the Department published the Amended Final Results in the Federal Register, which contained the same language and cash deposit rate as in the draft Amended Final Results. See Amended Final Results, 91 Fed. Reg. at 50,794-795. On August 7, 2026, Commerce issued cash deposit instructions to CBP pursuant to the CIT's decision, instructing CBP to collect cash deposits at the 1.05 percent rate.[1]

## II. JURISDICTION AND STANDARD OF REVIEW

This Court retains supplemental jurisdiction over matters "so related to claims in the action within such original jurisdiction that they form part of the same case or controversy." United States v. Hanover Ins. Co., 869 F. Supp. 950 (Ct. Int'l Trade 1994), aff'd, 82 F.3d 1052 (Fed. Cir. 1996). "{A}bsent a stay pending appeal, a court retains jurisdiction to supervise its judgments and enforce its orders." Id. at 993 (citation omitted). This "Court has inherent power to oversee the implementation of its judgment and hold supplemental proceedings necessary for the proper effectuation of its judgment." Heraeus-Amersil, Inc. v. United States, 638 F. Supp. 342, 344 (Ct. Int'l Trade 1986), aff'd, 795 F.2d 1575 (Fed. Cir. 1986) (citation omitted); B.F. Goodrich Co. v. U.S., 843 F. Supp. 713, 714 (Ct. Int'l Trade 1994) (holding that the CIT "inherently has jurisdiction to enforce its judgments"). Further, this Court "has the inherent power to determine the effect of its judgments and issue injunctions to protect against attempts to attack or evade those judgments." United States v. Hanover Ins. Co., 82 F.3d 1052, 1054 (Fed. Cir. 1996).

This authority to enforce its judgments grants the Court "power to determine the effect of its judgments and issue injunctions to protect against attempts to attack or evade

[1] On August 26, 2026, Commerce issued amended cash deposit instructions to CBP, correcting a heading error in the August 7 instructions concerning the POR dates. Commerce did not change the cash deposit rate for D&G with this correction.

those judgments." Id. The CIT will grant a motion to enforce "when a prevailing plaintiff demonstrates that a defendant has not complied with a judgment entered against it, even if the noncompliance was due to misinterpretation of the judgment." GPX Int'l Tire Corp. v. United States, 70 F. Supp. 3d 1266, 1272 (Ct. Int'l Trade 2015); Otter Products, LLC v. United States, 532 F.Supp.3d 1345, 1349 (Ct. Int'l Trade 2021).

Separately, on September 2, 2026, Mobilier Rustique (Beauce) Inc. ("Rustique") filed an appeal in this case before the Federal Circuit. See Notice of Appeal of Judgment/Order of April 22, 2024, ECF No. 359 (Sept. 2, 2026). Right before the filing of this motion, D&G also filed an appeal. See Notice of Appeal of Judgment/Order of July 21, 2026, ECF No. 362 (Sept. 17, 2026). Despite these appeals, this Court retains jurisdiction to consider this motion. Although the Federal Circuit has not specifically ruled on the issue of divestiture of jurisdiction when an appeal has been filed, other circuit courts agree that "the mere pendency of an appeal does not, in itself, disturb the finality of a judgment." Wedbush, Noble, Cooke, Inc. v. SEC, 714 F.2d 923, 924 (9th Cir.1983). "{T}he district court has jurisdiction to act to enforce its judgment so long as the judgment has not been stayed or superseded." Nicol v. Gulf Fleet Supply Vessels, Inc., 743 F.2d 298, 299 n. 2 (5th Cir.1984). "Although a district court may not alter or enlarge the scope of its judgment pending appeal, it does retain jurisdiction to enforce the judgment." N.L.R.B. v. Cincinnati Bronze, Inc., 829 F.2d 585, 588 (6th Cir. 1987) (citing Deering Milliken, Inc. v. Federal Trade Commission, 647 F.2d 1124, 1128–29 (D.C.Cir. 1978), cert. denied, 439 U.S. 958 (1978). Finally, the district court also "retains jurisdiction to enforce its judgment . . . to adjudicate matters unrelated to the issues on appeal. Williamson v. Recovery Ltd. P'ship, 731 F.3d 608, 626 (6th Cir. 2013) (citing City of Cookeville v. Upper Cumberland

Elec. Membership Corp., 484 F.3d 380, 394 (6th Cir.2007); Weaver v. Univ. of Cincinnati, 970 F.2d 1523, 1528–29 (6th Cir.1992)). Given that Rustique's appeal concerns a separate and distinct judgment (i.e., judgment of April 22, 2024) and there is no stay on the judgment issued on July 21, 2026, this Court retains jurisdiction to consider this motion and enforce its July 21, 2026 judgment to ensure that Commerce acts in accordance with law in effectuating the judgment.

