**UNITED STATES COURT OF INTERNATIONAL TRADE**

**COMMITTEE OVERSEEING ACTION FOR LUMBER INTERNATIONAL TRADE INVESTIGATIONS OR NEGOTIATIONS,**

**Plaintiff,**

**and**

**MOBILIER RUSTIQUE (BEAUCE) INC., ET AL.,**

**Consolidated Plaintiffs,**

**v.**

**UNITED STATES,**

**Defendant,**

**and**

**FONTAINE INC., ET AL.,**

**Defendant-Intervenors.**

**Hon. Mark A. Barnett, Chief Judge**
**Consol. Court No. 19-00122**

**REPLY OF THE COMMITTEE OVERSEEING ACTION FOR LUMBER INTERNATIONAL TRADE INVESTIGATIONS OR NEGOTIATIONS IN SUPPORT OF MOTION TO ENFORCE JUDGMENT**

Sophia J.C. Lin
Jarret Williamson

**PICARD KENTZ & ROWE LLP**
1155 Connecticut Ave. NW
Suite 700
Washington, DC 20036
(202) 331-4040

*Counsel to Plaintiff Committee Overseeing Action for Lumber International Trade Investigations or Negotiations*

November 13, 2026

**TABLE OF CONTENTS**

**TABLE OF AUTHORITIES ........................................................................................ ii**

**INTRODUCTION.......................................................................................................1**

**ARGUMENT...............................................................................................................1**

**I. THIS COURT RETAINS JURISDICTION TO ENFORCE ITS JUDGMENT.....................................................................................................1**

**II. THIS COURT DID NOT VACATE THE RESULTS OF AR4 WITH RESPECT TO D&G.............................................................................4**

**III. COMMERCE MUST FOLLOW ITS ESTABLISHED PRACTICE AND ASSIGN D&G THE MOST CONTEMPORANEOUS CASH DEPOSIT RATE......................................7**

**CONCLUSION .........................................................................................................10**

# TABLE OF AUTHORITIES

## CASES

American Town Center v. Hall 83 Associates, 912 F.2d 104 (6th Cir. 1990)........................4

Comm. Overseeing Action for Lumber Int'l Trade Investigations or Negots. v. United States, 665 F. Supp. 3d 1347 (Ct. Int'l Trade 2023)..........................................................5

Comm. Overseeing Action for Lumber Int'l Trade Investigations or Negots. v. United States, Slip. Op. 26-77 (Ct. Int'l Trade July 21, 2026)......................................................1

Diamond Sawblades Manufacturers Coalition v. United States, 650 F. Supp. 2d 1331 (2009)..............................................................................................................2

Griggs v. Provident Consumer Disc. Co., 459 U.S. 56 (1982)..........................................1, 2

Mid Continent Steel & Wire, Inc. v. United States, 203 F. Supp. 3d 1295 (Ct. Int'l Trade 2017) ..............................................................................................................7

N.L.R.B. v. Cincinnati Bronze, Inc., 829 F.2d 585 (6th Cir. 1987) ......................................2

Nicol v. Gulf Fleet Supply Vessels, Inc., 743 F.2d 298 (5th Cir. 1984)................................3

United States Steel Corp. v. United States, 348 F. Supp. 3d 1248 (Ct. Int'l Trade 2018)7, 10

## ADMINISTRATIVE DETERMINATIONS

Certain Softwood Lumber Products From Canada: Final Results and Final Rescission, in Part, of the Countervailing Duty Administrative Review; 2021, 88 Fed. Reg. 50,103 (Dep't Commerce Aug. 1, 2023) ........................................................................4

Circular Welded Carbon-Quality Steel Pipe From the United Arab Emirates, 91 Fed. Reg. 55,839 (Dep't Commerce Aug. 31, 2026) ..........................................................9

Common Alloy Aluminum Sheet From the Republic of Turkiye: Notice of Court Decision Not in Harmony With the Final Determination of Antidumping Investigation, 91 Fed. Reg. 40,977 (Dep't Commerce July 6, 2026) ......................................................9

## INTRODUCTION

On behalf of plaintiff Committee Overseeing Action for Lumber International Trade Investigations or Negotiations ("COALITION"), we submit this reply to the response briefs of defendant United States ("Government") and defendant-intervenor Les Produits Forestiers D&G Ltée (together with its cross-owned affiliates, "D&G"), regarding the cash deposit rate assigned to D&G by the U.S. Department of Commerce ("Commerce") following the Court's judgment. As explained below, the Government and D&G fail to demonstrate that Commerce complied with the Court's judgment when it assigned D&G a cash deposit rate calculated in the expedited review rather than the more contemporaneous rate determined in the fourth administrative review.