## III. ARGUMENT

### A. The Department Is Bound by Law and Past Practice to Apply the Fourth Administrative Review Cash Deposit Rate to D&G

This Court's judgment required Commerce to reinstate D&G to the CVD Order in a manner that is consistent with the law and the agency's established practice. Commerce's decision to apply the cash deposit rate recalculated in the Amended Final Results instead of the rate established in the fourth administrative review is against the agency's regulation and well-established practice and fails to properly enforce this Court's judgment.

Commerce's regulation states that, "{i}f a review is not requested, duties are assessed at the rate established in the completed review covering the most recent prior period." 19 C.F.R. § 351.212(a). Although the most recently calculated subsidy rate for D&G is the rate issued in the Amended Final Results, due to the lengthy process of the CVD expedited review litigation, this rate was calculated based on information from the 2015 period of review (i.e., the same timeframe as the period of investigation). In contrast, D&G was subject to the fourth administrative review, which covered calendar year 2021. Accordingly, the rate established for D&G covering the most recent period was the one assigned to the company in the fourth administrative review. Under Commerce's

regulation, this should be the cash deposit rate for D&G now that the company is again subject to the CVD Order.

Commerce has consistently applied the most up-to-date cash deposit rate to companies that were in and out of the AD/CVD order due to litigation. For example, in Common Alloy Aluminum Sheet from the Republic of Turkiye, the respondent's cash deposit rate fluctuated between above and below de minimis throughout various court-directed remands spanning several years. Common Alloy Aluminum Sheet from the Republic of Turkiye: Notice of Court Decision Not in Harmony With the Final Determination of Antidumping Investigation, 91 Fed. Reg. 40,977, 40,977-978 (Dep't Commerce July 6, 2026) ("Aluminum from Turkiye"). More specifically, Assan, a respondent in the case, was initially assessed an above-de minimis cash deposit rate. Id. at 40,978. Assan then appealed Commerce's final determination, challenging its adjustment calculation. Id. On remand, Commerce calculated a below-de minimis rate, thereby excluding Assan from the order. Id. In the second court-directed remand, Commerce granted Assan a duty drawback adjustment and again calculated a de minimis rate. This decision was challenged by the domestic industry, and ultimately Commerce determined that the respondent's rate exceeded the de minimis threshold, meaning that Assan was again subject to the order. Id. at 40,798. Rather than apply the amended investigation rate that was the subject of the litigation, Commerce applied the rate calculated in a subsequent review, noting that the respondent "ha{d} a superseding cash deposit rate, *i.e.*, there have been final results published in a subsequent administrative review." Id. at 40,979.

As another example, in Circular Welded Carbon-Quality Steel Pipe From the United Arab Emirates, Commerce calculated an above-de minimis rate for the respondent.

Circular Welded Carbon-Quality Steel Pipe From the United Arab Emirates, 91 Fed. Reg. 55,839, 55,839-40 (Dep't Commerce Aug. 31, 2026). The respondent then appealed the decision to the CIT, and the CIT subsequently remanded the final results to Commerce for reconsideration or further explanation of its calculation methodology. Id. at 55,839. Because the appeals process spanned several years, Commerce calculated new cash deposit rates for the intervening administrative reviews. Id. Ultimately, Commerce revised its calculation methodology consistent with a Federal Circuit opinion, and the CIT issued a final judgment affirming Commerce's calculation and the revised above-de minimis rate. Id. at 55,840. However, Commerce did not issue revised cash deposit instructions; instead, Commerce explained that "{b}ecause Universal has a superseding cash deposit rate, *i.e.*, there have been final results published in a subsequent administrative review, we will not issue revised cash deposit instructions to {CBP}." Id.

The Department again reaffirmed this practice in Certain Hot-Rolled Steel Flat Products From Japan, where the respondent's cash deposit rate remained subject to several court-ordered remands stretching across several intervening administrative reviews. Certain Hot-Rolled Steel Flat Products From Japan: Notice of Court Decision Not in Harmony With the Final Determination of Antidumping Investigation, 91 Fed. Reg. 55,513 (Dep't Commerce Aug. 28, 2026). Once the CIT entered its final judgment sustaining Commerce's calculated rate, Commerce declined to issue revised cash deposit instructions to CBP because Nippon Steel "ha{d} a superseding cash deposit rate." Id. at 55,514. Commerce also noted that "{f}or all exporters/producers that do not have a superseding cash deposit rate, Commerce will issue revised cash deposit instructions to CBP." Id.

All of these examples demonstrate that Commerce's established practice is to use the cash deposit rate calculated in reviews covering the most recent time period, as opposed to the most recently calculated (or revised) cash deposit rate for a prior period due to judicial review.