## ARGUMENT

### I. This Court Retains Jurisdiction to Enforce Its Judgment

The COALITION's motion explained that this Court retains jurisdiction to enforce its judgment despite appeals pending before the U.S. Court of Appeals for the Federal Circuit ("Federal Circuit"). As explained below, D&G's filing of a notice of appeal does not divest this Court of its authority to enforce the judgment entered following the opinion in Comm. Overseeing Action for Lumber Int'l Trade Investigations or Negots. v. United States, Slip. Op. 26-77 (Ct. Int'l Trade July 21, 2026).

The Government contends that "{b}ecause D&G/Portbec have filed an appeal with the Federal Circuit, this Court no longer has jurisdiction to consider the COALITION's motion." See Def. Resp. to Pl. Mot. to Enf. J. at 6-7 (Oct. 16, 2026) ("Def. Resp."), ECF 370. In support, the Government states that "{t}he filing of a notice of appeal generally divests the trial court of jurisdiction." See id. at 7 (citing Griggs v. Provident Consumer Disc. Co., 459 U.S. 56, 58 (1982)) (emphasis added). Similarly, D&G cites Griggs and

claims that its filing of a notice of appeal divests this court of its jurisdiction. See D&G Resp. to Mot. to Enf. J. at 4 (Oct. 15, 2026) ("D&G Resp."), ECF 369. These arguments fail. As the COALITION detailed in its motion, an exception to this general rule provides that a court retains jurisdiction to enforce a judgment. See N.L.R.B. v. Cincinnati Bronze, Inc., 829 F.2d 585, 588 (6th Cir. 1987). This Court's decision in Diamond Sawblades Manufacturers Coalition v. United States supports this claim. See 650 F. Supp. 2d 1331 (2009). There, as here, appeals of this Court's underlying judgment were pending before the Federal Circuit, and Commerce refused to instruct CBP to collect cash deposits in accordance with the judgment, arguing that the pending appeals divested this Court of jurisdiction. Id. at 1335. This Court rejected those arguments and ordered Commerce to collect cash deposits in accordance with the judgment and explained that doing so did not interfere with the Federal Circuit's review of the merits. Id. at 1357.

The Government's and D&G's citation to D&G's notice of appeal is insufficient to support their arguments. The fact that D&G appealed the Court's final judgment does not deprive this Court of all jurisdiction. Under Griggs, the relevant inquiry is whether the issue considered in the underlying proceeding is an aspect of the appeal. 459 U.S. at 58 (stating "{t}he filing of a notice of appeal is an event of jurisdictional significance—it confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal") (emphasis added). The Government asserts that "D&G/Portbec {has} filed a notice of appeal and challenges the same issues that resulted in the Court's final judgment" and that the motion "invites precisely the confusion and inefficiency that this rule seeks to avoid." See Def. Resp. at 7. D&G similarly claims that "{t}he subsidy calculation that produced the 1.05 percent rate, and the

rate that is its output, are squarely aspects of the case involved in D&G's appeal" and that the COALITION's motion asks this court to modify its judgment. D&G Resp. at 4-5. These characterizations are incorrect. The Government notes that D&G could be excluded from the CVD Order if it prevails on appeal, but that possibility has no bearing on whether Commerce failed to give effect to the Court's judgment by assigning an out-of-date cash deposit rate to D&G. Because D&G remains subject to the CVD Order at this time, the COALITION's motion asks only that Commerce instruct CBP to collect cash deposits at the cash deposit rate most recently assigned to the company. It does not ask this Court to revisit or modify its underlying decision. The motion therefore creates none of the confusion the Government and D&G allege.