Indeed, this Court has also recognized such Commerce practice. Specifically, in rejecting the COALITION's argument that the decision finding Commerce lacks statutory authority to conduct CVD expedited review should apply retroactively, the Court stated that:

> Through the passage of time, opportunities to request administrative reviews have come and gone with concomitant consequences. The excluded companies were unable to participate in the first or second administrative reviews, and the non-excluded companies elected not to participate in the first administrative review based on the favorable rate obtained in the underlying proceeding. Thus, applying a cash deposit rate based on either the all others rate from the investigation <u>or the final results of administrative review for the most recent review in which the company was reviewed</u> constitutes the most appropriate means of effectuating the court's decision.

<u>COALITION IV</u>, 535 F.Supp.3d at 1362. In other words, this Court understood that when a previously excluded company is again subject to the AD/CVD order, the applicable cash deposit rate is the rate established in "the most recent review in which the company was reviewed." <u>Id.</u>

Here, the factual scenario is no different from the cases discussed above. The facts in <u>Aluminum from Turkiye</u> are particularly germane to the present case given the similar experiences of Assan and D&G. In both instances, the respondent company was initially subject to the order, subsequently excluded, and ultimately brought back in. Over the course of the appeals in both cases, several administrative reviews passed, and Commerce assigned updated rates to both companies. The only difference between the cases is that, in

Aluminum from Turkiye, Commerce adhered to its standard practice and applied the updated rate as opposed to the rate subject to the litigation, whereas in the Amended Final Results, Commerce applied the decade-old rate that was superseded by a more recently calculated rate.

In the Amended Final Results, Commerce did not explain why it deviated from its existing practice and regulation. As such, the agency's insistence on applying the recalculated CVD expedited review rate instead of the all-others rate established in the fourth administrative review for D&G is arbitrary and capricious and not in accordance with law.

**B. This Court Should Enforce Its Judgment by Requiring Commerce to Correct the Cash Deposit Rate for D&G**

The COALITION respectfully urges the Court to enforce its judgment in COALITION XI by directing Commerce to impose on D&G the cash deposit rate calculated in the fourth administrative review, rather than the cash deposit rate published in the Amended Final Results, or otherwise provide a thorough explanation as to why the agency finds it appropriate to deviate from its existing practice.

The COALITION acknowledges that the issue regarding the correct cash deposit rate for D&G when it is once again subject to the CVD Order is not directly litigated in this case. However, as the court previously held, "{t}he judgment required that Commerce act in accordance with law to effectuate the judgment. In order to act in accordance with law, Commerce must follow its established practice or explain why it is reasonable for it to deviate from its practice." United States Steel Corp. v. United States, 348 F. Supp. 3d 1248, 1260 (Ct. Int'l Trade 2018) ("U.S. Steel").

Specifically, in U.S. Steel, the court considered a motion to enforce requesting that Commerce recalculate the all-others rate after the mandatory respondent rates changed as the result of judicial review. The government argued that "U.S. Steel waived its claim by not raising the issue of the all-others rate in its complaint . . . or in the remand proceedings." Id. at 1259. It further asserted that "Commerce properly effectuated the court's decisions" by revising the mandatory respondents' rates, and that "U.S. Steel's argument regarding the all-others rate asks the court to entertain 'an entirely new legal argument challenging Commerce's final determination.'" Id. at 1260. The court dismissed both of these arguments in granting the motion to enforce. The court held that: "{b}ecause it is Commerce's practice to recalculate the all-others rate, it is of no moment that U.S. Steel failed to seek such relief in its complaint. Commerce must act in accordance with law to effectuate judgment." Id. And although the issue was not previously raised, "U.S. Steel was not required to petition Commerce to follow the law." Id. at 1261. In addition, the court disagreed with the government that Commerce effectuated the court's decision by merely revising the mandatory respondents' rates, finding that "{w}here Commerce has an established practice, such practice is part of the law Commerce must follow, unless it explains why it is reasonable to deviate from its practice, or it changes its practice. Commerce provided no such explanation, and therefore Commerce failed to 'properly effectuate' the court's judgment" by failing to also update the all-others rate. Id.

As explained above, Commerce has both a regulatory mandate and an established practice of applying the cash deposit rate calculated in a review covering the most recent period to a respondent. Commerce deviated from this practice without any explanation. The Court's judgment required Commerce to act in accordance with law, meaning that

Commerce must follow its established practice and apply the most recently calculated cash deposit rate. By failing to do so, Commerce failed to effectuate this Court's judgment. As such, the COALITION respectfully requests the Court to grant its Motion to Enforce and direct Commerce to correct the cash deposit rate assigned to D&G or otherwise provide a proper explanation as to why it determines it is appropriate to change the agency's existing practice in this case.

## IV. CONCLUSION

The COALITION respectfully requests that this Court grant the Motion to Enforce to properly effectuate its July 21, 2026 judgment.

Respectfully Submitted,

/s/ Sophia J.C. Lin

Sophia J.C. Lin
Jarret Williamson

**PICARD KENTZ & ROWE LLP**
1155 Connecticut Ave. NW
Suite 700
Washington, DC 20036
(202) 331-4040

Dated: September 17, 2026