The COALITION's motion seeks only the enforcement of this Court's judgment, which is precisely what the circuit courts permit. Put simply, the Federal Circuit may independently consider D&G's appeal, while this Court determines whether the Government's cash deposit instructions are consistent with this Court's judgment. So long as this Court confines its decision to enforcing its judgment and does not alter or expand the judgment under review, the two proceedings do not interfere with one another.

Critically, neither the Government nor D&G has identified any order staying enforcement of the Court's July judgment. As D&G acknowledges, the filing of a notice of appeal does not, by itself, absolve the Government of its obligation to comply with an otherwise enforceable judgment. See D&G Resp. at 5 (stating that the cases cited by the COALITION "establish only that an unstayed judgment remains enforceable while an appeal is pending"); see also Nicol v. Gulf Fleet Supply Vessels, Inc., 743 F.2d 298, 299 n.2 (5th Cir. 1984) ("the district court has jurisdiction to act to enforce its judgment so long

as the judgment has not been stayed or superseded"); American Town Center v. Hall 83 Associates, 912 F.2d 104, 110 (6th Cir. 1990) ("this court ruled that while as a general rule a notice of appeal divests the district court of its jurisdiction to expand upon an opinion, the district court retains jurisdiction to enforce its judgment so long as the judgment has not been stayed or superseded."). To conclude otherwise would effectively permit a party to obtain an automatic stay of enforcement simply by filing an appeal. Accordingly, both parties' positions are inconsistent with established precedent and should be rejected.

Finally, D&G contends that the COALITION's motion is improper because "{t}he sole question on a motion to enforce is whether Commerce complied with the judgment" and the COALITION supposedly "addresses a different determination altogether." D&G Resp. at 5. D&G's claim is incorrect. The COALITION's motion seeks enforcement of this Court's July 2026 judgment, which held that D&G is again subject to the CVD Order. That judgment obligated Commerce to assign D&G the correct cash deposit rate. As the COALITION's motion demonstrated, Commerce failed to comply with the judgment. That is precisely the question D&G concedes is the "sole" inquiry on a motion to enforce.

## II. This Court Did Not Vacate the Results of AR4 with Respect to D&G

The COALITION's motion explained that D&G was covered by the fourth administrative review. Certain Softwood Lumber Products from Canada: Final Results and Final Rescission, in Part, of the Countervailing Duty Administrative Review; 2021, 88 Fed. Reg. 50,103, 50,106 (Dep't Commerce Aug. 1, 2023) ("AR4 Final Results"). In that segment, Commerce assigned D&G a 1.79 percent rate. Id. at 50,104.[1] Because D&G is

[1] D&G was not individually reviewed in AR4 and was assigned the non-selected companies subsidy rate.

subject to the CVD Order, the AR4 rate applies to it. The Government's and D&G's responses fail to suggest otherwise.

In its response brief, the Government argues that "the COALITION ignores the effect of COALITION 2023, which essentially extinguished the final results of the fourth administrative review with respect to D&G/Portbec by excluding them from the order, retroactive to August 28, 2021." See Def. Resp. at 11; see also Comm. Overseeing Action for Lumber Int'l Trade Investigations or Negots. v. United States, 665 F. Supp. 3d 1347 (Ct. Int'l Trade 2023) ("COALITION 2023"). The Government therefore argues that the AR4 rate cannot be assigned to D&G. Similarly, D&G contends that the results of AR4 are inapplicable to D&G. See D&G Resp. at 8-9. The Government's and D&G's arguments, however, improperly expand this Court's decision in COALITION 2023.

To start, it is undisputed that D&G was subject to the fourth administrative review. See AR4 Final Results at 50,103-50,106 (identifying D&G in the list of companies subject to review). The period of review ran from January 1 through December 31, 2021, and D&G had shipments of subject merchandise during that period. See id. Commerce initiated the review, assigned D&G a case number, and maintained the suspension of liquidation of its entries while the related proceedings continued. See id. The reinstatement of the exclusion cannot be used to erase the fact that D&G was assigned an updated cash deposit rate in the final results of the AR4 segment. Ultimately, the critical question is not whether D&G was excluded from the CVD Order, but what specific legal effect the Court's reinstatement of that exclusion had on the fourth administrative review. The Government's reliance on COALITION 2023 is misplaced. The Court did not decide that the AR4 results were unlawful or otherwise void. Rather, the Court's order focused on

reinstating various parties' exclusion from the CVD Order writ large. The Court's opinion did not consider whether D&G was subject to the rate calculated during the fourth administrative review going forward. Thus, the Government has not shown that the final results of the fourth administrative review were extinguished with respect to D&G.

Further, the Government's reliance on 19 C.F.R. § 351.213(b)(1) and 19 C.F.R. § 351.213(d)(3) does not resolve the issue. See Def. Resp. at 11. Although those provisions permit administrative reviews of individual exporters covered by an order, they do not address the legal consequences of a subsequent judicial ruling retroactively reinstating an exclusion from an order. The existence of shipments during the period of review and the company's status under the CVD Order are separate considerations. The Government must establish why the reinstatement of D&G's exclusion vacated the findings made in AR4, rather than simply affecting the treatment of entries covered by the exclusion.

Additionally, the Government's reliance on Commerce Message No. 4018402 and Commerce Message No. 4018411 does not resolve this issue. See Def. Resp. at 12. Those instructions implemented the Court's November 20, 2023, order by directing CBP to liquidate D&G's entries without regard to countervailing duties. Although these liquidation instructions superseded the continued suspension of liquidation associated with AR4, they did not vacate the final results or determine that the rate established under that review was inapplicable to D&G's future entries following reinstatement into the CVD Order.

The Government's argument fails at each step. COALITION 2023 reinstated D&G's exclusion from the CVD Order. 665 F.Supp.3d at 1355. It did not extinguish, or otherwise address, the final results of the fourth administrative review. The exclusion on

which the Government relies no longer controls because this Court's July 2026 judgment found D&G above de minimis and subject to the CVD Order. D&G is therefore subject to the CVD Order, and the 1.79 percent rate from the fourth administrative review applies.

### III. Commerce Must Follow Its Established Practice and Assign D&G the Most Contemporaneous Cash Deposit Rate

In the motion to enforce, the COALITION cited this Court's decision in United States Steel Corp. v. United States, which explained that "{w}here Commerce has an established practice, such practice is part of the law Commerce must follow, unless it explains why it is reasonable to deviate from its practice, or it changes practice." 348 F. Supp. 3d 1248, 1260 (Ct. Int'l Trade 2018); see also Mid Continent Steel & Wire, Inc. v. United States, 203 F. Supp. 3d 1295, 1312 (Ct. Int'l Trade 2017) ("Agency action becomes an established practice when a uniform and established procedure exists that would lead a party, in the absence of notification of change, reasonably to expect adherence to the agency's past action.") (internal quotations and citations omitted).

In response, the Government posits that Commerce did not act contrary to the Court's judgment because "the judgment {did not} require Commerce to assign a cash deposit rate based on the most recent review." See Def. Resp. at 8. In other words, the Government asserts that because the Court did not direct Commerce to use a specific rate, Commerce had discretion as to which rate to assign. This claim is meritless. Commerce must act lawfully in effectuating this Court's judgment, and as noted in the motion, Commerce has an established practice of assigning companies the cash deposit rate calculated in the most recently completed administrative review. Because this is Commerce's established practice, it is the law. See United States Steel Corp., 348 F. Supp. 3d at 1260 ("The judgment required that Commerce act in accordance with law to

effectuate the judgment. In order to act in accordance with law, Commerce must follow its established practice or explain why it is reasonable for it to deviate from its practice.”). Although the Court’s judgment did not expressly identify the cash deposit rate applicable to D&G, its judgment necessarily presumes that Commerce will act lawfully and follow its established practice. Here, that means assigning D&G the most recently calculated rate—in this case, the rate assigned to the company in AR4.

D&G argues that the AR4 rate is inapplicable because “AR4 is a separate segment of the proceeding, with its own record, period of review, and final results.” D&G Resp. at 3. This argument misses the point. The COALITION does not dispute that AR4 was a separate administrative segment. Rather, the COALITION’s position is that Commerce’s established practice is to assign the most recently calculated cash deposit rate, as the cases cited in the COALITION’s motion demonstrate. That AR4 is a separate segment, and a more contemporaneous one, is precisely why Commerce should assign D&G the AR4 rate.

The Government’s and D&G’s attempt to distinguish the cases cited in the motion, which establish a binding pattern of conduct, also fails. Both parties rely solely on immaterial factual distinctions that do not resolve the legal question of whether Commerce must apply the AR4 rate. They emphasize that the respondents in those proceedings remained subject to their respective orders and paid cash deposits throughout the litigation. See Def. Resp. at 13-14; see also D&G Resp. at 9-10. D&G’s history, by contrast, has been more complicated. D&G was initially subject to the CVD Order, was found de minimis in the expedited review, and was brought back into the CVD Order during AR4. It was excluded again when the Federal Circuit held that Commerce may conduct expedited reviews and was finally returned to the CVD Order after this Court sustained Commerce’s

remand. But neither the Government nor D&G explains why these differences prevent Commerce from assigning the AR4 rate.

The Government's citation to Common Alloy Aluminum from the Republic of Türkiye is unpersuasive. It argues that the case is inapposite because "{a}t no point was Assan's de minimis dumping margin affirmed by the Court, and at no point did the Court hold Assan not subject to the order." See Def. Resp. at 13. That distinction is immaterial. Assan's trajectory mirrors D&G's. Both companies were initially above de minimis, fell below de minimis after appealing Commerce's determination, resulting in their exclusion from their respective orders, and were then brought back into the order. Common Alloy Aluminum Sheet from the Republic of Turkiye: Notice of Court Decision Not in Harmony With the Final Determination of Antidumping Investigation, 91 Fed. Reg. 40,977, 40,977-978 (Dep't Commerce July 6, 2026). What matters is not that the Court never affirmed Assan's dumping margin or that they were continuously subject to the order. Rather, what matters is that once Assan was ultimately found subject to the order, as D&G has been here, Commerce assigned the rate calculated in the most recently completed review. See id.

The same is true of Circular Welded Carbon-Quality Steel Pipe From the United Arab Emirates. See 91 Fed. Reg. 55,839, 55,840 (Dep't Commerce Aug. 31, 2026). As the Government acknowledges, "{a}t the conclusion of the litigation, Commerce determined that Universal would receive the superseding cash deposit rate as a result of the recently completed administrative review." See Def. Resp. at 13-14. That Universal Tube & Plastic paid cash deposits throughout the proceeding is beside the point. What matters is that once all the litigation concluded, Universal Tube was back in the order and Commerce assigned the most contemporaneous rate, explaining that "{b}ecause Universal has a superseding

cash deposit rate, *i.e.*, there have been final results published in a subsequent administrative review, we will not issue revised cash deposit instructions to {CBP}." Circular Welded Carbon-Quality Steel Pipe From the United Arab Emirates, 91 Fed. Reg. at 55,840.

In each of these proceedings, the pattern is the same. Whatever route a respondent took through the litigation, once it was back in the order, Commerce assigned the rate calculated in the most recent administrative review. That uniform conduct is Commerce's established practice, and under United States Steel Corp., that practice is part of the law that Commerce must follow in effectuating this Court's judgment. See 348 F. Supp. 3d at 1260.

The Government's reasons for why D&G should be treated differently are unpersuasive. It points to procedural differences among the cases, such as whether a respondent was excluded from the order or kept paying cash deposits, but it never explains why it is reasonable for Commerce to deviate from its practice here. D&G is subject to the CVD Order, and Commerce's established practice dictates that it must assign the rate calculated in AR4.

**CONCLUSION**

Accordingly, the COALITION requests that this Court grant its motion to enforce.

Respectfully Submitted,

/s/ Sophia J.C. Lin

Sophia J.C. Lin
Jarret Williamson

**PICARD KENTZ & ROWE LLP**
1155 Connecticut Ave. NW
Suite 700
Washington, DC 20036
(202) 331-4040

Dated: November 13, 2026